Ronald D. Green, NV Bar #7360
Randazza Legal Group
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 fax
ecf@randazza.com

Attorney for Plaintiff
MARC J. RANDAZZA

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARC J. RANDAZZA, an individual, JENNIFER RANDAZZA, an individual, and NATALIA RANDAZZA, a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>CRYSTAL COX, an individual, and ELIOT BERNSTEIN, an individual,<br><br>Defendants. | Case No.<br><br>***EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION PRELIMINARY INJUNCTION** |

Plaintiffs Marc J. Randazza, "Randazza," Jennifer Randazza, "Jennifer Randazza," and Natalia Randazza, "Natalia Randazza," a minor, through counsel, hereby move this Court for: (1) an *ex parte* temporary restraining order requiring Defendants to immediately cease and desist all use of Plaintiffs' names, trademarks, and domain names and requiring any relevant domain name registrar to transfer the following domain names to Plaintiffs and place such Infringing Domain Names ("Infringing Domain Names") on hold:

    a.   <marcrandazza.com>

    b.   <marcrandazza.me>

    c.   <marcjrandazza.com>

    d.   <fuckmarcrandazza.com>

1

e. <marcjohnrandazza.com>

f. <marcrandazzasucks.com>

g. <marcrandazzaisalyingasshole.com>

h. <marcrandazza.biz>

i. <marcrandazza.info>

j. <marcrandazza.mobi>

k. <marcrandazzaparody.com>

l. <exposemarcrandazza.com>

m. <randazzalegalgroupsucks.com>

n. <trollmarcrandazza.com>

o. <hypocritemarcrandazza.com>

p. <crystalcoxmarcrandazza.com>

q. <marcjohnrandazza.blogspot.com>

r. <randazzalegalgroup.blogspot.com>

s. <marcrandazzaviolatedmylegalrights.blogspot.com>

t. <markrandazza.blogspot.com>

u. <marcrandazza.blogspot.com>

v. <jenniferrandazza.blogspot.com>

w. <marcrandazzafreespeech.blogspot.com>

x. <marcrandazzaegomaniac.blogspot.com>

y. <marcjrandazza-lawyer.blogspot.com>

z. <marc-randazza.blogspot.com>

aa. <marcrandazzawomensrights.blogspot.com>

bb. <marcrandazza-asshole.blogspot.com>

cc. <marcrandazzatips.blogspot.com>

dd. <marcrandazzaabovethelaw.blogspot.com>

ee. <marcrandazzaliedaboutcrystalcox.blogspot.com>

ff. <janellerandazza.blogspot.com>;

(2) a preliminary injunction requiring Defendant and the domain name registrar to transfer the Infringing Domain Names to Plaintiff for the pendency of this litigation; and

(3) a preliminary TRO restraining Defendants from further registration of any "Randazza" domain names. At the conclusion of this litigation, Plaintiffs will request that the Infringing Domain Names be transferred to Plaintiffs permanently.

This Motion is made pursuant to Rule 65 of the Federal Rules of Civil Procedure and is based upon the attached Memorandum of Points and Authorities, the papers and pleadings on file herein, and any oral argument that this Court may allow.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.  INTRODUCTION AND STATEMENT OF GOOD CAUSE IN COMPLIANCE WITH LR 7-5

This Motion is brought under Plaintiffs' claims for violation of the Anti-cybersquatting Consumer Protection Act (the "ACPA") (15 U.S.C. § 1125(d)), violation of individual cyberpiracy protections (15 U.S.C. § 8131), right of publicity under the laws of the State of Nevada, as well as the common law clams of intrusion upon seclusion and publicity, and civil conspiracy. Plaintiffs' Motion arises from Defendants' use of Plaintiffs' personal names and Defendants' registration and use of the Infringing Domain Names.

Defendants registered and used Infringing Domain Names and Plaintiffs' personal names in bad faith. Plaintiff Marc Randazza's personal name serves as a common law mark. Defendants are attempting to use Plaintiff Randazza's personal name and the names of his family members in an attempt to extort money from Plaintiffs. Furthermore, Defendants have made a commercial use of Plaintiff Randazza's name through the use of pay-per-click advertising. Plaintiffs seek a temporary restraining order and a preliminary injunction requiring the transfer of the Infringing Domain Names to Plaintiffs and enjoining Defendants from further similar actions.

