# EXHIBIT A



ARBITRATION
AND
MEDIATION CENTER

# ADMINISTRATIVE PANEL DECISION
Marc J. Randazza v. Reverend Crystal Cox, Eliot Bernstein
Case No. D2012-1525

## 1. The Parties

The Complainant is Marc J. Randazza of Las Vegas, Nevada, United States of America, represented by Randazza Legal Group, United States of America.

The Respondents are Reverend Crystal Cox (hereinafter "Respondent Cox") of Eureka, Montana, United States of America;  and Eliot Bernstein (hereinafter "Respondent Bernstein") of Boca Raton, Florida, United States of America.

## 2. The Domain Name and Registrar

The disputed domain names <marcjohnrandazza.com>, <marcjrandazza.com>, <marcrandazza.com>, <marcrandazza.biz>, <marcrandazza.info> and <marcrandazza.mobi> are all registered with GoDaddy.com, LLC. (the "Registrar").

## 3. Procedural History

A Complaint, concerning three of the disputed domain names, specifically <marcjohnrandazza.com>, <marcjrandazza.com> and <marcrandazza.com>, was filed with the WIPO Arbitration and Mediation Center (the "Center") on July 27, 2012.  On July 27, 2012, the Center transmitted by email to the Registrar a request for registrar verification in connection with those three disputed domain names.  On July 31, 2012, the Registrar transmitted by email to the Center its verification response confirming that the Respondents are listed as the registrants of those disputed domain names and providing the contact details.

The Center verified that the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified the Respondents of the Complaint, and the proceedings commenced on August 7, 2012.  In accordance with the Rules, paragraph 5(a), the due date for Response was August 27, 2012.  The Respondents did not submit any response.  Accordingly, the Center notified the Respondents' default on August 28, 2012.

On August 14, 2012, the Center further received supplemental filings from the Complainant.

The Center appointed Peter L. Michaelson as the sole panelist in this matter on September 7, 2012. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with paragraph 7 of the Rules.

On September 7, 2012, the Complainant filed a request with the Center to add three additional domain names to the proceeding, specifically <marcrandazza.biz>, <marcrandazza.info> and <marcrandazza.mobi>.

Through Administrative Panel Procedural Order No. 1 dated September 14, 2012 (hereinafter simply "Procedural Order"), the Panel, *inter alia*: (a) granted the Complainant's request to add the three additional domain names, and required the Complainant to file an amended Complaint pursuant to paragraph 3 of the Rules, within five days of receipt of the Procedural Order, and which provides any additional information regarding these additional domain names, (b) required the Center to obtain registrar verification of these additional domain names, and (c) following receipt of the verification response, provided the Respondents with a 20 day interval, pursuant to paragraph 5 of the Rules, to submit a supplemental response in relation to the newly added domain names. The Panel's decision would then be due within 14 days of the Center's receipt of the supplemental response.

On September 19, 2012, the Complainant filed an amended Complaint (as the amended Complaint appears to contain all the information set forth in the original Complaint, then, for simplicity, all further reference herein to the Complaint will be to the amended Complaint unless specifically stated to the contrary).
On September 20, 2012, the Center transmitted by email to the Registrar a request for registrar verification in connection with the additional domain names. On September 21, 2012, the Registrar transmitted by email to the Center its verification response confirming that Respondent Cox is listed as the registrant of the additional domain names and providing the contact details. On September 27, 2012, the Center forwarded the amended Complaint to the Respondents. Accordingly, under the Procedural Order, the Respondents' supplemental response was due on October 17, 2012. Subsequently, the Complainant filed a supplemental filing on October 11, 2012 with the Center.

Though the Respondents did not file a formal response as such, nevertheless over the ensuing days and ending on October 17, 2012, Respondent Cox filed with the Center a significant number of documents, including an explanation underlying her position. The Panel will treat all this material as the Supplemental Response.

As such, the due date for the Panel's decision was October 31, 2012. Due to extraordinary circumstances, specifically the significant devastation to the New Jersey coastal area (proximate to where the Panel is located) caused by Hurricane Sandy shortly before that date and the ensuing disruption to the Panel's normal activities resulting by the aftermath of the hurricane, the Panel has extended the deadline for its decision to the date indicated under its orders in paragraph 7 below.

