Ronald D. Green, NV Bar #7360
Randazza Legal Group
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 fax
ecf@randazza.com

Attorney for Plaintiffs
MARC J. RANDAZZA, JENNIFER RANDAZZA, and NATALIA RANDAZZA

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MARC J. RANDAZZA, an individual, JENNIFER RANDAZZA, an individual, and NATALIA RANDAZZA, a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>CRYSTAL COX, an individual, and ELIOT BERNSTEIN, an individual,<br><br>Defendants. | Case No. 2:12-cv-02040<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION PRELIMINARY INJUNCTION** |

Plaintiffs Marc J. Randazza, Jennifer Randazza, and Natalia Randazza, a minor, through counsel, hereby submit this reply to in support of Ex Parte Motion for Temporary Restraining Order and Motion for Preliminary Injunction.

### I.     Nothing in Cox's Opposition Refutes the Plaintiffs' Claims

Nothing in Defendant Cox's Opposition refutes anything in the Motion. (ECF #8). If anything, the nature and content of the Opposition tends to support Plaintiffs' request.

### II.    While Cox is pro se, the Court should not be lenient with respect to Cox's conduct in this litigation.

While Defendant Crystal Cox is *pro se* in the above-captioned matter, she is an experienced litigant who has been involved in various disputes, both in United States District Courts and before

1

the World Intellectual Property Organization (WIPO). Ms. Cox successfully defended herself in four out of five UDRP complaints before WIPO.[1] Cox also represented herself through extensive litigation in *Obsidian Finance Group, LLC v. Cox* in the U.S. District Court for the District of Oregon, which included a motion for summary judgment and a jury trial concluding in a verdict. 40 Media L. Rep. 1084 (D. Ore. 2011).

Despite her seemingly astute knowledge of both substance and procedure, when things do not go her way, she typically blames a massive conspiracy against her that may involve the participation of myths and legends, organized crime, the judiciary, the pornography industry, and any number of other imagined enemies. For example, on Cox's website www.JudgeMarcoHernandez.com (which she registered after United States District Judge Marco Hernandez presided over Obsidian Finance Group's case against her), she accuses Judge Marco Hernandez of having a financial interest in concealing alleged "corruption" in another case, and conspiring with dozens of other attorneys to discredit her, endanger her, and prevent her from exposing this unspecified-yet-massive malfeasance. If Cox repeats the conduct she has demonstrated in her other legal proceedings, and as seen already in her opposition to Plaintiffs' *ex parte* motion for a temporary restraining order, this Court should be advised that Cox will likely try to make a circus of this proceeding.

For example, as she manipulates search engine protocols in order to artificially inflate search results for her websites and their contents, she also attempts to exploit the public platform of litigation as a shield in order to engage in bad faith conduct that might otherwise subject her to liability. Cox publicly stated that she prefers *pro se* status, as it gives her cover to enter statements into the court record that would otherwise have been defamatory, and which no licensed attorney would approve. She has publicly stated, and advised others, that the litigation privilege is a useful tool to use to shield otherwise defamatory statements:

---

[1] The UDRP dispute Cox unsuccessfully defended involved the two parties and five of the Infringing Domain Names in the instant suit, *Marc J. Randazza v. Reverend Crystal Cox, Eliot Bernstein*, WIPO Case No. D2012-1525.

> **I recommend that everyone go pro se** and lawyer up for the appeal, this way you get to introduce more elements into the case and others pick up the case and **whatever you right [sic] in your motions to the court is then under 'Absolute Privilege' as a matter of law and can't be considered defamation**.[2]

The Court should presume that Ms. Cox is not a *naif* in even sophisticated federal litigation and has previously broadcasted her true intentions about participating in the legal process.[3]

### III. Cox falsely claims that the TRO implicates her free speech rights

Defendant Cox claims in her Opposition that she registered the relevant domain names as a mere vehicle for her to express her opinions about Plaintiffs. As this Court's colleague found, Cox's online activities are far from what she claims they are:

> [T]he uncontroverted evidence at trial was that after receiving a demand to stop posting what plaintiffs believed to be false and defamatory material on several websites, including allegations that Padrick had committed tax fraud, defendant offered "PR," "search engine management," and online reputation repair services to Obsidian Finance, for a price of $2,500 per month. Ex. 33. The suggestion was that defendant offered to repair the very damage she caused for a small but tasteful monthly fee. This feature, along with the absence of other media features, led me to conclude that defendant was not media. *Obsidian Finance Group, LLC v. Cox*, Case No. 3:11-cv-57, 2012 WL 1065484 (D. Ore. Mar. 27, 2012)

