**RANDAZZA LEGAL GROUP**

MARC J. RANDAZZA
Licensed to practice in
Massachusetts
California
Nevada
Arizona
Florida

RONALD D. GREEN
Licensed to practice in
Nevada

JASON A. FISCHER
Licensed to practice in
Florida
California
U.S. Patent Office

J. MALCOLM DEVOY
Licensed to practice in
Wisconsin
Nevada

BETH A. HUTCHENS
Licensed to practice in
Arizona
U.S. Patent Office

ALEX COSTOPOLOUS
Licensed to practice in
Florida

Correspondence from:
Ronald D. Green, Esq.
rdg@randazza.com

**Reply to Las Vegas Office
via Email or Fax**

December 17, 2012

<u>Via Email</u>
crystal@crystalcox.com, savvybroker@yahoo.com

Crystal L. Cox
PO Box 2027
Port Townsend, WA 98368

      Re: *Randazza et al. v. Cox et al.*  (Case No. 2:12-cv-02040-GMN-PAL)

Dear Ms. Cox:

As you are aware, I am counsel for Marc Randazza, Jennifer Randazza, and Natalia Randazza in the matter entitled *Randazza et al. v. Cox et al.* (Case No. 2:12-cv-02040-GMN-PAL) in the United States District Court for District of Nevada.  On December 14, 2012, the Court issued a Temporary Restraining Order in that case.  In part, that Order commanded that you "take all necessary action to transfer the Domain Names [referenced in the Order] to Plaintiffs."

A copy of the Court's Temporary Restraining Order is attached hereto for your convenience.  In accordance with the Temporary Restraining Order, please ensure that all of the domain names referenced in it are transferred to Mr. Randazza immediately, including the <blogspot.com> sub-domains.

Thank you for your time and attention to this matter.

                Best regards,

                Ronald D. Green

Encl. – Docket Number 14, ORDER Granting Motion for Temporary Restraining Order

www.randazza.com

**Las Vegas**
6525 W. Warm Springs Rd
Suite 100
Las Vegas, NV 89118
Tel: 888.667.1113
Fax: 305.437.7662

**Miami**
2 S. Biscayne Boulevard
Suite 2600
Miami, FL 33131
Tel: 888.667.1113
Fax: 305.397.2772

**Phoenix**
Two Renaissance Square
40 North Central
Suite 1400
Phoenix, AZ 85004
Tel: 888.667.1113
Fax: 305.437.7662

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARC J. RANDAZZA, an individual, <br> JENNIFER RANDAZZA, an individual, and <br> NATALIA RANDAZZA, a minor, <br><br> Plaintiffs, <br> vs. <br><br> CRYSTAL COX, an individual, and ELIOT BERNSTEIN, an individual, <br><br> Defendants. | Case No.: 2:12-cv-02040-GMN-PAL <br><br> **ORDER** |

Pending before the Court is the *Ex Parte* Motion for Temporary Restraining Order and Motion for Preliminary Injunction (ECF No. 2) filed by Plaintiffs Marc J. Randazza ("Randazza"), Jennifer Randazza ("Jennifer Randazza"), and Natalia Randazza ("Natalia Randazza") (collectively, "Plaintiffs").

## I. BACKGROUND

This case arises from the registration of thirty-two internet domain names (collectively, "Domain Names") that incorporate Plaintiffs' first names, last names, or both. Plaintiff Randazza is an attorney who serves as the owner and managing partner of Marc J. Randazza PA, d/b/a Randazza Legal Group, a law firm that focuses its practice on First Amendment and Intellectual Property issues. (*See id*. at Ex. 4.) In addition, Plaintiff Randazza provides legal commentary that has been published by a variety of media organizations. (*See id*. at Ex. 3, 5; Randazza Decl. ¶ 5.) Plaintiff Jennifer Randazza is the wife of Plaintiff Marc Randazza. Plaintiff Natalia Randazza is their three-year old daughter.

