Ronald D. Green, NV Bar #7360
Randazza Legal Group
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 fax
ecf@randazza.com

Attorney for Plaintiff
MARC J. RANDAZZA, JENNIFER RANDAZZA, and NATALIA RANDAZZA

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARC J. RANDAZZA, an individual, JENNIFER RANDAZZA, an individual, and NATALIA RANDAZZA, a minor, <br><br> Plaintiffs, <br><br> vs. <br><br> CRYSTAL COX, an individual, and ELIOT BERNSTEIN, an individual, <br><br> Defendants. | Case No. 2:12-cv-02040 <br><br> **PLAINTIFFS' MOTION TO STRIKE DEFENDANT CRYSTAL COX'S COUNTERCLAIMS AND ANSWER PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(f), OR, IN THE ALTERNATIVE, MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

Plaintiffs Marc J. Randazza, Jennifer Randazza, and Natalia Randazza, a minor, through counsel, hereby submit this motion to strike Defendant Crystal Cox's ("Cox") Answer and Counterclaim pursuant to Fed. R. Civ. P. 12(f).  In the alternative, Plaintiffs request this Court dismiss Cox's Counterclaim pursuant to Fed. R. Civ. P. 12(b)(6).

**I. Introduction**

This is a cybersquatting case that Ms. Cox has tried to spin wildly out of control by attempting to hijack the litigation and flood the docket with frivolous claims and outlandish accusations.  Rather than addressing the true issues at the heart of this case, Cox instead claims that Marc Randazza ("Randazza") is the puppet master of a fabricated, massive mafia-sponsored conspiracy to assault Cox, acting in league with a variety of multinational corporations, criminal

1

organizations, major media outlets, this Court, and a myriad individuals living across the United States. As "proof," Cox has flooded the Court's docketing system with hundreds of documents (most of which consist of her own blog posts). This is not an accident, but to, *by her own admission,* part of her plan to further defame and harass her victims in public documents, while hiding behind the litigation privilege. (See ECF #12 at 3, citing to "Comment of the Day: Why 'Non-Journalist' Blogger Crystal Cox Didn't Get a Lawyer").[1] Cox's "Answer and Counterclaim" have no relevance to the actual issues in this case and serve little purpose other than to attempt to distract the Court from Randazza's valid claims. Accordingly, these pleadings are impertinent to this case and should be struck from the record under Federal Rule of Civil Procedure 12(f). While Cox's entire pleadings may and should be stricken, to the extent any of her allegations withstand 12(f)'s excision, Plaintiffs alternatively move that her claims be dismissed under Rule 12(b)(6) for the reasons set forth herein.

**II. Legal Standard**

A court will grant a motion to strike pursuant to Federal Rule of Civil Procedure 12(f) if the contested pleading contains an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) defines a matter that is "immaterial" as "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Germain Music v. Universal Songs of Polygram*, 275 F. Supp. 2d 1288, 1300 (D. Nev. 2003), *quoting Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993) *rev'd on other*

---

[1] In the article, Cox stated, "I recommend that everyone go pro se and lawyer up for the appeal, this way you get to introduce more elements into the case and others pick up the case and whatever you right [sic] in your motions to the court is then under 'Absolute Privilege' as a matter of law and can't be considered defamation." Curtis Cartier, *Comment of the Day: Why 'Non-Journalist' Blogger Crystal Cox Didn't Get a Lawyer*, Seattle Weekly (Dec. 7, 2011), http://blogs.seattleweekly.com/dailyweekly/2011/12/comment_of_the_day_why_non-jou.php (*last accessed* Jan. 16, 2013)

*grounds*, 510 U.S. 517 (1994). Impertinent matter has been defined to "consist[] of statements that do not pertain, and are not necessary to the issues in question." *Id.*, citing *Fantasy, Inc.*, 984 F.2d at 1527. When an asserted defense would not "constitute a valid defense to the action" under the facts alleged, it "can and should" be stricken. *Nev. Fair Housing Ctr., Inc. v. Clark County*, 565 F.Supp.2d 1178, 1187 (D. Nev. 2008). "Superfluous historical allegations are a proper subject of a motion to strike." *Fantasy*, 984 F.2d 1524, 1527.

Alternatively, while Cox's claims beg to be stricken on their own, any portions that withstand Rule 12(f) are ripe for dismissal under Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), defendants may move to have any and all claims asserted against them dismissed for "failure to state a claim upon which relief can be granted." Rule 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While the complaint need not be detailed, it requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). Statements within a complaint that merely provide "naked assertion[s]" lacking facts to support them do not meet this standard. *Id.*, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955 (2007).

**III. Argument**

Even when taken in the light most favorable to Cox, her purported Counterclaim (ECF #24) and Answer (ECF #23) consist entirely of statements impertinent to the issues of the case. Accordingly, Plaintiffs respectfully request that both documents be stricken from the record. In the alternative, should the Court determine it more proper to dismiss Cox's Counterclaims outright, Randazza requests they be dismissed under Rule 12(b)(6).

**A. Defendant Crystal Cox's Counterclaim is impertinent to the issues in question, and should therefore be stricken.**

While a court construes a Rule 12(f) motion to strike in the view most favorable to the pleader, it must consider the purpose of such a motion, which is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Cardinale v. La Petite Acad., Inc.*, 207 F.Supp.2d 1158, 1162 (D. Nev. 2002), *quoting Sidney-Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir. 1983). Courts may also strike material that includes "inappropriate commentary and dramatic flourishes" or statements that appear "calculated to cast [parties] in a derogatory light" or is full of "wholly irrelevant material." *Mazzeo v. Gibbons*, 649 F.Supp.2d 1182, 1202 (D. Nev. 2009).

