Ronald D. Green, NV Bar #7360
Randazza Legal Group
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 fax
ecf@randazza.com

Attorney for Plaintiffs
MARC J. RANDAZZA, JENNIFER RANDAZZA, and NATALIA RANDAZZA

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MARC J. RANDAZZA, an individual,
JENNIFER RANDAZZA, an individual, and
NATALIA RANDAZZA, a minor,

        Plaintiffs,

    vs.

CRYSTAL COX, an individual, and ELIOT
BERNSTEIN, an individual,

        Defendants.

Case No. 2:12-cv-02040

**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT ELIOT BERNSTEIN AND AN AWARD OF ATTORNEY'S FEES AND STATUTORY DAMAGES: MEMORANDUM OF POINTS AND AUTHORITIES**

    Plaintiffs Marc J. Randazza, Jennifer Randazza, and Natalia Randazza, through counsel, hereby submit this Motion for Default Judgment Against Defendant Eliot Bernstein. This Motion is made pursuant to Rule 55 of the Federal Rules of Civil Procedure and is based upon the attached Memorandum of Point and Authorities, the papers and pleadings on file herein, and any oral argument that this Court may allow.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.**    **Statement of Relevant Facts**

    **A.**    **Facts Regarding Plaintiffs**

    Plaintiff Marc Randazza is an individual, an attorney, a legal author, and a resident of Las Vegas, Nevada. Plaintiff is the owner and managing partner of Marc J. Randazza PA, d/b/a

Randazza Legal Group ("RLG"), a nationally recognized First Amendment and Intellectual Property law firm with offices located in Nevada, Florida, and Arizona. Since 2008, RLG has been doing business using Marc Randazza's personal name as a source identifier for its services.

In addition to owning and operating his own law firm, Plaintiff regularly appears in all forms of news media as an author legal commentator. He has appeared in New York City Magazine, New York Times, Boston Globe, Los Angeles Times, Fox News, and CNN, among others. (**See Exhibit A**). He also regularly publishes under his byline at his blog, The Legal Satyricon, which is one of the most well-known law blogs in the country. (**See Exhibit B**). Plaintiff regularly speaks on panels about the First Amendment and intellectual property at conferences nationwide. (**See Exhibit A**). He was also named one of 2013 Porn's Most Powerful Players by CNBC. (See **Exhibit** C).

In 2011, XBiz World Magazine named Randazza one of the adult entertainment industry's Top 50 newsmakers and commented on his work in high-profile cases. (**See Exhibit D**). In Nevada, Plaintiff's name has appeared in high profile Las Vegas media, including the Las Vegas Review-Journal, the Las Vegas Sun, VegasInc, Las Vegas CityLife, and Las Vegas Weekly. (**See Exhibit A**).

Plaintiff Jennifer Randazza is the wife of Plaintiff Marc Randazza. Plaintiff Natalia Randazza is their four-year-old daughter. Both Jennifer and Natalia Randazza are private people who were only targeted because of their relationship to Plaintiff Randazza.

C.      **Facts Regarding Defendants**

Defendant Eliot Bernstein is an individual who, upon information and belief, resides in Boca Raton, Florida.

At issue in this suit are thirty-two Infringing Domain Names containing all or part of Plaintiffs' personal names. While the majority of the Infringing Domain Names are registered to Defendant Cox, five of the Domain Names were registered to Eliot Bernstein. *See* WhoIs Records for <marcjohnrandazza.com>, <marcjrandazza.com>, <fuckmarcrandazza.com>, <marcrandazzaisalyingasshole.com>, and <marcrandazzasucks.com>, ("Infringing Domain

Names") attached as composite Exhibit E. These domain names contain the personal name and common law trademark of Plaintiff Marc Randazza. These Defendants registered the Infringing Domain Names with the intent to capitalize on the use of Plaintiff Randazza's personal name and extort money from Plaintiffs. In fact, the profit in this endeavor flows directly from the extortion scheme.

While the content of these five websites contained was the same as the content of the other Infringing Domain Names, authored by Cox, upon information and belief, Bernstein is a knowing and voluntary participant in this infringement. Plaintiffs explained to him they were willing to believe that he was an unwitting participant in this unlawful conduct. Nevertheless, after having explained so to him, when Plaintiffs' counsel contacted Bernstein on October 15, 2012, to notify him of the potential filing of this lawsuit, Bernstein did not respond other than to say "Please include me [as a defendant in the lawsuit]." *See* Exhibit F.

