Ronald D. Green, NV Bar #7360
Randazza Legal Group
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 fax
ecf@randazza.com

Attorney for Plaintiffs
MARC J. RANDAZZA, JENNIFER RANDAZZA, and NATALIA RANDAZZA

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARC J. RANDAZZA, an individual, JENNIFER RANDAZZA, an individual, and NATALIA RANDAZZA, a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>CRYSTAL COX, an individual, and ELIOT BERNSTEIN, an individual,<br><br>Defendants. | Case No. 2:12-cv-02040<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT COX'S MOTION TO PROCEED IN FORMA PAUPERIS** |

Plaintiffs Marc J. Randazza, Jennifer Randazza, and Natalia Randazza, through counsel, hereby submit their Opposition to Defendant Crystal Cox's Motion to Proceed *In Forma Pauperis* (ECF 70). Cox's motion, though filed with the Court as a notice, is deficient under 28 U.S.C. § 1915 and this Court's local rules, and should be denied.

**I.    Argument**

Cox's motion to proceed *in forma pauperis* should be denied on several grounds. First, she has failed to follow the requirements of 28 U.S.C. § 1915 that would demonstrate poverty to the Court. Second, evidence shows that Cox continues to maintain more than 1,200 blogs, with annual domain name registration fees of approximately $10 each, and has continued to register new domain names since this litigation commenced. In sum, Cox has not shown that she is incapable of

1

paying the costs of pursuing her counterclaim; in fact, she likely is perfectly capable of doing so, but wishes to shift that burden onto the Court. Her petition to enlist the Court to effect service for her, so that she may save herself the inconvenience of bearing the costs of prosecuting a counterclaim she filed against dozens of unrelated counter-defendants scattered across the nation, should be denied.

### A. Cox Failed to Comply With the Requirements of 28 U.S.C. § 1915.

Applications to proceed *in forma pauperis* are governed by 28 U.S.C. § 1915. Much like qualifying for the services of the Federal Public Defenders, parties seeking to proceed *in forma pauperis* are required to submit documentation of their assets, and demonstrate an inability to prepay fees and costs, or give security for them. *Brown-Younger v. Mosen*, Case No. 2:11-cv-00554, *2011 WL 5240371* at *1 (D. Nev. Nov. 1, 2011). In particular, section 1915(a) requires a movant to provide a statement of "all assets," demonstrating that he or she is "unable" to pay the costs and fees of litigation "or give security therefor." Additionally, the affidavit must "state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." *Id*. Cox has not submitted any affidavit to this Court, and thus failed to satisfy this dispositive prong of section 1915.

The only evidence of penury Cox submits for the record is an unsworn assertion that a judgment for $2.5 million has been entered against her. Ironically, that judgment arises from *Obsidian Finance Group LLC v. Cox*, Case No. 3:11-cv-57 (D. Ore. 2011), where she was held liable for the same exact conduct underlying this lawsuit. The only substantive difference between that case and this one is that the *Obsidian* plaintiffs sued for defamation, while Plaintiffs in this action pursue trademark, cyberpiracy, and right of publicity actions. Cox's efforts in the Oregon court, including posting a Rule 62 *supersedeas* bond, have prevented the *Obsidian* plaintiffs from executing their judgment pending Cox's appeal – ensuring that the $2.5 million judgment has no effect on her finances. Case No. 3:11-cv-57 (ECF 142, 152, 153) (D. Ore. 2012-2013).

### B. Cox's Motion Violates LSR 1-7 and is Premature.

The Local Rules for Special Proceedings within this District allow the Court to limit an applicant's use of *in forma pauperis* upon finding that he or she has abused the privilege. LSR 1-7.

As is clear from the record in this case, Cox's intent is to recruit the United States Marshals to serve a wide range of defendants, from Apple to National Public Radio to Proskauer Rose LLP to Plaintiffs' counsel to the Judge herself, so that they may be faced with an incomprehensible counterclaim and forced to bear the costs of litigation – namely responding to Cox's high volume of unusual "notices" and motions for unavailable relief (ECF 22, 47, 53, 59, 60, 67; *see* ECF 27, 69).

