Ronald D. Green, NV Bar #7360
Randazza Legal Group
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 fax
ecf@randazza.com

Attorney for Plaintiffs
MARC J. RANDAZZA, JENNIFER RANDAZZA, AND NATALIA RANDAZZA

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARC J. RANDAZZA, an individual, JENNIFER RANDAZZA, an individual, and NATALIA RANDAZZA, a minor, | Case No. 2:12-cv-02040 |
| | **MOTION FOR SUMMARY JUDGMENT** |
| Plaintiffs, | |
| vs. | |
| CRYSTAL COX, an individual, and ELIOT BERNSTEIN, an individual, | |
| Defendants. | |

Plaintiffs Marc J. Randazza, Jennifer Randazza, and Natalia Randazza respectfully move the Court for summary judgment on all claims raised in Plaintiffs' Complaint ("Complaint"). No genuine issue of material fact is in dispute. Judgment may therefore be entered purely as a matter of law in accordance with Fed. R. Civ. P. 56.

This motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure and is based upon the attached Memorandum of Points and Authorities, the papers and pleadings on file in this action, and any oral argument permitted by this Court.

/ /

/ /

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.     Facts**

   **A. Introduction**

   This lawsuit is about Defendants' campaign of bad faith harassment against a Las Vegas family through Google bombing and cyber-extortion. (ECF #41 at 7).  Defendants Crystal L. Cox ("Cox") and Eliot Bernstein ("Bernstein") registered the Infringing Domain Names (as defined in ECF #1 at 6-7) in an attempt to extort Plaintiffs and in violation of the Anti-cybersquatting Consumer Protection Act (the "ACPA") (15 U.S.C. § 1125(d)), individual cyberpiracy protections (15 U.S.C. § 8131), and rights of publicity under the laws of the State of Nevada Plaintiffs, as well raised common law clams of intrusion upon seclusion and publicity and civil conspiracy. Plaintiffs' claims arise from Defendants' registration and use of Plaintiffs' personal names as Internet domain names.  Despite the case's early stage, it is already ripe for summary judgment.[1]

   Specifically, Cox registered Plaintiff Randazza's personal name, under which he has conducted business at his well-known law firm, in multiple domain names and attempted to extort Plaintiff, as is her demonstrated modus operandi (*See* "Why an Investment Firm was Awarded $2.5 Million After Being Defamed by Blogger, attached as **Exhibit B**)[2] by offering her "reputation management services" in order to "fix" Randazza's business reputation that she, herself, harmed.[3] Plaintiff Jennifer Randazza is a private citizen and Plaintiff Marc Randazza's wife. (*See* Declaration of Jennifer Randazza ¶ 1 "Jennifer Decl.")  Natalia Randazza is their four-year-old

---

[1]  Defendant Bernstein failed to respond to the Complaint despite asking to be named as a Defendant (**Exhibit A**) and being properly served on December 15, 2013.

[2]  Another District Judge, Marco Hernandez of the District of Oregon, euphemistically described Cox's scheme as repairing the damage she had caused for a "tasteful" fee. *Obsidian Finance Group LLC v. Cox*, 2012 WL 1065484 (D. Ore. 2012).

[3]  The record reflects that Cox also made a similar offer to another victim, Martin Cain, CEO of Dylan Energy, LLC. (See Cox E-mail to Martin Cain, attached as **Exhibit C**).

1  daughter. (*See* ECF #1 at 6 ¶¶ 17-19; Jennifer Decl. ¶ 1; Declaration of Marc J. Randazza ¶8

2  "Randazza Decl.").

3       Defendants registered and used Infringing Domain Names and Plaintiffs' personal names in

4  bad faith.  (*See* WhoIs for All Infringing Domain Names, **Exhibit K**). Plaintiff Marc Randazza's

5  personal name serves as a common law mark.  Defendants are attempting to use Plaintiff

6  Randazza's personal name and the names of his family members in an attempt to extort money

7  from Plaintiffs and an admitted scheme to engage in witness intimidation in violation of 15 U.S.C.

8  § 1512.  Furthermore, Defendants have made commercial use of Plaintiffs' names through the use

9  of pay-per-click advertising. Plaintiffs seek summary judgment in their favor, including an order

10 requiring the transfer of the Infringing Domain Names to Plaintiffs and enjoining Defendants from

11 further similar actions.

12

13 **II.    STATEMENT OF RELEVANT FACTS**

14   **A.    Introduction and nature of action.**

15       Since January 16, 2012, Defendant Crystal Cox ("Cox") has targeted Plaintiff Randazza, his

16 wife, Jennifer Randazza, and their young daughter, Natalia Randazza, in an online harassment

17 campaign. (*See* **Exhibits E and K**)[4]  To date, Ms. Cox has obsessively registered dozens of domain

18 names containing Plaintiffs' names or surname in an effort to extort and harass Plaintiffs and

19 capitalize upon and damage the goodwill that Plaintiff Marc Randazza has in his name. (See ECF #

20 1 ¶¶1-9; *See also* **Exhibit K**)  However, Ms. Cox's harassment did not stop with Plaintiff Marc

21 Randazza, but extended to his wife, Jennifer Randazza, and even their daughter, Natalia Randazza,

22 then only three years old. (*See* WhoIs Registrations of <jenniferrandazza.com> and

