Crystal L. Cox
Pro Se Plaintiff
**2:13-cv-00297-JCM-VCF**

SavvyBroker@Yahoo.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
**2:13-cv-00297-JCM-VCF**

Plaintiff Crystal L. Cox

          Motion to Legally Relate U.S. District Court Southern
District of New York, Civil Case Number 1:07-cv-09599-SAS.
(Anderson v. The State of New York et al)

vs.

Defendant Marc J. Randazza, and ALL Named Defendants

I, Plaintiff Crystal L. Cox, request this court to enter U.S. District Court Southern District of New York, Civil Case Number 1:07-cv-09599-SAS. (Anderson v. The State of New York et al), as a Related Case to **2:13-cv-00297-JCM-VCF.**

Over the last 3 years I, Plaintiff Crystal L. Cox, have reported on, received tips on, took interviews on those connected with the Christine Anderson Whistle Blower case out of New York ( U.S. District Court Southern District of New York, Civil Case Number 1:07-cv-09599-SAS. )
Anderson v. The State of New York et al, Assigned to: Judge Shira A. Scheindlin, Referred to: Magistrate Judge Andrew J. Peck.

I have also reported on connected issues, people, and corporations such as Andrew Cuomo as New York Attorney General, James Pelzer, Rita Adler ex Chief Counsel of the NYS Grievance Committee for Tenth Judicial District, many stories regarding the Tenth Judicial District, New York's Second Department, State Attorney General Office, Nicole Corrado Esq Whistle Blower, New York Senate Judiciary Committee, Naomi Goldstein, New York State Bar, New York Ethics Committee, JP Morgan, Peter Sivere Whistle Blower, Elliot Spitzer, Enron, George Demos, Philip Falcone FCC Issues, Warner Bros., Time Warner, Proskauer Rose Law Firm, SENATE STANDING COMMITTEE ON THE JUDICIARY NOTICE OF PUBLIC HEARING
Senator John Sampson Chairman, Judicial & Attorney Disciplinary Process in the State of New York  and many more involved in the New York Judicial Process and connected to the "Cleaner", Whistle Blower case brought forth by Christine Anderson.

I, Plaintiff Crystal L. Cox, have been the target of widespread whistle blower retaliation, the goal being to shut down my investigative reporting. The tactics used to stop the flow of information on my investigative blogs has cause irreparable damage to my sources, informants, and to my personal life, business and reputation.

The Felony Crimes alleged by Anderson, directly relate to this RICO & ANTITRUST Lawsuit.

Evidence was obtained on Thursday, January 24, 2013, confirming the position of a former NYS attorney ethics committee insider that various illegal actions were employed by New York State employees to target and/or protect select attorneys.

During the wrongful termination case of former Manhattan ethics attorney Christine Anderson, it was revealed that New York State employees had a nick-name for supervising ethics attorney Naomi Goldstein. Naomi Goldstein was, "The Cleaner."

I, Plaintiff Crystal L. Cox, believe I am a "TARGET" of these wire tapes, surveillance, and retaliations and therefore **2:13-cv-00297-JCM-VCF is legally related to this case.**

"A. NEW YORK SUPREME COURT WHISTLEBLOWER ATTORNEY, CHRISTINE C. ANDERSON, ESQ. ("Anderson") MAKES FELONY CRIMINAL ALLEGATIONS IN US FEDERAL COURT AND BEFORE THE NEW YORK SENATE JUDICIARY COMMITTEE. ALLEGATIONS AGAINST SENIOR RANKING OFFICIALS OF THE US ATTORNEY'S OFFICE, THE NEW YORK ATTORNEY GENERAL'S OFFICE, THE DISTRICT ATTORNEY'S OFFICE, THE NEW YORK SUPREME COURT, THE NEW YORK SUPREME COURT DISCIPLINARY DEPARTMENTS, "FAVORED LAWYERS AND LAW FIRMS" [Footnote 3] and names **a "CLEANER"** [Footnote 4] , as revealed in federal court testimony, a one Naomi Goldstein."

