Ronald D. Green, NV Bar #7360
Randazza Legal Group
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 fax
ecf@randazza.com

Attorney for Plaintiffs
MARC J. RANDAZZA, JENNIFER RANDAZZA, and NATALIA RANDAZZA

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARC J. RANDAZZA, an individual, JENNIFER RANDAZZA, an individual, and NATALIA RANDAZZA, a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>CRYSTAL COX, an individual, and ELIOT BERNSTEIN, an individual,<br><br>Defendants. | Case No. 2:12-cv-02040-GMN-PAL<br><br>**MOTION TO HAVE DEFENDANT CRYSTAL COX DECLARED A VEXATIOUS LITIGANT** |

Plaintiffs Marc J. Randazza, Jennifer Randazza, and Natalia Randazza, through counsel, hereby submit this motion to have Defendant Crystal Cox ("Cox") declared a vexatious litigant and require her to obtain an attorney's signature on any further documents filed in the instant suit, and on any other action within the State of Nevada.

**I. Introduction and Statement of Facts**

Cox is the epitome of a vexatious litigant. Cox's behavior in this case (and a plethora of others nationwide that are rapidly multiplying) has been intentionally harassing to Plaintiffs and this Court, and calculated to delay the resolution of this case. Cox has also inappropriately used this litigation to continue her harassment of third parties completely unrelated to this dispute. As a result of Cox's numerous repetitive and unnecessary filings, the docket has already accumulated

1

128 entries in the timespan of only three months, many of which consist of repetitive motions insisting upon the recusal of the judge, improperly demanding that the Court "investigate" Plaintiff Marc Randazza, requesting unwarranted sanctions, and bizarre motions for discovery that would be unnecessary if Cox responded to Plaintiffs' requests for a discovery conference (ECF 51 Exh. A), but given the outstanding motion for default as to Eliot Bernstein (ECF 65) and motion for summary judgment on Plaintiffs' claims against Cox (ECF 75), discovery is a moot issue. Furthermore, Cox's filings often ignore the page limits set forth by Local Rule 7-2 and contain the same incomprehensible and impertinent language accusing Plaintiffs, their counsel, Judge Navarro, and a wide array of third parties of all manner of conspiracies.

Cox represents that she has filed a separate lawsuit in the United States District Court for the District of Nevada against Randazza, his counsel, and this Court (ECF 128 at 2). Cox further avers that, to date, she has filed seventeen motions in that case (*id.*). If true, this conduct makes it clear that she is likely to continue her history of littering the court docket in that case, as she has done in this one.

Additionally, Cox states that she has filed at least five more complaints in other federal courts across the country against various other defendants related to Randazza and this case (and two additional cases in the United States District Courts for the District of New Jersey and Southern District of Florida not mentioned in her May 18 reply) (ECF 128 at 3). Cox has informed the Court of her largely duplicative complaints, against largely the same parties for largely identical conduct, have been filed in the District of Arizona, Northern District of Illinois, Eastern District of Wisconsin, Southern District of New York, Northern District of California, and the District of New Jersey (*see id.*). Cox's conduct demonstrates that she shall continue her abuse of the legal process until the Court takes protective measures to have her declared a vexatious litigant.

Cox's conduct in this case is a burden to the Court, Plaintiffs, and the third parties she is harassing. Given that Cox has already ignored this Court's admonition that she cannot continue to file impertinent motions (*see, e.g.,* ECFs 86, 109), the only effective way to put a stop to Cox's behavior is for the Court to declare her a vexatious litigant and require her to retain counsel before filing any additional filings in this, or any other, legal action.

## II. Legal Standard

Federal district courts have the power to enter pre-filing orders against vexatious litigants such as Cox. *See Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007). "Flagrant use of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *Id.*, quoting *DeLong v. Hennessey,* 912 F.2d 1144, 1146 (9th Cir. 1990).

