Ronald D. Green (Nevada Bar No. 7360)
Randazza Legal Group
3625 S. Town Center Drive
Las Vegas, NV 89135
Telephone: 702-420-2001
Fax: 702-420-2003
ecf@randazza.com

Attorney for Plaintiffs
MARC J. RANDAZZA,
JENNIFER RANDAZZA,
NATALIA RANDAZZA

**UNITED STATES DISTRCIT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARC J. RANDAZZA, an individual, JENNIFER RANAZZA, an individual, and NATALIA RANDAZZA, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>Crystal Cox, an individual,<br><br>Defendant. | Case No. 2:12-cv-02040-GMN-PAL<br><br>**MOTION FOR ORDER TO SHOW CAUSE REGARDING WHY DEFENDANT CRYSTAL COX SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATIONS OF THE TEMPORARY RESTRAINING ORDER** |

**MOTION FOR ORDER TO SHOW CAUSE**

Plaintiffs Marc J. Randazza, Jennifer Randazza, and Natalia Randazza through counsel, hereby move this Court for an Order to Show Cause regarding: (1) why Defendant Crystal Cox ("Cox") should not be held in contempt for her violations of the Temporary Restraining Order and Preliminary Injunction (ECFs 14, 41); (2) why this Court should not enter sanctions against Cox, up to and including the entry of Default Judgment; and (3) why this Court should not order Cox to pay Plaintiff's reasonable attorneys' fees and costs incurred in connection with the filing of the instant action against Defendant and enforcing the TRO and Preliminary Injunction and return Plaintiffs' bond.

This motion is made upon the grounds that Defendant has acted intentionally and with bad faith to violate this Court's orders entering Plaintiffs' requested TRO and Preliminary Injunction since the entry of those orders. Cox's violation of these orders is continuous and

ongoing, despite subsiding – briefly – at the time the Court entered its orders (ECFs 14, 41). Now, however, Cox has resumed her offending behavior in direct defiance of the Court's orders. Cox's offending conduct includes but is not limited to the continued use of Plaintiffs' names, and variations thereof, on websites, on files she uploads to the Internet, and within hidden text and metatags on her websites in an effort to further appropriate Plaintiff Marc Randazza's valuable trademark rights, harassing his family, and causing further and ongoing harm Plaintiffs. All of the actions are prohibited by the Court's order entering a Preliminary Injunction (ECF 41).

## MEMORANDUM OF POINTS AND AUTHORITES

### I. INTRODUCTION AND STATEMENT OF RELEVANT FACTS

#### A. Nature of Action

Cox has violated, and continues to violate, Plaintiffs' trademark rights. Defendant operates websites where she refers to herself as an "investigative blogger" and offers "reputation management services" and derives advertising revenue from the Internet traffic that visits her sites. Defendant continues to use Plaintiffs' names in a manner now referred to as a "Google Bomb" on her various websites.[1]

"Google bombing" has existed since at least 1999, and refers to a practice whereby a specific web page is targeted to rank in the top few "hits" for a search term. A well-known example of this practice from the mid-2000's Internet users' creation hyperlinks and other content resulting in the White House's official biography of George W. Bush being among the top search results for the term "miserable failure."[2] There are several forms of Google bombing, the most well-known involving the linking of a specific term to a specific site as many times as possible all over the Internet. By linking all of these sites together, the engineer of the Google Bomb influences the algorithms powering Google so as to heighten the PageRank of the desired web site. Google bombs are usually carried out by "a group of people (normally lead *by a*

---

[1] It is also known by the more generic term, "Search Engine Bomb," but the omnipresence of Google has made the term "Google Bomb" the more ubiquitous phrase, even when referring to other search engines.
[2] Noam Cohen, *Google Halts 'Miserable Failure' Link to President Bush*, The New York Times (Jan. 29, 2007), *available at* http://www.nytimes.com/2007/01/29/technology/29google.html?_r=0 (*last accessed* July 12, 2013) ("Such gamesmanship has been termed 'Google bombing'").

*disgruntled blogger* or someone with a political agenda)"[3] and are often directed toward political figures, humorous endeavors, and/or adversaries.

