Ronald D. Green, NV Bar #7360
Randazza Legal Group
3625 S. Town Center Drive, Suite 150
Las Vegas, NV 89135
702-420-2001
702-420-2003 fax
ecf@randazza.com

Attorney for Plaintiffs
MARC J. RANDAZZA, JENNIFER RANDAZZA, and NATALIA RANDAZZA

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARC J. RANDAZZA, an individual, JENNIFER RANDAZZA, an individual, and NATALIA RANDAZZA, a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>CRYSTAL COX, an individual, and ELIOT BERNSTEIN, an individual,<br><br>Defendants. | Case No. 2:12-cv-2040-JAD-PAL<br><br>**PLAINTIFFS' REPLY TO COX'S RESPONSE TO ORDER TO SHOW CAUSE (ECF 169)** |

**PLAINTIFFS' REPLY TO COX'S RESPONSE TO ORDER TO SHOW CAUSE (ECF 169)**

Plaintiffs Marc J. Randazza ("Randazza"), Jennifer Randazza, and Natalia Randazza, through their undersigned counsel, file this reply to Cox's Response to Order to Show Cause (ECF 169). Although dated as filed March 3, 2014, Plaintiffs did not receive this document until receiving the Court's electronic notification on March 5, 2014. Cox's certificate of service acknowledges that she did not serve this document on Plaintiffs, and specifies that she mailed the document only to the Court (ECF 169 at 10).

**I. Introduction**

Crystal Cox is an extortionist. Though proclaiming to be an "investigative blogger" and "whistleblower," the clear goal of Cox's online conduct is to extract protection money from her

1

victims, which include Plaintiffs. She registered the domain name <marcrandazza.com> and alerted Randazza to this fact only after she had done so – informing him that she offered online reputation management services and needed to make money.[1] (ECF 41)

Randazza was not Cox's only victim[2] – she previously attempted to run the same protection scheme on Kevin Padrick and Obsidian Finance Group LLC, offering to provide them with dubious reputation management services at a rate of $2,500 per month only *after* she had created page upon page of incoherent, false, and troubling rants about them. *Obsidian Finance Group v. Cox ("Cox I")*, Case No. 3:10-cv-57, *2012 U.S. Dist. LEXIS 43125* at *20 (D. Ore. Mar. 27, 2012) Specifically, the *Cox I* court noted:

> [T]he uncontroverted evidence at trial was that after receiving a demand to stop posting what plaintiffs believed to be false and defamatory material on several websites, including allegations that Padrick had committed tax fraud, [Cox] offered "PR," "search engine management," and online reputation repair services to Obsidian Finance, for a price of $2,500 per month. The suggestion was that [Cox] offered to repair the very damage she caused for a small but tasteful monthly fee.

*Id*. The damage of Cox's scheme was not that any reasonable person would believe her statements would be true – but that potential clients, business partners, and other third parties would simply stay away from Cox's victims, including Padrick, Obsidian Finance Group, and Randazza, lest they become one of her victims.

Since Plaintiffs filed this suit, more information has come to light about Cox's extortionate scheme. In July of 2013, the Montana Realty Board recommended that Cox's real estate broker's license be suspended because of the exact type of extortionate conduct at issue in this case (Exhibit A). In the discipline case that the Montana Realty Board considered, Cox violated her potential client's confidences by using confidential information to create a series of bizarre and defamatory websites about him, including claims that he had hired a hitman to kill Cox (*id*. at 23). When he complained, Cox offered to stop and sell him the domain names at issue (*id*. at 23-24).

---

[1] When Randazza refused to pay Cox, she undertook a campaign of harassment against him and, eventually, his wife and young daughter.

[2] In Randazza's case, the World Intellectual Property Organization has already found Cox's conduct to be extortionate in a separate arbitration proceeding concerning six domain names Cox registered that wholly incorporated Randazza's name (ECF 6-1).

1      Even United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit") recognizes
2 that Cox is an extortionist in a published opinion. In a January 17, 2014 opinion, the Ninth Circuit
3 ruled on Cox's appeal from *Cox I*, and discussed Cox's dubious journalistic practices. **The Ninth**
4 **Circuit noted that Cox "apparently has a history of making similar allegations [of "fraud,**
5 **corruption, money-laundering, and other illegal activities"] <u>and seeking payoffs in exchange</u>**
6 **<u>for retraction.</u>**" *Obsidian Finance Group v. Cox ("Cox II")*, 740 F.3d 1284, 1287 (9th Cir. 2014).

