UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARC J. RANDAZZA, an individual, JENNIFER RANDAZZA, an individual, and NATALIA RANDAZZA, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CRYSTAL COX, an individual,<br><br>Defendant. | Case No.: 2:12-cv-2040-JAD-PAL<br><br>**Order Denying Motions for Summary Judgment (Docs. 75, 79) and Various Other Relief (Docs. 184, 195, 197)** |

This cybersquatting case arises out of the alleged targeting of Plaintiffs Marc Randazza, his wife Jennifer, and their young daughter Natalia, by Defendant Crystal Cox, a self-proclaimed "investigative blogger." The Randazzas allege that Cox and Defendant Eliot Bernstein have engaged in an online harassment campaign to extort them by registering dozens of internet domain names that incorporate the Randazzas' names and then demanding they agree to purchase Cox's "reputation management" services to remove this allegedly defamatory material from the internet and rehabilitate their cyber reputations. Cox maintains that this lawsuit was instituted to harass her and stifle her First Amendment freedoms of speech and expression.

The Randazza Plaintiffs move for summary judgment on their claims against Cox.[1] But as one of those claims is legally untenable, and genuine issues of material fact preclude summary

---

[1] Doc. 75.

Page 1 of 20

judgment on the remainder, their motion is denied. Cox has pending her own motion for summary judgment on her original "Counter-Complaint,"[2] which has since been stricken[3] and supplanted (in part) by a new amended counterclaim.[4] As the developments since the filing of Cox's motion have rendered it moot, her motion for summary judgment is also denied. Cox has filed three other motions requesting a variety of additional relief.[5] None of the motions comply with the rules of this Court or are founded upon any authority, and the relief they seek has been denied by this Court numerous times. These motions are also denied.

**Motions for Summary Judgment**

In November 2012, the Randazzas sued Cox and Bernstein alleging violations of individual cyberpiracy protections for various registered websites under 15 U.S.C. § 8131, cybersquatting for various registered websites under 15 U.S.C. § 1125(d), their right of publicity under NRS 597.810, their common law right of publicity, intrusion upon seclusion, and civil conspiracy. The claims were based on allegations that Cox and Bernstein registered several domain names containing Plaintiffs' names, that Cox's blog posts contained objectionable characterizations of the Plaintiffs, and that these acts were designed to extort and harass the Randazzas and capitalize on and damage the goodwill Marc Randazza claims he built up in his own name as a prominent First Amendment attorney.

Bernstein has not appeared or answered the allegations, but Cox has. She contends that she registered the domain names to control public relations information when she thought Marc Randazza would represent her in another lawsuit. Cox also strongly objects to Plaintiffs' characterization of her motivation and actions as "extortion."

The tortured history of this case is rife with procedural maneuvering by both sides. All

---

[2] Doc. 79.

[3] *See* Doc. 162.

[4] Doc. 164. The Court has not evaluated whether the new pleading complies with the order and reserves any answer to that question.

[5] Docs. 184, 195, 197.

parties have disrupted the Court's timely management of its docket, wasted judicial resources, and threatened the orderly administration of justice by sandbagging the docket with multiple impertinent, legally unsupported, and frivolous filings. The instant motions were not spared from these tactics. Despite Mr. Randazza's self-proclaimed prominence as a First Amendment attorney and being represented by independent counsel, Plaintiffs have failed to authenticate more than half of their proffered exhibits in support of their motion; and half of the authenticated ones are immaterial to this motion. Equally confounding is that *pro se* Cox has submitted a 255-page nonsensical summary judgment motion and a 183-page opposition to Plaintiffs' summary judgment motion, neither of which includes any relevant legal authority or complies with this Court's rules of procedure and evidence. In short, all parties have fallen far short of sustaining their initial summary judgment burdens and both motions are denied.

**A.    Authentication of Evidence**

The first step in analyzing these motions is to determine what evidence the Court may consider in evaluating whether the parties met their respective burdens. In *Orr v. Bank of America*, the Ninth Circuit Court of Appeals "made it clear that 'unauthenticated documents cannot be considered in a motion for summary judgment.'"[6] To authenticate a document, the proponent must offer "evidence sufficient to support a finding that the matter in question is what its proponent claims.'"[7] As the summary judgment procedure is the pretrial functional equivalent of a directed-verdict motion, it requires consideration of the same caliber of evidence that would be admitted at trial;[8] thus, it is insufficient for a litigant to merely attach a document to a summary judgment motion or opposition without affirmatively demonstrating its authenticity.

