Ronald D. Green, NV Bar #7360
Randazza Legal Group
3625 S. Town Center Drive, Suite 150
Las Vegas, NV 89135
702-420-2001
702-420-2003 fax
ecf@randazza.com

Attorney for Plaintiffs
MARC J. RANDAZZA, JENNIFER RANDAZZA, and NATALIA RANDAZZA
Attorney for Counterclaim Defendant
MARC J. RANDAZZA

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARC J. RANDAZZA, an individual, JENNIFER RANDAZZA, an individual, and NATALIA RANDAZZA, a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>CRYSTAL COX, an individual, and ELIOT BERNSTEIN, an individual,<br><br>Defendants. | Case No. 2:12-cv-2040-JAD-PAL |

**COUNTERCLAIM DEFENDANT MARC J. RANDAZZA'S OPPOSITION TO COX'S MOTION FOR LEAVE TO AMEND**

Counterclaim Defendant Marc J. Randazza ("Randazza"), through his undersigned counsel of record, files this opposition to Counterclaimant Crystal Cox's ("Cox['s]")motion for leave to amend her counterclaim against Randazza. (ECF 209). Randazza opposes Cox's motion on the grounds stated in this opposition.

## I. Introduction

This matter arises out of the initial interactions between Randazza and Cox in December 2011. Shortly thereafter, Cox began her campaign of Internet destruction against Randazza. Randazza filed suit here on November 28, 2012 as a result of Cox's actions. (ECF 1). On January 27, 2013, Cox filed

her initial counterclaims. (ECF 62). Shortly thereafter, this Court struck Cox's counterclaims in their entirety, noting that Cox's counterclaims were "replete with irrelevant material, inappropriate commentary, baseless speculation, and derogatory statements none of which relate to Plaintiff's Complaint. For this reason alone, Defendant's Amended Counter Complaint must be stricken." (ECF 89 at 3). The Court also determined that for Cox to file counterclaims, she must file as a separate lawsuit. (*Id.* at 5). More than 60 days later, Cox filed her Motion for Reconsideration. (ECF 116). On February 14, 2014, this Court granted Cox's request for reconsideration, to the extent that she would be given leave to file a new counterclaim, while admonishing Cox "the Court refers her to the discussion in Judge Navarro's previous order striking the 'countercomplaint' and further cautions Defendant Cox that the failure to cure any deficiencies and violations in that order will be additional grounds for striking or dismissing the newly pled counterclaim." (ECF 162 at 2).

On February 21, 2014, Cox filed a Counterclaim against Randazza and Randazza Legal Group, a non-party to this action. Cox's Counterclaim asserted causes of action for defamation, harassment, abuse of process, legal malpractice, tortious interference with business advantage, civil conspiracy, and violation of her First Amendment rights. (ECF 164; *see* ECF 208). Randazza moved to both dismiss and strike Cox's counterclaim. (ECFs 179; 180).

The Court predominantly granted Randazza's motion to dismiss on May 21, 2014. (ECF 208). Specifically, the Court dismissed Cox's claims for harassment, abuse of process, legal malpractice, tortious interference with business advantage, civil conspiracy, and violation of her First Amendment rights. (ECF 208). The Court further dismissed Cox's defamation claim to the extent they related to Randazza's statements "in furtherance of or in the course of litigation." (*Id.* at 16). Concluding its order, the Court advised Cox that she could move for leave to amend her counterclaim, and that "all allegations and claims not carried forward [into the proposed amended counterclaim] are deemed waived." (*Id.* at 17).

Cox filed a motion for leave to amend her counterclaim on June 2, 2014, well over two years after the complained-of events took place. (ECF 209). Cox's motion did not specify any reason for amendment to be provided, any grounds upon which leave should be given, or discuss what, if any, changes were present in her motion for leave to amend. (*Id.*) In her attempt to bring these specious

claims, Cox accompanied her motion with a 30-page proposed amended counterclaim and nearly 120 pages of exhibits not otherwise referenced in the amended counterclaim. (ECFs 209; 209-1; 209-2). Within her Proposed Amended Counter Complaint, Cox alleges causes of action for legal malpractice, defamation, and abuse of process. (ECF 209-1 at 1-35).