Plaintiffs seek this temporary restraining order *ex parte* to avoid the irreparable injury that will result if Defendants receive advance notice of Plaintiffs' request. Defendant Crystal Cox has a

history of "cyberflying" domains once she is aware of pending action against her. **(See Exhibit 1).** Permitting Defendants to transfer any of the Infringing Domain Names to other registrants or registrars might deprive this Court of jurisdiction and would force Plaintiffs to file additional litigation to obtain the requested relief. An *ex parte* order will prevent Defendants from transferring the Infringing Domain Names to other registrars and/or registrants during the pendency of this action.

Plaintiffs request that this Court issue a temporary restraining order directing Defendants and the domain name registrar to transfer the Infringing Domain Names to Plaintiffs. This will prevent Defendants' stated intent to permit further migration of the Infringing Domain Names.

## II.  STATEMENT OF RELEVANT FACTS

### A.  Introduction and nature of action.

Since January 16, 2012, Defendant Crystal Cox has targeted Plaintiff Marc Randazza, his wife, Plaintiff Jennifer Randazza, and his daughter, Plaintiff Natalia Randazza, in an online harassment campaign.[1]  To date, Ms. Cox has obsessively registered dozens of domain names containing Plaintiff Randazza's name in an effort to extort and harass Plaintiffs and capitalize upon and damage the goodwill that Plaintiff Randazza has in his name. However, Ms. Cox's harassment has not stopped with Plaintiff Randazza. She has even involved Jennifer Randazza and Natalia Randazza, Plaintiff Randazza's three-year-old daughter, in her harassment and extortion campaign. Not only has she involved the three Plaintiffs, but Cox has most recently included Plaintiff Marc Randazza's sister in her latest attacks. **(See Exhibit 2)**. Defendant Bernstein, on information and belief, is a knowing and willful participant and co-conspirator in Cox's activities.[2]

Plaintiffs are not the only victims of the Cox-Bernstein scheme. Ms. Cox has targeted several dozen other victims, registering their full names and accusing them of any manner of insane

---

[1] On November 19, 2012, Cox made it clear that the campaign would now expand to Marc Randazza's sister.
[2] In fact, when Plaintiff asked him about his involvment and gave him an opportunity to explain, he <u>requested</u> that he be named in this action.

wrongdoings.  Just as she has done with Plaintiff Randazza, Cox then offers her "reputation services" to the people whose names she has registered.  See *Obsidian Finance Group, LLC v. Cox*, 2012 WL 1065484 (D. Ore 2012) ("*[D]efendant offered 'PR,' 'search engine management,' and online reputation repair services to Obsidian Finance, for a price of $2,500 per month ... The suggestion was that defendant offered to repair the very damage she caused for a small but tasteful monthly fee*").  If they refuse, she continues her campaign to ruin their reputation online, not only by posting insane and defamatory rants about them online, but by then repeating the defamatory rants on site after site, interlinking all of them in order to artificially inflate the Google rankings on each site.

While Plaintiffs are not the sole victims, they still have important rights that Defendants are violating.  Plaintiff Randazza uses his name in connection with the offering of legal services.  Through Marc J. Randazza PA, d/b/a Randazza Legal Group, Plaintiff Randazza is a nationally recognized attorney, and continues to use his name to offer his business services.  If Defendants are not enjoined, Plaintiff Randazza will suffer irreparable damage to his business and personal name.  His innocent family members will suffer from even further damage.  Therefore, Plaintiff Randazza filed the instant action against Defendants and now requests a temporary restraining order and preliminary injunction against them.

**B.     Plaintiffs**

Plaintiff Randazza is an individual, an attorney, a legal author, and a resident of Las Vegas, Clark County, Nevada. Plaintiff is the owner and managing partner of Marc J. Randazza PA, d/b/a Randazza Legal Group ("RLG"), a nationally recognized First Amendment and Intellectual Property law firm with offices located in Nevada, Florida, and Arizona.  Since 2008, RLG has been doing business using Marc Randazza's personal name as a source identifier for its services.