### 4. Factual Background

According to extracts of the public WhoIs database appearing in Annex A to the Complaint, confirmed by the Registrar in its verification responses, the disputed domain names have the following registration and expiration dates: <marcrandazza.com> – December 10, 2011 and December 10, 2012; <marcjrandazza.com> – March 12, 2012 and March 12, 2013; <marcjohnrandazza.com> – March 12, 2012 and March 12, 2013; <marcrandazza.biz> – June 25, 2012 and June 24, 2013; <marcrandazza.info> – June 25, 2012 and June 25, 2013; and <marcrandazza.mobi> – June 25, 2012 and June 25, 2013.

A. The Complainant's RANDAZZA Marks

Though the Complainant has no trademark registration for a mark containing his full name MARC JOHN

RANDAZZA, his full name but with an abbreviated middle initial MARC J. RANDAZZA, his given name and surname MARC RANDAZZA or just his surname RANDAZZA (the "RANDAZZA Marks"), he is nonetheless asserting that he has acquired common law trademark rights since 2006 in his each of these marks in connection with both his and his law firm's rendering of legal services as well as for his own commentary and publishing.  The Complainant's law firm utilizes the tradename RANDAZZA LEGAL GROUP, of which the Complainant's surname is a prominent formative.

B. The Complainant and his activities

The Complainant's law firm, Randazza Legal Group, represents clients throughout the United States of America (US) on legal matters involving the First Amendment and related issues, and as a result has gained nationwide notoriety.

In 2008, the Randazza Legal Group incorporated as Marc J. Randazza PA ("MJRPA").  Since 2008, MJRPA has conducted business under the mark RANDAZZA LEGAL GROUP and Marc Randazza's personal name is used as source identifiers for the firm's services.  The firm's website, "www.randazza.com", incorporates the Complainant's surname (a copy of the home page of which appears in Annex AA to the Complaint).

In 2004, the Complainant's thesis garnered a measure of domestic notoriety resulting from its discussion of an issue during the 2004 US Presidential election.  Further, the Complainant was asked to debate on Fox News, and has since been a frequent commentator on television and in print.  The Complainant's blog, "The Legal Satyricon", upon which the Complainant publishes regularly under his byline, has had more than 2.5 million page views since 2006 with currently on the order of approximately 50,000 views per month.

In 2011 and as noted in an article provided in Annex EE to the Complaint, Xbiz World Magazine named the Complainant as one of the adult entertainment industry's Top 50 newsmakers and noted the Complainant's work on various high profile legal cases.

As evident in various articles appearing in Annex GG to the Complaint, the Complainant frequently appears as a legal commentator in several print media outlets including New York City Magazine, The New York Times, Boston Globe, and the Los Angeles Times.  The Complainant also appears on national television and radio programs, including Fox News, CNN and National Public Radio.  Furthermore, the Complainant has regularly spoken at various conferences across the US on panels concerning First Amendment and related intellectual property issues.

C. The Respondents and their activities

Respondent Cox captions herself as an investigative blogger and search engine reputation manager, in addition to being a real estate agent.

Five months after Respondent Cox registered the disputed domain name <marcrandazza.com>, she registered seven more domain names related to the Complainant:  five of which (also being the subject of the present dispute) incorporated the Complainant's name and a few of those also included a pejorative word, another one which contained the name of the Complainant's wife;  and the last containing the name of the Complainant's three-year old daughter.  These latter two domain names are not involved in the present proceeding.  The WhoIs records for these other domain names respectively appear in Annexes D, E and F to the Complaint.  Respondent Cox used these seven names to resolve to her websites containing numerous false blog news articles repeatedly containing the Complainant's name along with invective comments towards the Complainant and his wife.  Within each such article, the Respondent included links to her other commercial websites.  Respondent Cox's websites also included discussion of sexual activity.  Respondent Cox, upon learning, through the media, that one of the seven additional domain names included the name of the Complainant's three-year old daughter, then re-directed that particular domain name to resolve to a blank page.