While Cox's blog posts about Plaintiffs are completely defamatory, Plaintiffs have not brought a claim for defamation. Plaintiffs do not challenge, at this time, Cox's continued ranting, not where it accuses one of Plaintiffs of being involved in organized crime, nor where it makes

---

[2] Curtis Cartier, *Comment of the Day: Why 'Non-Journalist' Blogger Crystal Cox Didn't Get a Lawyer*, Seattle Weekly (Dec. 7, 2011), http://blogs.seattleweekly.com/dailyweekly/2011/12/comment_of_the_day_why_non-jou.php (*last accessed* Dec. 12, 2012) (emphasis added)

[3] Under Nevada law, though, Cox's articulation of this privilege is erroneous. *Clark County Sch. Dist. v. Virtual Educ. Software Inc.*, 125 Nev. 374, 383, 213 P.3d 496, 503 (Nev. 2009) (applying litigation privilege only where a 1) judicial proceeding is contemplated in good faith and under serious consideration, and 2) the communication is related to the litigation); *Fink v. Oshins*, 118 Nev. 428, 433, 49 P.3d 640, 644 (Nev. 2002) (requiring protected statements to be pertinent to the controversy, and made either during litigation or in anticipation of litigation "contemplated in good faith and under serious consideration").

offensive sexual references to another; Plaintiffs only challenge the <u>where</u> and <u>how</u> this ranting occurs.

Cox has no fewer than thirty-two blogs, which lie outside the TRO request. All of them are simply another front for her harassment and extortion campaigns against anyone she turns her attention to. While her targets frequently include members of the bar and the judiciary, she seems to place no limitations on who she wishes to target. When Plaintiff Marc Randazza expressed distaste for her efforts to extract money from him (Exh A), Cox seemingly became obsessed with Plaintiff Randazza, and his family, including his wife, Plaintiff Jennifer Randazza, and their then-three-year-old daughter, Plaintiff Natalia Randazza.

As an example of Ms. Cox's obsessive conduct, the Court should examine Exhibit B, which is Defendant's eponymous blog, found at <crystalcox.com>. Cox has placed 49 buttons on the site, all of which contain Plaintiff Randazza's name. Id. The underlying source code for the site is attached as Exhibit C. Viewing this, the Court can see a small piece of the Cox scheme – linking Plaintiff Randazza's name to any number of other sites, all controlled by Cox, and those sites all link to each other as well. This is what is known as "link spamming" or "Googlebombing." With one site linked to another, to another, and so on, it manipulates search engine algorithms into believing that each site is linked to by dozens of other sites, and is therefore "more important." In reality, almost nobody independently links to any of Cox's sites. She further ensures higher rankings for searches for individuals by using domain names with the individuals' names in them. This is egregious bad faith conduct.

If Cox wishes to continue with her defamatory remarks about the Plaintiffs, nothing in the TRO implicates her ability to continue repeating those statements on <crystalcox.com>, or any other of her thirty-two blogs that do not contain "Randazza" as part of the URL.

Because none of her additional sites contain Plaintiffs' names, trademarks, or surname, they are not the subject of this litigation. If Cox wishes to continue making her bizarre allegations that Randazza is a member of the Mafia, blows up peoples' cars, and engaged in an assassination plot against her, such conduct is (for the most part) irrelevant to the requested relief. The requested relief is narrowly focused on domain names that Cox had no right to register, use, or traffic in and the need for an injunction to cease her incessant harassment scheme.

Far from being the innocent victim of censorship, Cox is clearly and demonstrably engaged in nothing short of unlawful harassment. Exhibit D is a YouTube video (and transcript thereof), in which Cox **admits** that one of the purposes of her campaign against Plaintiffs is to stop Mr. Randazza from testifying in a federal case, in violation of 18 U.S.C. § 1512(d)(1).[4] In the video, Defendant Cox states that she purchased registrations for all of the domain names, including the names of Plaintiff Marc Randazza's wife and daughter, in order to prevent him from giving a deposition in a federal case:

> I got all these domain names, including his wife and his daughter, and I never publicized the daughter one, in order to saturate the search with my story as fast as I could. And guess what? It worked. He didn't give that deposition on March 23. He backed down in coming for me because of what I did. And part of that was all of these names. (**Exhibit D)**.

When we compare this admission to the elements of 18 U.S.C. § 1512(d)(1), we can see that her conduct is clearly illegal in nature. "*Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from attending or testifying in an official proceeding; or attempts to do so, shall be fined under this title or imprisoned not more than 3 years, or both.*" Id.