The Domain Names at issue in this case were registered by Defendant Crystal Cox ("Cox"), some of which were listed under proxy, Defendant Eliot Bernstein ("Bernstein") (collectively, "Defendants").[1] Defendants allegedly registered the Domain Names at issue in this case through registrar Godaddy.com between December 10, 2011 and September 20, 2012:

1. <marcrandazza.com>
2. <marcrandazza.me>
3. <marcjrandazza.com>
4. <fuckmarcrandazza.com>
5. <marcjohnrandazza.com>
6. <marcrandazzasucks.com>
7. <marcrandazzaisalyingasshole.com>
8. <marcrandazza.biz>
9. <marcrandazza.info>
10. <marcrandazza.mobi>
11. <marcrandazzaparody.com>
12. <exposemarcrandazza.com>
13. <randazzalegalgroupsucks.com>
14. <trollmarcrandazza.com>
15. <hypocritemarcrandazza.com>
16. <crystalcoxmarcrandazza.com>
17. <marcjohnrandazza.blogspot.com>
18. <randazzalegalgroup.blogspot.com>
19. <marcrandazzaviolatedmylegalrights.blogspot.com>
20. <markrandazza.blogspot.com>
21. <marcrandazza.blogspot.com>
22. <jenniferrandazza.blogspot.com>
23. <marcrandazzafreespeech.blogspot.com>
24. <marcrandazzaegomaniac.blogspot.com>
25. <marcjrandazza-lawyer.blogspot.com>
26. <marc-randazza.blogspot.com>
27. <marcrandazzawomensrights.blogspot.com>
28. <marcrandazza-asshole.blogspot.com>
29. <marcrandazzatips.blogspot.com>
30. <marcrandazzaabovethelaw.blogspot.com>
31. <marcrandazzaliedaboutcrystalcox.blogspot.com>
32. <janellerandazza.blogspot.com>;

---

[1] Because Cox registered some of the Domain Names through Bernstein, as a proxy (*see* Pls.' Mot. for TRO, Ex. 7, ECF No. 2-9.), Plaintiffs' allege that Bernstein "is a knowing and voluntary participant in Cox's enterprise." (Pls.' Mot. for TRO 7:24-8:1, ECF No. 2.)

(*See* Pls.' Mot. for TRO 1:25-2:28, Ex. 7, ECF No. 2; Tucker Decl., ECF No. 2-2.) For example, according to the publicly available Whois database, <marcrandazza.com> was registered to Cox on December 10, 2011. (*See id.* at Ex. 7.)

On January 16, 2012, after Cox registered the Domain Names, she sent an email to Randazza in which she informed him that she had purchased his personal name as a domain name. (*See id.* at Ex. 8.) In that same email, she informed Randazza of her "need to make money." (*Id.*) Additionally, she mentioned her "reputation management services" and inquired whether Randazza or any of his contacts would be interested in purchasing these services. (*Id.*) Currently, these websites either serve as a platform for Cox's "investigative blogging" or serve as GoDaddy "domain parking," which displays a variety of pay-per-click advertisements. (*Id.* at Ex. 11.) In response, Randazza informed Cox that she had "no right to register a domain name that corresponds to [Randazza's] real name. (*Id.*) Randazza also requested that Cox transfer the rights to <marcrandazza.com> to Randazza. (*Id.*) Ultimately, Cox advertised on her blog that the Domain Name <marcrandazza.me> was for sale for $5 million. (*See id.* at Ex. 13.)

In response to Defendants actions and subsequent refusals to cease operating the Domain Names, Plaintiffs filed a complaint in this Court alleging six causes of action: (1) Violation of Individual Cyberpiracy Protections under 15 U.S.C. § 8131; (2) Cybersquatting under 15 U.S.C. § 1125(d); (3) Right of Publicity under Nevada Revised Statute 597.810; (4) Common Law Right of Publicity; (5) Common Law Right of Intrusion Upon Seclusion; and (6) Civil Conspiracy. Plaintiffs also filed the instant motion pursuant to Rule 65 of the Federal Rules of Civil Procedure for an order temporarily restraining Defendants from using the Domain Names. For the reasons discussed below, Plaintiffs' *Ex Parte* Motion for Temporary Restraining Order (ECF No. 2) is GRANTED.

## II. LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure governs preliminary injunctions and temporary restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). However, "[t]he urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, *Federal Practice and Procedure, Civil*, § 2949 at 471 (1973)). Thus, "[t]he trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Id*.

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001). Specifically, a preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, the Ninth Circuit has held that district courts may issue an injunction if the first two elements are met and there are "serious questions going to the merits" and there is "a hardship balance that tips sharply toward the plaintiff." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

"Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22. Above all, a temporary

restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

## III. DISCUSSION

For the reasons discussed below, the Court concludes that Plaintiffs have established each of the four elements of the TRO analysis. Accordingly, the Court finds that Plaintiffs are entitled to an *ex parte* temporary restraining order that directs the domain name registrar to transfer the Domain Names to Plaintiffs.