In *Mazzeo*, the court found the plaintiff's complaint to be derogatory and filled with extraneous language and allegations. *Id.* As a result, the court, *sua sponte*, ordered large portions of the plaintiff's complaint stricken and directed the plaintiff to file an amended complaint removing the irrelevant portions under pain of sanctions. *Id.*

Like the complaint in *Mazzeo*, Cox's Counterclaim is rife with "wholly irrelevant material," "inappropriate commentary" and statements "calculated to cast" Plaintiffs "in a derogatory light." *Id.* In her Counterclaim, Cox asserts ten causes of action against Randazza and a roster of other counter-defendants. However, in asserting her claim, Cox merely states the names of the causes of action, then lists approximately seventy counter-defendants, including Randazza, his counsel, and the Hon. Gloria Navarro.[2] After providing both of these lists, Cox proceeds to provide an additional fifty-three pages of material that has no relevance to her causes of action or any of the

---

[2] Furthermore, because of the manner in which Cox has listed the counter-defendants, it is nearly impossible to decipher against whom Cox intends to bring her claims. Many of the counter-defendants are ambiguously grouped together and are improperly identified. In addition, many individuals and companies are named throughout the Countercomplaint, but are not listed either in the "service list" or in the confusing list of counter-defendants at the beginning of the pleading.

other issues facing this Court.  For example, on page six of her Countercomplaint, Cox claims that Randazza conspired with other named Counter-defendants in order to "make billions" off of iViewIt Technology's "video encoding technology that changed pixilated video to clear crisp video." (ECF #24 at 6).  Nowhere in the Countercomplaint does Cox allege having any rights or interest in this technology.  Cox also makes several other allegations that are of no relevance to the instant proceeding:

- Randazza conspired with law firm Proskauer Rose to get a court ruling to stop "the flow of information regarding iViewIt Technology." (ECF #24 at 13).
- Randazza criminally conspired against Cox with several well-known individuals and companies, including Sprint Nextel, Starz, Time Warner, Barnes and Noble, AT&T, Netflix, Disney, Apple, and Warren Buffet, among others. (ECF #24 at 17).
- Cox also spends five pages arguing the merits of WIPO's decision on the UDRP Dispute previously arbitrated, which has no relevance to this Court and cannot be changed. (ECF #24 at 27-32).

These examples are hardly an exhaustive list of all of the impertinent statements made in the fifty-six page counterclaim, but are excerpts from what amounts to dozens of pages of irrelevant ramblings.  None of the allegations are pertinent to any of the cyberpiracy, cybersquatting, publicity, intrusion, or civil conspiracy claims alleged in Plaintiffs' Complaint. (*Compare* ECF #24, ECF #20 (alleging Randazza conspired with the Hon. Navarro), ECF #22 (demanding that the Court investigate Randazza as head of a "criminal and civil conspiracy), ECF #23 (disagreeing with the WIPO decision and alleging Randazza conspired with various organizations against her), ECF #29 (alleging Randazza conspired with other bloggers to harass her and that he conspired to steal iViewIt's technology), ECF #30 (alleging a vast conspiracy against her)).    In fact, most of these impertinent statements are repeated several times both in the counterclaim itself and throughout every brief that Cox has submitted to the Court.  Attempting to draw *any* connection between Cox's claims and Plaintiffs' Complaint would require hours of unnecessary analysis on the part of the Court that would likely prove fruitless, as Cox's claims have no bearing on the current lawsuit.  In the interest of judicial and party economy, Cox's

Counterclaim (ECF #24) should be stricken from the record, as it consists solely of impertinent

matter immaterial to the issues in the current suit.

**B. Defendant Crystal Cox's Answer to the Complaint (ECF #23) is impertinent, immaterial, and needlessly repetitive and should be stricken.**

Similar to Cox's Counterclaim, Cox's Answer (ECF #23) also fails to address any of the

issues raised in the Complaint and, like *Mazzeo*, features a host of dramatic flourishes and fanciful

allegations.  In her Answer, Cox states that she denies "all counts of Complaint" (ECF #23 at 1)

and then proceeds to make the same accusations of a "massive" criminal conspiracy against her,

involving *inter alia* several multi-national companies, organized crime, the World Intellectual

Property Organization ("WIPO"), Apple Computers, the New York Times, and Forbes, which have

no relevance to the Complaint, for seventy-nine pages.

Cox also has filed, and intends to file, an excessive number of exhibits to accompany the

Answer.  Defendant Cox states in her Response to Reply for Motion to Strike (ECF #34 at 3) that

she has "300 exhibits to add to the Original Complaint Answer."  To date, Cox has filed a total of

eighty-eight of those exhibits (ECF #42) and has filed a motion requesting an extension of time to

file the rest, as she "does not have the money to print and mail the large amounts of exhibits named

in the Complaint answer." (ECF #45).  Most of the exhibits she has already filed consist mainly of

blog posts she has written and do not present any actual evidence to support the allegations she

makes in her Answer.

Furthermore, while Cox purports to refute the claims in the Complaint, she fails to actually

address them, instead asserting that she is the aggrieved party.  She then argues that those legal or

arbitrative bodies that have ruled against her are involved in a massive criminal conspiracy,

encompassing dozens of parties and entities, all of whom have joined together in an effort to attack

this one solitary person.  These allegations are not relevant to the issues in the lawsuit and are

meant to distract from the Complaint.  The excessive filing of exhibits and repetitive arguments

serve only to give a public forum to her obsessive and outlandish allegations against the dozens of unrelated codefendants.  Accordingly, Cox's Answer should be stricken pursuant to Fed. R. Civ. P. 12(f).

> **C. If this Court strikes less than all of Cox's Counterclaim, Plaintiffs seek a Motion to Dismiss Cox's Counterclaims surviving the Rule 12(f) motion for failure to state a claim upon which relief can be granted.**

To the extent that Cox's Counterclaim is not fully stricken under Rule 12(f), Plaintiffs ask that this Court dismiss Cox's Counterclaim pursuant to Fed. R. Civ. P. 12(b)(6).  When evaluating a 12(b)(6) motion to dismiss, courts will *not* assume a fact is true merely because it is set forth in the form of a factual allegation. *Wensley v. First Nat. Bank of Nevada*, 874 F. Supp. 2d, 962 (D. Nev. 2012), *quoting W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  "Conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.*, *quoting In re Stac Elecs.*, 89 F.3d 1399, 1403 (9th Cir. 1996).