Between December 10, 2011 and September 20, 2012, Defendants registered the Infringing Domain Names through registrar Godaddy.com. Defendants registered the Infringing Domain Names with the intent to capitalize on Plaintiff Randazza's personal name, of which Plaintiff Randazza has legitimate common law trademark rights.

On December 10, 2011, <marcrandazza.com> was registered to Crystal Cox in the publically available Whois information. (See **Exhibit G**). On January 16, 2012, Cox sent an email to Plaintiff stating that she had purchased his personal name as a domain name. (See **Exhibit H**). She then asked Plaintiff to purchase her "reputation management services" in an attempt to extort money from Plaintiff. (See **Exhibit H**). See *Obsidian Finance Group, LLC v. Cox*, 2012 WL 1065484 (D. Ore 2012).

Defendants continued to register several dozen more domain names and registered dozens of Blogger accounts throughout the next several months, all of which contain Plaintiff's personal

name, the name of his law firm, Randazza Legal Group, or his family members' names. (See **Exhibit E**). Five of the Infringing Domain Names are registered to Defendant Bernstein. (**Exhibit E**).

### C.      Procedural Facts

On November 28, 2012, Plaintiffs filed a Complaint for cybersquatting, state and common law right of publicity, common law right of intrusion upon seclusion, and civil conspiracy. Plaintiffs served Defendant Bernstein on December 15, 2012, with a copy of the Complaint and *Ex Parte* Motion for Temporary Restraining Order via personal service to a member of Bernstein's family at his home in Boca Raton, Florida.  Bernstein has never filed or served an Answer or responsive pleading to the Complaint in accordance with Rule 12 of the Federal Rules of Civil Procedure.

On January 11, 2013, this Court entered a Preliminary Injunction on Plaintiffs' cause of action on the Individual Cyberpiracy Protections Claims, finding that Plaintiffs had a likelihood of success on the merits of its 15 U.S.C. § 8131 claims.  Pursuant to Plaintiffs' request, on January 9, 2013, the Clerk of the Court entered a default against Bernstein.  A copy of the Default is attached hereto as Exhibit I and incorporated herein by reference.

## II.      Argument

Concurrent with the default already entered upon the record by the Clerk of the Court, this Court should grant Plaintiffs' request for default judgment against Bernstein for cybersquatting, state and common law right of publicity, common law right of intrusion upon seclusion, and civil conspiracy.

### A.      Defendant Bernstein has violated Plaintiffs' individual cyberpiracy protections pursuant to 15 U.S.C. § 8131.

In the interest of brevity and judicial economy, Plaintiffs incorporate by reference their arguments regarding the Violation of Individual Cyberpiracy Protections under 15 U.S.C. § 8131

against Defendant Bernstein as presented to this Court in its Motion for Temporary Restraining Order and Preliminary Injunction.   The undisputed facts show that Bernstein registered or trafficked in <marcjohnrandazza.com>, <marcjrandazza.com>, <fuckmarcrandazza.com>, <marcrandazzaisalyingasshole.com>, and <marcrandazzasucks.com> with the bad faith intent to profit from registering, trafficking in, or using as a domain name a mark that is either identical or confusingly similar to the distinctive marks of Plaintiffs' personal names.   As Plaintiffs have previously exhibit to this Court through uncontradicted evidence, Defendant had a specific intent to profit from these websites under 15 U.S.C. § 8131, and this Court should enter judgment in favor of Plaintiffs on their claims under this section of the Anti-Cybersquatting Consumer Protection Act.

**B.     Defendant Bernstein violated the Anti-Cybersquatting Consumer Protection Act.**

Based on the evidence included in the record, Plaintiff Randazza succeeds on the merits of his claim under the ACPA.  That Act provides, in pertinent part:

> [A] person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person –
> (i)     has a **bad faith intent** to profit from that mark . . .; and
> (ii)    registers, traffics in, or uses a domain name that –
> > (I)     in the case of a mark that is **distinctive** at the time of the registration of the domain name, is **identical or confusingly similar** to that mark; [or]
> > (II)    in the case of a famous mark that is **famous** at the time of registration of the domain name, is **identical or confusingly similar** to that mark…

15 U.S.C. § 1125(d)(1)(A) (emphasis added).  Thus, Defendants are liable under the ACPA if they had a bad faith intent to profit from registering, trafficking in, or using as a domain name a mark that is either identical or confusingly similar to a distinctive mark, such as Plaintiff's personal name.