For reasons fully explained in Plaintiffs' pending Motion to Strike and Second Motion to Strike (ECF 48, 63), Cox's amended counterclaim should be stricken. Expending the United States Marshals' resources to serve dozens of defendants nationwide would be imprudent, as the counterclaim should be stricken in its entirety. Furthermore, based on Cox's filings, it is clear that she is using her submissions to the Court in the same manner as her websites: Making wild allegations that will stop only when she has received a suitable payment – within this context, settlements from well-heeled companies such as Apple, Intel, and others.[1] (*See* ECF 24, 53, 54, 57, 59, 60, 62, 66) Using the United States Marshals to further this scheme by serving the defendants

---

[1] Cox has previously stated, erroneously, that her motives to proceed *pro se* in district court actions was to ensure that all of her statements would be protected from an action for defamation under the litigation privilege:

> "I recommend that everyone go pro se and lawyer up for the appeal, this way you get to introduce more elements into the case and others pick up the case and whatever you right [sic] in your motions to the court is then under 'Absolute Privilege' as a matter of law and can't be considered defamation."

Curtis Cartier, *Comment of the Day: Why 'Non-Journalist' Blogger Crystal Cox Didn't Get a Lawyer*, Seattle Weekly (Dec. 7, 2011), http://blogs.seattleweekly.com/dailyweekly/2011/12/comment_of_the_day_why_non-jou.php (*last accessed* Feb. 7, 2013). This is consistent with Cox's pattern of making false, harassing statements *ad nauseam*, and then seeking payment for halting the damage that she herself caused (ECF 2-10, 28-1, 28-2). *Obsidian*, 2012 WL 1065484 at *7 (D. Ore. Mar. 27, 2012) ("the uncontroverted evidence at trial was that after receiving a demand to stop posting what plaintiffs believed to be false and defamatory material on several websites, including allegations that Padrick had committed tax fraud, defendant offered 'PR,' 'search engine management,' and online reputation repair services to Obsidian Finance, for a price of $2,500 per month. [] The suggestion was that defendant offered to repair the very damage she caused for a small but tasteful monthly fee").

as Cox requests would be an inappropriate use of their services, and prejudicial to parties in legitimate need of assistance when proceeding *in forma pauperis*.

### C. Cox's Own Actions and Admissions Reveal Her Financial Ability.

Cox has admitted to the Court that she owns more than 1,200 blogs (ECF 29 at 3 ("I, Crystal L. Cox […] have over 1200 blogs[.]")). If Cox owns the domain names for each blog, then she is incurring approximately $12,000 per year in domain name registrations alone. (Each domain name costs approximately $10 per year to maintain. *See* GoDaddy.com, http://www.godaddy.com/domains/search.aspx?ci=78118 (last accessed Feb. 7, 2013).) During this litigation, Cox has purchased still more domain names wholly incorporating individuals' full names, including <MarkVena.com> (registered Dec. 30, 2012), <AriBass.com> (registered Dec. 30, 2012), and <JosephRakofsky.com> (registered Feb. 2, 2013). These represent only the domain names that Plaintiffs know of, and there likely are more. As previously noted, Cox posted a *supersedeas* bond in the Obsidian Finance litigation during 2013 as well. *Obsidian*, Case No. 3:11-cv-57 (ECF 153) (D. Ore. 2013).

The pattern of Cox's conduct is clear, and reveals why she did not file an affidavit declaring her assets with the Court: She *can* pay for her own litigation, but does not *wish* to do so. Rather than fund her Counterclaim, Cox prefers to devote her resources to buying domain names that wholly incorporate individuals' full names in order to harass an ever-expanding universe of unrelated people. Based on the foregoing, it can only be surmised that Cox has sufficient financial resources to pursue her Counterclaim if she wishes to do so. It is not the role of the Court or United States Marshals to indulge Cox's comfort or convenience when she merely would prefer not to devote sufficient resources to the litigation of her case.

### II. Conclusion

Cox's motion to proceed *in forma pauperis* should be denied. Cox has failed to comply with the unambiguous requirements of 28 U.S.C. § 1915(a), precluding the Court from granting her motion. Even if Cox's motion were properly before the Court, her "Counterclaim," such as it is, should be stricken. If Cox's Amended Counterclaim is not stricken in its entirety, then Cox's request has still been made for an improper purpose. Cox's conduct during this litigation belies her

claims of poverty, and by all appearances she is capable of footing the costs of her Counterclaim. Cox's wants should not be conflated with needs, and her motion should properly be denied.

Dated: February 7, 2013              Respectfully submitted,

/s/Ronald D. Green
Ronald D. Green, NV Bar #7360
Randazza Legal Group
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118
888-667-1113; 305-437-7662 fax
ecf@randazza.com

# CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure 5(b), I hereby certify that the foregoing document was filed using this Court's CM/ECF system on February 7, 2013.

Dated: February 7, 2013

Respectfully Submitted,

Erika Dillon, Paralegal
ecf@randazza.com
Randazza Legal Group
6525 W. Warm Springs Rd., Suite 100
Las Vegas, NV 89118
(888) 667-1113
(305) 437-7662 fax