23 <nataliarandazza.com>, attached as **Exhibit E**)

24

25

26

27 [4] On November 19, 2012, Cox made it clear that the campaign would now expand to Marc

28 Randazza's sister. (**Exhibit D**)

1      Plaintiffs are not the only victims of the Cox scheme.  Ms. Cox has targeted several dozen

2   other victims, registering their full names as domain names and falsely accusing them of any

3   manner of wrongdoings.  Just as she has done with Plaintiff Marc Randazza, Cox then offers her

4   "reputation services" to the people whose names she has registered.  See *Obsidian Finance Group,*

5   *LLC v. Cox*, 2012 WL 1065484 (D. Ore 2012) ("[D]efendant offered 'PR,' 'search engine

6   management,' and online reputation repair services to Obsidian Finance, for a price of $2,500 per

7   month ... The suggestion was that defendant offered to repair the very damage she caused for a

8   small but tasteful monthly fee"); *see also* **Exhibit C** (email offering domain names to Dylan

9   Energy CEO Martin Cain).   Peter Michaelson, arbitration panelist for the World Intellectual

10  Property Organization, made even more cutting observations about Cox's business practices:

11          Specifically, once [Randazza] declined her "reputation management" services,
            [Cox] then registered domain names that contained not only the Complainant's
12          surname, but also the personal names of his wife and three year old daughter, and
            then included falsehoods about the Complainant on her websites to which the
13          domain names resolved.  [Cox] would then eliminate such sites, and hence the
            ensuing injury to the Complainant's reputation, only if the Complainant would
14          purchase her "reputation management" services. Further, [Cox] *repeatedly engaged
            in the same general type of extortionate conduct by offering her "reputation
15          management" services to others, including as her targets various business people
            and third-party attorneys*, thus reflecting a pattern of such conduct. (emphasis
16          added)

17

18          [Cox's] objective in both registering and using the disputed names was apparently
            to engage in a rather sinister and tenacious scheme to extort money from the
19          Complainant.

20  *Marc J. Randazza v. Reverend Crystal Cox, Eliot Bernstein*, WIPO Case No. D2012-1525 (Nov.

21  30, 2012), attached as **Exhibit F** (emphasis added).  If Cox's targets refuse her extortion, she

22  continues her campaign to ruin their reputations online, not only by posting defamatory rants about

23  them, but by then repeating the defamatory rants on site after site, often on domain names that

24  wholly include their legal names or trademarks, and interlinking all of her many sites in order to

25  artificially inflate the Google rankings on each site. (*See* Underlying Code for Infringing Domain

26  Names, attached as **Exhibit P**).

27          While Plaintiffs are not Cox's sole victims, they still have important rights that Defendants

28  are violating.  Plaintiff Randazza uses his name in connection with the offering of legal services.

Through Marc J. Randazza PA, d/b/a Randazza Legal Group, Plaintiff Randazza is a nationally recognized attorney and continues to use his name to offer his business services.  (*See* Curriculum Vitae of Marc J. Randazza, attached as **Exhibit I**; Legal Satyricon information page, attached as **Exhibit J;** Randazza Decl. ¶¶ 1-5).  Cox has not only used the Plaintiff's brand name in commerce through her network of pay-per-click sites (**Exhibit G**), but has attempted to ransom it by registering domain name after domain name wholly including Plaintiff's mark, filling those sites with falsehoods and absurdity, and then offering to remediate the damage she has caused as a "Search Engine Reputation Manager." (**Exhibit  F**;  **Exhibit H**, Cox e-mail offering "reputation management services" to Randazza; *Obsidian Finance Group LLC v. Cox*, 2012 WL 1065484 (D. Ore. 2012))

**B.**     **The Actions Leading to the UDRP Action and the UDRP Action**

Randazza's name functions as a trademark.  Randazza is an individual, an attorney, a legal author, and a resident of Clark County, Nevada.  (ECF #1 ¶23;Randazza Decl. ¶ 1). Plaintiff is the owner and managing partner of RLG, with offices located in Nevada, Florida, and Arizona. (ECF #1 ¶ 23; *Id.*).  Since 2008, RLG has done business using Marc Randazza's personal name as a source identifier for its services. (ECF #1 ¶ 23).

In addition to owning and operating his own law firm, Plaintiff regularly appears in all forms of news media as an author and legal commentator. (*See* Curriculum Vitae of Marc J. Randazza, attached as **Exhibit I**; Randazza Decl. ¶¶ 3-4).  He also regularly publishes under his byline at his blog, The Legal Satyricon, which is one of the most well-known law blogs in the country. (*See* Legal Satyricon About page, attached as **Exhibit J;** *see also* Legal Satyricon, listed as Top Law Blawg 2012, attached as **Exhibit R**; Randazza Decl. ¶ 4).  Plaintiff regularly speaks on panels about the First Amendment and intellectual property at conferences nationwide. (See **Exhibit I**; Randazza Decl. ¶ 2).

Plaintiff Jennifer Randazza is the wife of Plaintiff Marc Randazza. (ECF #1 ¶ 18; Jennifer Decl. ¶ 1).  Plaintiff Natalia Randazza is their now four-year-old daughter. (ECF # 1 ¶ 19; Jennifer

Decl. ¶ 1; Randazza Decl. ¶ 8).  Both Jennifer and Natalia Randazza are private people who were only targeted because of their relationship to Plaintiff Randazza. (ECF # ¶ 18-19; Jennifer Decl. ¶ 1).