"This "whitewashing" sometimes involved burying cases or destroying evidence, so that certain complaints were inevitably, unavoidably, dismissed. I witnessed this destruction of evidence myself. Other reported misconduct involves victimizing attorneys lacking privileged positions or connections."

I, Plaintiff Crystal L. Cox, believe I am "targeted" also as I have been reporting on these issues for over 3 years, and have named many in this RICO complaint that are connected to the Christine Anderson case and it's legally related iViewit Technology, Eliot Bernstein Case.

""Ethics" Retaliation Machine Was Real

The focus of this initial article concerns the 1st and 2nd judicial department, though the illegal methods are believed to have been utilized statewide in all 4 judicial departments.

The Cleaner's Man says that he would receive a telephone call from Naomi Goldstein, who would say, "we have another target, I want to meet you…"  The Man also says that Thomas Cahill, a former DDC Chief Counsel, and Sherry Cohen, a former Deputy-Chief Counsel, were knowledgeable of all of Naomi Goldstein's activity with him and his team.

The meetings, he says, were usually at a park or restaurant near the Manhattan Attorney ethics offices (the "DDC") in lower Manhattan, however he did over time meet Goldstein at his office, the DDC or in movie theater- a venue picked by Naomi.  Goldstein would provide her Man with the name, and other basic information, so that the Man's team could begin their "investigation."

The Man specifically recalls Naomi Goldstein advising him to "get as much damaging information as possible on Christine [Anderson]."

The Man says that they then tapped Ms. Anderson's phones, collected ALL "ISP" computer data, including all emails, and set up teams to surveil Anderson 24/7.  The Man says he viewed the improperly recorded conversations and ISP data, and then personally handed those items over to Naomi Goldstein.

Anderson should not, however, feel like she was a lone target.  According to The Man, "….over 125 cases were interfered with…."  And there were dozens of "targeted" lawyers, says The Man,adding, that the actions of his teams were clearly "intentionally obstructing justice."

If Ms. Goldstein had identified the Ethics Committee's newest target as an attorney, it was quickly qualified with whether the involved lawyer was to be "screwed or UNscrewed." Unscrewed was explained as when an attorney needed to be "protected" or "saved" even if they did, in fact, have a major ethics problem.

The Man has a nice way of explaining his actions, the "authority" to so act and, he says, over 1.5 million documents as proof……..  The U.S. Attorney is aware of The Man and his claims…."

Christine Anderson, Nicole Corrado and Other Public Office Whistleblowers cited, also gave explanation for why Judges and Attorneys at Law are now desperately trying to grant themselves immunity for felony crimes and attempting to use the s and other Government officials as accomplice in the cover-up. I, Plaintiff Crystal L. Cox, believe I am "targeted" and therefore seek to legally related these cases.

## From Christine C. Anderson Case

"AFFIRMATION IN SUPPORT OF MOTION

I, Christine C. Anderson, make the following affirmation under penalties of perjury:

I, Christine C. Anderson, am the plaintiff-appellant in the above entitled action, and respectfully move this court to issue an order disqualifying the Office of the New York

State Attorney General from representing defendant-employees of the State of New York

in any legal proceeding involving the herein before any federal or state court, agency or any other tribunal. The reasons why I am entitled to the relief I seek, and pending remand to the district court for a new trial as herein explained, are the following:

I. Introduction

1. The trial court abused its discretion in denying my request for a new trial, a reversible error, inter alia. That error continues before this appellate body and requires immediate correction. Because of the unique perspective of the trial judge, the decision as to whether to grant a new trial is committed to the district court's sound discretion and will be reversed only for a clear abuse of that discretion. Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Systems, 428 F.3d 706, 716 (7th Cir. 2005); Latino v. Kaizer, 58 F.3d 310, 314 (7th Cir.1995). The trial judge advanced a miscarriage of justice by denying the application for a new trial. Remand is clearly indicated in this matter.