Pre-filing orders may enjoin litigants who have abusive and lengthy histories of litigations. *See DeLong*, 912 F.2d at 1147.  Serial abusers of the courts may be required to have their filings pre-reviewed for an attorney's signature under 28 U.S.C. § 1651, known as the "all writs" act. *Johns v. Town of Los Gatos*, 834 F. Supp. 1230 (N.D. Cal. 1993).  "[F]ederal courts may exercise their authority under the All Writs Act, 28 U.S.C. § 1651(a), to issue prefiling injunctions against vexatious and repetitive litigants," where there are no alternative and adequate sanctions. *Miles v. Angelone*, 483 F. Supp. 2d 491, 497 (E.D. Va. 2007) (finding that a prisoner's record of serial filings demonstrated a clear intent to harass and burden the court, abusing his right to access the institution).  Other district courts have found that use of the all writs act to require pre-filing review of a vexatious litigant's submission is appropriate to prevent expenditure of resources on frivolous and vexatious claims. *Id.*; *see also Lundahl v. NAR, Inc.*, 434 Supp. 2d 855 (D. Idaho 2006).  This remedy is particularly appropriate where a litigant's activities are "both numerous and abusive." *Id.* at 859.

Once established, these pre-filing orders enjoin the litigant from filing further actions or papers unless the litigant can first meet certain requirements as set by the court. *See Moy v. United States*, 906 F.2d 467, 469 (9th Cir. 1990); *see* 28 U.S.C. § 1651(a).  Further, a court can prohibit a vexatious litigant from continuing to file actions in federal court.  A party's right of access to the court is not absolute or unconditional. *See Green v. Warden*, 699 F. 2d 364, 369 (7th Cir. 1983); *see also Miller v. Donald,* 541 F.3d 1091 (11th Cir. 2008) (finding that the re-imposition of filing fees on indigent litigants, among other financial considerations, is one way federal courts can protect themselves from conduct that impairs their Article III functions).

**III. Argument**

The United States Court of Appeals for the Ninth Circuit has adopted a five-factor test for determining whether a litigant can be declared "vexatious": 1) whether the litigant had notice and an opportunity to be heard; 2) whether an adequate record has been created; 3) whether the litigant is represented by counsel; 4) whether the litigant has caused unnecessary and needless expense to the parties and burden on the court; and 5) whether lesser sanctions would adequately protect the courts and other parties. *See Molski*, 500 F.3d at 1051. While the *Molski* court used a decision from the United States Court of Appeals for the Second Circuit as a guidepost for its decision in a vexatious litigant case, the Ninth Circuit generally uses a broader two-step process: First, the court must analyze whether substantive findings on the part of the district court show the party's litigation to be frivolous or harassing. Second, the Court's order, if any, must be narrowly tailored to fit the specific vice encountered. *Id.* at 1057.

The Ninth Circuit's additional procedural components require that 1) the litigant be given notice and a chance to be heard before the order is entered, and 2) the district court compile an "adequate record for review."[1] *Id.* As set forth below, Cox satisfies both the Second Circuit's narrow test and the Ninth Circuit's broader test. Accordingly, Plaintiffs respectfully request the Court declare Cox a vexatious litigant and require that all further motions in this case be signed by an attorney prior to filing.

**A. Cox is a vexatious litigant.**

Taken as a whole, Cox's behavior in this case and others she has filed support finding that she is a vexatious litigant. As such, the Court should declare that Cox is a vexatious litigant and cannot file any further documents without the signature of an attorney. Such a result will preserve

---

[1] Procedurally, Plaintiffs and the Court should have no issue meeting this burden. Cox will be given notice of the motion, as she currently receives all notifications via the electronic filing system, and Plaintiffs assume Cox will be given an opportunity to respond. As to the second procedural point, Plaintiffs contend that the docket and all moving papers submitted thus far are adequate to declare Cox a vexatious litigant.

Cox's access to the judicial process while conserving limited judicial resources that have been consumed, and continue to be consumed, by Cox's many filings.