Defendant Cox admits that she originally registered dozens of Domain Names containing Plaintiff's name in an attempt to harass and extort Plaintiff Randazza and his family. (See Exhibit 1). Specifically, Cox said she hoped to intimidate Plaintiff Randazza to keep him from giving deposition testimony for *Obsidian Finance Group, LLC v. Cox* (Exhibit 1). In addition, Cox has asked Plaintiff Randazza to pay her to "maintain" his online reputation, which she herself has sought to destroy through search engine optimization and link spamming techniques.[4] (See ECF 41 at 7, "*Defendants' actions leading up to the filing of the Complaint, as well as Defendants' past behavior, as represented in Plaintiffs' reply briefing, clearly seems to indicate cyber-extortion,*" and *Randazza v. Cox*, WIPO Case No. D2012-1525 at 9-10 (Nov. 30, 2012), "[Cox] *exhibits her objective in both registering and using the disputed names was apparently to engage in a rather sinister and tenacious scheme to extort money from [Randazza].*")

**B. Defendant's Use of Plaintiff's Mark**

Prior to the issuance of injunctive relief by this Court, Defendant Crystal Cox registered dozens of domain names using Plaintiff's name, or variations thereof, at least one of which was offered for sale to Plaintiff for an exorbitant sum. (*See* Exhibit 2). Since the issuance of injunctive relief by this Court, Defendant has continued to use Plaintiff's name in disparaging blogs posted throughout her various websites. Those websites are then linked together in a process referred to as "link spamming," an effective method of raising the profile, and hence the Page Rank, of an Internet Website. In this circumstance, the "link spamming" is being done with the explicit intent of destroying Plaintiff's Internet profile and demolishing all of the goodwill established in Plaintiff's name.

---

[3] http://www.screamingfrog.co.uk/google-bombs/ (emphasis added).
[4] Link spamming refers to the practice often used by those attempting to manipulate search engine results in which the content of the website links to other pages for a reason other than that of merit. (See definition of link spam, <http://en.wikipedia.org/wiki/Link_spam#Link_spam>). Defendant Cox links to her other websites in her blog posts, which causes her websites to appear higher in search engine results, this is essentially, the definition of a "Google Bomb."

Defendant Crystal Cox admits that her original reasoning behind registering more than two dozen websites, incorporating Plaintiff's name, was to harass and extort Plaintiff in to paying for Defendant's so-called "reputation management services." (See Exhibit 2).  After this Court's issuance of injunctive relief regarding those websites, Defendant appears to have decided on a new scheme to harass Plaintiff through "Google Bombing" him and destroying his online reputation.

This Court has already issued a TRO and Preliminary Injunction prohibiting Defendants from using the Plaintiff's trademark, and variations thereof (ECF 14, 41).  Instead, Defendant continues to disparage Plaintiff on her own websites by using his mark.  Not content to simply use Plaintiff Randazza's mark, Cox uses it to link her many websites together to create a "Google Bomb" in an effort to destroy the goodwill and reputation Plaintiff has established in his name, and crowd out any legitimate effort he makes to use his trademark rights.

The scheme's insidiousness lies in the fact that both obvious responses are beneficial to Cox, and counter to the Plaintiff's best interests: Plaintiff Marc Randazza can choose to withdraw his pending litigation in hopes that Cox's violation of his trademark rights will subside; or the Plaintiff can choose to pay Cox's exorbitant rates (Exhibits 2, 3) to have his online reputation "cleaned up" by Defendant – who would merely by erasing the damaging she herself has done and continues to do in violation of this Court's orders.  Plaintiff Marc Randazza instead requests that this Court grant this Motion to Show Cause so that Cox's violative conduct can be halted.  Since Defendant is impecunious, financial sanctions will be of no effect.  Accordingly, Plaintiff requests that this Court direct Google to shut down each of the URLs used in a manner to violate this Order, direct GoDaddy to transfer the domain names Defendant Cox is using to continue her scheme, and to direct Facebook to shut down groups Cox created using Plaintiff Randazza's name, and further, to order Google to "de-list" any of Cox's domains that may continue to operate.