7      Despite this damning finding by the Ninth Circuit, confirming what this Court, WIPO, and
8 the Montana Real Estate Board all independently recognized, Cox has viewed the *Obsidian*
9 *Finance* decision – which grants her a new trial in a defamation case against her based on
10 erroneous jury instructions – as vindication of her actions. Plaintiffs do not contend that Cox
11 should be deprived of her First Amendment rights, and contrary to Cox's arguments, this is not a
12 defamation case.

13      Plaintiffs filed their motion for order to show cause on August 20, 2013. Plaintiffs served
14 this filing on Cox via U.S. Mail that same day (ECF 151 at 15). Plaintiffs served this document
15 before Cox closed her PO Box – and failed to inform Plaintiffs or the Court that she had done so –
16 allegedly during only the months of September and October (ECF 169 at 9). On February 28,
17 2014, Cox mailed her response to the Court's Order to Show Cause (ECF 161). As Cox did not
18 serve Plaintiffs (ECF 169 at 10), they never received this document until it appeared on the Court's
19 docket and they received a notice of electronic filing on March 5, 2014. Plaintiffs now respond to
20 Cox's Response to the Court's Order.

21     **II. Argument**

22      Cox fails to show that her conduct does not violate the Court's Temporary Restraining
23 Order (ECF 14) or Preliminary Injunction (ECF 41). Much of Cox's response to the Court's order
24 is a cut-and-paste of allegations from her counterclaim (*compare* ECF 169 at 3-6 and ECF 164).
25 Cox does not attempt to justify her conduct as proper because she cannot. Cox continues to use
26 Plaintiffs' names on her websites as prohibited by the Court's orders (ECFs 14 at 10-11, 41 at 12-
27 13). Cox's repeated use of Randazza's name in order to saturate search engine results for him and
28 his firm continued even after Cox filed her Response to the Court's Order to Show Cause on

Februrary 28, 2014 (ECF 164). Three days later, Cox was back to publishing articles with headlines including "Randazza Legal Group, Marc Randazza; 'Is Marc Randazza, Randazza Legal Group shaking down Porn Producers?'" (Exhibit B).

Cox's violative conduct has been ongoing since the Court issued its Order to Show Cause. On February 16, Cox posted an article about Randazza on the website <JosephRakofsky.com>. Despite this site using the domain name of a third party not connected to this litigation, it repeatedly features Randazza's name on buttons that link to still more of Cox's sites that use Randazza's name to drown out his own use of it (Exhibit C).

Cox's conduct in this vein, both in the past and going on today, violates this Court's orders. The Court ordered Cox that she was enjoined and restrained from:

> [O]perating or maintaining any website that includes any of Plaintiffs' names, or any confusingly similar variations thereof, alone or in combination with any letters, words, phrases and designs.

(ECF 14 at 10-22, 41 at 12) The Court also prohibited Cox from:

> [U[sing any of Plaintiffs' names or any confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases or designs in commerce (including, but not limited to, on any website or within any hidden text or metatags within any website).

(ECF 14 at 11) The Court concluded that Cox:

> **[S]hall immediately cease and desist any and all use of Plaintiffs' names and any and all variants thereof**, including use of the Domain Names, and take all necessary actions to transfer the Domain Names to Plaintiffs.

(ECF 14 at 11, 41 at 12) (emphasis added).

To this day, Cox has repeatedly defied the Court's orders. She offers no justification for her actions, denies responsibility for her conduct, and shows no contrition for her defiance (ECF 169). At any time, Cox could have removed the infringing content from her websites. Instead, she has continued to post more, even as this Court has ordered her to show cause why her use of Plaintiffs' names is not in violation of the Court's orders (Exhibits B, C).