Documents may be authenticated two ways: (1) through the personal knowledge of a party

---

[6] *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011) (citing *Orr v. Bank of Am.*, 285 F.3d 764, 733 (9th Cir. 2002).

[7] *Las Vegas Sands*, 632 F.3d at 532-33 (quoting Fed. R. Evid. 901(a)).

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983)).

who attests that the document is what it purports to be; or (2) any other manner permitted by Federal Rules of Evidence 901(b) (which provides ten methods of authentication) or 902 (identifying self-authenticating documents that "require no extrinsic evidence of authenticity in order to be admitted").[9] Documents authenticated through personal knowledge must be attached to an affidavit signed by a person with personal knowledge about the document (such as the drafter or signer of the document, or the custodian of the document kept in the ordinary course of a business, depending on the type of document and its particular relevance), or properly authenticated deposition testimony in which the same information was elicited.[10]

Plaintiffs' proffered evidence falls into several categories, and the Court addresses each in turn:

***1. Periodicals***

Plaintiffs offer at Exhibit B an article from *Forbes Magazine*. Printed material "purporting to be a newspaper or periodical" is self-authenticating.[11] Thus, this article is self-authenticating. Its contents, however, are hearsay not subject to any exception. Accordingly, the periodical is not admissible for summary judgment purposes.

***2. Websites***

Few courts have considered how a website print-out or blog posting may be authenticated. Those that have considered the issue have found "website print-outs [were] sufficiently authenticated

---

[9] Fed. R. Evid. 902 (listing domestic public documents that are sealed and signed or signed and certified; foreign public documents; certified copies of public records; official publications; newspapers and periodicals; trade inscriptions and the like; acknowledged or notarized documents; commercial paper and related documents; presumptions under a federal statute; and certified domestic or foreign records of a regularly conducted activity.)

[10] *See Orr*, 285 F.3d at 773-74 ("documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."); *see also id*. at 774 (deposition transcripts are authenticated "by attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted. It is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a 'true and correct copy.' Such an affidavit lacks foundation even if the affiant-counsel were present at the deposition.").

[11] Fed. R. Evid. 902(6).

where the proponent declared that they were true and correct copies of pages on the internet and the print-outs included their webpage URL address and the dates printed."[12]

The websites contained in Exhibits E, K, Q, R, S, and T have been properly authenticated under this standard because Plaintiff Marc Randazza has attested that they are true and correct copies and the print-outs include the webpage URL address and the dates the websites were printed.[13] However, Plaintiffs have not authenticated any of the purported website contents in Exhibits D, G, M, O, and P. Although Mr. Randazza has attested that these exhibits are true and correct copies and the print-outs include the webpage URL address, absent are the dates the webpages were printed. Without the print dates, these website printouts have not been properly authenticated, and the Court will not consider them.

### 3. *Letters, Emails, and Text Messages*

A document may be authenticated by personal knowledge "by a witness who wrote it, signed it, used it, or saw others do so."[14] Although circumstantial evidence—like an email's context, email address, or previous correspondence between the parties—may help to authenticate an email,[15] the most direct method of authentication is a statement from its author or an individual who saw the author compose and send the email.[16]

Plaintiffs have authenticated the letter sent from Mr. Randazza to Defendant Bernstein presented in Exhibit A by Randazza's affidavit stating that he wrote and signed the letter. Similarly, Mr. Randazza's curriculum vitae and the "About" page of his blog attached as Exhibits I and J have been properly authenticated because Mr. Randazza is a person with personal knowledge and he

---

[12] *Haines v. Home Depot U.S.A., Inc.*, No. 1:10–cv–01763–SKO, 2012 WL 1143648 *7 (E.D. Cal. April 4, 2012).

[13] *See* Docs. 75-1, 75-7, 75-13, 75-19, 75-20, 75-21, 75-22.

[14] *Orr*, 285 F.3d at 774 n.8 (citing references omitted).

[15] *United States v. Siddiqui*, 235 F.3d 1318, 1322–23 (11th Cir. 2000).