However, Cox's proposed amended counterclaim does not fix any of the deficiencies the Court identified in its May 21, 2014 order dismissing Cox's claims (which is the *fourth* time Cox has been similarly instructed). As set forth below, Cox's allegations of defamation do not allege the existence of allegedly defamatory statements not made "in furtherance of or in the course of litigation." (ECF 208 at 16). Similarly, to the extent Cox's documents supporting her counterclaim can be considered, they show that Cox's claim for legal malpractice cannot possibly succeed. Cox's attempt to amend her counterclaim would be futile, and therefore should be denied. Furthermore, as demonstrated below, this Opposition will conclusively foreclose any such claims of legal malpractice, regardless of the leniency offered to *pro se* litigants.

## II. Legal Standard

A claimant's right to amend its complaint – or, in this case, counterclaim – is not absolute under Rule 15. Courts consider four factors when evaluating a motion to amend: 1) undue delay, 2) bad faith, 3) futility of amendment, or 4) prejudice to the opposing party. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1482 (9th Cir. 1997); *see also Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[w]hen considering a motion for leave to amend, a district court must consider whether the proposed amendment results from undue delay, is made in bad faith, will cause prejudice to the opposing party, or is a dilatory tactic"); *Hurn v. Retirement Fund Trust of Plumbing, Etc.*, 648 F.2d 1252, 1254 (9th Cir. 1981). Where there is futility to amendment, or undue prejudice to the opposing party, either of those factors alone justifies courts' denial of a motion for leave to amend. *Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

Courts deny leave to amend solely when it is clear that the amendment will not cure the Complaint of its deficiencies. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992); *Fin. Pac. Ins. Co. v. Cruz Excavating, Inc.*, Case No. 2:10-cv-00707-RCJ-VPC, *2011 U.S. Dist. LEXIS 80335* at

*7 (D. Nev. July 21, 2011). In such circumstances, amendment is futile, and leave to amend is denied by the Court. *Id.*

**III. Argument**

Cox has had numerous opportunities to cure deficiencies in her prior four versions of her counterclaim. This is not only her fifth attempt, but an attempt that she filed with the benefit of direct instruction from the Court on precisely what to plead and how to litigate her claims. Yet, even with the Court advising, Cox still refuses to comply with the Court's Orders. She has demonstrated that she will never bring her counterclaim in accordance with the rules and instructions of the Court.

It is true that the U.S. Supreme Court has "instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." *McMillan v. Department of the Interior*, 907 F. Supp. 322, 327 (D.Nev. 1995), *citing and quoting Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987)) (quoting *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)). However, pro se litigants must follow the same rules of procedure that govern other litigants. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986). Although the Court provides deference to *pro se* litigants, that deference is not without limits. This Court has reminded Cox that:

> The Court cannot give legal advice or counsel *pro se* litigants, save for recommending that they seek the advice of a trained attorney. The United States Supreme Court has itself acknowledged that requiring trial judges to explain the details of federal procedure or act as a *pro se* litigant's counsel "would undermine district judges' role as impartial decisionmakers." And the Ninth Circuit Court of Appeals has explained, for a judge to give advice to a pro se litigant on the legal process "would entail the district court's becoming a player in the adversary process rather than remaining its referee."

(ECF 200 at 19-20, *citing Plier v. Ford*, 542 U.S. 225, 232 (2004) and *Jacobsen v. Filler*, 790 F.2d 1362, 1366 (9th Cir.1986)).

**A. Cox's Proposed Counterclaim Violates this Court's Local Rules, and The Court Should Deny Leave to Amend on That Basis.**

The Court has repeatedly reminded Cox that, even as a *pro se* litigant, she is bound by the rules of the Court, and failure to follow these rules will result in denial of her requests.

> Cox has been cautioned that she must learn the rules of this Court if she is going to serve as her own counsel in this case. She is again cautioned that her *pro se* status does not give her a pass from compliance with all rules of this Court. And she is again cautioned that her continued filing of motions, notices, and requests without a valid,

> articulated legal basis will result in her filings being stricken or summarily denied, and because of the lengthy history of these violations in this case despite repeated warnings, **sanctions will also be assessed**.

(ECF 200 at 19; emphasis in original).