In addition to owning and operating his own law firm, Plaintiff regularly appears in all forms of news media as an author legal commentator.  He has appeared in New York City Magazine, New York Times, Boston Globe, Los Angeles Times, Fox News, and CNN, among others. (**See Exhibit 3; Decl. of Marc J. Randazza at ¶5**).  He also regularly publishes under his

byline at his blog, The Legal Satyricon, which is one of the most well-known law blogs in the country. (**See Exhibit 4; Decl. of Randazza at ¶4**).  Plaintiff regularly speaks on panels about the First Amendment and intellectual property at conferences nationwide. (**See Exhibit 5; Decl. of Randazza at ¶6**).

In 2011, XBiz World Magazine named Randazza one of the adult entertainment industry's Top 50 newsmakers and commented on his work in high-profile cases. (**See Exhibit 6; Decl. of Randazza at ¶5**). In Nevada, Plaintiff's name has appeared in high profile Las Vegas media, including the Las Vegas Review-Journal, the Las Vegas Sun, VegasInc, Las Vegas CityLife, and Las Vegas Weekly.  (**See Exhibit 3; Decl. or Randazza at ¶5**).

Plaintiff Jennifer Randazza is the wife of Plaintiff Marc Randazza.  Plaintiff Natalia Randazza is their three-year-old daughter.  Both Jennifer and Natalia Randazza are private people who were only targeted because of their relationship to Plaintiff Randazza.

**C.     Defendants and the Infringing Domain Names.**

Defendant Crystal Cox registered the following Infringing Domain Names, some of which were listed under proxy, Defendant Eliot Bernstein:

a. &lt;marcrandazza.me&gt;
b. &lt;marcrandazza.com&gt;
c. &lt;marcjrandazza.com&gt;
d. &lt;fuckmarcrandazza.com&gt;
e. &lt;marcjohnrandazza.com&gt;
f. &lt;marcrandazzasucks.com&gt;
g. &lt;marcrandazzaisalyingasshole.com&gt;
h. &lt;marcrandazza.biz&gt;
i. &lt;marcrandazza.info&gt;
j. &lt;marcrandazza.mobi&gt;
k. &lt;marcrandazzaparody.com&gt;
l. &lt;exposemarcrandazza.com&gt;
m. &lt;randazzalegalgroupsucks.com&gt;

1      n. &lt;trollmarcrandazza.com&gt;

2      o. &lt;hypocritemarcrandazza.com&gt;

3      p. &lt;crystalcoxmarcrandazza.com&gt;

4      q. &lt;marcjohnrandazza.blogspot.com&gt;

5      r. &lt;randazzalegalgroup.blogspot.com&gt;

6      s. &lt;marcrandazzaviolatedmylegalrights.blogspot.com&gt;

7      t. &lt;markrandazza.blogspot.com&gt;

8      u. &lt;marcrandazza.blogspot.com&gt;

9      v. &lt;jenniferrandazza.blogspot.com&gt;

10      w. &lt;marcrandazzafreespeech.blogspot.com&gt;

11      x. &lt;marcrandazzaegomaniac.blogspot.com&gt;

12      y. &lt;marcjrandazza-lawyer.blogspot.com&gt;

13      z. &lt;marc-randazza.blogspot.com&gt;

14      aa. &lt;marcrandazzawomensrights.blogspot.com&gt;

15      bb. &lt;marcrandazza-asshole.blogspot.com&gt;

16      cc. &lt;marcrandazzatips.blogspot.com&gt;

17      dd. &lt;marcrandazzaabovethelaw.blogspot.com&gt;

18      ee. &lt;marcrandazzaliedaboutcrystalcox.blogspot.com&gt;

19      ff. &lt;janellerandazza.blogspot.com&gt;;

(**See Exhibit 7, Decl. of Laura Tucker**). These Defendants registered the Infringing Domain Names with the intent to capitalize on the use of Plaintiff Randazza's personal name and extort money from Plaintiffs. In fact, the profit in this endeavor flows directly from the extortion scheme.

Between December 10, 2011 and September 20, 2012, Defendant Cox registered the Infringing Domain Names through registrar Godaddy.com. Cox registered some of the Infringing Domain Names through Defendant Bernstein as a proxy, who, on information and belief, is a

knowing and voluntary participant in Cox's enterprise.[3] The Defendants registered the Infringing Domain Names with the intent to capitalize on Plaintiff Randazza's personal name, of which Plaintiff Randazza has legitimate common law trademark rights.