Once the Complainant informed Respondent Cox of this UDRP dispute, she transferred the registration of

the disputed domain names listed in the original Complaint to Respondent Bernstein, who shortly thereafter transferred the domain name <marcrandazza.com> back to Respondent Cox.  The remaining domain names are still registered to Respondent Bernstein, and the additional domain names are all registered to Respondent Cox.  Respondent Bernstein acts on instructions provided by Respondent Cox and thus functions simply as a proxy for her.  As such, for simplicity, all references hereinafter to Respondent Cox will simply be the "Respondent", unless specific reference is made to Respondent Bernstein.

After the Complainant initiated the present dispute, the Respondent registered numerous other domain names (also not subject of the present dispute), that included the Complainant's personal and business names, including <marcrandazzaparody.com>, <randazzalegalgroupsucks.com>, and <exposemarcrandazza.com> - the WhoIs records for these latter domain names appears in Annex PP to the Complaint.  The Respondent also used these domain names to also resolve to her websites.

Currently, the disputed domain names resolve, on an intermittent basis, to the Respondent's websites that contain pay-per-click links to third-party websites and have advertisements keyed to the Complainant's line of business (as shown by hard-copy of the web pages in Annexes HH, II, and U to the Complaint), including to an attorney offering services competitive to those offered by the Complainant.

The Respondent then apparently configured her websites in a manner (so-called "Google bombing") that optimized their Google ranking, and hence elevated their position to locations near the top of a page of rank-ordered results of a Google search and hence enhanced their visibility and prominence to any Internet user who had just performed a Google search on the Complainant's personal name or the name of his law firm – a much higher position than would have otherwise occurred.

After the Complainant challenged her use of all the disputed domain names, the Respondent offered the Complainant her fee-based "reputation management" services through which the Respondent would "clean up" the Google search engine results regarding the Complainant and thereby improve the Complainant's on-line reputation, presumably by eliminating her commentary and ceasing further use of the disputed domain names.  Her general conduct in that regard, though aimed against others than the Complainant, is discussed in various news articles, a copy of which appear in Annexes M, N, O, and P to the Complaint.  Specifically, as reported in "When Truth Survives Free Speech", The New York Times, Business Day - Media and Advertising, September 11, 2011 (a copy of this article appears in Annex M to the Complaint), the author states:

> "... Ms. Cox, who calls herself an 'investigative blogger,' has a broad range of conspiratorial/journalistic interests.  She has written that Bruce Sewell, the general counsel of Apple, 'aids and abets criminals; that Jeffrey Bewkes, the chief executive of Time Warner is a 'proven technology thief';  and that various Proskauer Rose lawyers have engaged in a pattern of 'conspiracy'. ...
>
> Whenever she gets in a fight with someone, she frequently responds by creating a domain with the person's name, some allegation of corruption, or both.  .. In order to optimize visibility to Web Crawlers, she often uses the full name and title of her target, and her Websites are filled with links to her other sites to improve their search ranking.  She has some 500 URLs at her disposal and she's not afraid to use them.
>
>  ... She is now offering 'PR services and Search Engine Management Services starting at $ 2500 a month' to promote 'Law Firms' ... and 'to protect online reputations and promote businesses'."

### 5. Parties' Contentions

**A. Complainant**

(i) Identical or Confusingly Similar

The Complainant contends that each of the disputed domain names is identical to his personal name and confusingly similar to the name of his law firm because each such domain name either contains his personal name, in full or with his middle name either abbreviated as an initial or omitted, or his surname "Randazza" which also appears as a formative term, in his firm name.  The Complainant asserts that through both his and his law firm's continuous and extensive use of the term "Randazza" since at least 2006 in conjunction with the services of providing commentary, publishing and rendering legal services, he has acquired common law trademark rights in his personal name, including his surname, which provide him with the rights of trademark exclusivity necessary to invoke paragraph 4(a)(i) of the Policy.

Hence, the Complainant believes that it has satisfied the confusing similarity/identity requirement in paragraph 4(a)(i) of the Policy.

(ii) Rights or Legitimate Interests

The Complainant contends that, for various reasons, the Respondent has no rights or legitimate interests in any of the disputed domain names pursuant to paragraph 4(a)(ii) of the Policy.