---

[4] http://www.youtube.com/watch?v=8-XynITpBNs, (last visited December 11, 2012). Cox discusses her plan to prevent Plaintiff from testifying from 10:20-12:20 on the video. A copy of the video is also marked as Exh. D.

Defendant Cox admittedly did not register any of the Infringing Domain Names in order to express her legitimate opinions about Plaintiffs, but rather uses the sites in order to try to hold Plaintiffs hostage to force them into purchasing her "reputation management services" for a monthly fee and to further other bad-faith purposes (i.e. witness intimidation in a federal case). See *Obsidian Fin. Group, LLC v. Cox*, 2012 WL 1065484, *7 (D. Or. Mar. 27, 2012) ("[D]efendant [Cox] offered 'PR,' 'search engine management,' and online reputation repair services to Obsidian Finance, for a price of $2,500 per month … The suggestion was that defendant offered to repair the very damage she caused for a small but tasteful monthly fee"); *see also Marc J. Randazza v. Reverend Crystal Cox, Eliot Bernstein*, WIPO Case No. D2012-1525 ("[T]he Respondent attempted to commercially benefit from registration of these names by offering 'reputation management' services to the Complainant – through baiting the Complainant into an extortionate scheme."); *see also* Exh. A).

**IV.  If the injunction is entered, not one word that Cox has to say will be suppressed**

In her opposition, Cox fails to mention that she has countless of other websites, and on those other websites, she has re-posted every single bit of defamatory content found on the Randazza domain names, again and again.  Not a single word or sentence will be suppressed in the event the TRO is entered.

Cox's other non-infringing domain names do not contain Plaintiffs' personal names, and Plaintiff is not challenging her right to the registration of those sites.  A sample of some of these websites is attached as Exhibit E.  Despite the fact that these domain names do not contain Plaintiff's name, nor do the domains even suggest that the content may refer to Plaintiff, Defendant Cox uses them, bizarrely, to post about Plaintiff and post links to her other blogs about him.  If the "marketplace of ideas" analogy is persuasive, then Cox will still have just as much of a stall in that marketplace after the injunction is entered.

## V. The WIPO Arbitration has done this Court a service

The World Intellectual Property Organization decision submitted with ECF #6 offers an analysis of the issues involved in this motion. The panel detailed the steps of Defendant Cox's scheme to injure Plaintiff's online reputation and disrupt the business he conducts through his law firm, labeling the conduct as "**egregious … bad faith**." The panel confirmed Plaintiff's claims that Defendant's behavior was extortionate under the guise of expressing legitimate criticism about Plaintiff, after reviewing hundreds of pages of evidence, much of which was submitted by Defendant Cox.

In her Opposition, Defendant Cox does not dispute any of the findings of the WIPO panel that were addressed in the Supplemental briefing, but states instead that she plans to file a legal action in Switzerland against the panelist who issued the decision, Peter L. Michaelson. (ECF #8) This is par for the course for Ms. Cox, who targeted the Hon. Marco Hernandez, a judge in the U.S. District Court for the District of Oregon, after he found in favor of the plaintiff in *Obsidian Finance, LLC v. Cox*. (Exhibit F). Defendant Cox does not address any of these arguments, but responds instead with legal threats and defamatory accusations against those who oppose her.

## VI. Conclusion

The Plaintiff sought a TRO. Defendant Cox voluntarily entered the case, acknowledged the Motion, and offered an Opposition. Nothing in that Opposition should dissuade the Court from entering the requested Order. If anything, the Opposition should help demonstrate the necessity and propriety of the requested Order.

/ /

/ /

1  If Defendants are not enjoined, Plaintiffs will continue to suffer irreparable damage to their
2  personal names and business.  Plaintiffs respectfully request that the Court grant their application
3  for a TRO at the earliest possible opportunity.

4  Dated: December 12, 2012			Respectfully submitted,

5						/s/ Ronald D. Green
6						Ronald D. Green, NV Bar #7360
						Randazza Legal Group
7						6525 W. Warm Springs Road, Suite 100
						Las Vegas, NV 89118
8						888-667-1113; 305-437-7662 fax
						ecf@randazza.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed using this Court's CM/ECF system on December 12, 2012. A copy of these documents has also been emailed to crystal@crystalcox.com and savvybroker@yahoo.com. This service is in compliance with Defendant Crystal Cox's request, ECF #9.

Dated: December 12, 2012

Respectfully Submitted,

Laura M. Tucker
Law Clerk
ecf@randazza.com
Randazza Legal Group
6525 W. Warm Springs Rd., Suite 100
Las Vegas, NV 89118
(888) 667-1113
(305) 437-7662 fax