### A. Likelihood of Success on the Merits

Before Plaintiffs are entitled to a TRO, they must first establish that they will likely succeed on the merits of a claim that would entitle the plaintiffs to the equitable remedy sought. *See Winter*, 555 U.S. at 20. Plaintiffs' complaint alleges six causes of action. (Compl., ECF No. 1.) Because the Court finds that Plaintiffs have carried their burden on their Violation of Individual Cyberpiracy Protections claim under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 8131, the Court need not address whether Plaintiffs are likely to succeed on the merits of the remaining claims.

Plaintiffs' first cause of action alleges that Defendants' registration of the Domain Names violates the provision of the ACPA that provides cyberpiracy protection for individuals. *See* 15 U.S.C. § 8131. Specifically, section 8131 provides that:

> [a]ny person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person.

15 U.S.C. § 8131(1)(A). The statute further provides a very limited exception that requires, among other things, that the person registering the domain name act in good faith:

> A person who in good faith registers a domain name consisting of the name of another living person, or a name substantially and confusingly similar thereto, shall not be liable under this paragraph if such name is used in, affiliated with, or related to a work of authorship protected under Title 17, including a work made for hire as defined in section 101 of Title 17, and if the person registering the domain name is the copyright owner or licensee of the work, the person intends to sell the domain name in conjunction with the lawful exploitation of the work, and such registration is not prohibited by a contract between the registrant and the named person. The exception under this subparagraph shall apply only to a civil action brought under paragraph (1) and shall in no manner limit the protections afforded under the Trademark Act of 1946 (15 U.S.C. 1051 et seq.) or other provision of Federal or State law.

15 U.S.C. § 8131(1)(B). Finally, the statute empowers the court to "award injunctive relief, including the forfeiture or cancellation of the domain name or the transfer of the domain name to the plaintiff." 15 U.S.C. § 8131(2).

Thus, to prove that Defendants have violated this statute, Plaintiffs must establish that Defendants (1) registered a domain name that consists of the name of one of the Plaintiffs; (2) did so without that person's consent; and (3) had the specific intent to profit from Plaintiffs' names by selling the domain name for financial gain. Once Plaintiffs establish these elements, Defendants may attempt to defeat liability by establishing the good faith exception. For the reasons discussed below, the Court concludes that Plaintiffs have shown that they will likely succeed in establishing each of the three elements of the personal cyberpiracy protection claim and also that Defendants will be unlikely to establish the good faith exception.[2] Thus, Plaintiffs have shown the requisite likelihood of success on the merits.

---

[2] First, the Court doubts that Defendants have acted with the requisite "good faith." However, even if Defendants have acted in good faith, and assuming that the domain names were related to works of authorship protected by the copyright laws, there is no suggestion that the offers to sell the domain for $5 million were "in conjunction with the lawful exploitation of the work." Rather, Defendants have offered to sell only the domain name; there is no work of authorship offered for sale in conjunction with the offer to sell the domain name.

> 1. *Defendants registered numerous domain names that include one or more of Plaintiffs' names.*

Plaintiffs provided the "Whois Record" for several of the Domain Names. (*See* Pls.' Mot. for TRO, Ex. 7, ECF No. 2-9.) This record lists Cox and/or Bernstein as the registrant of several domain names that incorporate Plaintiffs' names. (*Id*.) For example, either Cox or Bernstein is listed as the registrant of <marcjrandazza.com.com>, <marcrandazza.biz>, <marcrandazza.com>, and <marcrandazza.info>. (*Id*.) Thus, Plaintiffs have established that Defendants have "register[ed] a domain name that consists of the name of another living person . . .." *See* 15 U.S.C. § 8131(1)(A).

> 2. *Defendants likely registered the Domain Names without Plaintiffs' consent*.

The second element of this claim requires that Plaintiffs establish that Defendants registered the Domain Names without Plaintiffs' consent. Plaintiffs have a high likelihood of succeeding on this element at trial. Specifically, Defendants use several of these websites to publish unflattering articles about Plaintiff Randazza's business and personal lives. (*See* Pls.' Mot. for TRO, Exs. 11-15.) Furthermore, the provided email exchanges further indicate that Plaintiffs did not consent to Defendants' registration of these Domain Names. (*See* Pls.' Mot. for TRO, Exs. 8, 10.) Given this evidence, the Court finds no indication that Plaintiffs' ever consented to Defendants' registration of the Domain Names. Accordingly, the Court finds that Plaintiffs have established that they will likely succeed in proving that Defendants registered the Domain Names without Plaintiffs' consent.

> 3. *Defendants likely had the specific intent to profit from Plaintiffs' names by selling the domain name for financial gain*.