Generally, district courts may only consider the material within the pleadings on a 12(b)(6) motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). However, this rule allows the court to consider documents that are properly submitted as part of the complaint. *Id.*  Furthermore, in a 12(b)(6) motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n. 1 (9th Cir 1995), *quoting Branch v. Tunnell*, 14 F.3d 449 (9th Cir.), cert. denied 512 U.S. 1219, 114 S. Ct. 2704, 129 L.Ed.2d 832 (1994).

Cox asserts ten causes of action in her Counterclaim. (ECF #24).  Defendant Cox fails to properly state a claim for any of the causes of action.  As such, Cox's Counterclaim against Randazza should be dismissed.

*1. Cox cannot bring a claim of criminal conspiracy against Plaintiff Randazza and fails to properly allege a claim of civil conspiracy.*

Crystal Cox may not bring a claim of criminal conspiracy against Plaintiff Randazza, as criminal claims cannot be brought by civil parties. *See Estes v. Gaston*, 2012 WL 6645609 (D. Nev 2012) (holding that several criminal charges could not be brought by a pro se civil litigant). As such, Cox's allegations of criminal conspiracy should be dismissed.

In order to allege a claim for civil conspiracy, the plaintiff must plead that two or more person acted in a concerted action with the intention to accomplish an unlawful objective for the purpose of harming another, resulting in damages to that person. *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1249 (D. Nev. 2003), *quoting Collins v. Union Fed. Sav. & Loan Ass'n,* 9 Nev. 284, 662 P. 2d 610, 622 (1983). Civil conspiracy must include damages from an underlying tort. *Id.* Therefore, civil conspiracy cannot stand alone in a pleading.

Courts in the Ninth Circuit determine the damages for the tort of civil conspiracy through the "overt acts doctrine." *Gibson v. U.S.*, 781 F.2d 1334, 1340 (9th Cir. 1986). Under this doctrine, courts determine injury and damages to the plaintiff through overt acts, not from the continuance of the conspiracy. *Id.*, *quoting Kadar Corp v. Milbury*, 549 F. 2d 230, 234 (1st Cir. 1977). As such, the separate actions may not be classified "as a single grand conspiracy for procedural advantage," and a plaintiff may only recover from overt acts. *Id.*, *quoting Fitzgerald v. Seamans*, 553 F.2d 220, 230 (D.C. Cir. 1977).

While Cox claims that Randazza acted in conspiracy with countless organizations, Cox does not allege any damages, or the intention for Randazza to cause damages, as a result of this "conspiracy." Cox also does not identify any specific overt acts by the counter-defendants furthering or enacting this conspiracy, but states numerous times throughout the pleading that Randazza is involved in a "criminal and civil conspiracy." Cox fails to allege any damages arising from the conspiracy and its actions, but merely claims that the broad, unspecific conspiracy against

her exists.  This is not enough to satisfy the overt doctrine test.  Accordingly, Cox fails to state a claim for civil conspiracy, and the Court should dismiss it.

2. *Cox fails to state a claim for defamation against Marc Randazza.*

The elements for a claim of defamation are (1) a false or defamatory statement by the defendant of or concerning the plaintiff, (2) publication to a third party, (3) amounting to at least negligence, and (4) damages. *Id.* at 1251, *quoting Pegasus v. Reno Newspapers*, 118 Nev. 706, 57 P. 3d 82, 90 (2002).  Opinions are not generally considered to be defamatory. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974). "However pernicious an *opinion* may seem," it is not a basis for defamation. *Id*. (emphasis added).   If a complaint fails to make a specific allegation of defamation, the Court may dismiss the cause of action. *See Flowers,* 266 F. Supp. 2d at 1252 (dismissing defamation cause of action in which plaintiff did not allege that the defendant made a defamatory statement, but merely *conspired* to defame plaintiff).

Public figures, such as Cox, have a higher burden to prove defamation than private individuals. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280-82 (1964) (requiring public figure plaintiff to show "actual malice" in order to recover for defamation).  Additionally, limited-purpose public figures are people who voluntarily inject themselves into the spotlight or into a controversy so that they become public figures for the purpose of a limited range of issues. *Pegasus*, 118 Nev. at 720, citing *Gertz*, 418 U.S. at 351.  The test for whether a person for whether a person is a limited-purpose public figure revolves around whether the person voluntarily and prominently involved themselves into the public controversy. *Id.*, citing *Gertz*, 418 U.S. at 351-52.

In order to recover on a cause of action for defamation, public figures must prove actual malice. *New York Times*, 376 U.S. at 280. This standard has nothing to do with "malice" in the literary sense, but is a distinct legal test for defamation claims brought by public figures. Actual malice requires a public figure plaintiff to prove an allegedly defamatory statement was made "with

knowledge that it was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 280.

"Reckless disregard" for the truth requires more than a departure from reasonably prudent conduct. *Harte-Hanks Communications v. Connaughton*, 491 U.S. 657, 688 (U.S. 1989).  As such, mere negligence "can never give rise to liability in a public figure defamation case." *Newton v. National Broadcasting Co.*, 930 F.2d 662, 680 (9th Cir.1990) "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S., 727, 731 (1968). The standard is a subjective one: there must be sufficient evidence to permit the conclusion that the defendant actually had a "high degree of awareness of . . . probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).  The standard for a showing of actual malice is by clear and convincing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see Bose Corp. v. Consumers Union*, 466 U.S. 485, 511 (1984).

Substantial truth is also an affirmative defense for defamation, and a statement cannot be defamatory if it is substantially true. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991).  To be substantially true, a statement may contain minor inaccuracies not amounting to falsity "unless the inaccuracies would have a different effect on the mind of the reader from that which the pleased truth would have produced." *Williams v. Univ. Med. Ctr. of Southern Nevada*, 688 F. Supp. 2d 1134, 1146 (D. Nev. 2010), *quoting Pegasus*, 118 Nev. at 88 n. 17.  The truth or falsity of a statement is an issue of fact for a jury. *Id.*, *citing Fink v. Oshins*, 118 Nev. 428, 49 P.3d 640, 646 (2002).