Courts consider several factors in assessing whether a defendant has the requisite "bad faith intent" to profit from a mark, as defined by the ACPA, including but not limited to:

(I)    the trademark or other intellectual property rights of the person, if any, in the domain name;

(II)   the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III)  the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV)   the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V)    the person's intent to divert consumers from the mark owner's online location to a site assessable under the domain name that could harm the goodwill represented by the mark, either for commercial gain with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the site;

(VI)   the person's offer to transfer, sell or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII)  the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX)   the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous. . . .

15 U.S.C. § 1125 (d)(1)(B).  A court is **"not limited to considering just the listed factors** when making [its] determination of whether the statutory criterion has been met.  The factors are, instead, expressly described as indicia that 'may' be considered along with other factors."  *Sporty's Farm L.LC. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 498 (2d Cir. 2000) (emphasis added).

In applying these factors, it is abundantly clear that Plaintiffs have demonstrated Defendant Bernstein's bad faith intent: (1) Defendant has no trademark rights to MARC RANDAZZA or in the Infringing Domain Names; (2) the Infringing Domain Names contain the legal name of

Plaintiff, under which he also provides legal services; (3) Defendant has never been known by the name Marc Randazza; (4) Defendant made no use of Plaintiff's name prior to registering the Infringing Domain Names; (5) Defendant has not made any *bona fide* noncommercial or fair use of the Infringing Domain Names; (6)  by use of the Infringing Domain Names, Defendant intends to attract Plaintiff's potential clients and profit from his reputation and name; (7) the mark contained in the Infringing Domain Names is identical or confusingly similar to Plaintiff's personal name, as discussed below; (8) Defendant offered to sell one or more of the Infringing Domain Names to Plaintiff or a third party with the intent to profit off of that sale; and (9) several of the Domain Names are registered to Defendant Bernstein, despite the fact that Defendant Cox maintains the sites.  Accordingly, at least eight of the nine factors of bad faith defined by the ACPA clearly weigh in favor of finding that Bernstein had the requisite bad faith intent to profit from the registration of the Infringing Domain Names.

Defendants clearly do not have any legitimate purpose in registering Plaintiffs' names and common law marks.  Instead, they registered the names in order to extort money from Plaintiff Randazza through an elaborate scheme to first destroy his good name and then offer to "fix up" the reputation they cast in a negative light.  As a proxy participant in Cox's various blog posts, offer to sell, and attempts at link spamming, Bernstein contributed to Cox's intent to profit.   Defendants' use of the domain names is not a legitimate exercise of their First Amendment rights, but is a cover for an elaborate scheme to obtain money from Plaintiffs.

Plaintiff Randazza also can prove the second element necessary for satisfying an ACPA claim: Defendants have registered several domain names that are identical to Plaintiff Randazza's common law mark.  The Infringing Domain Names are identical to Plaintiff's personal name.  In fact, the Infringing Domain Names **contain the entirety of Plaintiff Marc Randazza's personal**

**name**.  Additionally, many of the Infringing Domain Names do not contain any unique word or phrase to indicate that they do not emanate from Plaintiff, but wholly incorporate Plaintiff's name.

While Plaintiff Randazza does not possess a *registered* trademark in his personal name, "MARC J. RANDAZZA" has nonetheless become distinctive and synonomous with the offering of legal services.  Plaintiff Randazza therefore owns common law trademark rights to the mark "Marc J. Randazza," established by recognition in the relevant channels of trade since at least 2008.  Since then, Plaintiff has been the owner and managing partner of Marc J. Randazza PA, d/b/a Randazza Legal Group ("RLG"), a nationally recognized First Amendment and Intellectual Property law firm with offices located in Nevada, Florida, and Arizona.  RLG has been doing business using Marc Randazza's personal name as a source identifier for its services.

Randazza regularly appears in all forms of news media as an author and legal commentator, publishes on his blog, the Legal Satyricon, and speaks worldwide on panels about the First Amendment and intellectual property matters.  The distinctiveness of the Marc Randazza mark, and its recognition in the legal community, is uncomplicated, incontrovertible, and undeniable.  Over the last five years, Plaintiff Randazza has created a genuine commodity in the Randazza trademark over the last five years.  Defendant Bernstein can produce no evidence to the contrary.