Defendant Crystal Cox registered the following Infringing Domain Names, some of which were listed under proxy, Defendant Eliot Bernstein:

a.  <marcrandazza.me>

b.  <marcrandazza.com>

c.  <marcjrandazza.com>

d.  <fuckmarcrandazza.com>

e.  <marcjohnrandazza.com>

f.  <marcrandazzasucks.com>

g.  <marcrandazzaisalyingasshole.com>

h.  <marcrandazza.biz>

i.  <marcrandazza.info>

j.  <marcrandazza.mobi>

k.  <marcrandazzaparody.com>

l.  <exposemarcrandazza.com>

m.  <randazzalegalgroupsucks.com>

n.  <trollmarcrandazza.com>

o.  <hypocritemarcrandazza.com>

p.  <crystalcoxmarcrandazza.com>

q.  <marcjohnrandazza.blogspot.com>

r.  <randazzalegalgroup.blogspot.com>

s.  <marcrandazzaviolatedmylegalrights.blogspot.com>

t.  <markrandazza.blogspot.com>

u.  <marcrandazza.blogspot.com>

v.  <jenniferrandazza.blogspot.com>

w.  <marcrandazzafreespeech.blogspot.com>

x.  <marcrandazzaegomaniac.blogspot.com>

y.  <marcjrandazza-lawyer.blogspot.com>

z.  <marc-randazza.blogspot.com>

aa. <marcrandazzawomensrights.blogspot.com>

bb. <marcrandazza-asshole.blogspot.com>

cc. <marcrandazzatips.blogspot.com>

dd. <marcrandazzaabovethelaw.blogspot.com>

ee. <marcrandazzaliedaboutcrystalcox.blogspot.com>

(See WhoIs Registrations for Infringing Domain Names, attached as **Exhibit K**; *see also* List of Infringing Domain Names, attached as **Exhibit L**). Cox registered the Infringing Domain Names with the intent to capitalize on the use of Plaintiff Randazza's personal name, extort money from Plaintiffs, and engage witness intimidation. (**Exhibit H**; Blog post asking for $5 million for sale of <marcrandazza.me>, attached as **Exhibit M**; ECF #12-4 video from Cox admitting witness intimidation, a relevant transcript of which is attached as **Exhibit N**).  In fact, the profit in Ms. Cox's endeavor flows directly from her extortion scheme.

Between December 10, 2011 and September 20, 2012, Defendant Cox registered the Infringing Domain Names through registrar GoDaddy LLC ("GoDaddy"). (**Exhibit K**)   Cox registered some of the Infringing Domain Names through Defendant Bernstein as a proxy and co-conspirator. (**Exhibit K**)   Bernstein is a knowing and voluntary participant in Cox's enterprise.[5] (ECF # 1 ¶22; **Exhibit A; Exhibit K**). Cox registered the Infringing Domain Names with the intent

---

[5] Bernstein acts as Cox's proxy because Cox is currently under a $2.5 million defamation judgment obtained by one of her earlier victims. (See **Exhibit B**). In a December 2011 e-mail to Randazza, Cox acknowledged that ownership of her domain names was a "different story" because of Obsidian Finance's judgment against her. (**Exhibit H**).  Around this time, Cox transferred ownership of these domain names to Bernstein, while controlling their ownership, in a fraudulent transfer intended to deprive Obsidian Finance from collecting Cox's only known assets – her domain names – in satisfaction of its judgment.

to capitalize on Plaintiff Randazza's personal name, of which Plaintiff Randazza has legitimate common law trademark rights. (ECF #1 ¶ 27; **Exhibit I; Exhibit J**).

On December 10, 2011, Crystal Cox registered <marcrandazza.com> in the publicly available Whois information. (*See* **Exhibit K**).  On January 16, 2012, Cox sent an email to Plaintiff stating that she had purchased his personal name as a domain name. (*See* **Exhibit H**).  She then asked Plaintiff to purchase her "reputation management services" in an attempt to extort money from Plaintiff. (*See* **Exhibit H**).  This is her modus operandi. See *Obsidian Finance Group, LLC v. Cox*, 2012 WL 1065484 (D. Ore 2012).

Defendant Cox continued to register several dozen more domain names and registered dozens of Blogger accounts throughout the next several months, all of which contain Plaintiff's personal name, the name of his law firm, Randazza Legal Group, or his family members' names. (*See* **Exhibits K, L**).  Bernstein is a willing co-conspirator in this action. (ECF # 1 ¶22; **Exhibit A; Exhibit K**).

**C.    Defendants' use of the Infringing Domain Names.**

Defendant Cox uses the Infringing Domain Names to harass, intimidate, and extort Plaintiffs.  Both the United States District Court for the District of Oregon and a WIPO arbitration panel have reached this inescapable conclusion about Cox's distinctive, obsessive, and bad faith conduct. **Exhibit F**; *Obsidian Finance Group, LLC v. Cox*, 2012 WL 1065484 (D. Ore 2012).  Cox has no legitimate reason to own 32 (and likely more) domain names incorporating Plaintiff Randazza's name and the names of his family members.   Prior to the injunction against Defendants, Cox's websites contained material she used in her extortion scheme against Plaintiff Randazza, as well as pay-per-click advertisements for questionable "supplements." (See ECF #24 at 42, in which Cox states she "makes a living online marketing nutritional supplements").  The Infringing Domain Names seemed to flip-flop between this content and serving as GoDaddy park

1   pages containing pay-per-click advertisements. (**Exhibit G**). Furthermore, Defendant Cox claims to

2   be "very good" at getting her websites to appear at the top of search results. See *Obsidian Finance*

3   *Group, LLC v. Cox*, 2012 WL 1065484 (D. Ore 2012).[6]  Of course, that is the point—pay Ms. Cox

4   or suffer the consequences.