2. Fed.R.Civ.P. 59 does not list the grounds for which a new trial may be granted. (Wright § 95). In federal courts, common law must be looked to in determining the available grounds. Of the numerous grounds justifying a grant of new trial, one is that the "interests of justice" require a new trial. See e.g., Fort Howard Paper Co. v. Standard Havens, Inc., 901 F.2d 1373, 1379 (7th Cir. 1990) (affirming grant of new trial after a three-week jury trial). Among the grounds cited for seeking new trials are the following:

(1) Irregularity of the proceedings;

(2) Misconduct of jury;

(3) Accident or surprise;

(4) Newly discovered evidence;

(5) Insufficient evidence;

(6) Verdict against law;

(7) Error in law;

(8) Excessive or inadequate damages.

3. A court has broad discretion in considering a Rule 59(e) motion. Hagerman v. Yukon Energy Corp., 839 F.2d 407, 413 (8th Cir.), cert. denied, 488 U.S. 820 (1988). Rule 59(e) was adopted to clarify that "the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445, 450 (1982) (internal quotations omitted). A Rule 59(e) motion may be granted to correct a manifest error of law or fact, or to consider newly-discovered evidence. See Hagerman, 890 F.2d at 414.

II. The Attorney General's Representation of the Defendants Constitutes

A Clear Conflict of Interest, and Violates Plaintiff's Right to Due Process

4. In this action, plaintiff Anderson was confronted with an unquestionably unfair set of circumstances. She brought her complaint against three individuals, who, although employed by the State of New York, were also sued in their individual capacities. These defendants in turn were at all times represented by the New York State Attorney General. Thus, while the plaintiff charged the defendants with serious violations of law, the Attorney General stood before the jury defending these very same actions as proper and within the law. This arrangement seriously prejudiced the plaintiff, as jurors could and likely did conclude that the State of New York supported fully the conduct of the defendants.

Ongoing Conflict of Interest

5. Representation by the New York Attorney General's office in the pending appeal continues the improper prejudice against plaintiff. Furthermore, not only did the Attorney General's representation of the defendants unduly prejudice the plaintiff, but it also raised serious conflict of interest issues with respect to the defendants themselves. To protect their own rights, each of the defendants had to have their own attorneys in order to permit them to cross claim or make admissions, including their own right to protect their own individual rights in this appeal. Under New York State and federal conflict of interest rules, each of the defendants must be free to undertake these independent actions. To do so, they must have their own counsel. (See NYS Code of Professional Conduct Cannon 5 Conflict of Interest Rules.[1]) The Attorney General as a state attorney is bound by these rules as well. [2]

6. This constitutes New York State law, and the attorney who violates these safeguards must be immediately removed from the case. Further, should the defendants seek to waive the conflict- they would have to submit an affidavit to that effect to the court.

Notwithstanding a defendant's attempt to waive his right to independent counsel, the court can deny the waiver, based on a finding that ultimately this conflict cannot properly be waived. The trail court improperly ignored the obligation to address the inherent conflict up to and including the trial. This court, however, must now disqualify the Attorney General from any representation of the defendants.

7. As a result of these conflict of interest issues, the Attorney General cannot properly represent the defendants, either as a group or individually, in these appellate proceedings. Each defendant must have the right to advance his or her own position on appeal, to cross claim against the others, and to bring a counterclaim against the State.

These actions most certainly could not be undertaken in a case where the Attorney General represents all the named defendants. All defendants clearly are in conflict with each other, especially in their individual capacities. Without question, the Attorney General violated its ethical rules and the public trust in undertaking to represent all of the defendants. The Attorney General continues to violate its ethical rules by appearing before this appellate body. This would be the case, even were it established that the defendants had sought to consent to such representation.