### 1. Cox has an extensive history of abusive litigation and has been heard by this Court, and several others, repeatedly.

Cox has made it abundantly clear that she intends to use the court system for her own purposes – but not purposes that it is designed to serve. In response to the Court's dismissal of her counter-claims because they both asserted causes of actions that could not be brought in this Court and raised claims that were "separate and distinct" from the original Complaint (ECF 89), Cox initiated a new case (ECF 128 at 3). In addition, Cox now purports to have filed five identical cases in other courts, attached hereto as Exhibits A through E. An additional case that Cox filed in U.S. District Court for the District of New Jersey, attached hereto as Exhibit F - which she filed on May 9 but did not disclose in her May 18 filing (ECF 128) - is substantively identical to the five preceding complaints (Exhibits A-E). Cox's New Jersey complaint, like the others, alleges RICO and other claims against seemingly everyone who disagrees with her including the World Intellectual Property Organization ("WIPO"), numerous of WIPO's employees, Forbes, the Hon. Gloria Navarro, Randazza Legal Group and its attorneys, Plaintiff Marc Randazza, Ronald D. Green, and Jordan Rushie. (Exhibit F) Most recently, Cox filed yet another nearly identical complaint in the United States District Court for the Southern District of Florida (Exhibit G). This complaint once again names Plaintiff Marc Randazza, his law firm and its attorneys, his counsel in this action, and Judge Gloria Navarro – along with many other repeat defendants – in a sprawling 200-page-long allegation of RICO violations and other claims previously stricken by this Court (e.g., an attempted civil claim arising from 18 U.S.C. § 1512) (Exhibit G at 9).

A number of these foreign jurisdictions, much like this Court (ECF 89), have found Cox's litigation to be meritless, unsupportable, and abusive. Three of the United States District Courts in which Cox has filed lawsuits – the United States District Courts for the District of Arizona, Eastern District of Wisconsin, and Southern District of New York –dismissed her complaints *sua sponte*. The analyses of these courts track this Court's decision to strike Cox's counterclaim, and shall be addressed in turn.

First, the United States District Court for the District of Arizona analyzed Cox's complaint and found that it "does not properly state a claim for relief over which the federal Arizona District Court has jurisdiction, regardless of whether Plaintiff has met the standard for proceeding *in forma pauperis*" (Exhibit H at 4). This analysis is strikingly similar to the order this Court entered striking Cox's amended counterclaim, which was the foundation for her Arizona complaint (ECF 89). Further, the District of Arizona held that Cox's Complaint failed to meet the standards of Federal Rule of Civil Procedure 8. (Exhibit H at 4).

Moving eastward, the United States District Court for the Eastern District of Wisconsin similarly found Cox's claims to be unsupportable (Exhibit I at 6-8). Finally, the United States District Court for the Southern District of New York removed Cox's lawsuit from its jurisdiction (Exhibit J). Echoing the Eastern District of Wisconsin's analysis (*compare* Exhibit H at 6-8 and Exhibit J at 2-3), the Southern District of New York found that neither jurisdiction nor venue were proper before it (Exhibit J at 2-3). Consequently, the Southern District of New York transferred Cox's action to the District of Nevada. (*Id.*)

Cox's conduct apparently is not restricted to courts within the United States, either. Cox further states "civil action has been filed … in Geneva Switzerland, Republic and Canton of Geneva JUDICIAL POWER Civil Court, Court of First Instance" in her most recent filing. (ECF 128 at 3) Given Cox's history thus far, it is readily apparent that she will continue to file complaints in different jurisdictions throughout the country and around the world unless she is stopped from doing so. However, it is clear that she has no legally cognizable claims – and that she simply wishes to throw a tantrum in as many courts, and on as many sheets of paper, as possible.