//

//

## II. LEGAL ARGUMENT

The power to punish for contempt is an inherent power of federal courts, and failure to comply with a court's order is grounds for a finding of contempt. *See, e.g., U.S. v. Ayres*, 166 F.3d 991, 994-996 (9th Cir. 1999) (affirming finding of contempt where a party failed to comply with an order directing production of records). Civil contempt is a creature of the court's inherent power. *See Spallone v. U.S.*, 492 U.S. 265, 276 (1990) (holding that "courts have inherent power to enforce compliance with their lawful orders through civil contempt." (internal quotation marks omitted)).

"[A]ll orders and judgments of courts must be complied with promptly." *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1364 (9th Cir. 1987). The movant in a civil contempt proceeding bears the burden of showing that the contemnors violated a court's order. *See FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1229 (9th Cir. 1999); *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n. 9 (9th Cir. 1992). After the movant has so demonstrated, the burden shifts to the contemnor to explain its failure. *See id.* If a party believes that a court's order was issued against him improperly, that party may appeal but must still comply with the court's order while appeal is pending. *See Maness v. Meyers*, 419 U.S. 449, 558 (1975).

### A. Cox's Conduct Violates this Court's Orders.

*1. Cox's New, Ongoing Online Conduct Directly Violates Specific Portions of the Temporary Restraining Order and Preliminary Injunction.*

In this case, Defendant's intentional violation of the temporary restraining order (ECF 14) and preliminary injunction (ECF 41) issued against her is clear and undeniable. On December 14, 2012, this Court issued a TRO stating that, among other things, "**Defendants, including without limitation, all of its respective partners, officers agents, servants, employees, and all other persons acting in concert or participation with Defendants, are temporarily enjoined and restrained from…using any of Plaintiffs' names, or any confusingly similar variations thereof, alone or in combination with any other letters,**

1 **words, letter strings, phrases or designs in commerce (including, but not limited to,** *on any*
2 *website or within any hidden text or metatags within any website*)**. Defendant shall**
3 **immediately cease and desist any and all use of Plaintiffs' names and any and all variants**
4 **thereof…**" (ECF 14) (emphasis added).
5       On January 11, 2013, this Court further issued a preliminary injunction against Cox
6 stating that "Defendants, including without limitation, all of their respective partners, officers,
7 agents, servants, employees, and all other persons acting in concert or participation with
8 Defendants are temporarily enjoined and restrained from…using any of Plaintiffs' names, or any
9 confusingly similar variations thereof, alone or in combination with any other letters, words,
10 letter strings, phrases or designs in commerce.  Defendants shall *immediately cease and desist*
11 *any and all use of Plaintiff's names and any and all variants thereof, including use of the*
12 *Domain Names*…" (ECF 41, emphasis added).
13       Since entry of the TRO and subsequent preliminary injunction (ECF 14, 41), Cox has
14 made no effort to comply with the injunctions issued against her.[5]  Instead, she has taken
15 affirmative acts in an ongoing attempt to circumvent the Court's orders by using other websites
16 (rather than those at issue in the original TRO and preliminary injunction motion) to post
17 deleterious blog rants about Plaintiff.[6]  (*See, e.g.,* Exhibit 4, the landing page for
18 <unethicalscumattorney.blogspot.com> which appears to be a website devoted entirely Cox's
19 rants about Plaintiff)  This is a violation of the Court's orders because Plaintiff Marc Randazza's
20 name is a common law mark in which Plaintiff has established the goodwill and positive Internet
21 profile that his business, which shares Plaintiff's surname, uses to market its services.  Allowing
22 Defendant to destroy this goodwill – and indeed, by attempting to saturate search engine results,
23 crowd out Plaintiff's ability to even *use* his trademark rights in a meaningful way – by Google
24 Bombing violates the TRO and the preliminary injunction.

---

[5] Defendant is fully aware of the Order, given that she has written about it on her website (<http://stateofnevadacase212-cv-02040-gmn-pal.blogspot.com/2013/06/marc-randazza-filed-slapp-lawsuit.html>) and posted a link to the order. (See <http://www.docstoc.com/docs/142332117/Exhibit-TRO-A-Letter-From-Ron-Green-Ltr-to-Cox-encl-TRO-Order>).

[6] Meanwhile, Google and the domain registrars dutifully complied with this Court's order, which is why this Court should request their cooperation in giving effect to its standing order.