//

//

### A. Cox's Version of Events Does Not Align With Reality.

Cox presents a narrative to this Court that is contradicted by reality and even her own assertions. Cox claims that Randazza was her attorney (ECF 169 at 2), but previously alleged that she never retained him and had no relationship with him (ECF 164 at 2-4). Cox claims that she is impoverished and could not afford to keep her PO Box open (ECF 169 at 9), but finds a way to pay more than $2,500 per year in domain name registration fees (Exhibit D).[3] Now eager to portray herself as a victim, Cox previously told the media that she was fit to represent herself and "did a damn good job" in a prior trial – even "a better job than a lawyer could have." (Exhibit E) Indeed, Cox's repeated insistence that she never attempted to extort Randazza are belied by the Court's own findings of fact when Cox was initially heard on the issue. (ECF 41 at 7 and 9 (describing Cox's conduct as "cyber-extortion," and finding that an injunction would "return the parties to the position that existed before Defendants began using Plaintiffs' personal names in association with their websites, before the **extortion and witness intimidation** began")) (emphasis added).

Instead, the evidence of record in this case presents a very different explanation for Cox's conduct. Rather than being naïve, Cox is a seasoned *pro se* litigator who knows full well what she is doing, but claims ignorance because she believes it to be to her advantage. Her response to the Court's order to show cause presents a story that is not only unsupported by the evidence, but belied by it. Cox's explanation of her conduct should be evaluated as the *post hoc* rationalization of her conduct that it is.

### B. Cox Offers No Justification for Her Demonstrated Violations of the Court's Orders.

Plaintiffs' motion to show cause contained detailed descriptions of Cox's violative conduct and how it contravened the Temporary Restraining Order and Preliminary Injunction (ECF 151). This motion also contained more than two dozen exhibits showing Cox's continued use of

---

[3] GoDaddy.com LLC, and most other domain name registrars, generally carries a $10 annual charge for each domain name registered through its service. Additionally, Cox presumably has to pay web hosting charges, but Plaintiffs are unclear as to how she pays for those services.

1  Randazza's name in hidden text, links, and buttons on her websites in violation of the Court's
2  orders (*see id*.).

3        To the contrary, Cox admits that she "cannot stop posting about Randazza," even despite
4  the Court's orders (ECF 169 at 7)  However, Cox's response misses the point.  This litigation and
5  the Court's injunction are not in response to Cox's criticism of Randazza.  In fact, despite the
6  defamatory nature of many of Cox's statements, Plaintiffs are not presently interested in pursuing
7  Cox for her false statements (ECF 1 ¶ 11).  The conduct Plaintiffs seek to end are Cox's actions
8  calculated to drown out any contrary view to Cox's writings.  Plaintiffs' claims are about her
9  obsessive reiteration of his name, posting identical statements about him and his law firm across
10  dozens of websites, and inter-linking them in order to ensure nobody else's communications can be
11  seen through the thicket of her false and harmful blog posts – which she will remove, for a fee
12  (ECF 41 at 7).  Cox's transgressions require a remedy.  While it may have been simpler for
13  Plaintiffs to bring a defamation claim, that would not end Cox's harm.  Even if Cox were saying
14  <u>positive</u> things about Plaintiffs, the Complaint would not change.  Cox is not interested in
15  expressing her false statements about Plaintiffs as much as she is attempting to ensure that her
16  voice is the only one that may be heard saying *anything* about Plaintiffs.  In doing so, Cox attempts
17  to obscure all other opinions or factual mentions of Plaintiffs through her bad faith conduct.

18        The Court has not enjoined Cox's lawful conduct; instead, it has only enjoined her from
19  violating the United States' trademark laws and furthering her extortive scheme.  Such an
20  injunction – and the expansion of it to embrace all of Cox's extortionate conduct – is entirely
21  proper.  There is no First Amendment protection for extortion.  *U.S. v. Boyd*, 231 Fed. Appx. 314,
22  316 (5th Cir. 2007); *U.S. v. Larson*, 807 F. Supp. 2d 142, 164-65 (W.D.N.Y. 2011); *Smithfield*
23  *Foods, Inc. v. United Food & Commer. Workers Int'l Union*, 585 F. Supp. 2d 789, 806 (E.D. Va.
24  2008).  It is ironic that Cox seeks to drown out all other voices, as if she attended a debate with a
25  megaphone, and then claim that Plaintiffs are attempting to violate <u>her</u> First Amendment rights.