[16] *United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012).

wrote his curriculum vitae and the "About" page of his own blog. Plaintiffs have also authenticated via circumstantial evidence the emails between Cox and Mr. Randazza contained in Exhibit H because the email contains sufficient indicia of authenticity by context, the email addresses, and previous correspondence between the parties.

But Plaintiffs have not authenticated the purported emails between Cox and Dylan Energy CEO Martin Cain contained in Exhibit C. Although Plaintiffs attempt to authenticate Exhibit C via circumstantial evidence, there is a gap in the email chain. Mjr@randazza.com purportedly received the forwarded email from matt.baer@dylanenergy.com; savvybroker@ yahoo.com (the email associated with Cox) sent the email to dylanchpmc@verizon.net. Therefore, it is unclear how the person in control of the email address matt.baer@dylanenergy.com came to be in possession of an email originally addressed to dylanchpmc@verizon.net. Without some explanation of the gap in this email chain by someone with personal knowledge, there is insufficient circumstantial indicia of authenticity for the Court to consider this document.

Plaintiffs have not authenticated the text message screen shot in Exhibit A either. The screen shot purporting to be a text-message exchange between Messrs. Randazza and Bernstein has not been authenticated because it does not have circumstantial indicia of authenticity. It is unclear which phone numbers sent or received the messages or to whom those phone numbers belonged when the screen shot was taken, or who took the screen shot. Without this type of supporting evidence, the Court cannot consider the text message in Exhibit A.

Finally, Exhibit L, which is a compiled listing made by the Plaintiffs of the allegedly infringing domain names, is not evidence, and no realistic effort has been made to render it authentic and worthy of evidentiary consideration.

### *4.   Administrative Agency Decisions*

Certified copies of public records are self-authenticating when the copy is certified as correct by "the custodian or another person authorized to make the certification."[17] The WIPO

---

[17] Fed. R. Evid. 902(4).

Administrative Decision contained in Exhibit F has not been properly authenticated. Although Mr. Randazza attests that it is a true and correct copy of the WIPO Administrative Panel Decision, he lacks personal knowledge of the authenticity of this document because he did not write, sign, use it or see others do so.[18] It has not been established as a self-authenticating document because it is not accompanied by a certification completed by "the custodian or another person authorized to make the certification" under WIPO policy. Finally, regardless of whether the document is authenticated and admissible, the WIPO decision is not entitled to deference.[19]

### 5. *YouTube Video*

Exhibit N is a transcript of a YouTube video. The single court having addressed how to authenticate a Youtube.com video, albeit in a criminal context, found that videos from the online video network are self-authenticating as a certified domestic record of a regular conducted activity if their proponent satisfies the requirements of the business-records hearsay exception.[20] To meet this exception, the evidence must be accompanied by "a certification of their custodian or other qualified person that satisfies three requirements: (A) that the records were 'made at or near the time by—or from information transmitted by—someone with knowledge'; (B) that they were 'kept in the course of a regularly conducted activity of a business'; and (C) that 'making the record was a regular practice of that activity.'"[21]

The transcript of the YouTube video contained in Exhibit N has not been properly authenticated. Although Mr. Randazza has attested that it is a true and correct copy of a transcript of a video posted on YouTube.com, he has not established that he is a person with personal knowledge who prepared the transcript, nor has he established when it was prepared and that it is complete and

---

[18] *Orr*, 285 F.3d at 774 n.8 (citing references omitted).

[19] *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 26-27 (1st Cir. 2001) (recognizing that federal cybersquatting statutes "clearly contemplate[] judicial intervention and, in fact, that the judicial outcome will override the" WIPO administrative decision).

[20] *United States v. Hassan*, 742 F.3d 104, 132-33 (4th Cir. 2014) (holding the YouTube video in question was self-authenticating under Federal Rule of Evidence 902 business records).

[21] *Id.* at 133.

accurate. To the extent that the YouTube.com video itself is offered as evidence, it similarly has not been authenticated because Plaintiffs have not proffered the certificate of YouTube's custodian or other qualified person verifying that the page had been maintained as a business record in the course of regularly conducted business activities. Without this certification, the video has not been properly authenticated and cannot be considered.

With these evidentiary limitations, the Court now turns to the merits of Plaintiffs' summary judgment arguments.