Furthermore, when this Court reconsidered its prior Order, in which Cox's counterclaims were stricken and she was instructed to bring them as separate claims (ECF 89 at 5), and allowed Cox to re-plead her counterclaims, this Court again admonished Cox that there will be negative ramifications for her noncompliance with the Court's rules.

> The Court cautions Cox that her counterclaim must comply with all rules of this Court or it may be dismissed. *See, e.g. Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995)… Additionally, the Court refers her to the discussion in Judge Navarro's previous order striking the "countercomplaint" and further cautions Defendant Cox that failure to cure any deficiencies and violations in that order will be additional grounds for striking or dismissing the newly pled counterclaim.

(ECF 162 at 2).

Cox's latest motion for leave to amend, and her proposed amended counterclaim, all fail to even attempt to comply with the rules of the Court, even after strict and specific admonishment from this Court that these rules must be followed, as outlined below.

**1. Cox's Violation of Local Rule 10-3(a)**

Cox's submission of more than 120 pages of rogue exhibits violates Local Rule 10-3(a). Local Rule 10-3(a) requires that exhibits submitted to the Court in paper form "shall be tabbed with an exhibit number or letter at the bottom or side of the document," and "must not [be] unnecessarily voluminous." Cox's proposed amended counterclaim disregards this rule entirely.

Absent from Cox's exhibits are any evidence of tabs, or any cover pages designating their identification number or letter. Cox's exhibits that happen to have numerical designations on them, are also out of order, further compounding the difficulty in identifying and following them (*see, e.g.*, ECF 209-1 at 36-62, going from Exhibit 5, to Exhibit 2, to Exhibit 7, without cover sheets or any explanation as to why, and without all exhibits being numbered). As filed, Cox's exhibits confuse the docket and complicate the counterclaim defendant's and the court's analysis of the documents on record in this case.

Further, Cox's exhibits bear no relation to her counterclaim, are not cited to in the proposed amended counterclaim, and are included as an afterthought, listed in the last page of her counterclaim. (ECF 209-1 at 33-34). As such, Cox's exhibits are unnecessarily voluminous and redundant, especially as they serve only to reiterate the same few statements by Randazza that were made in furtherance of, or in the course of, litigation. In addition to their technical deficiencies, they are substantively defective under Local Rule 10-3(a) as well. Based on Cox's violation of this rule, the Court should deny her request for leave to file an amended counterclaim.

**2. Cox's Violation of Local Rule 7-2.**

Cox's motion for leave to amend violates Local Rule 7-2, which requires "all motions" to "be supported by a memorandum of points and authorities." LR 7-2(a). Furthermore, "The failure of a moving party to file points and authorities in support of the motion shall constitute a consent to the denial of the motion." LR 7-2(d). Cox's Motion for leave to file her proposed amended counterclaim does not provide any points and authorities upon which she would have a basis to seek leave from the Court. Instead, Cox simply states that she seeks leave to amend, accompanied only by nearly 150 pages of a proposed amended counterclaim including numerous disorganized exhibits. The Court specifically and individually admonished Cox numerous times in the past regarding the necessity of complying with LR 7-2. (ECFs 133 at 2; 139 at 2; 144 at 2; 162 at 2; and most recently, ECF 200 at 17). Even as a *pro se* litigant, Cox has no excuse for continued noncompliance with the rule. Cox cites to no statutory authority or case law to justify her request, and without supporting points and authorities, Cox's Motion for Leave to Amend should be summarily denied.

**3. Cox's Violation of Federal Rule of Civil Procedure 8.**

Lastly, Cox's Proposed Amended Counter Complaint is in violation of Rule 8, which requires that "A pleading that states a claim for relief must contain… a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). Furthermore, "Each allegation must be simple, concise, and direct." FRCP 8(d)(1). Nothing in Cox's proposed amended counterclaim could be construed as simple, concise, or direct. Because of its inconsistent, intermittent numbering of paragraphs and the numerous allegations made within it, it is even more confusing than the

counterclaim Cox seeks to amend. Such an outcome is inconsistent with Rule 8, and amendment should be denied on this basis as well.