On December 10, 2011, <marcrandazza.com> was registered to Crystal Cox in the publically available Whois information. (See **Exhibit 7**). On January 16, 2012, Cox sent an email to Plaintiff stating that she had purchased his personal name as a domain name. (See **Exhibit 8**). She then asked Plaintiff to purchase her "reputation management services" in an attempt o extort money from Plaintiff. (See **Exhibit 8**). See *Obsidian Finance Group, LLC v. Cox*, 2012 WL 1065484 (D. Ore 2012).

Defendant Cox continued to register several dozen more domain names and registered dozens of Blogger accounts throughout the next several months, all of which contain Plaintiff's personal name, the name of his law firm, Randazza Legal Group, or his family members' names. (See **Exhibit 9**). Five of the Infringing Domain Names are registered to Defendant Bernstein, although the content is the same as the content found on all of the other sites, which are authored by Defendant Cox. Defendant Bernstein has been informed of the potential filing of this lawsuit through a cease and desist letter (See **Exhibit 10**). He was additionally given the opportunity to explain his involvement, but his only response was to say "please include me" in the instant suit. Bernstein is a knowing and willing participant in Cox's infringing and harassing behavior.

**C.    Defendants' use of the Infringing Domain Names.**

Defendant Crystal Cox uses the Infringing Domain Names to harass, intimidate, and extort Plaintiffs. Ms. Cox has no legitimate reason to own 32 (and likely more) domain names, all of which incorporate Plaintiff Randazza's name and the names of his family members. Currently, the

---

[3] Bernstein acts as Cox's proxy because Cox is currently under a $2.5 million defamation judgment obtained by one of her earlier victims.

websites contain material she uses in her extortion scheme against Plaintiff Randazza, as well as pay-per-click advertisements for questionable "supplements." (**See Exhibit 11**). The Infringing Domain Names seem to flip flop between this content and serving as GoDaddy park pages containing pay-per-click advertisements. Furthermore, Defendant Cox claims to be "very good" at getting her websites to appear at the top of search results. See *Obsidian Finance Group, LLC v. Cox*, 2012 WL 1065484 (D. Ore 2012).[4]

Defendant Cox admits that she originally registered the Infringing Domain Names in an attempt to harass and extort Plaintiff Randazza. Specifically, Cox said she hoped to intimidate Plaintiff Randazza to keep him from giving a deposition testimony for *Obsidian Finance Group, LLC v. Cox* (See **Exhibit 12**). In addition, Cox has asked Plaintiff Randazza to pay her to maintain his online reputation, which she herself has sought to destroy through search engine optimization and link spamming techniques.[5] On or about September 19, 2012, in a bold move, Defendant Cox advertised on her blog that the Infringing Domain Name <marcrandazza.me> was for sale for $5 million. (See **Exhibit 13**). The post contained a link to the park page of the site, and Defendant Cox is the author of the post and the registrant of <marcrandazza.me>.[6]

Defendant Cox will not stop until she is satisfied that she has successfully intimidated Plaintiff or until he pays the requested ransom. She has stated that she will continue to register "hundreds more monthly, eternally," until she can be stopped. (**See Exhibit 14**). Plaintiff already has suffered economic loss, and will continue to do so until the Infringing Domain Names are

---

[4] Of course, this "very good" technique is simple. Google considers pages to have importance based on how many other sites link to them. Organically and honestly, this results in the best content rising to the top of the rankings. Cox simply eliminates the third parties, linking hundreds of her own sites to one another, creating a closed extortion machine.

[5] Link spamming refers to the practice often used by those attempting to manipulate search engine results in which the content of the website links to other pages for a reason other than that of merit. Defendant Cox links to her other websites in her blog posts, which causes her websites to appear higher in search engine results.

[6] Even at the date of this filing, Cox has placed no content on that particular site, registering it solely to try and sell it to the Plaintiffs. **See Exhibit 15.**

rightfully transferred to him. Thus, the instant Motion is necessary to both stop Defendants' intellectual property infringement and help restore Plaintiffs' rights.

### III. LEGAL ARGUMENT

Plaintiff Marc Randazza is entitled to an *ex parte* temporary restraining order and a preliminary injunction directing the domain name registrar to transfer and place the Infringing Domain Names on hold pending trial. Mr. Randazza is also entitled to a preliminary injunction transferring the Infringing Domain Names and enjoining Defendant from further registration of domain names containing his personal name, of which he is entitled to a common law mark, or use of the Infringing Domain Names during the pendency of the litigation.