First, as the Complainant asserts that the Respondent has no such rights or legitimate interests in each of the disputed domain names, the burden shifts to the Respondent to provide sufficient evidence of her rights or legitimate interests in each disputed domain name.  Since her registration and use of each of the disputed domain names is in bad faith, she is unable, based on that conduct, to establish any rights or legitimate interests in any of those disputed domain names.

Second, the Respondent has notice that each of these disputed domain names is confusingly similar to the Complainant's marks when she registered that domain name, thus precluding any rights or legitimate interests she might otherwise have in all the disputed domain names.

Third, the Respondent has not used any of the disputed domain names for a *bona fide* purpose.  In that regard, the Respondent used the domain name <marcrandazza.com> to resolve to a pay-per-click site and only having added, as a pretext, content to that site after the Complainant challenged her motives regarding the disputed domain names as well as the other domain names containing the names of the Complainant's wife and daughter.  After the Complainant confronted the Respondent about her use of the domain name <marcrandazza.com>, the Respondent registered the rest of the disputed domain names and established pre-textual "investigative" websites concerning the Complainant.  However, these sites were rife with advertisements keyed to and in some instances competitive with the Complainant's business.  This use was designed to camouflage the Respondent's illicit use of the disputed domain names as a vehicle through which she would profit through advertising revenue and also interfere with the Complainant's business.  After her pretextual use commenced, the Respondent registered domain names containing the names of the Complainant's family members as part of her scheme.  Such use does not yield any rights or legitimate interests in any of the disputed domain names.

Fourth, the Respondent is not known by any of the disputed domain names, as each is solely the name of the Complainant.  As such, the use of each of the disputed domain names causes "initial interest confusion" of Internet users by directing each user, who seeks the Complainant's website, to one of the Respondent's websites instead.  Consequently, that use does not qualify as legitimate parody, criticism or fair use.  In that regard, the Respondent has previously registered domain names that solely include her target's full names and uses link-bombing methods in an effort to increase the prominence of her search results on search engines.  The Respondent then offers to provide "reputation management" services to her target in return for a fee.  Such websites are not "criticism sites" but merely a pretext for the Respondent's bad faith extortionate use.

(iii) Registered and Used in Bad Faith

The Complainant contends that, for any of several reasons, the Respondent has registered and is using each of the disputed domain names in bad faith pursuant to paragraph 4(a)(iii) of the Policy.

First, the Respondent registered all the domain names to: (a) prevent the Complainant from using his personal name in a domain name and specifically admitted having done so for that reason, (b) profit from the Complainant's personal name, (c) harass the Complainant and his family, and (d) show other potential victims what happens when they do not succumb to her extortionate demands.  Here, the Respondent used the disputed domain names, which contained the Complainant's personal name, in an attempt to:
(a) "Google bomb" the Complainant through which she ensured that her websites, containing false statements about the Complainant, would appear near the top of a page of Google search results that occurred in response to an Internet user having performed a Google search on the Complainant's personal name or the name of his law firm;  and (b) generate click-through revenue through paid-per-click links, to third-party websites, appearing on her sites.  One of those links was associated with a third-party Las Vegas attorney who competed with the Complainant, thus affording the Respondent an opportunity to financially exploit the Complainant's reputation for her own benefit.

Second, the Respondent, by virtue of having registered multiple domain names that each contained the Complainant's personal name, intended to disrupt and interfere with the Complainant's business.

Third, the Respondent attempted to commercially benefit from registration of these names by offering "reputation management" services to the Complainant – through baiting the Complainant into an extortionate scheme.  Specifically, once the Complainant declined her "reputation management" services, the Respondent then registered domain names that contained not only the Complainant's surname, but also the personal names of his wife and three year old daughter, and then included falsehoods about the Complainant on her websites to which the domain names resolved.  The Respondent would then eliminate such sites, and hence the ensuing injury to the Complainant's reputation, only if the Complainant would purchase her "reputation management" services.  Further, the Respondent repeatedly engaged in the same general type of extortionate conduct by offering her "reputation management" services to others, including as her targets various business people and third-party attorneys, thus reflecting a pattern of such conduct.