The final element of this claim requires that Plaintiffs establish that Defendants had the "specific intent to profit from such name by selling the domain name for financial gain." 15 U.S.C. § 8131(1)(A). Although the Ninth Circuit has not yet interpreted this statute, the case

law in existence persuades the Court that Plaintiffs will also likely succeed in establishing this final element of their section 8131 claim. *See Bogoni v. Gomez*, 847 F. Supp. 2d 519, 523-25 (S.D.N.Y. 2012) (summarizing existing case law on the private cyberpiracy statute, 15 U.S.C. § 8131). For example, in a case from the Middle District of Florida, *Salle v. Meadows*, the defendant argued that he lacked the specific intent to profit by selling the domain name because his only intent in registering the relevant domain name was to recover a debt owed by plaintiff. No. 6:07-cv-1089-Orl-31DAB, 2007 WL 4463920, at *2 (M.D. Fla. Dec. 17, 2007). Despite this argument, the court determined that the plaintiff was entitled to summary judgment on his private cyberpiracy claim because "cyber-extortion is not a permissible way to recover a debt." *Id.* Similarly, in a recent case from the Southern District of New York, *Bogoni v. Gomez*, that court found the requisite specific intent to profit by selling the domain names because the defendant offered to sell the domain names for $1,000,000 each. 847 F. Supp. 2d at 524-25. In reaching this conclusion, the court relied on the fact that the defendant "offered the sites for sale at a price exorbitantly beyond the Domain Names' actual value to anyone other than the plaintiff." *Id.* at 525.

In this case, Defendants have embarked on a campaign of cyber-extortion. Specifically, Cox sent an e-mail to Plaintiff Randazza that informed him that she had purchased <marcrandazza.com> and, in that same email, informed him of her "need to make money." (Pls.' Mot. for TRO, Ex. 8, ECF No. 2-10.) Additionally, Cox currently uses several of the Domain Names to operate websites where she publishes "articles" with the apparent intent to tarnish Plaintiff Radazza's online reputation. (*See e.g., id.* at Ex. 11, ECF No. 2-13.) Moreover, Cox has actually offered to sell at least one of the Domain Names, <marcrandazza.me>, for $5 million. (Pls.' Mot. for TRO, Ex. 13, ECF No. 2-15.) Similar to the price that the defendant in *Bogoni* advertised, this price is drastically beyond the actual value of <marcrandazza.me> to

anyone other than Plaintiff Randazza.  Thus, for these reasons, the Court finds that Plaintiffs will likely succeed in establishing that Defendants had the requisite specific intent to profit.

### B. Likelihood of Irreparable Harm in the Absence of Temporary Relief

Once a plaintiff in a trademark action has established that it is likely to succeed on the merits, irreparable injury is generally presumed.[3] *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007); *see also Verizon Cal. Inc. v. Navigation Catalyst Sys, Inc.*, 568 F. Supp. 2d 1088, 1094 (N.D. Cal. 2008) (recognizing that this presumption applies in causes of action under the ACPA).  Because the Court finds a high likelihood that Plaintiffs will succeed on the merits, the Court also finds that Plaintiffs have carried their burden in establishing that they will likely suffer irreparable harm in the absence of temporary relief.

### C. The Balance of Equities Tips in Plaintiff's Favor

The balancing aspect of the TRO analysis requires courts to weigh "the competing claims of injury and [] consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987).  In this case, Defendants will suffer only minimal harm as a result of the TRO.  Although the issuance of a TRO will require Defendants to cease using Plaintiffs' personal names, Defendants will remain free to register additional domain names that do not incorporate Plaintiffs' names.  Additionally, many of the Domain Names currently serve as Domain "park pages" that contain only a variety of pay-per-click advertisements. (*See, e.g.*, Pls.' Mot. for TRO, Ex.11 at 18, ECF No. 2-13.)  Thus, it appears that very little of Defendants' content would actually become inaccessible, upon the issuance of the requested TRO.  On the other hand, if the TRO were not issued, Plaintiff would suffer significant injury.  Without the TRO, Defendants could relocate the Domain Names beyond the jurisdictional reach of this Court in

---

[3] Even without this presumption, the Court finds that Defendants' continued cyber-extortion would irreparably injure Plaintiffs' online reputations.

Page 9 of 12

1  order to continue their alleged activities.  In this way, Defendants could continue to tarnish

2  Plaintiffs' names in an attempt to force Plaintiffs to purchase the Domain Names.

3        Finally, consistent with the underlying purpose of TROs, issuance of this TRO will

4  maintain the status quo.  "[T]he status quo is the last uncontested status which preceded the

5  pending controversy." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir.