Additionally, statements made *in good faith* during the course of litigation that are pertinent to the controversy are protected by an absolute privilege. *Clark County Sch. Dist. v. Virtual Educ. Software Inc.*, 125 Nev. 374, 383, 213 P.3d 496, 503 (Nev. 2009).  The purpose of the absolute

privilege is to allow all parties to have access to courts and to provide freedom from liability from defamation during proceedings.  *Id.*, *citing* Restatement (Second) of Torts § 587 cmt. d (1977). Therefore, provided that a statement is made where 1) a judicial proceeding is contemplated in good faith and under serious consideration and 2) the communication is related to the litigation, the privilege applies. *Id.; see also Fink*, 118 Nev. at 433.[3]

Cox is, at the very least, a limited-purpose public figure under the test laid out in *Gertz*, and was a public figure prior to contacting Randazza for legal services. (See ECF #28-2, Forbes article "Why An Investment Firm Was Awarded $2.5 Million After Being Defamed by Blogger").  Cox describes herself as "a media defendant" who is an "investigative blogger … protecting the public at large." (ECF # 8).  Cox claims to maintain at least 1200 blogs. (See ECF # 21, containing a 15-page list of Cox's domain names).   Not only has Cox used the attention she received in the *Obsidian* case to champion her cause against Randazza, she has also bragged about her popularity on her blogs.  (See ECF #1-8 at 3, stating "if Marc Randazza kills me or Marc Randazza has me killed, I will have my FANS, my Fellow Investigative Bloggers in place to Continuing [sic] EXPOSING Marc Randazza.").  Therefore, Cox admits that she is at least a limited-purpose public figure and must meet the higher actual malice threshold to allege defamation.

In her Counterclaim, Cox fails to allege any specific statements that Randazza made that she considers to be false or defamatory.   Instead, she merely makes a blanket assertion that Randazza conspired with several other individuals, companies, and organizations to defame her. Cox says only that Randazza accused her of extortion as part of a "defamatory conspiracy" against

---

[3] It is worth noting that Cox seems to believe that the litigation privilege is absolute.  *See Footnote 1, supra*. Counter-defendants believe that it is clear that Cox's defamatory filings are anything but presented in good faith, and are thus not privileged from liability.

Plaintiff's Motion to Strike/
Motion to Dismiss

her. (ECF 24 at 41).  Like the plaintiff in *Flowers*, Cox's allegations state mainly that Randazza "conspired" to defame her. 266 F. Supp. 2d at 1252.

Even if the Court determined that Cox had sufficiently pleaded that Randazza had accused her of extortion, Cox still has not met her burden of alleging that Randazza acted with actual malice in making the statement.  In her counterclaim, Cox states Randazza accused her of extortion "knowing full well that [Cox] has not been charged with extortion in a court of law."  However, this characterization of Randazza's statement is not proper and does not correctly allege that Randazza acted with reckless disregard of the truth.  Randazza did not accuse Cox of being a convicted felon, but merely of committing extortion based on publicly known facts.  As such, Cox's own filings defeat her claims that Randazza acted with actual malice.

Furthermore, Cox's claims that Randazza accused her of extortion are substantially true. Under Nevada law, extortion occurs, among other things, when a person threatens, directly or indirectly, "to publish or connive at publishing any libel" or "to expose or impute to any person any deformity or disgrace" with the intent to "gain any money" from these threats. Nev. R. Stat. 205.320. Not once did Randazza claim that Cox had been *charged* with extortion, but that her demands for payment in exchange for reputation management services were "extortionate." (See ECF #1; ECF #2).  Cox has even placed on record her email to Randazza offering "reputation management services" for a monthly fee. (See ECF #1-6 and ECF #29-7, e-mail conversation between parties in which Cox offers her reputation management services, filed by Randazza and Cox respectively).  In light of Cox's actions leading up to the *Obsidian Finance* case,   (ECF #28-2), Cox's offer contained the implication that if Randazza did not purchase her services, Cox would use the domain names she had purchase in order to harass Randazza.  In fact, that is precisely what happened. (ECF # 1).  Cox's e-mail and subsequent behavior contained 1) an indirect threat 2) to publish libel and to 3) expose Randazza to disgrace 4) with the intent to gain money from her

threat.  It is worth noting that at least two judges and a WIPO arbitrator seems to agree with this assessment. (See ECF # 14; ECF # 6-1; *Obsidian Finance Group, LLC v. Cox, 2012 WL 1065484 (D. Ore 2012)*.

Based on the evidence Cox has placed on the record with her counterclaim, "extortion" is a perfectly legitimate word to describe her pattern of buying individuals domain names, filling them with bizarre and defamatory content, link-spamming them to the top results for that person's name in popular search engines such as Google, Yahoo and Bing, and then seeking compensation for her services (or discontinuance thereof).  Therefore, while Cox has not criminally been charged, describing her actions as "cyber-extortion" is substantially true, and can be shown by Cox's pleadings and attached exhibits.

Even without the affirmative defense of substantial truth, Randazza would be protected by the litigation privilege for the statements made in his filings.  Randazza made all of the allegations Cox claims are defamatory in court documents. (ECF #1, 2, 6, 12, and 28).  The statements were all related to Randazza's claims of cybersquatting, right of publicity, and civil conspiracy. (See *Id.*) Randazza made these statements 1) during the course of litigation 2) in communication related to the controversial issues 3) in good faith.  Therefore, all of the statements Cox alleges are defamatory are protected by privilege.

Under this Court's precedent, Cox's allegation of defamation against Randazza is insufficient, and this cause of action should be dismissed.

3. *Cox cannot bring a claim of harassment against Marc Randazza.*

Similar to the criminal conspiracy claim, Cox cannot bring a claim of harassment against Randazza, as no civil harassment claim exists.  The criminal statute for harassment is Nev. R. Stat. 200.571, and there is no civil counterpart.  Furthermore, no statute allows Cox to bring a private

cause of action for harassment.  Cox cannot allege a valid cause of action for harassment against Randazza because no such civil claim exists.  Therefore, this claim should be dismissed.