Therefore, Defendant Bernstein registered and trafficked in (in bad faith) Plaintiffs' common law mark for the purpose of his own financial gain.

**C.      Plaintiffs succeed on their Right of Publicity claims.**

In relevant part, the Nevada right of publicity statute reads:

There is a right of publicity in the name, voice, signature, photograph or likeness of every person. The right endures for a term consisting of the life of the person and 50 years after his or her death, regardless of whether the person commercially exploits the right during his or her lifetime…

… Any commercial use by another of the name, voice, signature, photograph or likeness of a person requires the written consent of that person or his or her successor in interest.

Nev. R. Stat. 597.790(1)-(2).  The United States Court of Appeals for the Ninth Circuit states that the common law right of publicity is actionable when a plaintiff alleges "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *White v. Samsung Electronics Am., Inc.*, 971 F.2d 1395, 1397 (9th Cir. 1992).  It is not important how the defendant misappropriates the plaintiff's name or identity; it matters only *whether* the plaintiff's identity was misappropriated. *Id.* at 1398.

In looking at the facts, Defendant Bernstein clearly violated Plaintiff Randazza's rights of publicity under both the Nevada statute and common law.  Bernstein willing registered Marc Randazza's personal name as a domain name, without his consent, for commercial gain, in violation of Randazza's publicity rights.

Defendants registered the Infringing Domain Names incorporating the use of the Plaintiff Marc Randazza's personal name with the intent to profit from their commercial use.  Defendants attempted to profit from the use of Plaintiff's name through the use of 1) pay-per-click advertising and 2) the sale of the domains either to Plaintiff or a third party with an interest in Plaintiff's name and in order to further their extortion scheme.  Randazza did not give his consent for either Defendant to register his personal names as a domain name, by writing or otherwise.

As a direct and proximate result of Defendant Bernstein's use of Marc Randazza's name, he has suffered, and will continue to suffer, monetary loss and irreparable injury to his business, reputation, and goodwill.  Plaintiffs seek only injunctive relief under this claim.

**D.    Plaintiffs succeed on their common law intrusion upon seclusion claim.**

In order to succeed on a claim for intrusion upon seclusion, a plaintiff in Nevada must show 1) an intentional intrusion (physical or otherwise); 2) on the solitude or seclusion of another; 3) that would be highly offensive to a reasonable person. *Kuhn v. Account Control Technology, Inc.*, 865

F.Supp. 1443, 1448 (D. Nev. 1994). Specifically to the third element, what is highly offensive to a reasonable person is a matter of social conventions and expectations. *Id*. at 1449. The court considers other factors, such as "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id.*

As a willing participant in Cox's scheme, Bernstein is liable for the intrusion upon Plaintiffs' seclusion. The use of Mr. Randazza's name, identity, and likeness, as well as the use of the names of Jennifer Randazza and their four-year-old daughter Natalia Randazza, is highly offensive to a reasonable person. While Mr. Randazza has established an online identity, Defendants still may not use his name in an effort to intrude upon Mr. Randazza's privacy in an effort to attempt to harass and intimidate his family. Furthermore, Plaintiff Jennifer Randazza and Plaintiff Natalia Randazza are private citizens who have a reasonable expectation that their names, photos, and personal information will not be displayed in a public forum without their consent.

The use of private citizen Plaintiff Jennifer Randazza's name and likeness, particularly in making sexually inappropriate comments about her, is highly offensive to a reasonable person. (ECF #1 ¶9) Plaintiff Jennifer Randazza did nothing to instigate Defendants' use of her name and likeness for their own purposes.

The use of then-three-year-old Plaintiff Natalia Randazza's name to harass his family is highly offensive to a reasonable person. Natalia Randazza is a toddler whose only reason for being the subject of Defendants' ire is because she is Mr. Randazza's daughter. Plaintiff Natalia Randazza is an innocent child whose name should not be associated with Defendants' crusade to extort and harm Plaintiffs' reputation and business. Therefore, Plaintiffs are entitled to relief for intrusion upon their seclusion.