5       Defendant Cox admits that she originally registered the Infringing Domain Names in an

6   attempt to harass and extort Plaintiff Randazza.  **Exhibit N**.  Specifically, Cox said she hoped to

7   intimidate Plaintiff Randazza to keep him from giving a testimony in the matter of *Obsidian*

8   *Finance Group, LLC v. Cox* (See Cox's blog post about events, attached as **Exhibit O**).  In a video

9   Cox recorded of herself and uploaded to the popular video-sharing site <youtube.com> on or

10  around April 3, 2012, she admitted that the reason she purchased many domain names fully

11  incorporating Randazza's name was to prevent him from providing deposition testimony in the

12  *Obsidian Finance Group LLC v. Cox* case. (ECF # 12-4; **Exhibit N** at 10:20 - 12:20)

13  Triumphantly, Cox observed that her tactics "worked," and successfully kept Randazza from

14  providing sworn testimony in a pending federal case. (*Id*.)  In addition, Cox has asked Plaintiff

15  Randazza to pay her to maintain his online reputation, which she herself has sought to destroy

16  through search engine optimization and link spamming techniques.[7]  On or about September 19,

17  2012, Defendant Cox advertised on her blog that the Infringing Domain Name <marcrandazza.me>

18  was for sale for $5 million. (See **Exhibit M**)  The post contained a link to the park page of the site,

19  and Defendant Cox is the author of the post and the registrant of <marcrandazza.me>. (*Id.*)

---

[6] Of course, this "very good" technique is simple.  Google considers pages to have importance based on how many other sites link to them.  Organically and honestly, this results in the best content rising to the top of the rankings.  Cox simply eliminates the third parties, linking hundreds of her own sites to one another, creating a closed extortion machine.

[7] Link spamming refers to the practice often used by those attempting to manipulate search engine results in which the content of the website links to other pages for a reason other than that of merit. Defendant Cox links to her other websites in her blog posts, which causes her websites to appear higher in search engine results.  *See* **Exhibit P**.

Defendant Cox will not stop until she is satisfied that she has successfully intimidated Plaintiff or until he pays the requested ransom. (See Crystal Cox's blog claiming she will register domains "eternally," attached as **Exhibit Q**). She has stated that she will continue to register "hundreds more monthly, eternally," until she can be stopped. (*See* **Exhibit Q**).  Plaintiffs already have suffered economic loss, and will continue to do so until the Infringing Domain Names are rightfully transferred to them.

## III.   LEGAL ARGUMENT

### A.  Legal Standard for Summary Judgment

A party is entitled to summary judgment as a matter of law when the party can demonstrate that there is no genuine issue as to any material fact.  *See* Fed. R. Civ. P. 56(c)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* issue of *material* fact."). Moreover, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

If the moving party seeks summary judgment with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative, admissible evidence.  By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence supporting the claim or defense.  See *Celotex*, 477 at 325.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

1.   Plaintiff Randazza succeeds on the merits of his claim under the ACPA.

Based on the evidence included in the record, Plaintiff Randazza succeeds on the merits of his claim under the ACPA.  That Act provides, in pertinent part:

[A] person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person –
(i)     has a **bad faith intent** to profit from that mark . . .; and
(ii)    registers, traffics in, or uses a domain name that –
(I)      in the case of a mark that is **distinctive** at the time of the registration of the domain name, is **identical or confusingly similar** to that mark; [or]
(II)     in the case of a famous mark that is **famous** at the time of registration of the domain name, is **identical or confusingly similar** to that mark…

15 U.S.C. § 1125(d)(1)(A) (emphasis added).  Thus, Defendants are liable under the ACPA if they had a bad faith intent to profit from registering, trafficking in, or using as a domain name a mark that is either identical or confusingly similar to a distinctive mark, such as Plaintiff's personal name.

Courts consider several factors in assessing whether a defendant has the requisite "bad faith intent" to profit from a mark, as defined by the ACPA, including but not limited to:

(I)      the trademark or other intellectual property rights of the person, if any, in the domain name;
(II)     the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
(III)    the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
(IV)     the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
(V)      the person's intent to divert consumers from the mark owner's online location to a site assessable under the domain name that could harm the goodwill represented by the mark, either for commercial gain with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the site;
(VI)     the person's offer to transfer, sell or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain

11
Motion for Summary Judgment

name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII)   the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII)  the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX)   the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous. . . .

15 U.S.C. § 1125 (d)(1)(B).  A court is **"not limited to considering just the listed factors** when making [its] determination of whether the statutory criterion has been met.  The factors are, instead, expressly described as indicia that 'may' be considered along with other factors."  *Sporty's Farm L.LC. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 498 (2d Cir. 2000) (emphasis added).