The Clear Need For Remand

8. The involvement of the New York Attorney General in refuting plaintiff's allegations, which involved serious violations of federal and state law and ethical standards, and in presenting the case of each defendants, denied plaintiff's due process and equal protection guarantees, and right to a fair and impartial trial. See Snyder v. Massachusetts, 291 U.S. 97, 105 (1934) ("if a practice or rule offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental") and Eldridge v. Williams, 424 U.S. 319 335 (1974) [3]

9. The conflict here is particularly acute given the nature of the claims brought by plaintiff Anderson. Plaintiff's charges warranted an independent investigation by the New York State Attorney General's Office to review the basic claims given that Anderson was formerly a Departmental Disciplinary Committee staff attorney with considerable experience and over the years received excellent evaluations. The fact is that these are not allegations from a lay person.

10. While at the DDC, Plaintiff Anderson was charged with investigating cases involving possible criminal and civil misconduct by attorneys. She carried out her duties as a duly authorized officer of the Court. The New York State Attorney General's Office was therefore obligated to protect her and to investigate her claims of serious misconduct against the named parties. To the Contrary, the New York State Attorney General's Office failed to do so.

11. The Attorney General is a publicly funded arm of the State. It was conflicted from the outset of this case because it could not possibly defend any of the defendants, while simultaneously investigating plaintiff's claims of serious ongoing misconduct by the defendants. Indeed, no explanation has ever been provided as to why the Attorney General did not represent plaintiff Anderson against any of the original defendants. This was itself a misappropriation of public funds by a state investigative agency with prosecution powers.

12. Federal law mandates that a special prosecutor be substituted into the case, and this was not done. The actions of the Attorney General here confused, misled and confounded the jury, by creating a false impression that the acts were officially sanctioned by the state.

13. Furthermore, Christine Anderson's allegations have substantial impact on the public, the bench and bar, and cannot be ignored by the New York State Attorney General's Office merely because they were motivated to defend this lawsuit. This serious conflict demanded independent counsel for the defendants as a matter of fairness and high ethical conduct to all involved, particularly to Christine Anderson. Having denied independent counsel to the defendants, the Attorney General prejudiced plaintiff by making it appear to the jury that the State of New York and the New York State Attorney General's Office supported defendants' conduct. This was a burden Christine Anderson could never overcome and, at a minimum, warrants a new trial. The unfair burden continues before this appellate court.

14. Additionally, Remand is also certain as the trial Court was concerned about the aforestated conflict of interest and in one of its last instructions to the jury, the Court warned the jury not to draw a negative inference adverse to the defendants for their joint representation by the New York State Attorney General's Office. That instruction was injurious to the plaintiff, Christine Anderson, in that it prejudiced the jury against her and in and of itself warrants a new trial for the following reasons:

a. It was one of the last instructions to the jury and thus was ingrained in the minds of the jury as a lasting impression. Furthermore, as one of the last instructions to the jury, it elevated its importance over and above all prior instructions as something that had to be considered indifference to all else.

b. There was no countervailing instruction to the jury that it could find a negative inference of the representation by the New York State Attorney General's Office favorable to the plaintiff. This failure prejudiced the jury against the plaintiff by implying at a minimum, that the state supported all of the defendants' conduct and found that it was within the bounds of the law.

c. Had the Court even given the jury an instruction not to draw a negative inference of the representation of the defendants by the New York State Attorney General's Office as against either or both the plaintiff and the defendants, such an instruction only demonstrates the proof that there is an impermissible conflict of interest in the manner in which this case was conducted, that can only hurt one party over another. Further, the representation by the New York State Attorney General's Office made it appear New York State supported the defendants' conduct and that it was within the bounds of the law.

d. By the Court issuing the jury instruction not to draw a negative inference adverse to the defendants for their representation by the New York State Attorney General's Office, the court preserved the argument to be raised in this motion and appeal.

e. Allowing all of the defendants to be represented by the same counsel and by the New York State Attorney General's Office created an impermissible conflict of interest. Indeed, the conflict was so strong, that had the jury ruled against any one or all of the defendants, they would have been entitled to seek a new trial for impermissible conflict of interest as they would entitled to their own independent counsel.

This court is thus faced with the fact any unsuccessful litigant in this case appeal could be expected to move for and would be entitled to a new trial because of the impermissible conflict of interest, as all of the defendants are required to have their own independent counsel, and to be represented their own counsel.