In *Lundahl*, the Court held that "[b]ecause the record now before [the] Court shows beyond cavil that Lundahl's litigation activities have been both numerous and abusive…" Lundahl was a vexatious litigant. 434 F. Supp. 2d at 859. The Court pointed to the fact that Lundahl was vexatious, in large part, because she was found to be filing identical suits "prosecut[ing] the same claims against the same defendants…" in different jurisdictions. *Id.* at 856-57. In much the same way that Cox appears to filing suit against anyone she decides she dislikes, the Court in *Lundahl* emphasized the fact that she "has a lengthy history of targeting the same defendant and any party

6
*Motion to Declare Cox a Vexatious Litigant*

previously associated with her lawsuits, including judges, clerks, and attorneys, in each of her subsequent actions." *Id*. at 859.

Like the vexatious litigant in *Lundahl*, when Cox "is subject to an adverse determination in one court, she simply moves to a new forum to pursue the same claim." *Id.* Cox's actions in this Court are virtually identical to the conduct at issue in *Lundahl*, and Cox should receive the same status as a vexatious litigant. The United States District Court for the Eastern District of Wisconsin specifically pointed this out in dismissing Cox's claim, noting "[i]t is not proper for a litigant to file multiple suits against the same defendant and for the same conduct in multiple courts." (Exhibit I at 7)  Further, because United States District Court for the Southern District of New York transferred Cox's action to this Court (Exhibit J at 3), Cox now has two identical *pro se* complaints pending before <u>this</u> Court, premised on the same causes of action, facts, and transactions (*see* ECF 128 at 2-3).  While it was Cox's intent to file many actions throughout the country (ECF 128 at 3; Exhibits A-G), the fact that two of her many nearly identical lawsuits are now before this Court (both of which assert the same causes of action this Court struck in its prior order at ECF 89) underscores her calculated abuse of the judicial system.

Cox's conduct demonstrates that she will file complaint after complaint regardless of the viability of her claims. (Exhibits A-J)  The Court has commented on Cox's motions and propensity for filing impermissible actions. (ECF 86, 89) Cox's Amended Counter Complaint was dismissed for being "replete with irrelevant material, inappropriate commentary, baseless speculation, and derogatory statements none of which relate to [the] Complaint." (ECF 89). Further, Cox's Amended Counter Complaint included "countless allegations against a host of Defendants [that are] unrelated to the […] original Complaint, and are based on statutes that do not provide a private cause of action." (*Id*.) While the Court did not explicitly say that Cox's counterclaim was a waste of court time and resources, the Court's granting of Plaintiffs' 12(f) motion carries the same effective meaning, as it was granted "to avoid the expenditure of time and money that must arise from spurious issues by dispensing with those issues prior to trail…" (ECF 89), *citing Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

## 2. Cox is pursuing litigation and loading the docket with unnecessary filings in bad faith.

Cox lacks any good faith intent in pursuing litigation and loading the docket in the instant case and apparently others (ECF 128 at 3) with numerous filings. Cox proclaims herself "an anti-corruption advocate for the people" who has dedicated her "life to fighting judicial corruption." (ECF 128 at 3) Meanwhile, this court, the District of Oregon, and the World Intellectual Property Organization have all deemed her to be a simple extortionist.

In a similar case, the District of Oregon summarized Cox's conduct as polluting the Internet with unfavorable content about her targets, and then offering "'PR,' 'search engine management,' and online reputation repair services" to her victims for hundreds of dollars a month. *Obsidian Finance Group, LLC v. Cox*, Case No. 3:11-cv-57 *2012 WL 1065484* at *7 (D. Ore Mar. 27, 2012). "The suggestion was that [Cox] offered to repair the very damage she caused for a small but tasteful monthly fee." *Id*. In explaining Cox's conduct, the District of Oregon effectively described a protection racket – a classic form of extortion – where victims pay protection money to the people who would cause them harm.