1       Plaintiff Marc Randazza is not the only target of Cox's ire.  Cox also has used Plaintiff
2  Jennifer Randazza's name in her scheme.  One of Cox's websites still features the article
3  referring to Plaintiff Jennifer Randazza as a "slut." (See
4  <http://attorneyviolatedmylegalrights.blogspot.com/2012/03/is-jennifer-randazza-slut-do-
5  babies.html>).[7]  This is also in direct violation of the Court's Order and part of Cox's linking
6  scheme.

7       Further, by devoting a website entirely to Plaintiff Marc Randazza and then linking to
8  that page in many of her other blogs and websites, Cox is using Plaintiff Randazza's mark in an
9  effort to create a Google Bomb.  Cox has gone so far as to post duplicative articles on numerous
10 websites (the articles often are entirely identical, though when they are not, the wording is so
11 similar that without looking at the articles side-by-side the reader would think they *are* identical)
12 (*Compare, e.g.,* Exhibit 5, *with* Exhibit 6, 7, 8, *and* Exhibit 9 *with* Exhibit 10, 11, 12, *and* Exhibit
13 13 *with* Exhibit 14, 15, 16. Exhibits 14 and 15 show essentially the same article posted twice on
14 the same website).  Meanwhile, the "articles" are written in barely comprehensible language, or
15 they are written solely to repeat Plaintiffs' names again and again as part of the Google Bomb.
16 By posting these "articles" in numerous locations (all three of these articles are posted on other
17 sites owned by Cox beyond those used in the Exhibits), and then linking all of the pages
18 together, Cox is manipulating the algorithm used by search engines to increase the 'popularity'
19 of her own pages and thereby increase the PageRank of those pages.  As a result, she artificially
20 boosts the location of her websites.  Further, by using Plaintiff's name as often as possible within
21 each article, Cox is attempting to boost the *relevance* of her articles within a search engine (*i.e.*
22 the more an article uses the name "Marc Randazza" or "Jennifer Randazza," the more likely it
23 will apply to a user searching for information on "Marc Randazza" or his wife in a search engine.
24 *See* Exhibits 13, 14, 15, 16).  Cox's use of Plaintiff's mark is clearly a bad faith violation of this
25 Court's TRO and preliminary injunction.

---

[7] Defendant Cox also solicits "tips" regarding Plaintiff Jennifer Randazza at
<http://thetruthisbeingtold.blogspot.com/2012/03/jennifer-randazza-got-jennifer-randazza.html>

- 7 -

Not all of the instances of Cox's use of Randazza's mark are visible to the naked eye. A term search for Plaintiff's mark within the html source code for Cox's site <unethicalscumattorney.blogspot.com> reveals 119 uses of the Plaintiff's name "Randazza" on the Front Page alone (Exhibit 17). The HTML source code for this web page[8] also reveals that Cox has violated the TRO and preliminary injunction numerous times by using Plaintiffs' marks and Plaintiffs' names within the hidden text of the website (*Id.*). To summarize the operation of HTML code, every use of Randazza's mark and name that is <u>not</u> black type is invisible to the naked eye upon viewing Cox's website. Instead, it is part of the 'hidden text' that search engines analyze when calculating a page's ranking, and that the Court specifically prohibited Cox from using to infringe upon Plaintiff Randazza's trademark. (ECF 14 at 11) (prohibiting Cox's use of Plaintiff's trademark "*on any website or within any hidden text or metatags within any website*") Similarly, the Court's preliminary injunction ordered Cox to "*immediately cease and desist any and all use of Plaintiff's names and any and all variants thereof, including use of the Domain Names…*" (ECF 41 emphasis added).

Moreover, all of these "hidden text" uses are links to other websites and blogs owned or run by Crystal Cox (Exhibit 18, 19), the page source of the links shows that they link to other of Cox's websites). Because search engines view these links as proof that a page has relevance – otherwise, why would anyone link to it – they are an important part of the algorithm for calculating a page's ranks. Cox is consequently artificially manipulating the Page Ranks by linking all of her own websites to one another. This search result fraud and manipulation is unethical in itself, but in light of the Court's order, it is sanctionable, and makes it clear that any order imposed upon Cox is not going to be complied with. Accordingly, any order should also order the third party service providers to give effect to the Court's order.