26        Plaintiffs do not wish to curtail *all* of Cox's activity.  Instead, they seek to curtail only as
27  much of Cox's conduct as is necessary to enjoin her extortionate conduct.  Cox's tenacity in
28  seeking to extort Plaintiffs, however, make it so that the Court's injunction will affect much of her

conduct. The scope of the Court's relief is ultimately in Cox's hands: She may abandon her extortionate scheme and no longer have to worry about the weight of the Court's orders bearing down upon her. Thus far, she is unwilling to change.

While Cox's writings look random, repetitive, and stilted to the untrained eye, they are carefully drafted in a fashion that ensures that they dominate the Internet presence for Plaintiffs' names and identities through Cox's repeated posting of these writings, linking them with another across her dozens of blogs, acts as a force multiplier in her attempt to hijack Plaintiffs' web presence and ransom it back to them (ECF 14, 41). This unlawful conduct, even if effected through written statements, is a properly enjoined. *Std. Drywall, Inc. v. NLRB*, Case No. 12-70047, *2013 WL 5511185* (9th Cir. Oct. 7, 2013) (enjoining lawsuits from proceeding because they had "an illegal objective, [and] were not protected by the First Amendment"); *Peregrine Myanmar v. Segal*, 89 F.3d 41, 51, 52-53 (2d Cir. 1996) (affirming injunction against tortious activity, even when enjoining "communicating with [a company's] officers, directors, employees and agents on matters pertaining to [the company] or plaintiffs," as sufficiently "narrowly tailored" under Fed. R. Civ. P. 65).

Cox's conduct uses all or substantially all of her other websites to further extort Plaintiffs, including sites like <JosephRakofsky.com>, appropriating the names of third parties to recursively post the same articles about Plaintiffs as she does on <CrystalCox.com> (Exhibit C). Cox is free to criticize and question Plaintiffs. In fact, even Cox's claims that Plaintiffs are engaged in a massive corruption scheme involving the mafia, Governor Sandoval, and Judge Navarro are laughable. If Cox wishes to continue bringing her own credibility with such assertions on <CrystalCox.com>, Plaintiffs have no objection. However, Cox's extortionate scheme does not involve merely spouting untrue statements – it requires her to engage in dishonest conduct in obsessively harassing Plaintiffs by attempting to flood all Internet searches for them with her statements. Through doing so, Cox not only does precisely what she threatened to do to Plaintiffs, but creates an example with which to terrify other victims (Decl. of M. Randazza ¶¶ 10-13). Randazza has spoken with a man who identifies himself as "John Collins" for two years, and he is terrified to come forward about Cox's conduct, or cease payments to her, due to similar threats (*id.*).

Cox cannot compulsively publish her false statements in a way that impedes upon Plaintiffs' rights. Cox may even appear outside the offices of Randazza Legal Group at any time she likes, with a reasonably sized sign stating whatever she wishes, and remain there for as long as she likes.[4] What Cox is not allowed to do, though, is injure Plaintiffs' rights and prohibit them from conducting business or communicating with the world at large (and vice versa) through her conduct. This latter conduct is exactly what Cox's conduct is doing – and continues to do – over the Internet. Cox was willing to stop her conduct for an appropriate payment (ECF 14, 41). However, she has not stopped even in the face of this Court's orders directing her to do so (Exhibits B, C).

### C. Cox Provides No Justification for the Court to Not Strike Her Answer.

Cox does not attempt to argue that her Answer should not be stricken. Cox's response informs the Court:

> I don't care if this Court strikes me answer to the complaint[.]
> […]
> Strike my answers […] If this is the Law then so be it obey the law and strike my answer.

(ECF 169 at 8) Rather than providing an argument for why her conduct should be redeemed, Cox offers sarcasm, vulgarity, and a lack of courtesy to the Court. It is apparent that Cox does not, and will not, take these proceedings seriously if required to continue participating in them.