**B.     Plaintiffs are not entitled to summary judgment on their claims.**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[22] When evaluating the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[23] If reasonable minds could differ on the material facts at issue, summary judgment is not appropriate because the purpose of summary judgment is to avoid unnecessary trials when the facts are undisputed[24] and "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."[25]

Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[26] The nonmoving party "must do more than simply

---

[22] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[23] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[24] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[25] *Anderson,* 477 U.S. at 255.

[26] *Id.* at 256; *Celotex*, 477 U.S. at 323.

show that there is some metaphysical doubt as to the material facts,"[27] he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[28]

### 1.   *Genuine issues of material fact preclude summary judgment on Plaintiffs' claims 1-3 relating to violations of individual cyberpiracy protections under 15 U.S.C. § 8131.*

The Randazzas' first, second, and third claims arising under 15 U.S.C. § 8131 allege that Defendants' registration of the multiple domain names violates the provision that provides cyberpiracy protection for individuals.[29]  In pertinent part, section 8131 provides that:

> [a]ny person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person.[30]

To prevail under this theory, a plaintiff must show that the specific intent to profit existed at the time of the registration.[31]  The statute further provides a very limited exception for good-faith registrants:

> A person who in good faith registers a domain name consisting of the name of another living person, or a name substantially and confusingly similar thereto, shall not be liable under this paragraph if such name is used in, affiliated with, or related to a work of authorship protected under Title 17, including a work made for hire as defined in section 101 of Title 17, and if the person registering the domain name is the copyright owner or licensee of the work, the person intends to sell the domain name in conjunction with the lawful exploitation of the work, and such registration is not prohibited by a contract between the registrant and the named person. The exception under this subparagraph shall apply only to a civil action brought under paragraph (1) and shall in no manner limit the protections afforded under the Trademark Act of 1946 (15 U.S.C. 1051 et seq.) or other provision of

---

[27] *Orr*, 285 F.3d at 783 (internal citations omitted).

[28] *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248-49.

[29] *See* 15 U.S.C. § 8131.

[30] *Id.* at § 8131(1)(A).

[31] *Id.*

Federal or State law.[32]

Genuine issues of material fact preclude entry of judgment in the Randazzas' favor on these first three cyberpiracy claims. They have failed to show by admissible evidence that *at the time* the Defendants registered domain names *there was a specific intent to profit* by selling the domains to Plaintiffs or a third party. At best, they have demonstrated only that Defendant Cox offered to sell Mr. Randazza a few of the domain names *at some point after* the domain names were registered. This *ex post* action does not prove the specific intent to profit at the time the domains were purchased. Even if the Court were to consider post-registration conduct, it still cannot infer intent at the time of registration because the evidence undermines that conclusion.[33] The Randazzas' own evidence suggests that Cox "bought [one domain name] - to control the search, and pr on [her] case, if [Mr. Randazza] represented [her]."[34] This tends to show that Cox did not have a specific intent to profit at the time of the registration, creating a genuine dispute and precluding summary judgment on these claims.

### 2. *Genuine issues of material fact preclude summary judgment on claims 4-5 for Cybersquatting under 15 U.S.C. § 1125(d).*

The Randazzas' fourth and fifth claims allege that Defendants' registration of the domain names violates the provision that prohibits cybersquatting.[35] To prevail on a cybersquatting claim, a plaintiff must show that: "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted with bad faith intent to profit from that mark."[36] Plaintiffs have failed to show

---

[32] *Id.* at § 8131(1)(B).

[33] *See* Doc. 75-10, at 2.

[34] *Id.*

[35] *See* 15 U.S.C. § 1125(d).

[36] *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1219 (9th Cir. 2012) (citations and quotations omitted).

by admissible evidence essential elements of these cybersquatting claims, precluding entry of judgment in their favor.

Jennifer and Natalia Randazza's claims fail as a matter of law because they have not alleged or shown any facts to support common-law trademarks in their personal names. Thus, Jennifer and Natalia are not entitled to summary judgment in their favor on these claims.