**B. None of Cox's Proposed Amendments Correct The Problems Inherent in Her Counterclaim Against Randazza.**

Despite these reminders, Cox has failed to rehabilitate her counterclaim to successfully add – or clarify – her existing claims. As set forth below, her proposed amended counterclaim fails to set forth any new cause of action, and actually negates her existing legal malpractice claim.

Cox's proposed amendments to her counterclaim are futile, and the Court should deny her motion for leave to amend. As set forth below, Cox's amended counterclaim amounts to little more than window dressing on claims that this Court, and at least 11 other federal Courts nationwide, have already summarily dismissed as meritless.[1] Cox's cosmetic changes in the amended counterclaim do not overcome their substantive failings.

Cox seeks to amend her counterclaim while fixing none of its inherent problems. Cox's defamation claim still fails to seek redress for claims made without any connection to pending litigation. Similarly, her abuse of process claim fails to identify any conduct that would constitute an abuse of judicial process.

Finally, Cox's proposed amendment of her counterclaim and the many documents she attaches to it – to the extent they are properly before the Court at all – utterly belie her claim that Randazza engaged in legal malpractice. To the contrary, Cox's new allegations show that her legal malpractice claim cannot succeed. To that extent, as desirous as amendment would be for Randazza, Cox's attempt to amend the counterclaim is futile, and cannot state a claim for legal malpractice.

---

[1] The following courts have seen these very same claims and dismissed them sua sponte – *Crystal L. Cox, et al. v. Jordan Rushie, et al.*, 1:13-cv-11308-PBS (U.S. Dist. Ct. D. Mass.); *Crystal L. Cox v. Jordan Rushie, et al.*, 2:13-cv-03028-JHS (U.S. Dist. Ct. E.D. Pa.); *Crystal L. Cox, et al. v. Randazza Legal Group, et al.*, 1:13-cv-21924-DLG (U.S. Dist. Ct. S.D. Fla.); *Crystal L. Cox, et al. v. Scott A. Curry, et al.*, 9:13-cv-00089-DWM (U.S. Dist. Ct. Montana); *Crystal L. Cox v. National Association of Realtors*, 3:13-cv-05364-BHS (U.S. Dist. Ct. Wash.); *Crystal L. Cox, et al. v. Tracy L Coenen, et al.*, 2:13-cv-00534-AEG (U.S. Dist. Ct. E.D. Wis.); *Crystal L. Cox, et al. v. Peter L. Michaelson, et al.*, 3:13-cv-03136-AET-DEA (U.S. Dist. Ct. D.N.J.); *Crystal L. Cox v. Marc J. Randazza, et al.*, 2:13-cv-00298-MMD-VCF (U.S. Dist. Ct. D. NEV.); *Crystal L. Cox v. Tracy L. Coenen*, 1:13-cv-03633 (U.S. Dist. Ct. N.D. Ill.); *Crystal L. Cox v. Kashmir Hill, et al.*, 4:13-cv-02046-DMR (U.S. Dist. Ct. N.D. Ca.); *Crystal L. Cox v. Godaddy Inc., et al.*, 2:13-cv-00962-MEA (U.S. Dist. Ct. D. Ariz.).

**1. Cox's Claim for Abuse of Process Does Not Address Any of the Issues Identified by the Court in Its Prior Order Dismissing This Claim.**

Cox's amended counterclaim repeats the same conclusory allegations that Randazza misused the judicial process through filing documents and issuing subpoenas that this Court previously rejected. (ECF 208 at 8-9). The Court advised Cox to allege facts sufficient to show Randazza's actions were not made to achieve the objects of the litigation, and did not involve litigants or other participants authorized by law. (*Id.* at 8-10). However, Cox has not cured any of these deficiencies, despite being given five opportunities to do so in this litigation. Perhaps now enough is enough.

Cox yet again fails to allege a cause of action for abuse of process. As this Court instructed Cox, only filings and subpoenas constitute a use of judicial process potentially justifying a claim for abuse of process (ECF 208 at 8-9) (holding that allegations based on actions other than court filings and subpoenas "do not state a claim for abuse of process"). Disregarding this portion of the Court's order, Cox once again alleges Randazza abused judicial process by contacting people by phone and seeking information from them. (ECF 209-1 at 22-23). As this is the exact conduct the Court informed Cox *does not* constitute abuse of process, Cox's amended counterclaim fails to rehabilitate her claim for abuse of process, and leave to amend should be denied.