In order to obtain a temporary restraining order or preliminary injunction, Plaintiff Randazza must show that: (1) he will suffer irreparable harm if injunctive relief is not granted; (2) he is likely to succeed on the merits; (3) the balance of equities tips in favor of the moving party; and (4) granting the injunction is in the public interest. *See Stanley v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir. 1994). Alternatively, the party seeking an injunction must also show that 1) the party is likely to suffer irreparable harm absent the issuance of an injunction and 2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor. *See Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011). A "serious question" is one for which the moving party has a "fair chance" of success on the merits. *See Stanley*, 13 F.3d at 1319. In the instant case, Plaintiff is entitled to a temporary restraining order and preliminary injunction under either test.

### A. Plaintiffs will suffer irreparable injury if the Court does not grant preliminary injunctive relief.

A party seeking injunctive relief under Fed. R. Civ. P. 65 must demonstrate irreparable harm, meaning that "money damages alone will not suffice to restore the moving party to its rightful position." *Clark Pacific v. Krump Constr., Inc.*, 942 F.Supp. 1324, 1346 (D. Nev. 1996).

A court may issue a preliminary injunction where the plaintiff shows "serious questions going to the merits," and a "balance of hardships that tips sharply toward the issuance of a preliminary injunction," so long as the plaintiff can also show irreparable harm if the court does not issue the injunction. *Alliance*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Generally, in cases involving intellectual property infringement, where a likelihood of success on the merits is demonstrated, a preliminary injunction **must issue**. *See Candence Design Sys. Inc. v. Avant! Corp*, 125 F.3d 824, 827 (9th Cir. 1997). Any other elemental analysis is unnecessary. *See id.* Therefore, upon a showing of success on the merits of 1) violation of individual cyberpiracy protections pursuant to 15 U.S.C. §8131; 2) cybersquatting pursuant to 15 U.S.C. §1125(d); 3) right of publicity pursuant to Nev. R. Stat. 597.810; 4) common law right of publicity; and 5) common law right of intrusion upon seclusion ("Relevant Claims"), Plaintiff Randazza will have met his burden in establishing irreparable harm and will be entitled to injunctive relief.

If the injunction does not issue, Defendants will be able to continue to register countless domain names using the "Randazza" name, and Plaintiffs' business reputation will continue to suffer from Defendants' actions.

**B.    Plaintiffs are highly likely to succeed on the merits.**

Plaintiffs' success on the merits is probable with respect to each of the claims that they assert against Defendants. However, Plaintiff Randazza is only required to demonstrate a probability of success on the merits on any one of its claims to be entitled to the requested relief.

1. <u>Plaintiff Randazza is likely to succeed on the merits of his claim under the ACPA.</u>

Plaintiff Randazza is likely to succeed on the merits of his claim under the ACPA. That Act provides, in pertinent part:

> [A] person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person –
>
> (i) has a **bad faith intent** to profit from that mark . . .; and
>
> (ii) registers, traffics in, or uses a domain name that –
>
> > (I) in the case of a mark that is **distinctive** at the time of the registration of the domain name, is **identical or confusingly similar** to that mark; [or]
> >
> > (II) in the case of a famous mark that is **famous** at the time of registration of the domain name, is **identical or confusingly similar** to that mark…

15 U.S.C. § 1125(d)(1)(A) (emphasis added). Thus, Defendants are liable under the ACPA if they had a bad faith intent to profit from registering, trafficking in, or using as a domain name a mark that is either identical or confusingly similar to a distinctive mark, such as Plaintiff's personal name.

Courts consider several factors in assessing whether a defendant has the requisite "bad faith intent" to profit from a mark, as defined by the ACPA, including but not limited to:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site assessable under the domain name that could harm the goodwill represented by the mark, either for commercial gain with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the site;
>
> (VI) the person's offer to transfer, sell or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain

      name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous. . . .

15 U.S.C. § 1125 (d)(1)(B). A court is **"not limited to considering just the listed factors** when making [its] determination of whether the statutory criterion has been met. The factors are, instead, expressly described as indicia that 'may' be considered along with other factors." *Sporty's Farm L.LC. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 498 (2d Cir. 2000) (emphasis added).