Fourth, Respondent Cox exhibited bad faith in transferring ownership of some of the disputed domain names to Respondent Bernstein, who merely served as a proxy of the former, in an attempt to evade liability (via so-called "cyberflight") under the Policy.

**B. Respondent**

In what appears to be her explanation contained in an e-mail message dated September 27, 2012 from the Respondent to the Center (and among the multitude of documents that the Respondent filed in response to the amended Complaint and all of which the Panel views as the Supplemental Response), the Respondent states that she is dedicated to protecting her future clients and registered all the disputed domain names with that purpose in mind, to "preach the Truth about Marc Randazza, and to make fun of Marc Randazza's lack of knowledge of the Domain Name as he brags so strong to be an expert in, yet did not buy these domains himself".

She further stated in her explanation:

> "...Marc Randazza's attorney and big media friends harass, threaten me over buying a domain name. I bought MarcRandazza.info, MarcRandazza.biz, MarcRandazza.mobi, to fight back and tell my side.
>
> I never received ad revenue on MarcRandazza.info, MarcRandazza.biz, MarcRandazza.mobi. If Godaddy has that is nothing to do with me.  ..." .

**6. Discussion and Findings**

**A. Identical or Confusingly Similar**

Inasmuch as each of the Complainant's RANDAZZA Marks is unregistered, the Complainant predicates his case on his having acquired common law trademark rights by virtue of having continuously and widely used his marks in commerce and specifically, through himself and his law firm, in connection with providing commentary, publishing and rendering legal services.

In the United States, unregistered (common law) marks, once they have acquired sufficient distinctiveness through use in their associated product or service and geographic markets, can convey requisite exclusivity and there through legally enforceable trademark rights to their owners. It is now widely recognized that inasmuch as the Policy does not limit paragraph 4(a)(i) to just registered marks, trademark rights predicated on such common law marks will qualify. See, *e.g.*, *WHM L.L.C. v. Northpoint, Inc.,* WIPO Case No. D2005-1134. Specifically, the panel in *Brooklyn Institute of Arts and Sciences v. Fantastic Sites, Inc.*, NAF Claim No. 95560 held: "ICANN dispute resolution policy is broad in scope in that the reference to a trademark or service mark in which the complainant has rights means that ownership of a registered mark is not required, unregistered or common law trademark or service mark rights will suffice to support a domain name complaint under the policy". See, *e.g., True Blue Productions, Inc. v. Chris Hoffman*, WIPO Case No. D2004-0930; *AT&T Corp. v. Roman Abreu d/b/a Smartalk Wireless*, WIPO Case No. D2002-0605; *Peter Frampton v. Frampton Enterprises, Inc.*, WIPO Case No. D2002-0141; *America Online, Inc. v. John Deep d/b/a Buddy USA Inc.*, NAF Claim No. 96795; *Missing Children Minnesota v. Run Yell Tell, Ltd.*, NAF Claim No. 95825; *Mike Warner 2001 v. Mike Larson*, NAF Claim No. 95746; *CMG Worldwide, Inc. v. Naughtya Page*, NAF Claim No. 95641; *Home Properties v. SMSOnline*, NAF Claim No. 95639; *Bridal Rings Company v. Albert Yemenian/Albert Yemenian*, NAF Claim No. 95608 and *United States Postal Service v. Consumer Information Organization*, NAF Claim No. 95757.

Therefore, given that common law trademark rights suffice under the Policy, then, as a threshold matter, the analysis begins by assessing whether common law trademark rights actually existed in the RANDAZZA Marks as of, at least for simplicity, the earliest date on which the Respondent registered any of the disputed domain names. If the rights predate the earliest registration date, then the dates of any later registrations need not be considered.

The Respondent did not dispute any of the Complainant's activities in having used those marks since at least 2006 as extensively, continuously and in the manner he did in conjunction with providing commentary, publishing and rendering legal services. This date well predates December 10, 2011 on which the Respondent registered the first one of the disputed domain names, specifically <marcrandazza.com>.