6  1963).  Pursuant to 15 U.S.C. § 8131(2), "a court may award injunctive relief, including the

7  forfeiture or cancellation of the domain name or the transfer of the domain name to the

8  plaintiff."  By returning the allegedly infringing domain names to the Registrar, and allowing

9  Plaintiffs to control the Domain Names during the pendency of this litigation, this injunctive

10 relief will return the parties to the respective positions that they held before Defendants began

11 using the Domain Names.  For these reasons, the Court finds that the balance of equities tips in

12 favor of Plaintiffs.

13       **D.**    **The issuance of a TRO benefits the public's interest.**

14       "The public interest analysis for the issuance of [injunctive relief] requires [district

15 courts] to consider whether there exists some critical public interest that would be injured by

16 the grant of preliminary relief." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138

17 (9th Cir. 2011) (citation omitted). In this case, the Court finds no such public interest that

18 would be injured by the issuance of such injunctive relief.

19 **IV.**    **CONCLUSION**

20       **IT IS HEREBY ORDERED** that the *Ex Parte* Motion for Temporary Restraining

21 Order (ECF No. 2) filed by Plaintiffs Marc J. Randazza, Jennifer Randazza, and Natalia

22 Randazza is **GRANTED**.  Defendants, including without limitation, all of its respective

23 partners, officers, agents, servants, employees, and all other persons acting in concert or

24 participation with Defendants, are temporarily enjoined and restrained from (A) registering or

25 trafficking in any domain name containing any of Plaintiffs' names or any confusingly similar

variations thereof, alone or in combination with any other letters, words, phrases or designs; (B) operating or maintaining any website that includes any of Plaintiffs' names, or any confusingly similar variations thereof, alone or in combination with any letters, words, phrases or designs; and (C) using any of Plaintiffs' names, or any confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases or designs in commerce (including, but not limited to, on any website or within any hidden text or metatags within any website). Defendant shall immediately cease and desist any and all use of Plaintiffs' names and any and all variants thereof, including use of the Domain Names, and take all necessary actions to transfer the Domain Names to Plaintiffs.

**IT IS FURTHER ORDERED** that, pursuant to 15 U.S.C. § 8131(2), the domain names <marcrandazza.com>, <marcrandazza.me>, <marcjrandazza.com>, <fuckmarcrandazza.com>, <marcjohnrandazza.com>, <marcrandazzasucks.com>, <marcrandazzaisalyingasshole.com>, <marcrandazza.biz>, <marcrandazza.info>, <marcrandazza.mobi>, <marcrandazzaparody.com>, <exposemarcrandazza.com>, <randazzalegalgroupsucks.com>, <trollmarcrandazza.com>, <hypocritemarcrandazza.com>, <crystalcoxmarcrandazza.com>, <marcjohnrandazza.blogspot.com>, <randazzalegalgroup.blogspot.com>, <marcrandazzaviolatedmylegalrights.blogspot.com>, <markrandazza.blogspot.com>, <marcrandazza.blogspot.com>, <jenniferrandazza.blogspot.com>, <marcrandazzafreespeech.blogspot.com>, <marcrandazzaegomaniac.blogspot.com>, <marcjrandazza-lawyer.blogspot.com>, <marc-randazza.blogspot.com>, <marcrandazzawomensrights.blogspot.com>, <marcrandazza-asshole.blogspot.com>, <marcrandazzatips.blogspot.com>, <marcrandazzaabovethelaw.blogspot.com>, <marcrandazzaliedaboutcrystalcox.blogspot.com>, and <janellerandazza.blogspot.com> shall be immediately locked by the Registrar and/or its successor registrars and transferred to Plaintiffs.

**IT IS FURTHER ORDERED** that Plaintiffs shall post a nominal bond of one hundred dollars ($100) for each domain name at issue because the evidence indicates that Defendant will suffer only minimal, if any, damage by the issuance of this temporary restraining order.

**IT IS FURTHER ORDERED** that Defendants shall have until **Friday, December 28, 2012,** to file their Response Brief to Plaintiffs' Motion for Preliminary Injunction (ECF No.2). Thereafter, Plaintiffs shall have until **Friday, January 4, 2012,** to file their Reply Brief. The matter shall be set for hearing on Plaintiffs' Motion for Preliminary Injunction on **Monday, January 7, 2013**, at **3:00 PM.**

**DATED** this **14th** day of December, 2012.

_____
Gloria M. Navarro
United States District Judge