*4. Cox fails to state a claim for unfair competition under federal anti-trust laws.*

For her fourth cause of action, Cox alleges Randazza to have violated a hodge-podge of distinctly different laws relating to market competition.  Specifically, Cox alleges Randazza to have violated "Anti-Trust Laws / Fair Trade Laws, Fair Competition Act (FCA), The Sherman Antitrust Act (1890), Antitrust Policy and Competition law." (ECF 24 at 47)  To the extent that Cox alleges Randazza to have violated "Anti-Trust Laws / Fair Trade Laws" and "Antitrust Policy and Competition Law," her claims must fail under Federal Rule of Civil Procedure 8, as they do not "Give the defendant fair notice of what the […] claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545, *citing Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Counter-defendant Randazza cannot be held liable on a theory of mere constructive notice that somewhere in the miasma of state and federal antitrust and competition jurisprudence, he may be held liable for some unspecified wrongdoing. *Collup v. City of Reno ex rel Reno Police Dept.*, Case No. 3:07-cv-00353 *2009 WL 2382681* at \*1 (D. Nev. July 31, 2009).  Counterclaims that are "vague, conclusory, general, and don't set forth any material facts" – such as the particular law or theory of liability Cox is proceeding under for this claim – "must be dismissed." *Id*. at \*2.

The two laws that Cox actually identifies as a putative basis for liability against Randazza also fail to provide her with a remedy against the counter-defendant.  The Fair Competition Act ("FCA") is the law of Seychelles, Africa, and not the United States.  Even if the law of the Seychelles were somehow applicable in this action (and it is not), the provisions of the FCA may only be enforced by the Seychelles Fair Trade Commission, and not by private right of action.  Seychelles Fair Competition Act, 2009 Part II (defining role of Seychelles Fair Trade Commission as the sole enforcer of the FCA), *available at*

http://www.ftc.sc/index.php?option=com_remository&Itemid=29&func=download&id=10&chk=3 ff94535ae5ca115348caebfb175aed9&no_html=1 (last accessed Jan. 13, 2013).[4]

To the extent Cox confused the FCA with Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, the result is identical: the FTC Act does not provide for a private cause of action against allegedly unfair behavior. *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280-281 (9th Cir. 1973) ("The protection against unfair trade practices afforded by the [FTC] Act vests initial remedial power solely in the Federal Trade Commission […] Consumers cannot transmute [the FTC Act] into a crowbar for prying open […] the federal courthouse") (internal citations omitted). The provision of such private causes of action would undermine the FTC's ability to respond to anticompetitive behavior, and inhibit its ability to respond to ever-changing markets. *In re Negotiated Data Solutions*, 73 Fed. Reg. 5846, 5854 (Kovacic, C., dissenting) *available at* http://www.ftc.gov/os/caselist/0510094/080122kovacic.pdf; *see* Hakala, Justin, *Follow-On State Actions Based on the FTC's Enforcement of Section 5*, http://ftc.gov/os/comments/section5workshop/537633-00002.pdf (last accessed Jan. 13, 2013).

Thus, the only law Cox has identified that can even be applied in this action is the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq*. However, this allegation too must fail. The Sherman Antitrust Act has two portions that can be applied civilly to remediate anti-competitive or monopolistic behavior: 15 U.S.C. § 1, declaring trusts and agreements in restraint of trade illegal, and 15 U.S.C. § 2, which outlaws monopolization of trade. Cox has not articulated which of these theories she is pursuing, which makes counter-defendant Randazza's defense impossible.

---

[4] As an official government document, the Court may take judicial notice of the Seychelles FCA's contents under Fed. R. Evid. 201. *See Latifi v. Gonzales*, 430 F.3d 103, 106 n. 1 (2d Cir. 2005); *Ennis v. Smith*, 55 U.S. 400, 427 (1852).

Without overstating the difference between these claims, they are as dissimilar as apples and oranges. Under 15 U.S.C. § 1, Cox must allege 1) *concerted action among two or more independent entities*, 2) *an unlawful restraint of trade*, and 3) antitrust injury. *Kendall v. Visa U.S.A. Inc.*, 518 F.3d 1042, 1047, 1051 (9th Cir. 2008) (emphasis added). Dissimilarly, under 15 U.S.C. § 2, Cox must allege 1) *Randazza's possession of monopoly power within a relevant market*, 2) *Randazza's exclusionary conduct*, and 3) causal antitrust injury. *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir. 2004) (emphasis added). Notwithstanding the fact that Cox's rambling counterclaim fails to state the elements of either claim, the conduct addressed by 15 U.S.C. §§ 1 and 2 is so dissimilar that Randazza will be seriously prejudiced without notice of which theory Cox is pursuing. Under § 1, Randazza's concerted action with others to unlawfully "restrain trade" is at issue; meanwhile, § 2 looks to Randazza's monopolistic power as a lone actor, as well as his exclusive conduct as an individual. Without an allegation as to which section of the Sherman Antitrust Act Cox is proceeding under, her Counterclaim fails under Rule 8 for not giving Randazza sufficient notice of her claims and the grounds upon which they rest. *Twombly*, 550 U.S. at 545; *Collup*, *2009 WL 2382681* at *2.

Even assuming Cox was proceeding under both 15 U.S.C. §§ 1 and 2, she has failed to allege a common element to both claims: That she has suffered an <u>antitrust</u> injury. *Kendall*, 518 F.3d at 1047, 1051; *MetroNet*, 383 F.3d at 1130. Antitrust injury depends "less on the plaintiff's proof than on the logic of its complaint and its theory of injury," and is "well-suited to pre-discovery disposition." *McCabe Hamilton & Renno, Co. v. Matson Terminals, Inc.*, Case No. 08-00080 *2008 WL 2437739* at *4 (D. Haw. June 17, 2008) (internal citations omitted). Cox must allege and show not only how the allegedly anti-competitive conduct harms her to show an antitrust injury, but "must show how defendant's anticompetitive conduct harms both *competition* and plaintiff." *Digital Sun v. Toro Co.*, Case No. 10-CV-4567 *2011 WL 1044502* at *4 (N.D. Cal. Mar.