**E.      Plaintiffs succeed on their civil conspiracy claims.**

In order to allege a claim for civil conspiracy, the plaintiff must plead that two or more people acted in a concerted action with the intention to accomplish an unlawful objective for the purpose of harming another, resulting in damages to the plaintiff. *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1249 (D. Nev. 2003), *quoting Collins v. Union Fed. Sav. & Loan Ass'n,* 9 Nev. 284, 662 P. 2d 610, 622 (1983). Civil conspiracy must include damages from an underlying tort. *Id.*

Courts in the Ninth Circuit determine the damages for the tort of civil conspiracy through the "overt acts doctrine." *Gibson v. U.S.*, 781 F.2d 1334, 1340 (9th Cir. 1986).  Under this doctrine, courts determine injury and damages to the plaintiff through overt acts, not from the continuance of the conspiracy. *Id.*, *quoting Kadar Corp v. Milbury*, 549 F. 2d 230, 234 (1st Cir. 1977).

By their own admission, Defendants Bernstein and Cox conspired in order to commit all of the acts referenced herein, and are therefore jointly and severally liable for the results of their co-conspirator's wrongs.  Defendant Cox refers to Bernstein as her "business partner" and even argues in her filings on his behalf, despite the fact that Bernstein has not yet made an appearance in this case.  In her Motion Requesting Plaintiff Inform Insurance Providers of Lawsuit, Cox states, "These blogs and connected posts took years to build, these domain names and connected blogs, this online media network took over $750,000 and 10 years to build, built by Pro Se Defendant / Pro Se Counter Plaintiff Crystal L. Cox and her Business Partner." (ECF #53 at 6).

Moreover, Bernstein has done nothing to deny his liability or to explain why five of the Infringing Domain Names were registered in his name. (See Exhibit **F,G**).  When Plaintiffs contacted Bernstein to warn him of the filing of the instant suit and to extend to him the opportunity to explain his involvement, Bernstein responded only "Please include me." (See Exhibit **F**).

The overt acts that led to Plaintiffs' damages were the concerted action on the part of both Defendants to register the personal names of Plaintiffs as domain names (Exhibit **E**) with the

objective to destroy Plaintiffs' reputations and harass and intimidate Plaintiffs and other family members in an effort to earn money from the registration of these domain names. Defendants sought to earn money from this registration, either from pay-per-click advertising and the sale of supplements resulting from the publicity rights associated with Plaintiffs' names (Exhibit **J**); from Plaintiffs paying Defendants a monthly fee to maintain these websites (Exhibit **H**); or from the sale of the domain names to Plaintiffs or a third party (Exhibit **K**).  As a result of these overt, concerted acts, Plaintiffs have suffered irreparable injury to their business, reputation and goodwill. Therefore, Plaintiffs are entitled to relief on their civil conspiracy claims.

**F.     Plaintiffs are entitled to Attorneys' Fees, Damages, and Permanent Injunctive Relief.**

1.     Attorneys' Fees Should Be Awarded When Infringment is Willful

In Lanham Act claims, including cybersquatting cases, attorneys' fees may be awarded where infringment is malicious, fraudulent, deliberate, or willful. *See* 15 U.S.C. § 1117(a); *Lindy Pen Co., Inc v. Bic Pen Corp.*, 982 F.2d 1400 (9th Cir. 1993).  In 1975, Congress amended the Lanham Act for the "express purpose of permitting the recovery of attorneys' fees 'in exceptional cases.'" *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400 (9th Cir. 1993), citing 15 U.S.C. § 1117; *see also* Senate Report No. 93-1400 93rd Congree, Second Session (1974).

An "exceptional case" occurs where the infringment can be characterized as malicious, fraudulent, deliberate, or willful. *Id. See also Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000).  If a court finds an infringer's actions to have been willful, district courts do not abuse their discretion in awarding attorney's fees. *Id.*  Furthermore, it is an abuse of discretion for the trial court to fail to award attorneys' fees when the infringer's conduct is willful. *See Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1276 (9th Cir. 1982) ("In light of PEI's well supported arguments and the trial court's finding that the defendants deliberately

[infringed], it is our opinion that the lower court abused its discretion by not considering such actions 'exceptional.'")

In this case, Defendant Bernstein deliberately chose to adopt Plaintiff Randazza's common law mark.  Randazza is a well-known attorney managing a nationally recognized First Amendment law firm.   Defendant did not choose to register the domains <marcjohnrandazza.com>, <marcjrandazza.com>,   <fuckmarcrandazza.com>,   <marcrandazzaisalyingasshole.com>,   and <marcrandazzasucks.com> by mere accident.  Defendant's conduct was a willful and deliberate attempt to capitalize on Plaintiffs' well-known services, reognizability, and to earn money as a result.