In applying these factors, it is abundantly clear that Plaintiff Randazza has demonstrated Defendant Cox's bad faith intent: (1) Defendant has no trademark rights to MARC RANDAZZA or in the Infringing Domain Names; (2) the Infringing Domain Names contain the legal name of Plaintiff, under which he also provides legal services; (3) Defendant has never been known by the name Marc Randazza; (4) Defendant made no use of Plaintiff's name prior to registering the Infringing Domain Names and, in fact, admitted to registering the domain names only to profit from their use through extortion or sale; (5) Defendant has not made any *bona fide* noncommercial or fair use of the Infringing Domain Names; (6)  by use of the Infringing Domain Names, Defendant intends to attract Plaintiff's potential clients and profit from his reputation and name; (7) the mark contained in the Infringing Domain Names is identical or confusingly similar to Plaintiff's personal name, as discussed below; (8) Defendant Cox offered to sell one or more of the Infringing Domain Names to Plaintiff or a third party with the intent to profit off of that sale; and (9)

Defendant Cox has registered several of the Infringing Domain Names to Defendant Bernstein, despite the fact that Defendant Cox maintains the sites. Accordingly, at least eight of the nine factors of bad faith defined by the ACPA clearly weigh in favor of finding that Defendants had the requisite bad faith intent to profit from the registration of the Infringing Domain Names.

The WIPO panel's finding is compelling when considering the Defendants' bad faith. A WIPO panel's findings under the UDRP are reviewed *de novo* under the Lanham Act (*Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona*, 330 F.3d 617, 626 (4th Cir. 2003); *Dluhos v. Strasberg*, 321 F.3d 365, 371-74 (3d Cir. 2003); *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 374 (2d Cir. 2003)), but "WIPO domain name arbitration decisions" may provide a "confirmatory context" for other evidence. *Palm Bay Imports, Inc. v. Vueve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1376 (Fed. Cir. 2005). The WIPO panel decision provides ample confirmation of the evidence demonstrating bad faith:

> In any event, for purposes of the Policy the Panel finds the Respondent's intention, as reflected by the record, was never to solely provide, through her websites, speech critical of the Complainant. *Rather, her objective in both registering and using the disputed names was apparently to engage in a rather sinister and tenacious scheme to extort money from the Complainant.* Specifically, the Respondent first posted negative and false commentary on her websites that was intentionally calculated to injure the Complainant's on-line reputation and disrupt the Complainant's business conducted through his law firm. Thereafter, the Respondent used those sites in a manner that apparently optimized their ranking on the Google search engine in order to increase their visibility and prominence on search results yielded through a Google search of the Complainant, thus likely exacerbating the injury caused to the Complainant. Once all this occurred, the Respondent then offered her reputational management services to the Complainant through which, for a considerable fee, she would remediate the Complainant's on-line reputation by eliminating all the negative and false commentary of her own making and presumably also ceasing her use of the disputed domain names. *Basically, for a price, she would undo the injury to the Complainant for which she was responsible for having created in the first place.* This egregious conduct clearly constitutes bad faith under the Policy.

*Marc J. Randazza v. Reverend Crystal Cox, Eliot Bernstein*, WIPO Case No. D2012- 1525. (emphasis added).

Defendants clearly do not have any legitimate purpose in registering Plaintiffs' names and common law marks.  Instead, they registered the names in order to extort money from Plaintiff Randazza through an elaborate scheme to first destroy his good name and then offer to "fix up" the reputation they cast in a negative light.  Defendants' use of the domain names is not a legitimate exercise of their First Amendment rights, but is a cover for an elaborate scheme to obtain money from Plaintiffs.

Plaintiff Marc Randazza also can prove the second element necessary for satisfying an ACPA claim: Defendants have registered several domain names that are identical to Plaintiff Randazza's common law mark.  The Infringing Domain Names are also identical to Plaintiff's personal name.  In fact, the Infringing Domain Names **contain the entirety of Plaintiff Marc Randazza's personal name**.  Additionally, many of the Infringing Domain Names do not contain any unique word or phrase to indicate that they do not emanate from Plaintiff, but wholly incorporate Plaintiff's name.

While Plaintiff Randazza does not possess a registered trademark in his personal name, "MARC J. RANDAZZA" has nonetheless become distinctive and synonomous with the offering of legal services.  Plaintiff Randazza therefore owns common law trademark rights to the mark "Marc J. Randazza," established by recognition in the relevant channels of trade since at least 2008.  Since then, Plaintiff has been the owner and managing partner of Marc J. Randazza PA, d/b/a Randazza Legal Group ("RLG"), a nationally recognized First Amendment and Intellectual Property law firm with offices located in Nevada, Florida, and Arizona.  RLG has been doing business using Marc Randazza's personal name as a source identifier for its services.

Randazza regularly appears in all forms of news media as an author and legal commentator, publishes on his blog, the Legal Satyricon, and speaks worldwide on panels about the First Amendment and intellectual property matters.  The distinctiveness of the Marc Randazza mark, and

its recognition in the legal community, is uncomplicated, incontrovertible, and undeniable.  Over the last five years, Plaintiff Randazza has created a genuine commodity in the Randazza trademark over the last five years.  Defendants can produce no evidence to the contrary.

Therefore, Defendants registered, in bad faith, Plaintiffs' common law mark for the purpose of her own financial gain.