15. The American Bar Association's Code of Professional Responsibility elaborates on the duty of a public prosecutor such as the New York Attorney General to seek justice as follows:

"This special duty exists because: (1) the prosecutor represents the sovereign and therefore should use restraint in the discretionary exercise of governmental powers, such as in the selection of cases to prosecute; (2) during trial the prosecutor is not only an advocate but he also may make decisions normally made by an individual client, and those affecting the public interest should be fair to all …." (ABA Code of Prof. Responsibility, EC 7-13, emphasis added.)

16. Therefore, a prosecutor's duty of neutrality is born of two fundamental aspects of his employment. First, the prosecutor, in this case the Attorney General, is a representative of the sovereign, and consequently must act with the impartiality required of those who govern. Second, the Attorney General can at all times call upon the vast power of the government, by utilizing public funds, and therefore must refrain from abusing that power by failing to act evenhandedly.

17. These key duties are not limited to criminal prosecutions, but must also be observed in civil cases as well. These safeguards are included in the ABA Code. "A government lawyer in a civil action or administrative proceeding has the responsibility to seek justice and to develop a full and fair record, and he should not use his position or the economic power of the government to harass parties or to bring about unjust settlements or results." (Id., EC 7-14, emphasis added.)

18. In the present case, the Attorney General was under the ethical duty to withdraw in order to preserve plaintiff's right to a fair and impartial trial. In a case such as this, not only is the Attorney General's neutrality essential to a fair outcome for the plaintiff, it is critical to the proper function of the judicial process as a whole. Our system of justice relies for its validity on the confidence of society. Without a continuing belief by the people that the system is just and impartial, the concept of the rule of law cannot survive. (See id., EC 9-1, 9-2.)

19. The New York State Attorney General is a public official elected by statewide ballot [4]. The American Bar Association's Code of Professional Responsibility addresses the special considerations applicable to a lawyer who is also a public official as follows: "A lawyer who is a public officer, whether full or part-time, should not engage in activities in which his personal or professional interests are or foreseeably may be in conflict with his official duties." (ABA Code of Prof. Responsibility, EC 8-8.) "[A]n attorney holding public office should avoid all conduct which might lead the layman to conclude that the attorney is utilizing his public position to further his professional success or personal interests." (ABA Committee on Prof. Ethics, opn. No. 192 (1939); see also People v. Conner, 34 Cal.3d 141, 146.)

20. The government's investigative and prosecutorial interests must be balanced against the public interest in insuring that the individuals and organizations receive effective representation, and are accorded their full constitutional rights and protections.

21. There are at least two reasons why a court should satisfy itself that no conflict exists or at least provide notice to the affected party if one does. First, a court is under a continuing obligation to supervise the members of its Bar. E.g., In re Taylor, 567 F.2d at 1191; see Musicus v. Westinghouse Electric Corp., 621 F.2d 742, 744 (5th Cir.1980) (per curiam) (district court obligated to take measures against unethical conduct occurring in proceedings before it). Second, trial courts have a duty "to exercise that degree of control required by the facts and circumstances of each case to assure the litigants of a fair trial." Koufakis v. Carvel, 425 F.2d 892, 900-01 (2d Cir.1970); see ABA Code of Judicial Conduct, Canon 3(A)(4).

22. For example, when a litigant's statutorily appointed counsel is acting against that person's interests because of a conflict that the party has not been informed of and cannot be expected to understand on his own, it can be concluded that the litigant is not receiving a fair trial. Cf. Wood v. Georgia, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981) (divided loyalties of counsel may create due process violation).

23. Attorneys are officers of the court, Clark v. United States, 289 U.S. 1, 12, 53 S.Ct. 465, 468, 77 L.Ed. 993 (1933), and are obligated to adhere to all applicable disciplinary rules, and to report incidents of which they have unprivileged knowledge involving violations of a disciplinary rule. ABA Code of Professional Responsibility, DR 1-102(A), 1-103(A); see In re Walker, 87 A.D.2d 555, 560, 448 N.Y.S.2d 474, 479 (1st Dep't 1982) (as officers of the court, attorneys are required to notify parties and the court of errors including conflicts of interest).