Cox repeated this conduct with Plaintiff Marc Randazza, in an action ultimately giving rise to this action. Cox informed Plaintiff Marc Randazza that she purchased <marcrandazza.com> to "control the search, and pr on my case, if [he] represented [Cox]." (ECF 2-10 at 2-3) Cox "manage[d]" it, but also "need[ed] to make money," prompting Cox to "ask" Randazza if he or anyone hew knew "could use a very good search engine reputation manager." (*Id*.) Cox concluded her offer by telling Marc that she was "not sure if [he] ever research that for [his] online presence," (*id*.) knowing full well she had began an attack on him that she offered her services to remediate.

In evaluating Cox's registration of several of the infringing domain names at issue in this case, WIPO had the benefit of the United States District Court for the District of Oregon's decision in *Obsidian Finance Group, LLC v. Cox*, and her e-mail to Plaintiff Marc Randazza (ECF 2-10). Based on these materials and Cox's conduct, WIPO panelist Peter Michaelson made the following findings:

> [Cox] attempted to commercially benefit from registration of these names by offering "reputation management" services to the Complainant – through baiting the Complainant into an extortionate scheme. Specifically, once the Complainant declined her "reputation management" services, [Cox] then registered domain names that contained not only the Complainant's surname, but also the personal names of his wife and three year old daughter, and then included falsehoods about the Complainant on her websites to which the domain names resolved. [Cox] would then eliminate such sites, and hence the ensuing injury to the Complainant's reputation, only if the Complainant would purchase her "reputation management" services. Further, [Cox] repeatedly engaged in the same general type of extortionate conduct by offering her "reputation management" services to others, including as her targets various business people and third-party attorneys, thus reflecting a pattern of such conduct.

(ECF 6-1 at 6). The WIPO panel further found:

> [Cox's] intention, as reflected by the record, was never to solely provide, through her websites, speech critical of the Complainant. Rather, her objective in both registering and using the disputed names was apparently to engage in a rather sinister and tenacious scheme to extort money from the Complainant. Specifically, [Cox] first posted negative and false commentary on her websites that was intentionally calculated to injure the Complainant's on-line reputation and disrupt the Complainant's business conducted through his law firm. Thereafter, [Cox] used those sites in a manner that apparently optimized their ranking on the Google search engine in order to increase their visibility and prominence on search results yielded through a Google search of the Complainant, thus likely exacerbating the injury caused to the Complainant. Once all this occurred, [Cox] then offered her reputational management services to the Complainant through which, for a considerable fee, she would remediate the Complainant's on-line reputation by eliminating all the negative and false commentary of her own making and presumably also ceasing her use of the disputed domain names. Basically, for a price, she would undo the injury to the Complainant for which she was responsible for having created in the first place.

(*id*. at 9-10) Based on making these findings on the evidence before it, Cox has included WIPO, a number of its officers, and the individual panelist who made this decision within her successive complaints. This conduct is similar to Cox's repeated naming of Judge Navarro as a defendant in her actions, alleging the Court to be party to a global conspiracy because it did not rule in the Defendant's favor.

In her spurious "anti corruption" campaign, Cox improperly uses the courts as her weapon against any who oppose her or resist her extortionate efforts. In reality, her litigation campaign of filing complaint after duplicative complaint in jurisdictions across the country (Exhs. A-G) is just

the latest method for her to damage the search engine results[2] of her "enemies"– the very conduct that prompted this lawsuit.

For several years, Cox has made the World Wide Web her vehicle for fighting her manufactured battles against her victims. Cox's behavior in "Google-bombing" her victims and fiercely attacking them with hundreds of blogs containing all or part of their personal or business names reveals her true intentions. Having found a new, method for harassing her victims, Cox has taken to flooding the docket with motions, much as she has flooded search engines with her cybersquatting domain names and imbedded metatags. She then uploads these filings to her many blogs in order to try and give her extortion scheme some veneer of legitimacy with her wild, unsupportable claims contained in lawsuits she will never serve or prosecute.[3] This is not an accident, but rather how Cox deliberately intends to use, and is using (*see* ECF 128 at 3), the United States District Courts throughout the country.