---

[8] HTML, or hypertext markup language, is the language used to display content on websites. A typical Internet user normally sees only the end result of pages of HTML code when viewing a website such as <google.com> or <msn.com>. However, the HTML code used to create the site can contain far more information that is visible to the search algorithms of Google, Bing, and other search engines – namely, text and links that are written into HTML code, but not visible to the naked eye. While Internet visitors can see this language only by electing to view a page's source code, search algorithms see only that code and the language within it.

This Court's orders were clear and unambiguous and contained no language indicating that Cox was excused from immediate compliance with them. The very nature of injunctive relief, which is only granted to a party upon a showing of irreparable harm, requires that the offending conduct must stop immediately. Unfortunately, this Court's orders have not prevented Cox from continuing to use Plaintiff's mark in a detrimental and deleterious manner.[9] Moreover, Cox's conduct – using Plaintiffs' mark and good names as metatags and titles on her various websites (Exhibit 20 showing myriad metatags bearing Plaintiff's name across no fewer than 9 different websites run by Cox), writing incoherent blog posts tangentially related to Plaintiff as a pretext for her bad faith use of his mark (Exhibit 15 (showing two of the many articles Cox has written about Plaintiff, which, while titled differently, are essentially the exact same article. Each using Plaintiff's name over 220 times)), publishing these same blog posts, unaltered, across myriad different web sites, and then linking those pages together (*See, e.g.* Exhibit 9, 10, 11, 12 (showing the same article posted to four different sites), *and* Exhibit 21 (showing the Page Source for crystalcox.com as of July 16, 2013, with no fewer than 9 different links titled using Plaintiff's name)) so that a search engine's algorithm would interpret Cox's attacks to be significant and valuable to search engine users, forming a definitional Google Bomb – continues to irreparably injure Plaintiff, his business, and his exclusive rights to the goodwill vested in his name.

         2. *Cox's Conduct Has Spread to Websites She Controls Unrelated to Plaintiffs.*

Cox's conduct of repeatedly posting the same article, and the use of hidden text prohibited by the Court's temporary restraining order and preliminary injunction, spans across websites that are controlled by Cox that should have nothing to do with Plaintiffs. Since this Court's entry of a temporary restraining order and preliminary injunction, Cox has used the website <aribass.com> to publish Plaintiff Randazza's trademark in a manner to once again bring it into disrepute and create confusion as to Mr. Randazza's association or sponsorship of Cox's statements (Exhibit 22). Cox has done this with yet another website,

---

[9] Truly, nothing but a writ of bodily attachment or order on third parties will have any effect.

<josephrakofsky.com>, where she has added – and maintains – buttons, written text, and hidden text containing Plaintiff Randazza's entire identifying mark (Exhibits 23, 24). There is no other explanation for this except Cox's deliberate evasion of and contempt for the Court's lawful Order.

Joseph Rakofsky is not a party in this action, nor is he a relative or associate of Plaintiffs. Nonetheless, Cox has appropriated his name as a domain name, and is using it, too, to republish and damage Plaintiff Randazza's trademark rights (*Id.*). As with the other websites, Cox has used hidden text to reprint Plaintiff Randazza's name repeatedly in the site's source code. Excerpts from the source code of <josephrakofsky.com> as it existed on August 19, 2013 are attached as Exhibit 25, and, like the source code of <crystalcox.net>, show Plaintiff Randazza's name used over and over again in text that is not visible to the naked eye (i.e., non-black text), but visible to search engines and deliberately used to damage Plaintiff Randazza's trademark rights and deprive him of the ability to control the commercial use of his mark in search engines such as Google and Bing, and clearly is an attempt to hide her contumacious conduct from the naked eye.