Nowhere in Cox's response is any explanation for her failure to respond to any of Plaintiffs' discovery demands (*see* ECF 157). Nor does Cox offer any explanation for her conduct in disappearing from the case, or for her ongoing violation of the Court's orders (ECF 161, 169; Exhibits B, C). Instead, she blames the Court for ruling against her (ECF 169 at 7-9), Randazza for pursuing his claims, and a conspiracy involving the court, the mafia, and numerous others, as the cause of her decision to cease participating in the litigation. Cox's response essentially admits that she went home when she realized she was losing the game. This is inexcusable conduct for a litigant who wishes to convince the Court that her conduct does not warrant terminating sanctions.

---

[4] Plaintiffs will even provide Cox with access to water and shade for so long as she behaves peacefully and does not disrupt others.

### D. Cox Admits That She Has Abandoned Her Defense of This Case.

The Court ordered Cox to show cause "why the Court should not deem that Cox has abandoned her defense of this case and enter default against her because of her failure to respond to Plaintiffs' motions." (ECF 161 at 3)  Rather than provide an explanation, Cox blames Randazza in a series of ad hominem attacks, and the Court itself, for her refusal to participate in the litigation (ECF 168).  Cox states that there is "NO WAY" for her to "defend herself." (*Id*. at 1)  Because Cox "cannot defend [herself …] why bother responding." (*Id*. at 2)

Cox's response contains further admissions of abandonment.  Cox "stopped replying to motions," and rhetorically asks "why bother filing a response[?]" (*Id*. at 7)  Even if the case were to proceed, Cox admits that she would not participate in any meaningful discovery.[5]  Cox "will not be deposed by Randazza or anyone connected to him." (*Id*. at 9)

Cox's response is bereft of explanations for her conduct in abandoning her defense of the case.  Even if Cox's PO Box was closed for only two months in September and October 2013, as she claims, it does not excuse her failure to have any communication with Plaintiffs' counsel.  Plaintiffs' counsel e-mailed Cox on November 7, 2013 (ECF 157-1 ¶ 8, 157-4).  Plaintiffs' counsel additionally called Cox and left a detailed voice mail regarding her failure to respond to discovery requests, but Cox never responded (ECF 157-1 ¶ 6).  Cox has refused to accept e-mail service in this case (ECF 157-1 ¶ 7, 157-3).  Cox's response to the Court's Order to Show Cause ignores these communications and deliberately addresses only her PO Box (ECF 169 at 9).  Moreover, Cox promises to be more combative and further refuse to participate in discovery if required to participate in litigation (*id*.).  Taken together, Cox's conduct and representations to the Court demonstrate that she has no intent to pursue a defense in this case.

### III. Conclusion

Cox's ongoing violations of the Court's orders are not merely contemptuous, but are made in furtherance of her attempt to extort Plaintiffs.  While Cox has offered to stop Plaintiffs pay her to do so (ECF 14, 41), she apparently will not stop her unlawful conduct if ordered by the Court.  Cox

---

[5] Cox has already refused to participate in discovery in this case (*see* ECF 157).

has not offered any explanation or justification for her conduct in refusing to participate in discovery in this case, and has not shown why her Answer should be stricken with default entered against her.  Plaintiffs ask that the Court enter appropriate sanctions against Cox, including the striking of her counterclaim and answer, and that the Court's Clerk enter default against her.

Dated: March 12, 2014				Respectfully submitted,

						/s/Ronald D. Green
						Ronald D. Green, NV Bar #7360
						Randazza Legal Group
						3625 S. Town Center Drive, Suite 150
						Las Vegas, NV 89135
						702-420-2001; 702-420-2003 fax
						ecf@randazza.com

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure 5(b), I hereby certify that the foregoing document was served to Defendant Crystal L. Cox via U.S. Mail at:

PO Box 2027
Port Townsend, WA 98368

4011 Hastings Avenue West
Port Townsend, WA 98368[6]

And additionally via e-mail to savvybroker@yahoo.com.

Dated: March 12, 2014

Signed,

*(signature)*

Law Clerk
ecf@randazza.com
Randazza Legal Group
3625 S. Town Center Drive, Suite 150
Las Vegas, NV 89118
(702) 420-2001
(702) 420-2003 fax

---

[6] Plaintiffs received this updated address from a party identifying himself as Reverend Jonathan Collins, and wishes to ensure Defendant receives home delivery of the filings in this case, and accordingly Plaintiffs' filings will be copied to this address as well.