Assuming Mr. Randazza could show a common law trademark in his name, he has not demonstrated Defendants acted with bad-faith intent to profit from that mark. To determine whether Defendants acted in bad faith, the Court considers the nine nonexclusive factors outlined in § 1125(d)(1)(b): (1) the trademark or intellectual property rights of the defendants in the domain name; (2) the extent to which the domain name is the legal name of a person, (3) defendant's prior use of the domain name in connection with a bona fide offering of goods and services, (4) whether the defendant made a bona fide noncommercial fair use of the domain name, (5) defendant's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site, (6) whether the defendant offered to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name, (7) whether the defendant provided false contact information when registering the domain name, (8) whether the defendant registered multiple domain names which defendant knew were identical to or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, and (9) the extent to which the trademark incorporated into the domain name is distinctive.[37] Mr. Randazza has not shown by admissible evidence that the non-exhaustive factors balance in his favor. Although some factors may balance in his favor, such as factors 1-3, others arguably do not, such as 4-7. As Plaintiffs have failed to prove an essential element of these claims, summary judgment is denied.

---

[37] *Id.*

### 3.     Genuine issues of material fact preclude summary judgment on claim 6 for Right of Publicity under NRS § 597.810.

Plaintiffs' sixth claim alleges that Defendants' registration of the domain names containing the entirety or part of the Randazzas' personal names violated their rights of publicity under Nevada law. NRS § 597.810 prohibits "[a]ny commercial use of the name, voice, signature, photograph or likeness of another by a person, firm or corporation without first having obtained written consent for the use. . . ."[38] The statute defines "commercial use" as "the use of the name, voice, signature, photograph or likeness of a person on or in any product, merchandise or goods or for the purposes of advertising, selling or soliciting the purchase of any product, merchandise, goods or service."[39]

Genuine issues of material fact also preclude entry of judgment in Plaintiffs' favor on this privacy claim. The Randazzas have failed to show by admissible evidence that Defendants intended to advertise, sell, or solicit the purchase of any product, merchandise, goods, or service. Indeed, Plaintiffs have offered no admissible evidence that tends to show any commercial use of the their names. Thus, summary judgment is also denied on this claim.

### 4.     Claim 7 for Common Law Right of Publicity is legally untenable.

Plaintiffs' seventh claim alleges that Defendants' registration of the domain names containing the entirety or part of the Randazzas' personal names violated their common law rights of publicity. "Nevada has codified the right of publicity tort."[40] Because "[t]he statute provides a complete and exclusive remedy for right of publicity torts," Nevada law does not recognize a common law right of publicity.[41] As Nevada law does not recognize this cause of action, Plaintiffs have failed to state a viable claim under this legal theory, and this claim is dismissed with

---

[38] NRS § 597.810

[39] *Id.* at § 597.770(1).

[40] *People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1285 (9th Cir. 1995).

[41] *Id.*

prejudice.[42]

### 5. *Genuine issues of material fact preclude summary judgment on claim 8 for common law intrusion upon seclusion.*

The Randazzas' eighth claim alleges that Defendants' registration of five of the domain names containing the entirety or part of their names amounted to a common law intrusion upon seclusion. To recover for the tort of intrusion, a plaintiff must prove that there was an intentional intrusion (physical or otherwise) on his seclusion that would be highly offensive to a reasonable person.[43] "[T]o have an interest in seclusion or solitude which the law will protect, a plaintiff must show that he or she had an actual expectation of seclusion or solitude and that that expectation was objectively reasonable."[44] Generally, there is a decreased expectation of privacy in the workplace and for individuals who have interjected themselves into the public sphere.[45]

Genuine issues of material fact preclude entry of judgment in Plaintiffs' favor on this intrusion claim. Plaintiffs Jennifer and Natalia have failed to show by admissible evidence that the mere registration of a domain name would be highly offensive to a reasonable person, and Mr. Randazza has failed to show that registering the domain names, coupled with the comments contained in the two admissible blog posts, would be highly offensive to the reasonable person as a matter of law. Mr. Randazza has a decreased expectation of privacy in his workplace. By his own characterization, he is an attorney "renowned through the United States and the world for expertise in First Amendment, intellectual property, and Internet law."[46] He authors "a blog about various

---

[42] *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) (citing *Wong v. Bell*, 642 F.2d 359, 362 (9th Cir. 1981) (holding that a district court may dismiss claims *sua sponte* pursuant to Rule 12(b)(6), without notice, where a claimant could not possibly win relief.).

[43] *Berosini*, 895 P.2d at 1279.