Additionally, Randazza's alleged use of pleadings and subpoenas still fails to create a colorable claim for abuse of process. Cox's allegations are based on Randazza's filings in this case describing her conduct as extortion. (ECF 209-1 at 22-23). The remainder of Cox's allegations conclusorily claim that Randazza's success in removing some of Cox's infringement from the Internet through this litigation, constitutes an abuse the judicial process.[2] Cox's allegations regarding Randazza's filings fall within the proper use of the judicial process, and constitute actions this Court has found will not give rise to an abuse of process claim. (ECF 208 at 8-9).

---

[2] The closest Cox comes to alleging some outside use of judicial process is the alleged use of subpoenas to obtain information about Diana Grandmason and Monica Foster – individuals Cox has mentioned *ad nauseam* in her filings – but lacks standing to assert an abuse of process claim (assuming one may even exist) on their behalf in this action.

Cox's amended counterclaim still fails to state a claim for abuse of process. As with the first time the Court confronted Cox's abuse of process claim, the Court would dismiss this restated claim as well. Cox's request for leave to amend is therefore futile as to that claim. *Forsyth*, 114 F.3d at 1482. The Court should deny Cox's request to amend her counterclaim with respect to this cause of action.

**2. Cox's Proposed Counterclaim Cannot Establish That She May Prevail Against Randazza on a Claim for Legal Malpractice.**

Cox's attempt to bolster her claim for legal malpractice is belied by the events of what *actually* transpired between her and Randazza. Cox begins her allegations by stating that she "had an initial consultation" with Randazza, "whereby Cox divulged private information," including "case strategy." (ECF 209-1 at 24 ¶ 66). Conspicuously absent from this allegation, however, is the fact that Michael Spreadbury, a third party, was present for the entirety of Cox's single conversation with Randazza, thus destroying any confidentiality that could have been claimed in those communications. (Decl. of M. Spreadbury ¶¶ 8, 10). Attached hereto as Exhibit A is the Declaration of Michael Spreadbury. Spreadbury is the one who initiated the contact with Randazza. (*Id.* ¶6). Furthermore, all parties understood that the consultation would not be privileged or confidential. (*Id.* ¶¶ 8, 10). All participants in that call were also informed and aware that no attorney-client relationship was being formed as a result of this conversation, and that Randazza would have to review the docket and make determinations regarding potential conflicts, before any offer of representation could be made. (*Id.* ¶¶ 9, 11, 12, 20, 26, 27(d).)

Next, Cox alleges that Randazza spoke to counsel for Obsidian Finance Group and Kevin Padrick regarding Cox's appeal of their case. (ECF 209-1 at 24 ¶ 66). Cox's proposed amended counterclaim does not claim that Randazza took these actions as her attorney. (*Id.*). That is because he in fact did not act as her attorney, and never had. It is true that Randazza spoke with David Aman, counsel for Obsidian Finance Group LLC and Kevin Padrick in the *Obsidian Finance Group LLC v. Cox* litigation, as a preliminary introduction. (Decl. of D. Aman). Declaration of David Aman attached

hereto as Exhibit B.[3] It is hardly unusual that, prior to accepting representation, an attorney would reach out to his proposed counterpart in order to determine the current state of the case, potential for settlement, or the potential to narrow the issues. (*Id.* ¶ 3). This is what Randazza and Aman did, and Randazza made it abundantly clear that he did not represent Cox at that point. (*Id.* ¶¶ 3, 5 - 9). During their conversations, Aman knew that Randazza did not represent Cox, and never took any of Randazza's statements as anything more than what they were – a mere introduction. (*Id.*). Furthermore, Randazza never discussed any information provided by Cox, much less any information that could be deemed to be confidential. (*Id.*).