  In applying these factors, it is abundantly clear that Plaintiff Randazza will be capable of demonstrating Defendants' bad faith intent: (1) Defendants have no trademark rights to MARC RANDAZZA or in the Infringing Domain Names; (2) the Infringing Domain Names contain the legal name of Plaintiff, under which he also provides legal services; (3) Defendants have never been known by the name Marc Randazza; (4) Defendants made no use of Plaintiff's name prior to registering the Infringing Domain Names and, in fact, admitted to registering the domain names only to profit from their use through extortion or sale; (5) Defendants have not made any *bona fide* noncommercial or fair use of the Infringing Domain Names; (6) by use of the Infringing Domain Names, Defendants intend to attract Plaintiff's potential clients and profit from his reputation and name; (7) the mark contained in the Infringing Domain Names is identical or confusingly similar to Plaintiff's personal name, as discussed below; (8) Defendant Cox offered to sell one or more of the Infringing Domain Names to Plaintiff or a third party with the intent to profit off of that sale; and

(9) Defendant Cox has registered several of the Infringing Domain Names to Defendant Bernstein, despite the fact that Defendant Cox maintains the sites. Accordingly, at least eight of the nine factors of bad faith defined by the ACPA clearly weigh in favor of finding that Defendants had the requisite bad faith intent to profit from the registration of the Infringing Domain Names.

Mr. Randazza also satisfies the second element of his claim under the ACPA. The Infringing Domain Names are identical to Plaintiff's personal name. In fact, the Infringing Domain Names **contain the entirety of Plaintiff Marc Randazza's personal name**. Additionally, many of the Infringing Domain Names do not contain any unique word or phrase to indicate that they do not emanate from Plaintiff, but wholly incorporate Plaintiff's name. Thus, Plaintiff Randazza respectfully requests that this Court enter a temporary restraining order and preliminary injunction to protect Plaintiff's prior rights in his personal name based upon the probable success of Plaintiff's ACPA claim against Defendants.

2. <u>Plaintiff Randazza is likely to succeed on the merits of his Right of Publicity claims.</u>

Mr. Randazza is likely to succeed on the merits of his right of publicity claims. In relevant part, the Nevada right of publicity statute reads:

> "There is a right of publicity in the name, voice, signature, photograph or likeness of every person. The right endures for a term consisting of the life of the person and 50 years after his or her death, regardless of whether the person commercially exploits the right during his or her lifetime…
>
> … Any commercial use by another of the name, voice, signature, photograph or likeness of a person requires the written consent of that person or his or her successor in interest."

Nev. R. Stat. 597.790(1)-(2). The Ninth Circuit states that the common law right of publicity is actionable when a plaintiff alleges "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *White v. Samsung Electronics Am., Inc.*, 971 F.2d

1395, 1397 (9th Cir. 1992).  It is not important how the defendant misappropriates the plaintiff's name or identity; it matters only *whether* the plaintiff's identity was misappropriated. *Id.* at 1398.

In looking at the facts, it is clear Plaintiff has a valid actionable claim of right of publicity under both the Nevada statute and common law.  Defendants registered the Infringing Domain Names incorporating the use of the Plaintiff's personal name with the intent to profit from its commercial use.  Defendants attempted to profit from the use of Plaintiff's name through the use of 1) pay-per-click advertising and 2) the sale of the domains either to Plaintiff or a third party with an interest in Plaintiff's name.  Plaintiff did not give his consent for Defendants to register his personal name as a domain name, by writing or otherwise.  As a direct and proximate result of Defendants' use of his name, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to his business, reputation, and goodwill. Thus, Plaintiff Randazza respectfully requests that this Court enter a temporary restraining order and preliminary injunction to protect Plaintiff's publicity rights in his personal name based upon the probable success of Plaintiff's right of publicity claim against Defendants.