The Respondent's seeming reliance on the *Joseph Leccese v. Crystal Cox*, WIPO Case No. D2011-0679 and *Allen Fagin v. Crystal Cox*, WIPO Case No. D2011-0678 cases, to challenge the Complainant's trademark rights in the formative term "Randazza" in the disputed domain names and thus disqualify the Complainant under paragraph 4(a)(i) of the Policy, is unavailing. The facts in both of these cases are markedly distinguishable from those of the present dispute. Specifically, in both cases, the complainants asserted that each had acquired common law trademark rights in his personal name, Joseph Leccese and Allen Fagin, such that the Policy would apply to the disputed domain names respectively <josephleccese.com> and <allenfagin.com>, also registered by the Respondent here, which contained the corresponding personal name. However, in each instance, the panel concluded that each complainant had no such rights in his own personal name for the simple reason that each furnished services (there being legal services), not under his own personal name, but rather solely under a totally different firm name, Proskauer Rose, which did not include his personal name. As such, each complainant was unable to show that his personal name had acquired any distinctiveness by itself as a source identifier and hence any common law trademark significance, thus negating the applicability of paragraph 4(a)(i). In the present dispute, the Complainant renders services under both his own personal name including his surname Randazza and the name of his law firm, Randazza Legal Group, specifically including, as its formative element, his surname. Hence, due to commonality of the surname in both instances, the Complainant has

established that he acquired common law trademark rights not only in his own personal name but also in the name of his law firm.

Given these findings, the analysis now focuses on whether each of the disputed domain names is either identical or confusingly similar to the Complainant's RANDAZZA Marks.

From a simple comparison of the each of the disputed domain names to the Complainant's marks RANDAZZA, MARC RANDAZZA, MARC J. RANDAZZA and MARC JOHN RANDAZZA, no doubt exists that each of the disputed domain names is identical to a corresponding one of the Complainant's RANDAZZA Marks.

In particular, four of the disputed domain names contain "marcrandazza" as the second level domain with the only difference between these names being that each name has a different appended generic Top-Level Domain (gTLD), here .com, .biz, .info, and .mobi. Each of the other two disputed domain names contains either "marcjrandazza" and "marcjohnrandazza" as its corresponding second level domain, with a common appended gTLD of .com. In each of these six instances, the gTLD suffix is irrelevant in assessing confusing similarity or identity under paragraph 4(a)(i) of the Policy and thus ignored. See, *e.g.*, *Kayak Software Corporation v. KAYAK.travel, KAYAK.travel Corporation, Kayak Las Vegas, LLC*, WIPO Case No. D2011-0425 and *Photo Tour Books, Inc. d/b/a PhotoSecrets v. Beate Chelette*, WIPO Case No. D2010-1373.

Hence, the Complainant has satisfied his burden under paragraph 4(a)(i) of the Policy.

**B. Rights or Legitimate Interests**

Based on the evidence of record here, the Panel finds that no basis exists which would appear to legitimize a claim by the Respondent to any of the disputed domain names under paragraph 4(c) of the Policy.