22, 2011).   Courts within this Circuit use a four-part test to determine whether the plaintiff has alleged an antitrust injury based upon "(1) unlawful conduct, (2) causing a injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is the type the antitrust laws were intended to prevent." *American Ad Mgmt., Inc. v. General Tel. Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999).

Cox's allegations fail this test.   Rather than allege an injury to competition itself, she has merely alleged a personal injury through the loss of website links. *NYNEX Corp. v. Discon, Inc.* 525 U.S. 128, 137 (1998); *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 901 (9th Cir. 2008) ("antitrust laws protect the process of competition, and not the pursuits of any particular competitor").   Nor has Cox alleged what market, if any, her and counter-defendant Randazza both participate within, which is a prerequisite for establishing antitrust injury. *Glen Holly Entm't Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1008 (9th Cir. 2003) (finding that antitrust injury requires a showing that the "injured party [is] a participant in the same market as the alleged malefactors").   Where there is no specific allegation of facts demonstrating consumer harm that would demonstrate damage to the broader market, a plaintiff's claims under 15 U.S.C. §§ 1 and 2 must be dismissed. *In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 997 (N.D. Cal. 2010).   As Cox made no allegation of consumer harm, nor claim as to any specific facts evincing consumer harm or harm to the broader market (which Cox has not defined) as a result of Randazza's actions, she has failed to meet this requirement for showing an antitrust injury and her claims must be dismissed.

Additionally, Cox fails to even allege that her injury arises from unlawful conduct. Cox's claim of harm arises from Randazza's lawful use of arbitration and litigation to vindicate his rights (ECF #2; ECF #6-1; ECF 41).   These actions are not unlawful.   Antitrust laws "do not prohibit monopolies that result from the legitimate use of a trademark." *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1257-58 (9th Cir. 1982) (finding that legitimate enforcement of trademark rights

did not give rise to antitrust injury); *Ceramco, Inc. v. Lee Pharmaceuticals*, Case No. 74 C 567 *1974 WL 1235* at *1 (E.D.N.Y. Apr. 2, 1976), *citing Susser v. Carvel Corp.*, 206 F. Supp. 636 (S.D.N.Y. 1962), *aff'd* 332 F.2d 505 (2d Cir. 1964).   Thus, the harm Cox alleges, which is insufficient to establish antitrust injury in its own right, is unambiguously not the kind of conduct that antitrust laws exist to prohibit.   Randazza's use of legal and arbitral procedure to secure domain names that are rightfully his is not unlawful conduct, and fails the *American Ad Management* test for finding an antitrust injury.   Based on the foregoing, Cox has failed to allege any antitrust injury, and her fourth cause of action must be dismissed.[5] *Sprint Nextel Corp. v. AT&T Inc.*, 821 F. Supp. 2d 308, 313 (D.D.C. 2011) (holding that plaintiff fails to plead a cause of action for antitrust violations where it fails to meet standards of *Twombly* and *Iqbal*).

> *5. Because Marc Randazza is not a state actor, Crystal Cox cannot maintain a suit against him for violation of her First Amendment rights.*

In order to bring a cause of action for infringement of the constitutional right to freedom of speech against a private individual, the plaintiff must demonstrate that the private person's infringement somehow constitutes state action. *George v. Pacific-CSC Work Furlough*, 91 F. 3d 1227, 1229 (9th Cir. 1996).   "Demonstrating state action is a necessary threshold which [a plaintiff] must cross before [a court] can even consider whether [a private party] infringed upon First Amendment rights to free speech." *Id.* at 1230.

The Supreme Court has laid out four tests for determining state action: "public function, state compulsion, nexus, and joint action." *Id.*, citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 939 102 S. Ct. 2744, 2754, 73 L.Ed.2d 482 (1982).   The public function approach analyzes whether

---

[5] Being unable to establish antitrust injury, Cox's fourth cause of action would also fail for lack of standing; without having suffered an antitrust injury, she lacks standing to pursue any antitrust causes of action she may have put before the court in her vaguely worded fourth cause of action. *See Cargill, Inc. v. Montfort of Colo.*, 479 U.S. 104, 110-11 (1986).

the party takes a "traditionally exclusive governmental function." *Id.*   The state compulsion approach includes whether a private entity "acts as the state when some law or custom requires a certain course of action." *Id.* at 1232. Under the nexus approach, a court considers whether there was a "close state involvement" in violating the harmed party's rights. *Id.* at 1231.  Finally, under the joint action approach, a private person can be a state actor if he is a "willful participant in joint action with the state or its agents," for example, through an agreement. *Id.*, *quoting Dennis v. Sparks*, 449 U.S. 24, 27, 101 S. Ct. 183, 186, 66 L. Ed. 2d 185 (1980).

None of these approaches points to Randazza being a state actor.  As an attorney and a blogger, Cox does not allege that Randazza acts in a manner that is a "traditionally exclusive governmental function."  Nor has Cox alleged that Randazza acted as the state in any actions pertaining to Cox.  Cox does not and cannot allege a nexus between the government and Randazza. Nor does Cox allege that Randazza agreed to act as a "willful participant in joint action" with the state.  Therefore, Cox has not alleged Randazza to be a state actor, and for good reason: he is not. Any claim to the contrary would be unsupportable.

Because he is not a state actor, Randazza, by definition, cannot take any action that violates Cox's freedom of speech. Cox cannot assert a cause of action against Randazza for violation of her First Amendment rights, and this claim should be dismissed.

*6. Because Marc Randazza is not a state actor, Cox cannot maintain a suit against him for violation of her right to Due Process.*

Like Cox's First Amendment claims, the Fourteenth Amendment's due process clause requires state action. *Williams v. Univ. Medical Ctr. of Southern Nevada*, 688 F. Supp. 2d 1111, 1121 (D. Nev. 2010).  As has already been shown *supra*, Cox has not alleged Randazza is a state actor. (ECF #24at 45-48).  Therefore, Cox cannot maintain a suit against him for abuse of her due process rights, and this cause of action should be dismissed.