> 2.   <u>Information Required for Attorneys' Fees Pursuant to Local Rule 54-16</u>

Pursuant to Local Rule 54-16, Plaintiffs provide the following information:

> a.   *Itemization and description of the work performed*

The itemization and description of the work performed accompanies the Declaration of Ronald D. Green (attorney) ("Green Decl.") attached hereto as Exhibit **L** and incorporated herein by reference.

> b.   *Itemization of non-taxable costs sought as part of fee award:*

None.

> c.   *Nature of the case:*

This was an action for violation of invidual cyberpiracy protections under 15 U.S.C. § 8131; cybersquatting under 15 U.S.C. § 1125(d); right of publicity under Nev. R. Stat. 597.790(1)-(2); common law right of publicity; common law right of intrusion upon seclusion; and civil conspiracy.

/ /

/ /

d.   *Difficulty of this case:*

This case was moderately difficult.   The primary claims asserted were violation of individual cyberpiracy protections and cybersquatting.   Trademark law is considered a specialized area of law, and claims asserted under the ACPA are particularly difficult as this is a fairly new area of law.   Furthermore, the volumous and vexatious filings by Bernstein's co-conspirator, Cox, have unnecessarily multiplied the work required in the case.

e.   *Results obtained and amount involved:*

Plaintiffs obtained an entry of default that was favorable to Plaintiffs.   The ACPA provides for damages of up to $100,000.00 per domain name. *See* U.S.C. § 1117(d).

f.   *Time and Labor Required*

This case involved a considerable amount of time and labor.   Plaintiffs filed their Complaint.   They applied for and obtained a Temporary Restraining Order and Preliminary Injunction.   In the interim, Defendant Cox filed a number of extraneous motions to which Plaintiffs' counsel had to respond, and through which Defendant Cox claimed to be filing on Bernstein's behalf.   Finally, after Plaintiffs obtained an entry of Default against Defendant Bernstein, they prepared and filed the instant Motion.

g.   *Novelty and Difficulty of the Questions Involved:*

This case involved two claims under the ACPA: violation of individual cyberpiracy protections and cybersquatting.   As the statute is relatively new, it raised novel questions of law, particularly with regard to Section 8131.

h.   *Skill Requisite to Perform the Legal Services Properly*:

A moderate degree of skill was required to perform the legal services properly.   As stated above, trademark law, and in particular cybersquatting, is considered a specialized area of law requiring considerable knowledge and experience.

i.    *Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case:*

During the pendency of this action, Plaintiffs' counsel's firm was working at full capacity, which precluded its attorneys from performing other work.  Specifically, this case precluded Mr. Green from taking cases for which he would have received compensation.

j.    *The Customary Fee:*

Plaintiffs' counsel represented Plaintiffs pro bono while working on this case.  However, Ronald Green's normal rate is $400 an hour, and calculations of attorneys' fees should be based on his normal rate. Green Decl. at ¶ 8.

k.    *Whether to Fee is Fixed or Contigent*

Plaintiffs' counsel represented Plaintiffs pro bono for the litigation of this matter.

l.    *The Time Limitations Imposed by the Client or the Circumstances.*

Plaintiffs did not impose any time limitations.  Plaintiffs were being irreparably harmed by Defendants' registration and use of the domain names at issue and, therefore, Plaintiffs' counsel was required to act promptly.

m.    *The Experience, Reputation, and Ability of the Attorneys Involved.*

Randazza Legal Group has an excellent reputation within the legal community and the attorneys working on this case are highly skilled.  The lead attorney, Ronald D. Green, has worked extensively on cybersquatting and trademark infringement in Nevada's federal courts since June 2003. *See* Green Decl. at ¶ 4.  Mr. Green performed all necessary work on this file with the assistance of associate attorney J. Malcolm DeVoy IV, law clerk Laura Tucker, and paralegal Erika Dillon.  Mr. DeVoy has worked on cybersquatting litigation since he became a licensed attorney in June 2010.  Ms. Tucker has worked on cybersquatting litigation since she joined Randazza Legal Group in November 2011.  Ms. Dillon has worked on cybersquatting litigation since August 2011, prior to joining Randazza Legal Group.

n.    *The Undesirability of this Case, if Any:*

Several aspects of Defendants' behavior in this case can be characterized as undesirable. Defendants have flooded the Court's docket with multiple impertinent filings and hundreds of exhibits.   Moreover, Plaintiffs' counsel has been named in Defendant Cox's Counterclaim (in which Cox makes claims in Defendant Bernstein's name) and also became a target of Defendants' ire on their various websites.

o.    *The Nature and Length of the Professional Relationship with the Client:*

Plaintiff Marc Randazza is the managing partner of Randazza Legal Group, where Mr. Green is employed as a partner.

p.    *Award in Similar Cases*

Plaintiffs' counsel does not know whether the award would be similar to the awards in other cases.   Regarding attorneys' fees, Plaintiffs' counsel is representing Plaintiffs pro bono.