2.   Plaintiffs are entitled to Summary Judgment on their 15 U.S.C. § 8131 Claims.

In order to show a violation of 15 U.S.C. § 8131, the plaintiff must show that the defendant 1) registered a domain name consisting of the personal name of the plaintiff 2) without the plaintiff's consent, and 3) had the specific intent to profit financially from the registration of the plaintiff's name. 15 U.S.C. § 8131(1)(A).

Few courts have attempted to interpret Section 8131. In an unpublished decision from the United States Court of Appeals for the Fourth Circuit, the Court agreed with the United States District Court of the Eastern District of Virginia's interpretation of the statute and determined that an intent to profit from the domain includes registration of the domain name "with the intent to profit by selling the domain name back to [the plaintiff] or to a third party." *Carl v. BernardJcarl.com*, 409 Fed. Appx. 628 (4th Cir. 2010).  In deciding whether a plaintiff showed success on the merits of a Section 8131 claim in United States District Court for the Southern District of New York, the court considered the same factors as a Section 1125 claim because the statutes were "so strikingly similar." *Bogoni v. Gomez*, 847 F. Supp. 2d 519, 524 (S.D.N.Y. 2012). In *Bogoni*, the defendant purchased the domains and attempted to sell them for a "price exorbitantly beyond the Domain Names' actual value." *Id.* at 525.  The court held that this was enough to show that the defendant had purchased the domains with the specific intent to profit from their registration. *Id.*

Having already shown success on the merits based on the Defendant Cox's bad faith registration pursuant to an ACPA claim, Plaintiffs also can show that Defendants registered the Plaintiffs' personal names without the Plaintiffs' consent and with the intent to profit from the sale of the domain names. (Jennifer Decl. ¶¶ 2-6; Randazza Decl. ¶¶ 6-10)  Not only has Defendant Cox repeatedly offered to sell the domain names to Plaintiff Randazza for the fee of purchasing her reputation management services, like the defendant in *Bogoni*, Cox offered to sell <marcrandazza.me> for the price of $5 million, a price exorbitantly beyond the domain name's actual value.  None of the Plaintiffs assented to the use of their personal names in domain name. (**Exhibit H**; Jennifer Decl. ¶¶ 2-6; Randazza Decl. ¶¶ 6-10)  Therefore, Defendants have violated Section 8131 by registering the personal names of Plaintiffs Marc Randazza, Jennifer Randazza, and Natalia Randazza.

        3.      <u>Plaintiff Randazza is entitled to Summary Judgment on his Right of Publicity claims.</u>

In relevant part, the Nevada right of publicity statute reads:

There is a right of publicity in the name, voice, signature, photograph or likeness of every person. The right endures for a term consisting of the life of the person and 50 years after his or her death, regardless of whether the person commercially exploits the right during his or her lifetime…

… Any commercial use by another of the name, voice, signature, photograph or likeness of a person requires the written consent of that person or his or her successor in interest.

Nev. R. Stat. 597.790(1)-(2).  The United States Court of Appeals for the Ninth Circuit states that the common law right of publicity is actionable when a plaintiff alleges "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *White v. Samsung Electronics Am., Inc.*, 971 F.2d 1395, 1397 (9th Cir. 1992).  It is not important how the defendant

misappropriates the plaintiff's name or identity; it matters only *whether* the plaintiff's identity was misappropriated. *Id.* at 1398.

In looking at the facts, Defendants clearly violated all three Plaintiffs' rights of publicity under both the Nevada statute and common law.  Defendants registered the Infringing Domain Names incorporating the use of the Plaintiffs' personal name with the intent to profit from their commercial use.  Defendants attempted to profit from the use of Plaintiff's name through the use of 1) pay-per-click advertising and 2) the sale of the domains either to Plaintiff or a third party with an interest in Plaintiff's name and in order to further their extortion scheme.  Plaintiffs did not give their consent for either Defendant to register his personal name as a domain name, by writing or otherwise.  (Jennifer Decl. ¶¶ 2-6; Randazza Decl. ¶¶ 6-10)

Defendants also violated Plaintiffs' right to publicity when using Plaintiffs' names in their attempts at "Google bombing."  Google bombing, as explained *supra*, refers to the technique of manipulating the source code, metadata, and links on the web pages in an effort to make the desired result appear higher in search engine results.  Defendant Cox uses this technique on several of her web pages to manipulate the search results for Plaintiffs' names in order to make her web pages appear near the top of search results when someone enters Plaintiffs' names in a search engine. (*See* **Exhibit P**).  If Cox successfully manipulates the search results, she obtains more clicks through to her pages, which results in more revenue for her pay-per-click advertising and advertising for health supplements.  Cox is capitalizing on Plaintiffs' names in order to draw traffic to her for-profit, revenue-generating website.  Plaintiffs ask for an injunction to prevent Defendants from using Plaintiffs' names in this manner.

As a direct and proximate result of Defendants' use of Marc Randazza's name, Jennifer Randazza's name, and Natalia Randazza's name, Plaintiffs have suffered, and will continue to

suffer, monetary loss and irreparable injury to his business, reputation, and goodwill.   Plaintiffs seek only injunctive relief under this claim.