24. Occupying a position of public trust, the Attorney General, as any public prosecutor is 'possessed … of important governmental powers that are pledged to the accomplishment of one objective only, that of impartial justice.' (Professional Responsibility: Report of the Joint Conference (1958) 44 A.B.A.J. 1159, 1218.) The duty of a government attorney has been characterized as 'a sober inquiry into values, designed to strike a just balance between the economic interests of the public and those of the landowner,' is of high order." (Id. at p. 871.)

25. Canon 9, "A Lawyer Should Avoid Even the Appearance of Professional Impropriety," has been invoked by this Court in attorney conflict cases. See, e.g., Fund of Funds, Ltd. v. Arthur Andersen & Co., 567 F.2d 225, 234-35 (2d Cir.1977). The Model Rules of Professional Conduct, adopted by the ABA House of Delegates on August 2, 1983 contain similar provisions and language. See Rules 1.7, 8.4.

26. Furthermore, and central to the issue of preventing prejudicial influence of government attorneys on court proceedings, it is common for states to adopt statutes or regulations that prohibit those holding the office of Attorney General, as well as their

deputies and staff attorneys, from participating as attorneys in private litigation matters. (see e.g. Arizona Revised Statutes §41-191[5] Attorney general; Florida Statutes, Section 27.51(3), [6] Maryland Statutes and Procedures Governing Pro Bono Services of Attorney General Office[7] .)

27. The reason for adopting these restrictions is most obvious. For the Attorney General or any member of the staff to participate in a civil trial involving a private litigant will create the prejudicial inference that the state has reviewed and approved the position advocated by the government attorney. Such an inference can and likely will influence the outcome of the matter to the detriment of the opposing party.

28. It is for the above stated reasons that no Attorney General or staff member should be permitted to represent a private litigant in any adversarial proceeding. Only such an outright prohibition will properly preserve the standards of fairness and impartiality guaranteed to all litigants under federal and state constitutions. The present lack of statutory and/or ethical policy guidelines barring the participation of state law officers from representing private litigants in civil proceedings must be addressed by courts even if not by policy makers.

III. The Attorney General's Office Cannot Ethically Continue Any Representation

29. The irregularity of the proceedings below were confusing, misleading and prejudicial to the plaintiff enough without the involvement of the Attorney General. Indeed, remand will result after review of the Instructions to the jury, the court marked-up Verdict Sheet after a written jury question to the court concerning the whitewashing of attorney ethics complaints and wide-practiced corruption that, in fact, counsel for the defendants- The New York State Attorney General's Office- had an obligation to investigate, inter alia.

30. Improperly, the top law enforcement officer of the state was silent and action was, and is, absent. This cannot be condoned by this appellate court.

31. The involvement of the Attorney General's office improperly left the jury, and proceeding itself, in an unclear, puzzling and convoluted condition. This confusion resulted in a proceeding which is in a word repugnant.

32. The mere presence of the Attorney General has at all times been prejudicial to the plaintiff and, at best, confusing to the jury. It has been established that both inconsistent or equivocal instructions and incorrect statements of the law may be prejudicially erroneous, Bollenbach v. United States, 326 U.S. 607, 612, 66 S.Ct. 402, 90 L.Ed. 350 (1946); United States v. Neilson, 471 F.2d 905, 908 (9th Cir. 1973); Bolden v. Kansas City Southern Ry. Co, 468 F.2d 580; Ratay v. Lincoln National Life Ins. Co., 378 F.2d 209 (3d Cir.), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967), and that comments made by the court shortly before the jury retires are critical, Norfleet v. Isthmian Lines, Inc., 355 F.2d 359, 362 (2d Cir. 1966).