Cox's intent is not to vindicate her rights, but to cause irritation, at the least, and further harm, at most, to her myriad victims. Thus, Cox files her lawsuits with the bad faith intent to continue to harass her victims online and off, and should be declared a vexatious litigant. Cox's bad faith intent to broaden the sweep of individuals she seeks to harass and burden with her litigation is illustrated by her inclusion of Plaintiffs' counsel and even the Judge presiding over this case in her successive Complaints filed throughout the country.

In *Miles v. Angelone*, the United States District Court for the Eastern District of Virginia found that the petitioner's lack of good faith basis for his meritless filings, including numerous

---

[2] Cox does not merely file these lawsuits, but aggressively links to all of her filings and complaints on her many websites and blogs, and further uses third party services such as DocStoc.com to make the filings available to the public so that the filings (and their contents) are displayed in the search engine results for those named in her civil actions.

[3] Even if Cox were not attempting to enlist the United States Marshals service to prosecute her specious actions (ECFs 91, 103), the fact that she has simultaneously filed what is essentially the same lawsuit against the same parties in a half-dozen different courts throughout the country with tenuous jurisdictional ties to Cox's named defendants (Exhibits A-J) is evidence of Cox's bad faith use of the judicial system. The United States District Courts for the District of Arizona, Eastern District of Wisconsin, and Southern District of New York have all observed and commented upon this very fact (Exhibits H at 4,9; I at 6-8; J at 2-3).

motions to reconsider previous rulings akin to Cox's numerous motions to recuse the Judge in this case, denoted a "complete abuse of petitioner's right to access the court." 483 F. Supp. 2d at 497. As with Cox's history in this case, the petitioner's behavior in *Miles* was found to "evidence a clear intent to harass [because] he continues to submit lengthy motions that are […] frivolous.." *Id.* As was the case in *Miles*, Cox's harassing and wasteful conduct should be met with the declaration that she is a vexatious litigant.

### 3. Cox is not represented by counsel.

Cox thus far has apparently been unable to retain legal counsel in this or any other case she has filed. Previously, Cox stated that she has "attempted to retain counsel, and fail[ed]." (ECF 102) Thus, Cox has been unable to convince any attorney that her claims have enough merit to warrant the expenditure of the attorney's time and effort. However, this has not dissuaded Cox from continuing to attack the defendants in her many other cases *pro se*. (Exhs. A-G) Had an attorney engaged in Cox's conduct in this litigation, he or she would have long ago been heavily sanctioned.

The fact that Cox is not represented by counsel and continues her harassing filings after being unable to persuade an attorney to take her case makes this factor more persuasive. *See Miles*, 483 F. Supp. at 495-96 (enjoining pro se vexatious litigant from further filings). If Cox's claims had any merit, an attorney would feel free to take her case, even on a contingency fee basis, given the amount of damages Cox has claimed, without the risk of sanctions. *See Molski*, 500 F.3d at 1058. This factor supports finding that Cox is a vexatious litigant.

### 4. Cox has caused unnecessary expense and burden on the court with her many frivolous filings.

The Supreme Court has noted that "[e]very paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice." *In re McDonald*, 489 U.S. 180, 184 (U.S. 1989). In establishing the need for prefiling injunctions, the Court must determine whether the burden imposed by Cox's continual filing not only is detrimental to the administration of justice in *this* case, but also whether the burden placed on the court effects the Court's capacity to deliver justice throughout the system. *Id*.

When analyzing whether a litigant's actions are frivolous and harassing, the court looks to "both the number and content of the filings as indicia of the frivolousness of the litigant's claims." *Molski* at 1059. It is not enough to show litigiousness, but the claims must be "patently without merit." *Id.* Even if a claim is somewhat legitimate, it crosses the line into frivolous litigation "by asserting facts that are grossly exaggerated or totally false." *Id.* at 1060-61.