>    3.  *Cox's Conduct In Violation of this Court's Orders has Spread to Social Media Websites*

In addition to running stand-alone websites using Plaintiff Randazza's name and mark, Cox also created a Facebook group titled "Marc Randazza Victims Group," which she formed on July 16, 2013 and was not discovered by Plaintiffs until August 19, 2013. (Exhibit 26). Cox uses the site to post links to her stand-alone sites, thus increasing the exposure of those pages. (Exhibit 26). A search for "Marc Randazza" on Facebook produces only two results: a Marc Randazza public figure page and Cox's "Victims Group." (Exhibit 27). The "Victims Group" page clearly identifies Randazza as an attorney. Cox has used the page in a manner that confuses those viewing it that it is affiliated with Marc Randazza's legal practice. Cox is not using the page as a legitimate criticism, but as yet another forum through which to distribute links to her

websites. Through Facebook, Cox is using Plaintiff Randazza's trademark rights to promote her websites and deprive Randazza of the use of his name and mark.

### 4. Precedent Calls for Cox to Show Cause For Her Conduct Violating this Court's Orders.

"When the gauntlet is thrown down to the authority of the Court and its lawful orders, the Court [has] no choice but to pick it up." *American Airlines, Inc. v. Allied Pilots* Ass'n, 53 F. Supp. 2d 909, 939 (N.D. Tex. 1999). In the instant case, Defendant has "thrown down the gauntlet" with regard to the Court's authority, rendering a finding of contempt sanctions appropriate. *See, e.g., Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979); *see also FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1243-1244 (9th Cir. 1999).

Defendant has already shown that she has no qualms with disregarding the spirit of orders by this Court, necessitating that this Court now place the burden upon her to demonstrate why this Court should not hold her in contempt for her failure to abide by the injunction against her. *See U.S. v. Drollinger*, 80 F.3d 389, 393 (9th Cir. 1996) (holding that the contemptant bears the burden of showing he is not in contempt). Rather than acknowledging the Court's orders, Cox has continued to use Plaintiff's name in a Google Bombing scheme to retaliate against Plaintiff Marc Randazza and his family for their failure to pay her extortion demands. See Composite Exhibit 28, showing additional known Cox websites about Plaintiffs.

Thus, the straightforward analysis required by law leads to a finding that an order to show cause concerning the Defendant's contempt is proper. This Court entered an order enjoining the Defendant from using Plaintiff's name, or any variation thereof. (ECF 14). The Court's preliminary injunction remains in place in this case. (ECF 41). Despite this injunction, Defendant continues to use Plaintiff's name despite the Court's unambiguous prohibition against "using [Plaintiff's name], or any confusingly similar variations thereof…on any website or within any hidden text or metatags within any website." (ECF 14 internal parentheses omitted).

Cox's conduct is no incidental or unintentional violation of the Court's order. Cox has completely disregarded the Court's orders and continues to do so. Her conduct, as seen in the

accompanying exhibits, aligns with her stated intent to be noticed in search results (*See* Exhibit 1; ECF 12-4). True to her word, Cox is using Plaintiff Randzza's trademark rights to deprive him of his own right to use them in search results in order to market or provide information about his professional services. Even without registering new domain names, Cox's conduct arises to an unabated hijacking of Plaintiff's valuable trademark rights – a theft that cannot be abated without judicial intervention. Thus, an Order to Show Cause must issue against Defendant, and this Court should ultimately find Cox in contempt, levying sanctions against her as the Court deems appropriate.[10]

### 5. *The Court Should Issue Further Relief to Ameliorate Cox's Conduct.*

As seen from Cox's conduct in this litigation, she is unlikely to cooperate with this Court's orders. Thus, an entry of contempt may – while procedurally proper – create a greater burden on the Court than this litigation already represents, while not addressing Cox's violations of Court orders. Furthermore, default judgment against Cox would not be unreasonable; given that she has no reasonable defenses, this would not be a drastic remedy. In fact, in similar situations, courts have held that default is appropriate when the defendant's conduct is willful contumacious, or intentional. See, *e.g. Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1995); c.f. *Turner v. Salvatierra*, 580 F.2d 199, 201 (5th Cir. 1978) (judgment by default is a drastic remedy appropriate where there has been a clear record of delay or contumacious conduct).

In the alternative, should Cox fail to adequately show cause for her conduct violating the Court's orders, the Court should order Google, Inc. to delete the infringing blogs so they may be purged of their infringement. Similarly, the Court may order GoDaddy to turn over the domain names Cox uses to commit this infringement to Plaintiffs, as it has done as preliminary relief in this case to prevent Cox's further infringement of Plaintiff Randazza's mark (*see* ECF 14, 41).