[44] *Id.* (citations omitted).

[45] *Id.* at 1281 n.20.

[46] Doc. 75-1, at ¶ 1.

legal issues," and the blog is an ABA-recognized top blog website.[47] On his blog, he goes to great lengths to explain "why [he has] the audacity to believe that [he is] qualified to teach [others] a thing or two."[48] He touts himself as having "experience and expertise in all areas of First Amendment and entertainment law matters."[49] He boasts about "get[ting] to fight 'the good fight' – protecting all of our First Amendment freedoms," and openly proclaims that he has "represented adult entertainment establishments against socially conservative communities."[50]

By talking about his experience and the clients he represents, Mr. Randazza invites commentary on his work as an attorney and criticism from those who oppose the positions of his clients. Mr. Randazza may be perceived to have interjected himself into the public sphere by making television and radio guest appearances, giving quotes and interviews in newspapers, magazines, and other publications, appearing at speaking engagements, and having an ABA-recognized Top blog website, all as reflected on his résumé.[51] Considering his intentional and deliberate professional exposure and interjection into the public sphere and the accompanying decrease in his privacy interests, he has not demonstrated as a matter of law that he had an actual or reasonable expectation that he would not be criticized based on his work as an attorney or that he would not be thought about unfavorably by people in opposition to his work. As the Randazzas have failed to establish essential elements of this claim, summary judgment in their favor is simply not available.

**6.    *Genuine issues of material fact preclude summary judgment on claim 9 for Civil Conspiracy.***

Plaintiffs' ninth claim alleges that Bernstein and Cox colluded to register the domain names containing the entirety or part of the Randazzas' names to violate their rights. To state a valid claim

---

[47] Docs. 75-11, 75-20.

[48] Doc. 75-12.

[49] *Id.*

[50] *Id.*

[51] Docs. 75-11, 75-20.

for civil conspiracy, a plaintiff must show: (1) defendants, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming the plaintiff; and (2) the plaintiff sustained damages as a result.[52] "A civil conspiracy claim operates to extend, beyond the active wrongdoer, liability in tort to actors who have merely assisted, encouraged or planned the wrongdoer's acts."[53]

Genuine issues of material fact also preclude entry of judgment in the Randazzas' favor on this theory. They have not demonstrated by admissible evidence that Cox and Bernstein acted in concert. The only admissible evidence on this point is a blog post purportedly written by Cox. Plaintiffs claim that Cox "states that Bernstein is her business partner."[54] However, the proffered evidence does not compel that conclusion. The blog post refers in different places to the website MarcRandazza.me, that Bernstein is a co-defendant in this case, and that Cox and her business partner have been customers of Godaddy Inc. for several years.[55] The blog does not, as Plaintiffs suggest, identify or definitely reflect that Eliot Bernstein is the business partner Cox is referring to in the post. And, even if Bernstein were the partner Cox mentions, the post does not prove that Bernstein and Cox colluded to violate Plaintiffs' rights. For that reason, summary judgment on this claim is also not available.

**C.     Defendant Cox is not entitled to summary judgment on her claims.**

Cox has moved for summary judgment on her original "Counter-Complaint."[56] That "Counter-Complaint" has since been stricken, and Cox was given leave to re-file an amended

---

[52] *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 862 P.2d 1207, 1210 (Nev. 1993) (citing *Collins v. Union Fed. Savings & Loan*, 662 P.2d 610, 622 (Nev. 1983)).

[53] *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1249 (D. Nev. 2003) (quoting 16 Am.Jur. 2D Conspiracy § 57 (1998)).

[54] Doc. 75-1, at ¶ 29.

[55] *Id.*

[56] Doc. 79.

1  counterclaim.[57] "An amended complaint supercedes the original complaint and renders it without
2  legal effect."[58] As Cox's claims in the original "Counter-Complaint" are without legal effect, the
3  motion for summary judgment on those original claims is now moot. Accordingly, Cox's motion for
4  summary judgment on her dismissed, superseded "Counter-Complaint" claims is moot and denied.