These facts go to the heart of Nevada law's requirement for an attorney-client privilege to exist for a legal malpractice claim to proceed. *Day v. Zubel*, 112 Nev. 972, 976, 922 P.2d 536, 538 (Nev. 1996); *Morgano v. Smith*, 110 Nev. 1025, 1028 n.2, 879 P.2d 735, 737 n.2 (Nev. 1994); *Charleson v. Hardesty*, 108 Nev. 878, 883-84, 839 P.2d 1303, 1307 (Nev. 1992). Absent the existence of such a relationship, Cox's claim cannot proceed. *Elie v. Ifrah PLLC*, Case No. 2:13-cv-888-JCM-VCF, *2014 U.S. Dist. LEXIS 17096* at *10 (D. Nev. Feb. 10, 2014) (requiring attorney-client relationship to prevail on claim for legal malpractice). Furthermore, "the attorney-client relationship is based on the subjective belief of the client." *In re Rossana*, 395 B.R. 697, 702 (Bankr. D. Nev. 2008). According to Cox's own Proposed Amended Counter Complaint, "On this first call… Randazza did not commit to representation." (ECF 209-1 at 2). Following that initial consultation conversation between Randazza, Cox, and Spreadbury, Cox "awaited Randazza to do a conflicts check, check the record and then get back to Cox on his representation and the details of such… Randazza did not contact Cox with any ideas, details, elements of negotiations in any way." (ECF 209-1 at 24). By her own words, Cox left the initial consultation call waiting to hear back from Randazza on whether he would represent her. After not having immediately heard back, Cox then sought out representation from Eugene Volokh to be her attorney. (*Id.*) Randazza later emailed Cox to state that he would represent her, and Cox

---

[3] David Aman was unable to return a signed copy of his Declaration at the time of filing. Exhibit B is Aman's declaration bearing his electronic signature. Attached as Exhibit C is an email from Aman confirming that the contents of the Declaration are true and correct, and a signed copy of the Declaration will be filed with the Court by Monday, June 16, 2014.

declined. (*Id*). Cox cannot now claim, in retrospect, that there was any attorney-client relationship, when she herself admittedly never believed one existed. Cox's proposed amended counterclaim *does not allege* that Randazza represented Cox, nor does Cox allege that she even believed that Randazza was in fact her attorney. Quite the opposite. The evidence in Mr. Spreadbury and Mr. Aman's declarations further shows that no attorney-client relationship ever existed between Cox and Randazza, that Cox did not believe Randazza was her attorney at the time, nor that Randazza ever took any action purporting to be Cox's counsel. (Spreadbury Decl. ¶23 – 26). "Cox was not particularly interested in hiring Mr. Randazza before the call, and it was very clear… that Ms. Cox never considered Mr. Randazza to have been her attorney." (*Id.* ¶25).

Cox's proposed amended counterclaim here defeats her claim for legal malpractice, despite the Court not dismissing it in the original counterclaim. As the Court warned Cox, "Cox must carry forward into the new draft counterclaim any information that she wants to continue to plead," as "the Court cannot and will not simply refer back to a prior pleading for other information because an amended counterclaim supersedes all prior versions as if the prior versions never existed, and all allegations and claims not carried forward are deemed waived." (ECF 208 at 16-17). Cox's proposed amended counterclaim does not allege that an attorney-client relationship existed, but literally asks the Court to decide this point on its own accord, without any support or clear allegations. With the testimony of Messrs. Spreadbury and Aman, though, it is clear that an attorney-client relationship did not exist. Allowing Cox to proceed with her malpractice claim would be an exercise in futility.

### 3. Cox's Defamation Claim Fails to Identify Defamatory Statements That Were Not Made In Furtherance of This Litigation.

Cox's proposed amended counterclaim identifies numerous statements Randazza made to third parties about her conduct, but fails to allege how they were not made in anticipation of litigation. Nevada's litigation privilege, which the Court has recognized as being quite broad (ECF 208 at 7), applies to statements made in anticipation of litigation,[4] as well as in connection with it. *Oracle USA,*

---

[4] This Court specifically recognized in its May 21, 2014 order that Cox cannot bring a defamation claim based on Randazza's statements made "in anticipation of" this litigation.

*Inc. v. Rimini St., Inc.*, Case No. 2:10-cv-00106-LRH-PAL *2010 U.S. Dist. LEXIS 116249* at * 10 (D. Nev. Oct. 29, 2010), *citing Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1145, 57 Cal. Rptr. 2d 284 (Cal. Ct. App. 1996). Like statements made in litigation, statements made in advance of litigation are entitled to "both an absolute and qualified privilege." *Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 115 Nev. 212, 217-18 984 P.2d 164 (1999), *quoting Richards v. Conklin*, 94 Nev. 84, 85 575 P.2d 588 (1979).