    3. <u>Plaintiffs are likely to succeed on the merits of his common law intrusion upon seclusion claim.</u>

Plaintiffs will likely succeed on the merits of a common law intrusion upon seclusion claim. In order to succeed on a claim for intrusion upon seclusion, a plaintiff in Nevada must show 1) an intentional intrusion (physical or otherwise); 2) on the solitude or seclusion of another; 3) that would be highly offensive to a reasonable person. *Kuhn v. Account Control Technology, Inc.*, 865 F.Supp. 1443, 1448 (D. Nev. 1994).  Specifically to the third element, what is highly offensive to a reasonable person is a matter of social conventions and expectations. *Id*. at 1449. The court considers other factors, such as "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id.*

The use of Mr. Randazza's name, identity, and likeness, as well as the use of the names of Jennifer Randazza and their three-year-old daughter Natalia Randazza, is highly offensive to a reasonable person. While Mr. Randazza has established his online identity, Defendants still may not use his name in an effort to intrude upon Mr. Randazza's privacy in an effort to attempt to harass and intimidate him. Furthermore, Plaintiff Jennifer Randazza and Plaintiff Natalia Randazza are private citizens who have a reasonable expectation that their names, photos, and personal information will not be displayed in a public forum without their consent.

The use of private citizen Plaintiff Jennifer Randazza's name and likeness, particularly in connection with the use of the word "slut," is highly offensive to a reasonable person. Plaintiff Jennifer Randazza did nothing to instigate Defendants' use of her name and likeness for their own purposes.

The use of three-year-old Plaintiff Natalia Randazza's name to harass his family is highly offensive to a reasonable person. Natalia Randazza is a toddler whose only reason for being the subject of Cox's ire is because she is Mr. Randazza's daughter. Plaintiff Natalia Randazza is an innocent child whose name should not be associated with Defendant's crusade to extort and harm Plaintiff's reputation and business.

As a result of Defendants' conduct, Plaintiff Randazza has suffered injury to his mental health and safety for him and his family. Thus Plaintiffs respectfully requests that this Court enter a temporary restraining order and preliminary injunction to protect Plaintiffs' privacy.

**C.    There are serious questions as to the merits of Plaintiffs' claims, and the hardships balance in Plaintiffs' favor.**

As discussed above, Plaintiffs have demonstrated irreparable injury and are thus also entitled to an injunction upon a showing that there are serious questions as to the merits of Plaintiffs' claims and that the hardships weigh in Plaintiffs' favor. *See A&M Records, Inc. v. Napster, Inc.* 239 F.3d 1004, 1013 (9th Cir. 2001) (citation omitted). The hardships balance

16
*Ex Parte* Motion for TRO

strongly in favor of Plaintiff. Issuance of the injunction would merely require Defendants to stop using Plaintiff's personal name. Defendants are permitted to register additional domain names, so long as they do not involve Plaintiff's personal name.

In contrast, if the injunction is not issued, Defendants will be capable of following through with their stated intentions to continue to register "hundreds" of domain names using Plaintiff Randazza's name "forever." Defendants will also be permitted to benefit commercially off of Plaintiffs' names, whether through advertising or through the sale of the Infringing Domain Names. Defendants will continue to be able to intrude on Plaintiffs' seclusion. Defendants cannot be permitted to continue to tarnish Plaintiffs' name.

Finally, issuance of the injunction will maintain the status quo. "[T]he status quo is the last uncontested status which preceded the pending controversy." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963), *cert. denied* 375 U.S. 821 (1963). An injunction would return the parties to the position that existed before Defendants began using Plaintiffs' personal names in association with their websites, before the extortion and witness intimidation began.

Therefore, Plaintiffs request injunctive relief that Defendants be enjoined from owning, registering, or operating any domains incorporating the "Randazza" name, whether they be direct domain registration or through the use of any blogging platform, and that such injunctive relief contemplate the Defendants using proxies, agents, or third parties to evade this relief, and specifically enjoins the Defendants from using third parties to do that which the injunction prevents them from doing directly.

**D.   This Court should only require nominal security.**

In the event that the Court requires a bond or other security to be posted by Plaintiffs, Mr. Randazza requests that the Court set an amount that is no greater than $100. Plaintiff Randazza is well-established in Nevada and is only asking that this Court provide him with control over the

1 | Infringing Domain Names during the pendency of this litigation. Defendants are not capable of
2 | showing any injury that would result from such an injunction.

3 | Dated: November 28th, 2012

Respectfully submitted,

Ronald D. Green, NV Bar #7360
Randazza Legal Group
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118
888-667-1113; 305-437-7662 fax
ecf@randazza.com