The Complainant has never authorized the Respondent to utilize any of the RANDAZZA Marks nor does the Complainant apparently have any relationship or association whatsoever with the Respondent. As such, any use to which the Respondent were to put any of the Complainant's RANDAZZA Marks or one confusingly similar thereto in connection with the identical or even similar services to those currently provided by the Complainant, in circumstances as are present here, may violate the exclusive trademark rights now residing with the Complainant. See, *e.g.*, *National Westminster Bank plc v. Steve Mart*, WIPO Case No. D2012-1711; *Amy Stran v. EzDomainSearch.com, Juan Curtis*, WIPO Case No. D2011-1710; *Tommy Bahama Group, Inc. v. Berno Group International*, WIPO Case No. D2012-0531; *Space Needle LLC v. Erik Olson*, WIPO Case No. D2011-0931; *Oakley, Inc. v. Kate Elsberry, Elsberry Castro*, WIPO Case No. D2009-1286; *Burberry Limited v. Domain Admin*, WIPO Case No. D2009-0703; *HRB Innovations Inc., Express Tax Service Inc. v. Calvin Brown*, WIPO Case No. D2008-1072; *Dreamworks Animation, LLC v. Creahq, Mike Furlong*, WIPO Case No. D2008-0505; *MySpace, Inc. v. Edwin De Jesus, EDJ Associates Inc.*, WIPO Case No. D2007-1878; *BlackRock, Inc. v. blackrockfinancialservices.com*, WIPO Case No. D2007-1627; *F. Hoffmann-La Roche AG v. Transliner Consultants*, WIPO Case No. D2007-1359; *National Football League v. Peter Blucher d/b/a BluTech Tickets*, WIPO Case No. D2007-1064; *Toilets.com, Inc. v. Rons Porta Johns*, WIPO Case No. D2007-0952; and *Associated Bank Corp. v. Texas International Property Associates*, WIPO Case No. D2007-0334. Also, see *Starline Publications, Inc. v. Unity*, WIPO Case No. D2008-1823; *GoDaddy.com, Inc., v. GoDaddysDomain.com, Clark Signs, Graham Clark*, WIPO Case No. D2007-0303; *Citgo Petroleum Corporation v. Richard Antinore*, WIPO Case No. D2006-1576; *New Destiny Internet Group, LLC and Xplor Media, Inc. v. SouthNetworks*, WIPO Case No. D2005-0884; *Pelmorex Communications Inc. v. weathernetwork*, WIPO Case No. D2004-0898; *Sybase, Inc. v. Analytical Systems*, WIPO Case No. D2004-0360; *Caesars World, Inc. and Park Place Entertainment Corporation v. Japan Nippon*, WIPO Case No. D2003-0615; *Leiner Health Services Corp. v. ESJ Nutritional Products*, NAF Claim No. 173362; *MPL Communications, Limited et al v. 1WebAddress.com*, NAF Claim No. 97092; *Treeforms, Inc. v. Cayne Industrial Sales, Corp.*, NAF Claim No. 95856; and *America Online, Inc. v. Xianfeng Fu*, WIPO Case No. D2000-1374. Consequently, in this Panel's view, the Respondent could not legitimately acquire any public association between herself and any of the RANDAZZA Marks or even any

mark similar thereto, at least for the services provided by the Complainant under his marks.

Further, there is absolutely no evidence of record that the Respondent has ever been commonly known by the disputed domain names or more generally any of the RANDAZZA Marks.  Nor could the Respondent likely ever become commonly known by any of the disputed domain names or any of the RANDAZZA Marks without infringing on the exclusive trademark rights of the Complainant.  This is so in light of the Complainant's exclusive trademark rights, having arisen under common law, which date back at least five years prior to the earliest date (December 10, 2011) when the Respondent first registered any of the disputed domain names, and the widespread reputation and notoriety which the Complainant has gained in his RANDAZZA Marks ever since – which the Respondent does not contest.  See, *e.g., National Westminster Bank, Tommy Bahama, Amy Stran*, *Space Needle, Oakley*, *Burberry, Starline Publications, HRB Innovations Inc., MySpace* and *Treeforms, Inc.*, all cited *supra*.

Hence, based on the evidence before the Panel, the Respondent does not fall within paragraph 4(c)(ii) of the Policy.  Moreover, the facts of record do not indicate that the Respondent's actions qualify under either paragraph 4(c)(i) or 4(c)(iii) of the Policy.

Furthermore, the Respondent's actions in registering and using the disputed domain names may appear, at a first glance, to simply be a vehicle through which she provides advertising through pay-per-click sites, but on slightly closer examination are actually components of an artifice intended to extort funds from the Complainant and thus a pretext for a rather egregious variant of cybersquatting.  As such, none of those actions can or will serve as a predicate upon which the Respondent can lawfully develop any rights or legitimate interests in any of the disputed domain names.

Accordingly, the Panel concludes that the Respondent has no rights or legitimate interests in any of the disputed domain names within paragraph 4(a)(ii) of the Policy.

**C. Registered and Used in Bad Faith**

The Panel finds that the Respondent's actions, with respect to each of the disputed domain names, constitute bad faith registration and use for purposes of the Policy.