*7. Cox cannot bring a claim under 18 U.S.C. § 241.*

Cox cannot maintain suit under 18 U.S.C § 241, which is a criminal statute that does not contain any private right of action, and can only be enforced by the United States government. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (finding, in a case remarkably similar to this one, wherein plaintiff sued numerous attorneys and judges involved in prior litigation for specious civil rights violations, that 18 U.S.C. § 241 "provide[s] no basis for civil liability"); *Agnew v. City of Compton*, 239 F.2d 226, 230 (9th Cir. 1956) (holding that 18 U.S.C. § 241 provides "no basis" for civil suit), *overruled on other grounds*, *Cohen v. Norris*, 300 F.2d 24, 29-30 (9th Cir. 1962). Under this circuit's precedent and the plain language of 18 U.S.C. § 241, Cox cannot bring a civil claim against plaintiff under this section, and this cause of action must be dismissed with prejudice.

8. *Cox fails to state a claim for abuse of process against Marc Randazza.*

Under Nevada law, the elements of abuse of process are "(1) an ulterior purpose behind the issuance of process; and (2) a willful act in the use of process not proper in the regular conduct of the proceeding." *Laxalt v. McClatchy*, 622 F. Supp. 737, 751 (D. Nev. 1985). The filing of a complaint alone does not constitute an abuse of process under Nevada law, as this is not enough to establish the "willful act" required for this cause of action. *Id.* at 752. A valid cause of action for abuse of process must include an assertion that the offending party took action *after* the filing of the complaint. *Id.*, (emphasis in original).

In her Counterclaim, Cox states that Randazza "maliciously and deliberately misused" the legal process against her in an attempt to shut down and silence her blogs. (ECF #24 at 49). However, Cox does not properly allege any willful act necessary to allege a claim for abuse of process. Cox's vague claim that Randazza "misused the court" is too vague and not sufficiently particular to state a claim and give Randazza notice of Cox's supposed claim against him (*see Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F. 3d 1019, 1036 (9th Cir. 2008)(holding that vague language alleging "wrongful use" of judicial system was too vague).

Furthermore, this very Court has found that Cox's 1200 alternate blogs clearly demonstrate that she has not been "silenced."   In fact, Plaintiffs have, thus far, refrained from filing an action for defamation, despite the fact that one is clearly available.[6] The Court should dismiss Cox's eighth cause of action under 12(b)(6).

9. *Cox fails to state any tortious interference claim against Marc Randazza.*

Cox' ninth cause of action, titled simply "Tortious Interference," fails under Rule 8 for failing to state with what counter-defendant Randazza allegedly interfered (ECF 24 at 51-52).  Cox does not allege the existence of any contract or other relationship with which the counter-defendants, including Randazza, allegedly interfered.   Cox alleges that the counter-defendants interfered with the "business, future business, clients, customers, [and] buyers" related to her business ventures (*id.* at 51), which could relate to contracts, business expectancies, or prospective economic advantage.   The inherent lack of specificity in Cox's claim for "tortious interference," along with the wide range of potentially affected third parties and consequently broad range of resulting causes of action, leaves counter-defendant Randazza unable to understand – let alone respond to – this cause of action.   Such vagueness is improper under Rule 8, and this cause of action should be dismissed. *Twombly*, 550 U.S. at 47; *Collup*, 2009 WL 2382681 at *2. To the extent Cox's general cause of action for "Tortious Interference" is duplicative of her tenth cause of action for interference with her prospective business advantages, and shares the common elements of requiring Cox to allege that Randazza intended to harm the counterclaimant, and for his conduct to be improper, tortious, and unprivileged, Cox cannot allege any claim of tortious interference as a matter of law for the reasons set forth below.

In Nevada, the tort of interference with prospective economic advantage has five elements: "(1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and, (5) actual harm to the plaintiff as a result of the defendant's conduct." *Klein v. Freedom Strategic*

---

[6] Plaintiffs reserve the right to bring such a claim within the applicable statute of limitations.

*Partners, LLC*, 595 F. Supp. 2d 1152, 1163 (D. Nev. 2009), *quoting Consol. Generator-Nev., Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 971 P.2d 1251, 1255 (1998) (per curiam).   Mere knowledge of a contract is inadequate to show an intention to interfere with a contractual relationship; the plaintiff must allege that the defendant intended to cause a party to breach the contract. *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1154 (D. Nev. 2005), *quoting J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 71 P.3d 1264, 1266 (2003). Courts consider several factors in determining whether conduct is intentional interference, including: a) the nature of the conduct; b) the remoteness of the conduct to the interference, and; c) the relations between the parties. Restatement 2d of Torts § 767 (1979).  "Absent […] each element of the tort of intentional interference with prospective economic advantage, the claim must fail." *Wichinsky v. Mosa*, 109 Nev. 84, 847 P.2d 727 730 (1993).

Even for claims other than defamation, a public figure's causes of action based upon a defendant's speech are subject to the *Sullivan* test of actual malice. *Snyder v. Phelps*, __ U.S. __, 131 S. Ct. 1207, 1219 (2011); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50-51 (1988) (requiring actual malice for a public figure to recover on an emotional distress theory of liability); *Sullivan*, 376 U.S. at 269 (finding that no cause of action possesses "talismanic immunity from constitutional imitations"); *Blatty v. N.Y. Times Co.*, 728 P.2d 1177, 1182 (Cal. 1986) (holding that First Amendment protections "are not peculiar to [defamation] but apply to all claims whose gravamen is the alleged injurious falsehood of a statement").