3.    The Court should award attorneys' fees in the amount of $23,610.00.

This Court should enter an award of attorneys' fees in favor of Plaintiffs in the amount of $23,175.00. *See* Green Decl. Exhibit 1.  Plaintiffs are not asking for an award on the extensive time billed on this case by law clerk Tucker.  This Court should also enter an award of $435.00 for costs incurred by Plaintiffs.  Plaintiffs would not have incurred these fees and costs but for the bad faith intent of Defendant Bernstein to profit from Plaintiffs' good will through the use of their common law marks and personal names.   Consequently, the Court should award Plaintiffs $23,610.00 in attorneys' fees and costs.

4.    Damages

Defendants' regsitration and use of domain names containing Plaintiffs' personal names and common law trademark was calculated with the intent to profit from their registration. Defendant Bernstein's intentional and wrongful conduct requires Plaintiffs to incur costs necessary

to restore Plaintiffs' reputation.  Moreover, the ACPA permits Plaintiffs to elect to receive statutory damages.

It is difficult to ascertain the number of clients and members of the legal community who were searching for Plaintiffs' website and who were diverted to Defendants' websites after either typing in any of the Infringing Domain Names or performing a search for Plaintiffs' name on search engine websites.  Under the ACPA, this Court may award damages of not less than $1,000 and not more than $100,000 <u>per domain name</u> for cybersquatting:

> In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before the final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in an amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

15 U.S.C. §1117(d).

Competent courts in several jurisdictions have awarded statutory damages pursuant to 15 U.S.C. §1117(d) to plaintiffs prevailing on ACPA claims.  *See E. & J. Gallo Winger v. Spider Webs Ltd.*, 286 F.3d 270, 278 (5th Cir. 2002) (upholding statutory damage award of $25,000); *Shields v. Zuccarini*, 254 F.3d 476 (3d Cir. 2001) (awarding $50,000 in statutory damages); *International Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F.Supp.2d 467 (E.D.Va. 2002) (awarding $51,000 in statutory damages); *Victoria's Cyber Secret Ltd. Partnership v. V Secret Catalogue, Inc.,* 161 F.Supp.2d 1339, (S.D. Fla. 2001) (awarding $40,000 in statutory damages; *Aztar Corp. v. MGM Casino*, 2001 WL 939070, (E.D.Va. 2001) (awarding $100,000 in statutory damages); *Electronics Boutique Holdings Corp. v. Zuccarini*, 2000 WL 1622760 (E.D.Pa. 2000) (awarding $100,000 in statutory damages).  But see *Morrison & Foerster LLP v. Wick*, 94 F. Supp.2d 1125 (D. Colo. 2000) (holding plaintiff not entitled to statutory damages because plaintiff did not "elect" for statutory damages).  This Court has previously awarded statutory damages and attorneys' fees under the ACPA to resort hotel casinos due to the actions of cybersquatters.  *See Mirage Resorts, Inc. v. McClellan*, Case No. CV-

S-00-1275-LDG (LRL) (awarding $100,000 in statutory damages in addition to attorneys' fees and costs).

Defendant Bernstein's conduct of intentionally adopting and using Plaintiffs' personal names and common law trademark has been egregious, and this Court should assess the maximum in statutory damages.  Plaintiff Marc Randazza has spent several years providing legal services using his personal name through Randazza Legal Group. Exhibit **A**.  By using Plaintiffs' personal names and common law trademarks to harass and intimidate Plaintiffs with the specific intention to profit from that registration, Defendant Bernstein clearly intended to profit from the goodwill of Plaintiffs.  Defendant Bernstein ignored Plaintiffs' requests to cease using the domain names and to transfer the registration of the domain names, even after a WIPO decision finding Plaintiffs to be the proper owners, thereby requiring Plaintiffs to obtain judicial relief.  This Court has the opportunity to send a clear message that this type of extortionate behavior will not be tolerated and will be enforced to the maximum extent provided by law. "[T]he court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima."  Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984).  Further, the trial court's award of statutory damages will be overturned only for abuse of discretion. See Russell v. Price, 612 F.2d 1123, 1131-32 (9th Cir. 1979).  Accordingly, Plaintiffs request that the Court award statutory damages in the amount of $100,000 per domain name, which would have the effect of deterring Defendant Bernstein from his unlawful conduct.