4.   Plaintiffs are entitled to Summary Judgment on their common law intrusion upon seclusion claim.

In order to succeed on a claim for intrusion upon seclusion, a plaintiff in Nevada must show 1) an intentional intrusion (physical or otherwise); 2) on the solitude or seclusion of another; 3) that would be highly offensive to a reasonable person. *Kuhn v. Account Control Technology, Inc.*, 865 F.Supp. 1443, 1448 (D. Nev. 1994).  Specifically to the third element, what is highly offensive to a reasonable person is a matter of social conventions and expectations. *Id*. at 1449. The court considers other factors, such as "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id.*

The use of Mr. Randazza's name, identity, and likeness, as well as the use of the names of Jennifer Randazza and their four-year-old daughter Natalia Randazza, is highly offensive to a reasonable person.  While Mr. Randazza has established an online identity, Cox still may not use his name in an effort to intrude upon Mr. Randazza's privacy in an effort to attempt to harass and intimidate his family.  The degree of Cox's intrusion into Mr. Randazza's privacy, as well as the context of the intrusion (in order to collect money from Plaintiffs) suggest that Cox's motives go beyond a mere criticism site and point to a pattern of obsessive behavior.  Defendants did not merely register one or two domains, but instead registered dozens.  Defendant Cox has threatened to register "hundreds more." *See* **Exhibit Q**.  Furthermore, Plaintiff Jennifer Randazza and Plaintiff Natalia Randazza are private citizens who have a reasonable expectation that their names, photos, and personal information will not be displayed in a public forum without their consent.

The use of private citizen Plaintiff Jennifer Randazza's name and likeness, particularly in making sexually inappropriate comments about her, is highly offensive to a reasonable person.

(ECF #1 ¶9)  Plaintiff Jennifer Randazza did nothing to instigate Defendants' use of her name and likeness for their own purposes.

The use of then-three-year-old Plaintiff Natalia Randazza's name to harass his family is highly offensive to a reasonable person.  Natalia Randazza is a toddler whose only reason for being the subject of Cox's ire is because she is Mr. Randazza's daughter.  Plaintiff Natalia Randazza is an innocent child whose name should not be associated with Cox's crusade to extort and harm Plaintiff's reputation and business.

<u>5.     Plaintiffs are entitled to summary judgment on their civil conspiracy claim.</u>

In order to allege a claim for civil conspiracy, the plaintiff must plead that two or more people acted in a concerted action with the intention to accomplish an unlawful objective for the purpose of harming another, resulting in damages to the plaintiff. *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1249 (D. Nev. 2003), *quoting Collins v. Union Fed. Sav. & Loan Ass'n,* 9 Nev. 284, 662 P. 2d 610, 622 (1983). Civil conspiracy must include damages from an underlying tort. *Id.*

Courts in the Ninth Circuit determine the damages for the tort of civil conspiracy through the "overt acts doctrine." *Gibson v. U.S.*, 781 F.2d 1334, 1340 (9th Cir. 1986).  Under this doctrine, courts determine injury and damages to the plaintiff through overt acts, not from the continuance of the conspiracy. *Id.*, *quoting Kadar Corp v. Milbury*, 549 F. 2d 230, 234 (1st Cir. 1977).

By their own admission, Defendants Bernstein and Cox conspired in order to commit all of the acts referenced herein, and are therefore jointly and severally liable for the results of their co-conspirator's wrongs. (*See* Cox Blog Discussing Partnership with Bernstein, attached as **Exhibit S at 4**).   Defendant Cox refers to Bernstein as her "business partner" and even argues in her filings on his behalf, despite the fact that Bernstein has not yet made an appearance in this case. (*Id.*).  In her Motion Requesting Plaintiff Inform Insurance Providers of Lawsuit, Cox states, "These blogs and connected posts took years to build, these domain names and connected blogs, this online

media network took over $750,000 and 10 years to build, built by Pro Se Defendant / Pro Se Counter Plaintiff Crystal L. Cox and her Business Partner." (ECF #53 at 6).

Moreover, Bernstein has defaulted, done nothing to deny his liability, or to explain why six of the Infringing Domain Names were registered in his name. (*See* **Exhibit K**).  When Plaintiff contacted Bernstein to warn him of the filing of the instant suit and to extend to him the opportunity to explain his involvement, Bernstein responded only "Please include me." (See Exhibit A).

The overt acts that led to Plaintiffs' damages were the concerted action on the part of both Defendants to register the personal names of Plaintiffs as domain names (**Exhibit A**) with the objective to destroy Plaintiffs' reputations and harass and intimidate Plaintiffs and other family members (**Exhibit D**) in an effort to earn money from the registration of these domain names.**.** Defendants sought to earn money from this registration, either from pay-per-click advertising and the sale of supplements resulting from the publicity rights associated with Plaintiffs' names (**Exhibit G**); from Plaintiffs paying Defendants a monthly fee to maintain these websites (**Exhibit H**); or from the sale of the domain names to Plaintiffs or a third party (**Exhibit M**).  As a result of these overt, concerted acts, Plaintiffs have suffered irreparable injury to their business, reputation and goodwill.

**IV. Conclusion**

Defendant Cox has not shown a legitimate use for the registration of the Infringing Domain Names encompassing Plaintiffs' personal names and Plaintiff Randazza's law firm, Randazza Legal Group.  While Defendant Cox claims to be operating the websites under the guise of the First Amendment, the Infringing Domain Names are nothing more than an elaborate and sinister extortion scheme perpetrated by Defendants in an effort to capitalize on Plaintiffs' good will and name.