33. The lower court improperly allowed representation of the defendants by the Attorney General. In fact, the court below improperly condoned the Attorney General's presence, accordingly directing the jury that the Attorney General's representation was proper when it was not. It is generally assumed that juries "act in accordance with the instructions given them…and that they do not consider and base their decisions on legal questions with respect to which they are not charged." Dist. Council 37 v. New York City Dept. of Parks and Recreation 113 F3d 347,356 (2d Cir. 1997).

34. It was never up to the jury to consider the ethical failings of the Attorney General's representation. It was the obligation of the Attorney General's office, and upon the failure of that duty, the obligation of the court.

35. There is also no record that the role of the Attorney General as defense counsel was properly and adequately explained to the jury. While this also constitutes another reversible error by the Court which will be addressed by the appeal itself, representation of the Attorney General's office improperly remains.

IV. Newly Discovered Evidence At Trial Required Immediate Disqualification

36. The court gave the jury above-referenced instructions and its members adjourned to the jury room to deliberate at approximately 1:25 pm on Thursday, October 29, 2009. After the jury left the courtroom, the court first announced that she had denied the defendants' pending motion for a directed verdict. She next stated words to the effect that she found that , "….Cahill was aware of the whitewashing allegations…" (Exhibit A, pages 808-809) The judge read this statement related to defendant Cahill's conduct into the record as part of her order denying defendant's directed verdict. This fact alone requires a new trial, and should have resulted in the Attorney General's office immediately withdrawing from the case.

37. In addition, Courts have an obligation to report and order investigation into official and at times criminal misconduct. This is a duty of the Court. There is no record to date as to any action having been undertaken by the Court regarding this central question. (See also recent decisions on spoliation of evidence which are state and federal crimes. Acorn v. Nassau County - cv052301 (2009 USDistLEXIS 19459) and Gutman v. Klein, 03cv1570. 2008 WL 5084182, 2008 WL 4682208.

38. The Court's finding of culpability on the part of Defendant Cahill constitutes newly discovered evidence, which directly supports the fundamental allegations of Plaintiff.

Remand to the District Court for a new trial is highly likely as the trial court abused its discretion in denying a new trial. The Attorney General's failure to withdraw is, in fact, sanctionable and worthy of referral to the attorney ethics committee.

39. Clearly the newly discovered fact that defendant Cahill, as the head of the DDC and supervisor of the other named defendants, had full knowledge of whitewashing activities would in all likelihood have changed the outcome of the case. This central fact establishing the liability of all named defendants could not have been discovered earlier and is not merely cumulative or impeaching. (See Farragher v. Boca Raton , 524 U.S. 775, 18 S. Ct. 2275 (1998) which imputes liability to supervisors in any event. In Farragher, the Supreme Court held that an employer is vicariously liable for actionable discrimination caused by a supervisor. All defendants are jointly and severally liable here. In fact, the State of New York is liable under Faragher, all while representation of the Attorney General's office improperly continued.

JUDICIAL FINDING KEPT FROM A DELIBERATING JURY

40. Here, the new evidence establishes that in the view of the Court, Defendant Cahill, the head officer of the DDC and the supervisor of the other defendants, had full knowledge of the practice of whitewashing as alleged by Plaintiff, leading to the parallel conclusion that whitewashing was accepted as a common practice by the defendants, and presumably other staff members of the DDC. Had such facts been confirmed during the trial stage, the jury would have come to know and understand the illegal activities that were accepted as everyday practice by the DDC staff, a finding totally consistent with a main element of Plaintiff's case. At all times relevant, however, the Attorney General's office improperly continued their representation of the very people the Court found had acted illegally.

41. The Court's statement after the close of trial accepting the establishing the whitewashing activities by Defendant Cahill will demand remand for a new trial. Meanwhile, the damage to the rule of law and ethics by the Attorney General's office must be dealt with by this appellate court.