Cox's filings in the instant case have been based on claims that are "patently without merit," and intended for the sole purpose of wasting the time of both Plaintiffs and this Court. (*See* ECFs 27, 41 at 13, 86, 89) Beyond filing complaints that are without merit, Cox has filed repetitive motions including numerous motions asking for the recusal of Judge Navarro (ECFs 44, 81, 97; *see* ECF 86; *see also* ECF 122), numerous motions to enjoin the Attorney General or other counsel to represent her (ECFs 102, 108, 113), and an assortment of other incomprehensible notices and motions. Further, in striking the Counter Claim, the Court ruled that Cox's motion was "replete with irrelevant material [and] baseless speculation." (ECF 89 at 3). Cox's numerous frivolous filings have caused Plaintiffs to incur unnecessary expense by having to review and respond to her constant stream of frivolous filings. This factor therefore also supports Plaintiffs' claim that Cox is a vexatious litigant.

### 5. Lesser sanctions will not adequately curb Cox's abusive behavior.

In vacating an injunctive provision regarding future filings, the Court in *Miller v. Donald* noted that in establishing "the propriety of an injunction [against] filings by a litigant depends on weighing the interest of the court to protect its own jurisdiction to hear meritorious matters against the interest of [the] litigant present his claim for adjudication. Access to the courts is unquestionably a right of considerable constitutional consideration." 541 F.3d at 1096. The *Miller* court further noted that "Conditions and restrictions on each person's access are necessary to preserve the judicial resource for all other persons. Frivolous and vexatious law suits threaten the availability of a well-functioning judiciary to all litigants." *Id.* The court noted that prefiling injunctions must be narrowly tailored to the situation, defending against frivolous and vexatious claims without creating an overly broad obstacle to the court system.

1    Even if this Court merely granted Plaintiffs' Motion to Revoke Cox's ECF Status (ECF 69),
2    Cox has made it clear that she "will not be deterred by a removal of electronic access." (ECF 128 at
3    3). Cox states that she has filed more than seventeen motions in the *Cox v. Randazza et al.* case
4    also pending in the United States District Court for the District of Nevada, despite the fact that she
5    has had to send the motions in via mail, as she has not yet gained ECF privileges. (ECF 128 at 2)
6    Here, even orders denying Cox's requests for things that this Court either cannot grant or for which
7    she has not provided adequate support have not stopped her from continuing to file motion upon
8    motion asking for the same exact relief. (*See* ECFs 20, 44, 49, 70, 72, 81, 91, 93, 96, 97, 103, 104,
9    122, 125, 127)

10    Additionally, the costs of printing and mailing, in addition to filing fees, have not prevented
11    Cox from bringing complaints in seven other courts against various defendants. (Exhibits A- G)
12    This is contrary to Cox's own prior representations that she could not afford the costs of printing
13    and mailing such a high volume of documents (*see* ECFs 72 at 9-10, 91-4, 93 at 3). While Cox
14    claimed that she cannot afford the cost of an attorney or the cost of mailing in her motions, she now
15    claims to be mailing them to this Court at a rapid pace, and these obstacles have not stopped her
16    from filing complaints – all well in excess of 100 pages – in **seven different courts**. (Exhs. A-G)
17    Even if this Court were to revoke Cox's ECF privileges, it would not curb the number of Cox's
18    unnecessary filings in this or her other growing number of other *pro se* cases (see ECF 128 at 2-3).
19    Declaring Cox a vexatious litigant and preventing her from making any filings without an attorney
20    signature is the only sanction strong enough to adequately hinder Cox's abusive behavior.