---

[10] Special procedural protections apply in cases in which contempt by a party occurs outside of the court's presence. *See Int'l Union UMWA v. Baatwell*, 512 U.S. 821, 833 (1994). Specifically, a motion regarding such contempt generally requires that the court first issue an order to show cause why the party in question should not be held in contempt. *See Florida Ass'n for Retarded Citizens, Inc. v. Bush*, 246 F.3d 1296, 1298 (11th Cir. 2011). Since Defendant's contempt occurred outside the presence of the Court, the Court should issue an Order to Show Case regarding why Defendant should not be held in contempt by a certain date.

The Court may also order Facebook to delete the "Marc Randazza Victims Group" to prevent Cox from using Randazza's name and mark in a manner that violates the Court's order.

Cox is in contempt of this Court's orders, and an order to show cause is appropriate. Based on the nature of her conduct and her prior self-representation before this Court, it is highly unlikely that she will be able to offer any justification for her actions. In the likely event that Cox is found to be in contempt of this Court and sanctions proper, Cox herself has proven, through her ongoing and increasing contumacious conduct, that she will simply ignore the Court's orders, or act to evade their letter and their spirit. Based on the conduct that resulted in her ECF privileges being revoked (ECF 144), and her proclivity for treating every ruling of this Court as an act in a global conspiracy against her (see ECFs 20, 44, 81, 97) it is certain that she will ignore, evade, or simply mock the Court's further orders. Thus, in order for the Court's orders to take effect, they must be made to third parties – as they already have been in this case – who will comply with them to give effect to the Court's orders even where Cox refuses to do so.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff's motion should be granted and an order to show cause for contempt should be issued as to the Defendant's violation of this Court's lawful preliminary injunction (ECF 41). Specifically, Plaintiffs pray that this Court:

1. Issue an Order to Show Cause regarding why Defendant Crystal Cox should not be held in contempt for her violations of the Temporary Restraining Order and Preliminary Injunction;

2. Sanction Defendant Crystal Cox by:
   a. Entering a default judgment against Defendant;
   b. Directing Defendant to pay Plaintiffs' reasonable attorneys' fees and costs incurred in connection with the filing of the instant action against Defendant
   c. Releasing Plaintiffs' bond.

3. Issue an Order directing Google, Inc. to delete each of the URLs that violate the Preliminary Injunction, including, but not limited to,

<attorneyviolatedmylegalrights.blogspot.com>, <unethicalscumattorney.blogspot.com>, <trialbyblog.blogspot.com>, <crystalcox.blogspot.com>, <libbymontananews.blogspot.com>, <thetruthisbeingtold.blogspot.com>, <lyingtrolllegalgroupsucks.blogspot.com>, and <attorneyviolatedmylegalrights.blogspot.com>.

4. Issue an Order directing GoDaddy to transfer the domain names Defendant Cox continues to use to harass Plaintiffs, including, but not limited to, <aribass.com>, <plaintiffcox.com>, <exposepetermichaelson.com>, <crystalcox.com>, <crystalcox.net>, <ethicscomplaint.com>, <investigativeblogger.com>, <freespeechcoalition.net>, and <josephrakofsky.com>;

5. Issue an Order directing Facebook to shut down groups Cox created using Plaintiff Marc Randazza's name, including, but not limited to, Marc Randazza Victims Group; and

6. Issue an Order directing Google to de-list from its search engine results any of Cox's domain names that continue to operate.

Dated: August 20, 2013

Respectfully Submitted,

_____
Ronald D. Green
3625 S. Town Center Drive
Las Vegas, NV 89135

Attorney for Plaintiffs,
*Marc J. Randazza, Jennifer Randazza, and Natalia Randazza*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure 5(b), I hereby certify that the foregoing document was served to Defendant Crystal L. Cox at:

P.O. Box 2027
Port Townsend, WA 98368

Dated: August 20, 2013

Signed,

*[signature]*

Laura M. Tucker, Law Clerk
ecf@randazza.com
Randazza Legal Group
3625 S. Town Center Drive
Las Vegas, NV 89135
(702) 420-2001
(702) 420-2003 fax