## Cox's Motions for Various Relief

### A.     Motion for Sanctions (#184)

Cox has made a habit of filing "notices" combined with "motions" comprised of single-spaced pages of allegations of miscellaneous conduct by the Randazzas and scores of other people and entities both connected with and wholly disassociated from this litigation. Document 184 is another example of this type of filing by Cox. From this generally nonsensical document, into which Cox has cut and pasted a number of other documents for reasons unclear to this Court, the Court divines Cox's request that Randazza—himself a lawyer—be sanctioned for "acting rogue as his own attorney" in this litigation because he emailed her directly and offered to discuss settlement. Doc. 184 at 13. She also asks the Court to "Sanction Ronald Green and J. Malcom DeVoy of Randazza Legal Group" and essentially order Randazza to hire different attorneys.

Cox offers absolutely no legal basis for this Court to award the relief she seeks. Randazza is not prohibited from emailing Cox, and Cox has no authority over whom Randazza retains as his counsel. This is also not the first time that Cox has asked for—and been denied— this relief.[59] Cox is again reminded that filing multiple, duplicative requests for the same relief is an abusive litigation tactic that is sanctionable in this circuit.[60] As Cox has been repeatedly warned about the impropriety of this conduct, any future request for this same relief based upon these same allegations will be denied without further discussion.

---

[57] Doc. 164.

[58] *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012).

[59] *See* Doc. 137.

[60] *See, e.g.*, *Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429, 439 (9th Cir. 1992).

**B.      Motion to Relate Case to State Court Matter (#195)**

By document 195, Cox moves "to legally relate" a case filed and pending in the Eighth Judicial District Nevada state court.[61] Cox asserts that the claim is "almost exactly similar" to this one.[62] She attaches the complaint in that case reflecting that Opinion Corporation, represented by Marc Randazza, has sued Nevada Corporate Headquarters, Inc. for abuse of process.[63]

Although the Local Rules of Practice allow parties to file a notice of related cases *pending in this courthouse*,[64] the case Cox references is not pending in this court; it does not involve the same parties, similar claims, the same property, transaction or event, or similar questions of law or fact. And Cox offers no authority to support the notion that this Court can "legally relate" these two cases for any purpose. As there is no legal basis for the relief Cox seeks by this motion, this request is denied.

Cox also uses this document to again reiterate (without citing any legal authority in violation of Local Rule 7-2(a)) her request that the Court "make" the Randazzas "get outside counsel."[65] For the reasons set forth above, that request is again denied.

**C.      Motion for Reconsideration and for Legal Advice (#197)**

Document 197 is captioned a "Notice," "Reply," and "Motion to allow Cox to Counter Sue Jennifer Randazza and x." Like documents 184 and 195, this one is primarily incoherent and contains the same collection of many-times-reiterated allegations with little discernible connection to this case. It is largely duplicative of documents 184 and 195 and a myriad of Cox's filings before them. But it contains the additional statement, "Cox moves this court to allow Cox to counter sue Jennifer Randazza and to either remove Jennifer and the minor or allow [Cox] to counter sue the

---

[61] Doc. 195.

[62] Doc. 195, at 1.

[63] Doc. 195-1, at 19.

[64] LR 7-2.1.

[65] Doc. 195, at 5.

assets of BOTH."[66] Her desire to add counterclaims against these plaintiffs was apparently spurred by a "settlement offer and threatening letter" sent to allegedly resolve the instant case.[67] Cox characterizes the communications as "[a] ridiculous bullying settlement offer" "for money they know [she doesn't] have and for complete lawless reasons."[68]

Although Cox offers no legal authority for her request, it appears that this is really a request for reconsideration of the Court's February 14, 2014, Order permitting Cox to file a limited counterclaim against Plaintiff Marc Randazza **only**.[69] There are at least two fatal problems with this request. First, Cox has not demonstrated a valid basis for reconsideration. Reconsideration is available under Rule 60(b) of the Federal Rules of Civil Procedure upon a showing of (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied; or (6) any other reason justifying relief from the judgment.[70] A motion for reconsideration must set forth some valid reason why the court should revisit its prior order and facts or law of a "strongly convincing nature" to support reversing the prior decision.[71]

Cox has not even mentioned the Court's prior decision, let alone set forth facts or law of a

---

[66] Doc. 197 at 18; *see also id*. at 19.

[67] Doc. 197, at 20.

[68] *Id.* at 21.