Within her proposed amended counterclaim, Cox identifies Randazza's allegedly defamatory statements as being made prior to engaging in legal action against her. Cox states that Randazza made his statements beginning in February 2012 (ECF 209-1 at 14 ¶ 38), and continued making allegedly defamatory statements about her through April of 2012. (*Id.* at 14-20). The consistent thrust of Cox's allegations is that Randazza allegedly called her an "extortionist" in his statements to third parties, which Cox claims defamed her.

Cox's proposed amended counterclaim notes, however, that Randazza filed a complaint with the World Intellectual Property Organization ("WIPO"). Randazza filed his complaint with WIPO to recover domain names Cox registered, which wholly incorporated his own name, under the Uniform Domain-Name Dispute Resolution Protocol ("UDRP"). In his UDRP Complaint, Randazza argued that Cox engaged in the extortionate conduct Randazza spoke about publicly. The WIPO panel agreed, expressly finding Cox's conduct constituted a pattern of extortion, and ordering the domain names at issue transferred to Randazza. (ECF 41, incorporating WIPO decision by reference. WIPO decision also attached hereto as Exhibit D).

Randazza then filed suit against Cox in this Court on November 28, 2012. (ECF 1). Within the Complaint, and throughout this litigation, Randazza has consistently premised his action on the argument that Cox's actions are extortionate. (ECF 1 ¶ 1; *see* ECFs 179; 180). Even this *very Court* has recognized that Cox's conduct amounts to extortion. (ECFs 14; 41 at 7, 9). If this very Court has found Cox's conduct to amount to extortion, no amount of mental acrobatics or contortion can logically fit Cox's statements into the box of defamation – either that, or Cox's prior attempts to also hold Judge Navarro responsible for her alleged misdeeds must prevail as well.

The statements Cox complains of were all made in anticipation of litigation against Cox for her extortionate activity. All of Randazza's actions in this case, since its inception, have been to redress

Cox's attempts to extort him and his family (ECF 1 ¶ 1). WIPO and this Court have agreed that Cox's conduct was, in fact, extortionate (ECFs 14; 41). The Ninth Circuit has determined Cox to engage in a pattern of behavior tantamount to extortion as well.[5] In a similarly related matter, so has the Montana Board of Real Estate, in terminating Cox's real estate license.[6] Randazza's statements, as alleged in Cox's proposed amended counterclaim, cannot be read in a vacuum. Randazza's alleged statements, calling Cox an extortionist, were made shortly before filing an arbitration action and this litigation against her to redress her extortionate scheme.

Randazza's alleged statements touch directly upon the subject matter of this litigation, and concern Cox's registration of domain names incorporating his full name, the full name of his wife, and the full name of his then three-year-old daughter. (ECF 209 at 14-20). After Cox began this conduct, she offered "reputation management" services to Randazza, and placed a domain name containing his full name for sale at a price of $5 million. Email exchange between Cox and Randazza, in which she informs him that she has purchased a website in his name, and will use "to control the search, and pr" attached hereto as Exhibit E. Cox continues that she is in need of money, and "search management is something tons of people due [sic] and for thousands a month per search term." *Id.* Shortly thereafter, Cox posted on <www.marcrandazza.com> that <MarcRandazza.me> would be for sale for $5million. Attached hereto as Exhibit F. (*See also* ECFs 14; 41). Both <marcrandazza.com> and <MarcRandazza.me> have since been removed from Cox's control and returned to Randazza, either under the WIPO decision or by this Court's decision, pursuant to 15 U.S.C. §8131(2). (ECF 41). Cox also made statements that she was not only engaging in extortion by purchasing these websites in Randazza's name, but that she was also engaging in what is tantamount to witness tampering in

---

[5] "After Padrick's appointment, Crystal Cox published blog posts on several websites that she created, accusing Padrick and Obsidian of fraud, corruption, money-laundering, and other illegal activities in connection with the Summit bankruptcy. Cox apparently has a history of making similar allegations and seeking payoffs in exchange for retraction. See David Carr, When Truth Survives Free Speech, N.Y. Times, Dec. 11, 2011, at B1. Padrick and Obsidian sent Cox a cease-and-desist letter, but she continued posting allegations." *Obsidian Finance Group, LLC, Kevin D. Padrick v. Crystal Cox*, 3:11-cv-00057-HZ (9th Cir. 2014), at 4.