The Panel infers from the Respondent's explanation that she may be claiming that her websites provide commentary critical of the Complainant and thus forms protected speech under the First Amendment to the US Constitution which may serve to legitimize her use of the disputed domain names.  However, the Respondent registered a multiplicity of other domain names that each contains the Complainant's surname coupled with a pejorative term and has not provided any evidence whatsoever, let alone persuasive, as to why any of those other domain names (none of which is in dispute here) would not provide a sufficient substitute vehicle for a website to voice her commentary.  Hence, the Panel flatly rejects any claim, which the Respondent may inferentially be making that her speech and hence her use of the disputed domain names somehow enjoys Constitutional protection, as utterly misguided.  See, *e.g.*, *322 West 57th Owner LLC v. Administrator, Domain*, WIPO Case No. D2008-0736 where the this Panel stated: "It is now rather well established in UDRP precedent that, at least in cases involving parties based in the US, a respondent's site that solely provides criticism, regardless of the severity or directness of that criticism, is protected under the First Amendment to the US Constitution as being an exercise of that respondent's right of free speech.  However, such protection is not absolute.  If the respondent engages in actions that evince bad faith, and particularly conduct that commercially exploits the name for the respondent's pecuniary benefit, thus indicating that the respondent's intentions were not aimed solely at providing critical comment, then any such protection which would otherwise arise is lost."  Such is clearly the case here.  The lack of any such Constitutional protection for the Respondent under the present facts is not surprising inasmuch as her conduct clearly evidences bad faith.

In any event, for purposes of the Policy the Panel finds the Respondent's intention, as reflected by the record, was never to solely provide, through her websites, speech critical of the Complainant.  Rather, her objective in both registering and using the disputed names was apparently to engage in a rather sinister and

tenacious scheme to extort money from the Complainant.  Specifically, the Respondent first posted negative and false commentary on her websites that was intentionally calculated to injure the Complainant's on-line reputation and disrupt the Complainant's business conducted through his law firm.  Thereafter, the Respondent used those sites in a manner that apparently optimized their ranking on the Google search engine in order to increase their visibility and prominence on search results yielded through a Google search of the Complainant, thus likely exacerbating the injury caused to the Complainant.  Once all this occurred, the Respondent then offered her reputational management services to the Complainant through which, for a considerable fee, she would remediate the Complainant's on-line reputation by eliminating all the negative and false commentary of her own making and presumably also ceasing her use of the disputed domain names.  Basically, for a price, she would undo the injury to the Complainant for which she was responsible for having created in the first place.  This egregious conduct clearly constitutes bad faith under the Policy.

Further, the Respondent, in registering multiple domain names which each incorporated the Complainant's personal name or surname – all of which are identical to corresponding ones of the Complainant's RANDAZZA Marks, certainly denied the Complainant the right to reflect any of those marks in a domain name and exhibited a pattern of conduct in doing so.

Lastly, the Respondent's websites, to which the disputed domain names resolved, contained pay-per-click (click-through) links to third-party websites, including that of a competitor of the Complainant.  Obviously, in doing so, the Respondent relied on the confusion she caused to Internet users who thought they were reaching the Complainant's website but in actuality were diverted to one of the Respondent's websites instead for her own pecuniary benefit in subsequently collecting click-through revenue as a result of some of those users interacting with those sites – revenue she would not have gained but for the diversion, and denying the Complainant legal business and his resulting revenue which he and his law firm may have otherwise received had those users not been so diverted.

Hence, the Panel concludes that the Respondent violated paragraph 4(a)(iii) of the Policy including both the general bad faith provision in paragraph 4(b) and also the specific exemplary bad faith conduct set forth in each of paragraphs 4(b)(ii), (iii) and (iv) thereof.

Thus, the Panel concludes that the Complainant has provided sufficient proof of his allegations, with respect to each of the disputed domain names, to establish a case under paragraph 4(a) of the Policy upon which the relief he now seeks can be granted.


### 7. Decision

Accordingly, under paragraphs 4(i) of the Policy and 15 of the Rules, the Panel grants the relief sought by the Complainant.  The disputed domain names <marcjohnrandazza.com>, <marcjrandazza.com>, <marcrandazza.com>, <marcrandazza.biz>, <marcrandazza.info> and <marcrandazza.mobi> are all ordered to be transferred to the Complainant.


**Peter L. Michaelson**
Sole Panelist
Dated:  November 30, 2012