With these First Amendment principles bearing on Cox's interference with prospective economic advantage claim, it fails against Randazza on at least two fronts.  First, as a matter of law, Cox has not alleged that Randazza engaged in intentional, improper conduct.  As demonstrated in the above discussion of Cox's defamation claim against Randazza,[7] he has not

---

[7] As the tort underlying Cox's tortious interference claims is defamation, the portion of this Motion to Dismiss concerning the futility of Cox's claim on that ground should is incorporated herein by reference.

defamed Cox and, accordingly, has not engaged in improper conduct.   Moreover, as Cox is at minimum a limited-purpose public figure within the context of this dispute, she must allege that Randazza's tortious conduct was made with actual malice – knowing falsity, or reckless disregard for the truth. *Hustler Magazine*, 485 U.S. 50-51; *Sullivan*, 376 U.S. at 269.   She has failed to do so. Any conduct Cox could theoretically base her intentional interference claims upon is privileged and lawful on First Amendment and other grounds. *Custom Teleconnect, Inc. v. Int'l Tele-Services, Inc.*, 243 F. Supp. 2d 1173, 1181 (D. Nev. 2003), *citing Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 734 P.2d 1221, 1226 (1987) (acting to protect legal interests is privileged conduct and not a basis for tortious interference claim).

Second, the relationship between Randazza and the people who have allegedly seen the lawsuit filings – assuming, generously, that his litigation conduct is unprivileged conduct – is too remote as a matter of law to sustain a claim that Randazza's conduct unlawfully interfered with Cox's prospective business relationships.   Cox's allegations of Randazza's unspecified "interference" with similarly unspecified third parties, causing her damages that are also completely unspecified, constitute an allegation of damages that are "speculative, remote, imaginary[,] or merely possible" and, as a matter of law, "cannot serve as a basis for legal recovery." *Navellier v. Sletten*, 262 F.3d 923, 939 (9th Cir. 2001), *quoting Mozzetti v. City of Brisbane*, 67 Cal.App.3d 565, 577 (Cal. Ct. App. 1977).

Cox fails to allege still other elements of her intentional interference with prospective business advantage claim.   The precedent of this circuit has construed intentional interference with prospective economic advantage claims to show the existence of a specific anticipated economic relationship between the plaintiff and a third party. *Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1456 (9th Cir. 1983).   Other courts have narrowly construed this tort, finding that it has been properly alleged only when the plaintiff identified specific economic relationships

with which the defendants' conduct allegedly interfered. *In re Amerco Derivative Litig.*, 127 Nev. Adv. Op. 17, 252 P.3d 681, 702 (2001).

It is imperative that the plaintiff allege details of the economic relationship when pleading this tort, as recovery for prospective economic advantage is limited to "business expectancies" that are "commercially reasonable to anticipate." *Houlahan v. World Wide Ass'n of Specialty Programs and Schs.*, Case No. Civ. A. 04-01161 *2006 WL 785326* at *4 (D.D.C. Mar. 28, 2006), *quoting McManus v. MCI Communications Corp.*, 748 A.2d 949, 957  (D.C. Ct. App. 2000).  A prospective advantage is not actionable if too attenuated or remote to give rise to a reasonable business expectancy. *Houlahan*, *2006 WL 785326* at *4 (internal quotations omitted). Cox has not identified any such potentially beneficial economic relationships, or facts upon which the Court or Randazza can analyze whether her alleged relationships constitute a reasonable business expectancy.  Cox instead claims only to have lost "*potential* business, [*potential*] clients and advantages." (ECF 24 at 51) (emphasis added).  As Cox does not identify any lost business, lost clients, or lost advantages with even a miniscule level of particularity, and her pleading is insufficient to satisfy this element of intentional interference with prospective business advantage on this basis alone.

Another essential element of this tort is that the defendant must have knowledge of the prospective business relationship. *Klein*, 595 F. Supp. 2d at 1163. Cox's counterclaim does not allege that Randazza or any other counter-defendant had knowledge of her prospective business relationships (ECF 24 at 51-52).   Additionally, Cox must allege that the counter-defendants' actions were undertaken with the intent to harm the plaintiff by preventing the relationship. *Williams v. Univ. Med. Ctr. of S. Nev.*, 688 F. Supp. 2d 1134, 1140 (D. Nev. 2010). While Cox conclusorily insists that the counter-defendants have "interfered" with her contractual relationships, she has not alleged that such interference was intentional.  For these reasons, her claim of intentional interference with prospective business advantage may also be dismissed.

Because Cox fails to state a claim for tortious interference of prospective economic advantage, the Court should dismiss this tenth cause of action.

**IV. Conclusion**

Like the pleadings in *Mazzeo*, Cox's Answer and Counterclaim are rife with "wholly irrelevant material," "inappropriate commentary" and statements "calculated to cast" Plaintiffs "in a derogatory light."  Both pleadings fail to address any of the true issues in this case: cyberpiracy, cybersquatting, violation of right of publicity, intrusion upon seclusion, and civil conspiracy. Instead, Cox's pleadings make wild claims of a massive conspiracy against Cox involving companies and individuals Randazza has never even heard of, and which are irrelevant to this dispute.  These statements and flourishes were clearly calculated to distract this Court, and the massive number of exhibits were intended to prohibit any progress in this case.  In light of judicial economy, as well as the impertinence of these filings, Randazza respectfully requests the Court strike Cox's Answer (ECF 23) and her Counterclaims (ECF 24) from the record.

In the alternative, Cox's Counterclaim should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).  Cox failed to correctly plead (or was unable to plead) all ten of the causes of action alleged in her Counterclaim (ECF 24).  Accordingly, whether under 12(f) or 12(b)(6) this Court should dispose of Cox's Counterclaim.

Dated: January 17, 2013                              Respectfully submitted,

                                                     /s/ Ronald D. Green
                                                     Ronald D. Green, NV Bar #7360
                                                     Randazza Legal Group
                                                     6525 W. Warm Springs Road, Suite 100
                                                     Las Vegas, NV 89118
                                                     888-667-1113; 305-437-7662 fax
                                                     ecf@randazza.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed using this Court's CM/ECF system on January 17, 2013.

Dated: January 17, 2013                          Respectfully Submitted,

Laura M. Tucker
Law Clerk
ecf@randazza.com
Randazza Legal Group
6525 W. Warm Springs Rd., Suite 100
Las Vegas, NV 89118
(888) 667-1113
(305) 437-7662 fax