5.     Plaintiffs are entitled to Permanent Injunctive Relief

The ACPA authorizes the Court to order the transfer of the domain name to the owner of the mark. 15 U.S.C. § 1125(d)(1)(C).  Furthermore, if the Court finds a defendant violated a plaintiff's individual cyberpiracy protections, the Court may order the transfer of the domain name to the plaintiff.  Accordingly, as the common law trademark owner of the mark in dispute, and as the personal name "Marc Randazza" refers to Plaintiff Marc Randazza, Plaintiffs request transfer of the domain names to them.  The specific relief  is set forth in Section III below.

//

**III. Conclusion**

Plaintiffs pray for the following relief:

1.     The Court permanently enjoin Defendant Bernstein from using the Infringing Domain Names, that he be enjoined from registering personal names or common law marks of Plaintiffs, and that Bernstein be ordered to file with the Court and serve on Plaintiffs within thirty (30) days after the service on Defendants of such injunction, or such extended period as the Court may direct, a report in writing under oath setting forth in detail the manner and form in which he has complied with the injunction;

2.     That the Registrars of the Infringing Domain Names, GoDaddy.com, be ordered to permanently transfer the domain names <fuckmarcrandazza.com>, <marcrandazzaisalyingasshole.com>, and <marcrandazzasucks.com> to Plaintiffs pursuant to the Plaintiffs in order to cease the continued harassment and to cease the continued violation of Randazza's rights of publicity, right to privacy, and other rights enumerated herein which may not specifically be remedied by 15 USC 8131(2);  or 15 USC § 1175(d)(1)(c);

3.     That Defendant Bernstein release to Plaintiffs information on any and all domain names that incorporate the Plaintiffs' name;

4.     That Plaintiffs receive and recover from Defendant Bernstein all damages sustained;

5.     That Plaintiffs receive and recover from Defendant Bernstein statutory damages in the amount of $100,000 per domain name, for a total of $500,000, which is the maximum allowed by 15 U.S.C. § 1117(d); this maximum amount is supported by Defendant Bernstein's extreme bad faith and conspiratorial and fraudulent activities.

6.     That the Court order Defendant Bernstein to pay Plaintiffs reasonable costs, expenses, and attorneys' fees incurred in prosecuting this action, pursuant to 15 U.S.C. § 1116; 15 U.S.C. 8131(2); and 15 U.S.C. § 1117(a);

7.     That Plaintiffs be awarded pre- and post-judgment interest to the maximum extent allowed by law; and

8.     That Plaintiffs be awarded such and other further relief to which they may be justly entitled.

9.     Injunctive relief that Defendant Bernstein be enjoined from owning, registering, or operating any domains incorporating the "Randazza" name, whether they be direct domain registration or through the use of any blogging platform, and that such injunctive relief contemplate the Defendant using proxies, agents, or third parties to evade this relief, and specifically enjoins the Defendant from using third parties to do that which the injunction prevents them from doing directly.

Dated: January 29, 2013                     Respectfully submitted,

                                            /s/Ronald D. Green
                                            Ronald D. Green, NV Bar #7360
                                            Randazza Legal Group
                                            6525 W. Warm Springs Road, Suite 100
                                            Las Vegas, NV 89118
                                            888-667-1113; 305-437-7662 fax
                                            ecf@randazza.com

1

**CERTIFICATE OF SERVICE**

2

3          Pursuant to the Federal Rules of Civil Procedure 5(b), I hereby certify that the foregoing

4    document was filed using this Court's CM/ECF system on January 29, 2013.

5    Dated: January 29, 2013                              Respectfully Submitted,

6

7

8                                                          Laura M. Tucker
                                                           Law Clerk
9                                                          ecf@randazza.com
                                                           Randazza Legal Group
10                                                         6525 W. Warm Springs Rd., Suite 100
                                                           Las Vegas, NV 89118
11                                                         (888) 667-1113
                                                           (305) 437-7662 fax
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28