No material facts as to Plaintiffs' claims are in dispute.  As a matter of law, all of the factors as to the ACPA claim, the cyberpiracy claim, the rights of publicity claim, the intrusion upon seclusion claim, and the civil conspiracy claim favor the Plaintiffs.  Plaintiff Randazza posseses a valid common law mark in his personal name, and Cox registered that mark without his consent in bad faith, with the specific intent to profit from its sale.  Additionally, Defendants did not have the consent of any of the Plaintiffs to register their personal doman names, in violation of Section 8131.  With regard to the right of publicity claims, none of the Plaintiffs consented to the use of their names, likenesses, or photos for Cox's commercial gain.  Defendants also intruded into the seclusion of Plaintiffs, where Plaintiffs had a reasonable expectation iof privacy, in a manner that was highly offensive to a reasonable person when Defendants registered the names of Plaintiffs Jennifer and Natalia Randazza, and published information about Plaintiffs that should have remained private. Resolving these questions of law based on the undisputed facts provided above, this Court is justified in granting Plaintiffs summary judgment.

## **REQUEST FOR RELIEF**

Plaintiffs pray for the following relief:

1.     The Court permanently enjoin Defendant Cox and Defendant Bernstein, as well as any other individuals acting in concert with them, from using the Infringing Domain Names, and that the Defendants be ordered to file with the Court and serve on Plaintiffs within thirty (30) days after the service on Defendants of such injunction, or such extended period as the Court may direct, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

2.     That the Registrars of the Infringing Domain Names, GoDaddy.com, be ordered to permanently transfer all Domain Names containing "Randazza" to Plaintiff pursuant to 15 U.S.C. § 8131(2); and 15 USC § 1125(d)(1)(C);

3.     That if either Defendant moves the domain names to another registrant or registrar as she has done in the past (*see* Evidence of Cyberflight, attached as **Exhibit T**), then the relevant

1  domain name registry, VeriSign, be ordered to transfer all of the domain names containing
2  "Randazza" to Plaintiff pursuant to 15 U.S.C. § 8131(2); and 15 USC § 1125(d)(1)(C);

3         4.    That Google.com, ordered to permanently transfer control of all "Blogger" accounts
4  and blogs containing "Randazza" to Plaintiffs pursuant to 15 U.S.C. § 8131(2) and 15 USC §
5  1125(d)(1)(C);

6         5.    That Defendants release to Plaintiffs information on any and all domain names that
7  incorporate the Plaintiffs' name;

8         6.    That GoDaddy, VeriSign, Google, Cox, and Bernstein, all be ordered to transfer any
9  domain names containing the term "Randazza" to the Plaintiffs in order to cease the continued
10 harassment and to cease the continued violation of Randazza's rights of publicity, right to privacy,
11 and other rights enumerated herein which may not specifically be remedied by 15 USC 8131(2);  or
12 15 USC § 1175(d)(1)(c);

13        7.    That Plaintiffs receive and recover from Defendants all damages sustained;

14        8.    That Plaintiffs receive and recover from Defendants statutory damages in the
15 amount of $100,000 per domain name, which is the maximum allowed by 15 U.S.C. § 1117(d); this
16 maximum amount is supported by Defendant Cox's extreme bad faith, and Defendant Bernstein's
17 bad faith and conspiratorial and fraudulent activities.

18        9.    That Plaintiffs receive and recover from Defendant Eliot Bernstein statutory
19 damages in the amount of $500,000 for the five Infringing Domain Names for which he is the
20 registrant.  That Plaintiffs receive and recover from Defendant Crystal Cox statutory damages in
21 the amount of $3.2 million for all thirty-two Infringing Domain Names.

22        10.   That the Court order Defendants jointly and severally to pay Plaintiffs reasonable
23 costs, expenses, and attorneys' fees incurred in prosecuting this action, pursuant to 15 U.S.C. §
24 1116; 15 U.S.C. 8131(2); and 15 U.S.C. § 1117(a);

25        11.   That Plaintiffs be awarded pre- and post-judgment interest to the maximum extent
26 allowed by law;

27        12.   That Plaintiffs be awarded such and other further relief to which they may be justly
28 entitled; and

13.     Injunctive relief that Defendants be enjoined from owning, registering, or operating any domains incorporating the "Randazza" name, whether they be direct domain registration or through the use of any blogging platform, and that such injunctive relief contemplate the Defendants using proxies, agents, or third parties to evade this relief, and specifically enjoins the Defendants from using third parties to do that which the injunction prevents them from doing directly.

Dated: February 12, 2013                    Respectfully submitted,

                                                 /s/ Ronald D. Green
                                                 Ronald D. Green, NV Bar #7360
                                                 Randazza Legal Group
                                                 6525 W. Warm Springs Road, Suite 100
                                                 Las Vegas, NV 89118
                                                 888-667-1113; 305-437-7662 fax
                                                 ecf@randazza.com

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure 5(b), I hereby certify that the foregoing document was filed using this Court's CM/ECF system on February 12, 2013.

Dated: February 12, 2013                          Respectfully Submitted,

Laura M. Tucker
Law Clerk
ecf@randazza.com
Randazza Legal Group
6525 W. Warm Springs Rd., Suite 100
Las Vegas, NV 89118
(888) 667-1113
(305) 437-7662 fax