V. Witness Tampering – Threat on Witness in a Federal Proceeding

42. The Attorney General and the trial court were aware that in August of 2008, one of the plaintiff's witnesses, DDC staff attorney Nicole Corrado, was threatened. Two days prior to her deposition testimony, state employee, and DDC Deputy Chief Counsel, Andral N. Bratton, and who had been her immediate supervisor for approximately 5 years, confronted Corrado. Bratton advised Corrado that in 2007 he had admitted himself into a psychiatric hospital for serious emotional problems, that he had "suicidal tendencies," and that he was "warning" her accordingly. When Corrado asked Bratton why he was warning her, Bratton simply repeated several times in a very serious and stern tone by saying, "I'm just warning you."

43. Following Corrado's deposition testimony on August 21, 2008, Bratton's behavior toward Corrado became more harassing, troubling, frightening and threatening as he began to follow her inside and outside of the state office where they both worked. Corrado subsequently reported these serious issues to DDC chief counsel Allan Friedberg, Deputy chief Counsel Sherry Cohen, a defendant in the current proceeding, and DDC Chief Investigator Vincent Raniere- all of whom who took no required action.

44. Plaintiff's former counsel, John Beranbaum, advised the court, and by copy, the Attorney General, of this incident in a letter to the court dated October 24, 2008. In the Beranbaum submission, it was made clear to the court and the Attorney General that Ms. Corrado was given a "'warning' about the testimony she was to gave at the deposition[,]" and further advised that "Ms. Corrado is very upset about the entire experience.

45. Mr. Beranbaum again raised the issue on the record four days later on October 30, 2008. (See Exhibit, "B" – Transcript of October 30, 2008 hearing, Page 26 (lines 17-25), and page 27 (lines 1-8). The court, in responding to the letter advising of the threat on plaintiff's witness, commented, "You [Mr. Beranbaum] seem to want to tell me something or report it to me. Okay. You report it to me."

46. It is plaintiff's belief that the court had an obligation to report the matter to federal agents and, further, to interview Ms. Corrado concerning the incident. In addition, the Attorney General also had an obligation as the state's top enforcer of the law.

47. Plaintiff believes she has been severely prejudiced by the threat upon her witness, Ms. Corrado, and, as the lower court and Attorney General were aware, Ms. Corrado did not appear as a witness in this proceeding.

48. While plaintiff is aware that counsel within the Office of the New York Attorney General's office offered to "fully" compensate Mr. Beranbaum for ALL of his legal fees, expenses, etc., if plaintiff settled her case, she is unaware of the exact timing of when the compensation offer, believed to be between $120,000.00 and $150,000.00, was actually made.

VI. Conclusion

49. For the reasons set forth, Moving respectfully requests that this Court in the interest of justice issue an order restraining the Office of the New York State Attorney General's office from representing employees of the State of New York in any legal proceeding involving the herein before any federal or state court, agency or any other tribunal grant a new trial.

50. As noted, the participation of the Attorney General in failing to investigate the charges submitted by plaintiff against the defendants, and subsequently representing these same persons in the instant court proceedings, denied plaintiff's constitutionally protected right to a fair and impartial trial. This denial of basic rights was compounded by unclear, confusing and convoluted instructions to the jury, discovery of new evidence and serious allegations of intimidation of witnesses, which all support the de novo pending appeal and granting of the instant motion for disqualification.

51. Wherefore, Moving respectfully requests that the court grant the within Motion, as well as such other and further relief that may be just and proper. I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 14, 2010

New York, New York Christine C. Anderson"


I, Plaintiff Crystal L. Cox, request this court to enter U.S. District Court Southern District of New York, Civil Case Number 1:07-cv-09599-SAS. (Anderson v. The State of New York et al), as a Related Case to **2:13-cv-00297-JCM-VCF.**


# CERTIFICATE OF SERVICE

**On March 22nd, 2013**

I hereby certify that I served the foregoing on:

Las Vegas Courts
United States Magistrate Judge Cam Ferenbach
333 Las Vegas Blvd. S.
Las Vegas , NV   89101


Respectfully Submitted
**2:13-cv-00297-JCM-VCF**
Pro Se Plaintiff Crystal L. Cox