21    **B.  Nevada law supports finding Cox to be a vexatious litigant.**

22    Cox is not Nevada's first vexatious litigant, and likely will not be its last. The Nevada
23    Supreme Court has an established protocol for dealing with such vexatious litigants and protecting
24    the dockets of courts in this state while preserving litigants' right to access the courts. Pursuant to
25    Nevada Supreme Court Rule 9, the Nevada Supreme Court maintains a list of vexatious litigants
26    who must have the signature of an attorney to make any filings within the State.[4] The maintenance

---

[4] This list is available at http://www.nevadajudiciary.us/images/vexatious%20litigant%20list.pdf

of this list, and Cox's placement upon it by order of this Court, is well within the boundaries of due process. When analyzing a similar provision, the California Supreme Court has found restrictions to vexatious litigants' access to the courts necessary "to protect the state against the costs of defending baseless claims, the vexatious litigant statute was a reasonable use of the state's power," and "therefore it did not violate litigants' due process rights." 14 Geo. J. Legal Ethics 909, 923-24, *citing Taliaferro v. Hoogs*, 46 Cal. Rptr. 2d 147, 151-53 (Cal. Ct. App. 1965).

In finding Cox to be a vexatious litigant, the Court must balance Cox's constitutional right of access to the court with the Court's need for an unburdened docket. As discussed extensively in this motion, Cox has proven that she is willing to file motion after motion to burden the other parties and the Court regardless of her ability to file electronically (ECF 128 at 2 (stating that Cox has mailed in "over 17 motions" in her Nevada case)). Simply removing her ECF privileges will not deter her from overloading the courts with her filings. Declaring Cox a vexatious litigant and adding her to the list maintained by the Nevada Supreme Court will immediately halt her abuse of the State's courts. However, adding Cox to the Nevada Supreme Court's vexatious litigant list will not deprive her of <u>access</u> to the court. By declaring Cox a vexatious litigant and requiring her to have all of her submissions signed by a licensed attorney in order to file any further documents in the State of Nevada, the integrity of the State's state and federal courts will be maintained, ensuring any motions she files will have legal and factual merit.

**V. Conclusion**

Cox's ceaseless conduct has become a burden on this Court and other United States District Courts throughout the country – many of which are referring Cox back to Nevada, or transferring her duplicative actions here themselves. Cox's numerous filings in the last three months, in this case, her other civil case filed before this Court, and the other actions she has filed nationwide which are being transferred to this Court (*see* Exhibit I at 3), are unnecessarily duplicative and have served no purpose but to harass the Plaintiffs in this action, Defendants in her other actions, and this Court. (A prime illustration of this point is Cox's refusal to adhere to the page limits set forth in Local Rule 7-2). Despite Cox's attempts to obtain legal representation, she is still representing herself *pro se*, likely because every attorney she has spoken with rightly believes her positions too

meritless to affirm with their signature. Cox's propensity for filing in any court she can proves that she has no intention of discontinuing her harassment of Plaintiffs and third parties through more meritless *pro se* filings in her Nevada actions. Further, the Court has already informed Cox that it will not abide frivolous and harassing lawsuits. The Nevada Supreme Court has created a remedy that will protect this State's Courts from her legal assault unless a licensed attorney signs her filings. For the foregoing reasons, Cox's conduct all but demands that this Court declare her a vexatious litigant. Such an order will result in Cox being added to the Nevada Supreme Court's list of vexatious litigants, and thus being required to obtain permission from the Court or the signature of a licensed attorney before making any further filings within the State of Nevada.

Dated: June 3, 2013                                              Respectfully submitted,

                                                                 */s/ Ronald D. Green*
                                                                 Ronald D. Green, NV Bar #7360
                                                                 Randazza Legal Group
                                                                 6525 W. Warm Springs Road, Suite 100
                                                                 Las Vegas, NV 89118
                                                                 888-667-1113; 305-437-7662 fax
                                                                 ecf@randazza.com

# CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure 5(b), I hereby certify that the foregoing document was filed using this Court's CM/ECF system on June 3, 2013.

Dated: June 3, 2013

Respectfully Submitted,

*Laura M. Tucker*
Laura M. Tucker
Law Clerk
ecf@randazza.com
Randazza Legal Group
6525 W. Warm Springs Rd., Suite 100
Las Vegas, NV 89118
(888) 667-1113
(305) 437-7662 fax