[69] Doc. 162. Cox's counterclaim has a long history. After Plaintiffs filed the Complaint, Cox filed an "amended counterclaim" against Plaintiff Marc Randazza and several dozen non-parties. Doc. 62. Judge Gloria Navarro struck the "counterclaim" as an improper third-party complaint based on inclusion of the non-parties, and Cox moved to reconsider that decision, pointing out that the order swept within its ambit true counterclaims against the Plaintiff Marc Randazza, which should have been permitted. Docs 89, 116. The Court agreed and granted Cox's motion in part, allowing her to file a new, proper compulsory and permissive counterclaim against Plaintiff Marc Randazza. Doc. 162. At that time, Cox did not seek to add any claims against Jennifer and Natalia Randazza, *see* Doc. 116; she has since filed a new counterclaim. Doc. 165. The Court has not evaluated whether the new pleading complies with the order and reserves any answer to that question.

[70] Fed. R. Civ. P. 60(b); *see also Stewart v. Dupnik*, 243 F.3d 549, 549 (9th Cir. 2000).

[71] *Frasure v. United States*, 256 F.Supp.2d 1180, 1183 (D. Nev. 2003).

"strongly convincing nature" to justify reconsideration of it. Any allegedly improper actions taken by Jennifer and Natalia Randazza's attorney in the prosecution of this case cannot be remedied with otherwise baseless and retaliatory counterclaims. And the Court's review of the alleged "settlement offer and threatening letter" shows no apparent impropriety.[72] Naturally, Cox disagrees with Plaintiffs' position, but her disagreement does not make Plaintiffs' offer of settlement "ridiculous" or "bullying." Cox's failure to satisfy the reconsideration standard requires the denial of her request.

Cox's failure to comply with Local Rule 15-1 is a second, independent reason for denial of the request for permission to assert counterclaims against these plaintiffs. LR 15-1 contains the requirement that a party asking for permission to file an amended pleading "attach the proposed amended pleading" to the motion to amend.[73] cox attaches no proposed amended counterclaim, and she offers zero explanation of what claims she believes she could plead against these plaintiffs, leaving this Court without any meaningful way to evaluate the merits of her request.

Cox has been cautioned that she must learn the rules of this Court if she is going to serve as her own counsel in this case. She is again cautioned that her *pro se* status does not give her a pass from compliance with all rules of this Court.[74] And she is again cautioned that her continued filing of motions, notices, and requests without a valid, articulated legal basis will result in her filings being stricken or summarily denied, and because of the lengthy history of these violations in this case despite repeated warnings, **sanctions will also be assessed**.

Finally, this document contains the additional statement that "Cox moves this court to advise

---

[72] Doc. 197, at 16, 18, and 19. Cox has divided and included commentary throughout her quotes of the allegedly improper communication.

[73] L.R. 15-1(a).

[74] *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants."); *see also Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure."); *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986) ("[P]ro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record.").

her on what to do" in this litigation.[75] The Court cannot give legal advice or counsel pro se litigants, save for recommending that they seek the advice of a trained attorney. The United States Supreme Court has itself acknowledged that requiring trial judges to explain the details of federal procedure or act as a pro se litigant's counsel "would undermine district judges' role as impartial decisionmakers."[76] And the Ninth Circuit Court of Appeals has explained, for a judge to give advice to a pro se litigant on the legal process "would entail the district court's becoming a player in the adversary process rather than remaining its referee."[77] The Court directs Cox to the *Pro Se Assistance* tab on the district court's website: www.nvd.uscourts.gov and the suggests that she contact the Nevada Bar Association (www.nvbar.org) for further guidance in locating self-help or legal aid services.

**Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Summary Judgment (Doc. 75) is DENIED;
2. Defendant's Motion for Summary Judgment (Doc. 79) is DENIED as moot;
3. Defendant's Motion to Sanction (Doc. 184) is DENIED;
4. Defendant's Motion to Relate Case (Doc. 195) is DENIED; and
5. Defendant's Motion to Allow Cox to Countersue Jennifer Randazza and x (Doc. 197) is DENIED.

Dated: April 10, 2014.

_____
Jennifer A. Dorsey
United States District Judge

---

[75] Doc. 197 at 21.

[76] *Plier v. Ford*, 542 U.S. 225, 232 (2004).

[77] *Jacobsen*, 790 F.2d at 1366.