[6] See *In the Matter of Case No. 2011-RRE-LIC-186 Regarding: The Proposed Disciplinary Treatment of the License of Crystal L. Cox, Licensed Real Estate Broker License No. 11581*, State of Montana Realty Regulation, Case. No. 1105-2013. Attached hereto as Exhibit I.

violation of 18 U.S.C. § 1512(d)(1). Attached hereto as Exhibit G is a transcript of Cox's YouTube video, in which she outlines that she bought websites in Randazza's name in order to prevent him from giving deposition testimony. Also attached hereto as Exhibit H, is the declaration of Laura Tucker, Esq., who viewed and transcribed Cox's YouTube video at the url: <https://www.youtube.com/watch?v=8-XYnITpBNs>.

Randazza's public statements that Cox's conduct was extortionate relates directly to the allegations Randazza made before WIPO and this Court. In making the alleged statements, Randazza attempted to illuminate Cox's conduct, so that Cox's extortionate conduct could be brought to a halt. (ECF 209-1 at 14-20). Given the fact that Cox simply ignored this Court's injunctive relief, which was designed to bring some respite from her behavior, what alternate remedy could this Court suggest?

As this Court recently recognized, those statements – even when litigation is not pending – are protected under the litigation privilege. (ECF 208 at 6-7). As Cox's defamation claim is barred to the extent it seeks to redress privileged statements made in anticipation of litigation (ECF 208 at 7), her proposed amendment is futile. The statements Cox identifies relate to the subject matter of the case at hand, and are covered by Nevada's broad litigation privilege. *Crockett & Myers, ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F. Supp. 2d 1184, 1196 (D. Nev. 2006), affirming dismissal and vacating in part on other grounds, 583 F.3d 1232 (9th Cir. 2009). As Cox's amendment would be futile in this regard, the Court should deny her leave to amend.

## IV. Conclusion

The Court should deny Cox's motion for leave to amend her counterclaim and this Court should join the other federal courts, who found her claims to be nonsensical, internally inconsistent, and worthy of dismissal *sua sponte*. As set forth above, any amendment of Cox's counterclaim would be futile, as Cox's proposed amended counterclaim fails to address any of the deficiencies addressed in the Court's prior order. Moreover, Cox's proposed amended counterclaim adds more than 150 pages of confusing and improperly organized documents to the Court's docket, in violation of Local Rule 10-3(a). Cox's motion provides no authority or argument in support of amending her counterclaim as

/ / / /

/ / / /

/ / / /

required by Local Rule 7-2. Finally, Cox's proposed amended counterclaim falls far short of the standard for a short and plain statement of the facts required by Federal Rule of Civil Procedure 8. In addition to the futility of Cox's amendment, these repeated rule violations yet one more reason the Court should deny Cox's motion for leave to file an amended counterclaim.

Dated: June 13, 2014

Respectfully submitted,

/s/*Ronald D. Green*
Ronald D. Green, NV Bar #7360
Randazza Legal Group
3625 S. Town Center Drive, Suite 150
Las Vegas, NV 89135
702-420-2001; 702-420-2003 fax
ecf@randazza.com

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure 5(b), I hereby certify that the foregoing document, **COUNTERCLAIM DEFENDANT MARC J. RANDAZZA'S OPPOSITION TO COX'S MOTION FOR LEAVE TO AMEND**, was served to Defendant Crystal L. Cox at:

P.O. Box 2027
Port Townsend, WA 98368

Dated: June 13, 2014                                Signed,

                                                    /s/ *Vanessa Acosta*
                                                    Employee of Randazza Legal Group

                                                    ecf@randazza.com
                                                    Randazza Legal Group
                                                    3625 S. Town Center Drive, Suite 150
                                                    Las Vegas, NV 89118
                                                    (702) 420-2001
                                                    (702) 420-2003 fax