1   ANTHONY T. GARASI, ESQ.
    Nevada State Bar No. 11134
2   JARED G. CHRISTENSEN, ESQ.
    Nevada State Bar No. 11538
3   BREMER WHYTE BROWN & O'MEARA LLP
    1160 N. TOWN CENTER DRIVE
4   SUITE 250
    LAS VEGAS, NV 89144
5   TELEPHONE:  (702) 258-6665
    FACSIMILE:  (702) 258-6662
6   agarasi@bremerwhyte.com
    jchristensen@bremerwhyte.com
7
    Attorneys for Counterdefendant,
8   Marc Randazza

9                        UNITED STATES DISTRICT COURT

10

11
    MARC J. RANDAZZA, an individual,          )  Case No. 2:12-cv-02040-JAD-PAC
12  JENNIFER RANDAZZA, an individual, and     )
    NATALIA RANDAZZA, a minor,                )
13                                            )  **COUNTERDEFENDANT MARC J.**
                      Plaintiffs,             )  **RANDAZZA'S SPECIAL MOTION TO**
14          vs.                               )  **DISMISS  COUNTERCLAIMANT**
                                              )  **CRYSTAL COX'S COUNTERCLAIM**
15  CRYSTAL L. COX, an individual, and ELIOT  )
    BERNSTEIN, an individual,                 )
16                                            )
                      Defendants.             )
17  _____ )
                                              )
18  CRYSTAL L. COX, an individual,            )
                                              )
19                    Counterclaimant,        )
            vs.                               )
20                                            )
    MARK J. RANDAZZA, an individual,          )
21                                            )
                      Counterdefendant.       )
22  _____ )

23      Plaintiff/Counterdefendant Marc J. Randazza ("Randazza"), through his undersigned counsel of

24  record, files this Special Motion to Dismiss Defendant/Counterclaimant Crystal Cox's ("Cox['s]")

25  Counter Complaint. (ECF 164).

26  **I.  INTRODUCTION**

27      On February 21, 2014, Cox filed a Counterclaim against Marc Randazza and Randazza Legal

28  Group, a non-party to this action, which was not anticipated to be accepted, as at least eleven courts

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1    have rejected the same Complaint, including this very Court.[1] However, this Court substantially

2    modified the claim on Cox's behalf on May 21, 2014. (ECF 201-1.) Cox's new Counterclaim

3    asserted causes of action for defamation, harassment, abuse of process, legal malpractice, tortious

4    interference with business advantage, civil conspiracy, and violation of her First Amendment

5    rights. (ECF 164; *see also* ECF 208). Randazza moved to both dismiss and strike Cox's

6    Counterclaim.  (ECFs 179, 180).

7        The Court predominantly granted Randazza's Motion to Dismiss on May 21, 2014. (ECF 208.)

8    Specifically, the Court dismissed Cox's claims for harassment, abuse of process, tortious

9    interference with business advantage, civil conspiracy, and violation of her First Amendment

10   rights. (ECF 208.) The Court further dismissed Cox's defamation claims to the extent they related

11   to Randazza's statements "in furtherance of or in the course of litigation." (*Id.* at 16.) Concluding

12   its Order, the Court rendered advice to Cox that she should move for leave to amend her

13   counterclaim, and that "all allegations and claims not carried forward [into the proposed amended

14   counterclaim] are deemed waived." (*Id.* at 17.)

15       Cox filed a Motion for Leave to Amend her Counterclaim on June 3, 2014. (ECF 209). This

16   Motion was accompanied by a 30-page proposed Amended Counterclaim and nearly 120 pages of

17   exhibits not otherwise referenced in the Amended Counterclaim. (ECFs 209-1; 209-2). Within her

18   proposed Amended Counterclaim, Cox alleged causes of action for legal malpractice, defamation,

19   tortious interference and abuse of process. (ECF 209-1 at 1-35.)

20

21

22

---

[1] The following courts have seen these very same claims and dismissed them *sua sponte* – *Crystal L. Cox, et al. v. Jordan Rushie, et al.*, 1:13-cv-11308-PBS (U.S. Dist. Ct. D. Mass.); *Crystal L. Cox v. Jordan Rushie, et al.*, 2:13-cv-03028-JHS (U.S. Dist. Ct. E.D. Pa.); *Crystal L. Cox, et al. v. Randazza Legal Group, et al.*, 1:13-cv-21924-DLG (U.S. Dist. Ct. S.D. Fla.); *Crystal L. Cox, et al. v. Scott A. Curry, et al.*, 9:13-cv-00089-DWM (U.S. Dist. Ct. Montana); *Crystal L. Cox v. National Association of Realtors*, 3:13-cv-05364-BHS (U.S. Dist. Ct. Wash.); *Crystal L. Cox, et al. v. Tracy L Coenen, et al.*, 2:13-cv-00534-AEG (U.S. Dist. Ct. E.D. Wis.); *Crystal L. Cox, et al. v. Peter L. Michaelson, et al.*, 3:13-cv-03136-AET-DEA (U.S. Dist. Ct. D.N.J.) ; *Crystal L. Cox v. Marc J. Randazza, et al.*, 2:13-cv-00297-MMD-VCF (U.S. Dist. Ct. D. NEV.); (dismissing these very claims *with prejudice*, thus precluding these very claims in this case)*Crystal L. Cox v. Tracy L. Coenen*, 1:13-cv-03633 (U.S. Dist. Ct. N.D. Ill.); *Crystal L. Cox v. Kashmir Hill, et al.*, 4:13-cv-02046-DMR (U.S. Dist. Ct. N.D. Ca.); *Crystal L. Cox v. Godaddy Inc., et al.*, 2:13-cv-00962-MEA (U.S. Dist. Ct. D. Ariz.).

BREMER WHYTE BROWN & O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1   Despite the fact that Cox followed the Court's generously-rendered advice, the Court denied

2   Cox's Motion for Leave to Amend her Counterclaim on July 8, 2014. (ECF 213.) In the wake of

3   Cox's numerous attempts to modify the allegations in her counterclaims, the only counterclaims

4   remaining against Randazza are for (1) legal malpractice and (2) defamation. (*Id.*) It is apparent at

5   this point that neither of Cox's remaining claims have any merit, as discussed *infra*, but also that

6   the final version of the Counterclaim (such as it is) was not in existence until the Court's

7   modification of it on May 21, 2014, and it was not apparent which version of the Counterclaim was

8   operative until July 8, 2014. (*Id.*) Furthermore, even with the generous assistance of this Court,

9   providing exceptional guidance to Cox in articulating her claims, Cox's counterclaims still fall

10  woefully short of the *Twombly* and *Iqubal* standard required to withstand a Motion to Dismiss.

11  Cox's Counterclaim should be dismissed pursuant to Nevada's Anti-SLAPP Statute as her

12  counterclaims have no possibility of success, but are made to harass and intimidate Randazza.

13  Specifically, censorious litigants often file baseless Strategic Lawsuits Against Public Participation

14  ("SLAPP" suits) in an attempt to stifle speech of which they do not approve. Nevada's Anti-

15  SLAPP statute is designed to prevent these litigants from this conduct.[2] (N.R.S. 41.635 et seq.) It is

16  obvious that the only reason Cox has made these allegations against Randazza is to retaliate against

17  him for exercising his right to free speech in a public forum on a matter of public concern, namely

18  Cox's well-documented and nationally-known extortionate behavior and his actions in seeking

19  redress for her extortionate activities. As Cox's counterclaims are groundless and were brought

20  against protected conduct and in violation of Nevada's Anti-SLAPP statute, this Court should

21  render judgment for Randazza on Cox's Amended Counterclaim under N.R.S. 41.660 and grant

22  Randazza all relief provided by Nevada's Anti-SLAPP statute.

23

24

25

26  [2] Cox has dishonestly characterized the case-in-chief as a SLAPP suit. However, this ignores the fact that none of the complained-of actions have anything to do with the *content* of Cox's speech – content which she repeats, *ad nauseum*, on hundreds of websites – without complaint from the Plaintiffs. The *only* complaint that the Plaintiffs have with Cox

27  is her violation of the ACPA and her extortionate behavior. *See United States v. Coss*, 677 F.3d 278, 289 (6th Cir. 2012) (extortion is not protected speech).

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

3

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

## II.  FACTUAL BACKGROUND

In *Obsidian Finance Group LLC v. Cox*, 2012 U.S. Dist. LEXIS 43125 at *20 (D. Ore. Mar. 27, 2012), Cox was a defendant in a defamation lawsuit. As she had done many times before, Cox fixated on a target that she hoped would pay her money. She attacked that target relentlessly, and then offered "reputation management" services to that target – offering to cease her attacks and to remediate the harm, as long as the target hired her to do so. Cox is a serial extortionist. No court has entertained her claims with any degree of deference.

In December 2011, Michael Spreadbury approached Attorney Randazza, asking him to consider representing Cox. Randazza, Spreadbury and Cox had one non-privileged conversation. Cox decided (before that conversation) that she did not want Randazza to represent her, but apparently decided that he would be a good target for her extortion scheme. Immediately after informing Randazza that she retained other pro bono counsel, she informed Randazza that she had registered marcrandazza.com and offered her same "reputation management" services to him. (January 16, 2012 Email Exchange between Randazza and Cox, attached as **Exhibit A**; *see also* Domain Registry History of marcrandazza.com, attached as **Exhibit B**.)

The email might not have explicitly said "I am going to try to extort you," but in the context of Cox's well-documented behavior up until that date, the implication was clear – pay me or you get to meet the same fate as Kevin Padrick and Obsidian Finance  -- the plaintiffs in *Obsidian Finance v. Cox*.[3]  Randazza declined to submit to the extortionate demand. (Exh. A.) Therefore, Cox decided to attack his wife, by registering jenniferrandazza.com. When that did not have the desired effect, she went after his then three-year-old daughter, Natalia, with nataliarandazza.com.

On July 27, 2012, Randazza filed a Complaint with the World Intellectual Property Organization ("WIPO"). (WIPO Panel's Decision, attached as **Exhibit C**; *see also* ECF 164 at 8 ¶ 15.) Randazza filed his Complaint with WIPO to recover numerous domain names Cox registered, which wholly incorporated his own name, pursuant to the Uniform Domain-Name Dispute

---

[3] *Obsidian Finance Group LLC v. Cox*, 2012 U.S. Dist. LEXIS 43125 at *20 (D. Ore. Mar. 27, 2012) (hereinafter "*Obsidian* Case")

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

Resolution Policy ("UDRP"). (Exh. C.) In his UDRP Complaint, Randazza argued that Cox engaged in extortionate conduct by registering these domain names. (*Id.*) The WIPO panel agreed with Randazza, expressly finding Cox's conduct constituted a pattern of extortion, and ordered the domain names at issue transferred to Randazza. (*Id.*) Specifically, the WIPO Panel found that after Cox registered domains including targets' names and increasing their prominence on search engines, Cox "then offers to provide 'reputation management' services to her target in return for a fee. (*Id.*) The WIPO Panel further held that such websites are not 'criticism sites' but merely a pretext for the Respondent's bad faith extortionate use." (*Id.*)

Randazza also filed suit against Cox in this Court on November 28, 2012, alleging cyberpiracy, cybersquatting, violation of right of publicity, intrusion upon seclusion, and civil conspiracy. (ECF 1). Within the Complaint, and throughout this litigation, Randazza has consistently premised this action on the argument that Cox's actions are extortionate. (*Id.* at ¶ 1; *see also* ECFs 179; 180.) Even this very Court has recognized that Cox's conduct amounts to extortion. (ECFs 14; 41 at 7, 9.) Specifically, this Court found that "Defendants' actions leading up to the filing of the Complaint, as well as Defendants' past behavior, as represented in Plaintiffs' reply briefing, clearly seems to indicate cyber-extortion," and that "Defendant has been shown to have engaged in a

In fact, a vast majority of Cox's pleadings have attempted to implicate Judge Navarro for her evaluation of Cox's behavior as extortionate. Further, virtually every pleading Cox has filed has alleged that Judge Navarro has engaged in civil and criminal conspiracy, fraud, and breach of judicial ethics for not siding with Cox.[4]

In the *Obsidian* case, Cox engaged in her apparent modus operandi – she fixated on a target (in that case, Obsidian Finance and Kevin Padrick) and obsessively posted defamatory information about the target, then sought a financial advantage from the victims in exchange for cleaning up the

---

[4] *See* ECFs 019, 020, 022, 023, 024, 029, 044, 047, 052, 053, 054, 057, 058, 059, 060, 061, 062, 066, 072, 074, 077, 079, 079-1, 080, 080-1, 081, 087, 090, 091, 091-2, 091-7, 093, 095, 096, 097, 099, 113, 116, 119, 120, 121, 122, 170, 171, 174, 175, 176, 178, 195, 196, 197.

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

5

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1   very reputational damage she caused. The case was originally brought in 2011 in the United States

2   District Court for the District of Oregon, and by November of that year it had received substantial

3   nationwide media coverage, when the jury returned a $2.5 million verdict. (ECF 75-4.) (displaying

4   email from Cox to Kevin Padrick in which Cox offered Obsidian Finance Group, LLC her PR and

5   online reputation services for $2500 per month after registering the very domains that contained

6   negative comments about the company); *see also* David Carr, "When Truth Survives Free Speech,"

7   *The New York Times* (Dec. 11, 2011) (discussing Cox's pattern of registering domains related to

8   her victims and characterizing her email to Kevin Padrick as "an unsubtle offer to holster her gun

9   in exchange for a payoff"), attached as **Exhibit D**; Timothy B. Lee, "Blogger not eligible for media

10  shield law, hit with $2.5M judgment," *Ars Technica* (Dec. 8, 2011) (Discussing email from Cox to

11  Kevin Padrick regarding online reputation services and concluding that "the implication seems to

12  be that if Obsidian forks over some cash, Cox will make sites like "obsidianfinancesucks.com" [a

13  domain that Cox registered] go away), attached as **Exhibit E**; Curtis Cartier, "Crystal Cox, Oregon

14  Blogger, Isn't a Journalist, Concludes U.S. Court—Imposes $2.5 Million Judgment on Her,"

15  *Seattle News Weekly* (Dec. 6, 2011), attached as **Exhibit F**.)

16      Relatedly, on July 5, 2013, the State of Montana Board of Realty Regulation also found that

17  Cox had engaged in extortionate behavior, thereby violating multiple rules of professional and

18  ethical conduct. (*In the Matter of Case No. 2011-RRE-LIC-186 Regarding: The Proposed*

19  *Disciplinary Treatment of the License of Crystal L. Cox, Licensed Real Estate Broker License No.*

20  *11581*, State of Montana Realty Regulation, Case No. 1105-2013, attached as **Exhibit G**; *see also*

21  ECF 210-9.) The Board found that Cox had violated the confidences of a client, Martin Cain, by

22  registering the domain name <martincain.com> and using it to post various false statements about

23  him, including an accusation that Mr. Cain hired a hit man to kill Cox. (**Exh. G**; *see also* ECF 210-

24  9 at 3-4 ¶¶ 7-10.) Cox then contacted Mr. Cain and offered him the <martincain.com> website for

25  $500,000. (*Id.*) Given that Cox victimized Mr. Cain in a manner nearly identical to how she

26  victimized Randazza, there are few words other than "extortion" that accurately describe her

27  conduct.

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

1    Finally, the Ninth Circuit, in reviewing the lower court's record in the *Obsidian* Case,

2  determined that "Cox apparently has a history of making similar allegations [to those she made

3  concerning Kevin Padrick] and **seeking payoffs in exchange for retraction**." (*Obsidian Fin.*

4  *Group, LLC*, 740 F. 3d at 1287.) The Ninth Circuit may not have used the precise word "extortion,"

5  but the words it used fit squarely within the definition of that term. In fact, every judicial body,

6  arbitrator, or administrative agency that has evaluated Cox's behavior has found her to be an

7  extortionist.

8    Though not all of the above determinations were made by *this* Court, they constitute admissible

9  evidence for purposes of ruling on this special motion. Federal Rules of Evidence 201(b) and (c)

10  allow the Court to take judicial notice of the Orders of another court. (*See In re Sas*, 488 B.R. 178,

11  179 n. 3 (D. Nev. Bankr. 2013) (taking judicial notice of proceedings in parallel litigation).)

12  Though placed on the record by both Cox and Randazza, the Court may additionally take judicial

13  notice of the contents of the WIPO decision (Exh. C; *see also* ECF 210-4)[5] and the Montana Board

14  of Realty Regulation's proceedings against Cox (Exh. G; see also ECF 210-9).  (*Biggs v. Terhune*,

15  343 F.3d 910, 916 n. 3 (9th Cir. 2003) (taking judicial notice of facts from administrative

16  proceeding, as "[m]aterials from a proceeding in another tribunal are appropriate for judicial

17  notice"); *see also Compana LLC v. Aetna, Inc.*, 2006 U.S. Dist. LEXIS 29028 at *11-12 (W.D.

18  Wash. May 12, 2006) (specifying that FRE 201 allows judicial notice of WIPO arbitration

19  proceedings).) Further, Randazza and Martin Cain both submitted *amicus* briefs before the Ninth

20  Circuit in the *Obsidian* Case, informing the court that the above judicially noticeable sources had

21  found Cox's behavior to be extortionate. The briefs of Mr. Randazza and Mr. Cain (ECFs 179-2;

22  179-3) are judicially noticeable under Federal Rule of Evidence 201. (Randazza's Amicus Brief,

23  attached as **Exhibit H**; Cain's Amicus Brief, attached as **Exhibit I**; Declaration of Jared G.

24  Christensen, attached as **Exhibit J**.)

[5] Cox herself has entered this decision into evidence.

BREMER WHYTE BROWN & O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

7

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

### III. LEGAL STANDARD

Nevada's Anti-SLAPP statute immunizes persons from civil liability for engaging in "a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." (N.R.S. 41.650.) Such good faith communications include a "[c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum, which is truthful or is made without knowledge of its falsehood." (N.R.S. 41.637.)

Pursuant to Nevada's Anti-SLAPP statute, if a lawsuit is brought against a defendant based upon such a communication, then the defendant may file a special motion to dismiss. Thereafter, the Court is required to conduct a two-step analysis in order to grant said motion to dismiss. First, Court must determine whether the defendant has shown, by a preponderance of evidence, that the plaintiff's claim "is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." (N.R.S. 41.660(3)(a).) If the forgoing burden is met, then Court must determine whether the plaintiff has established, by **clear and convincing evidence**, that she has a probability of prevailing on her claim. (N.R.S. 41.660(3)(b).) Here, Cox will not be able to do so.

A court should treat a special motion to dismiss under N.R.S. 41.660 as a motion for summary judgment. (*Stubbs v. Strickland*, 297 P.3d 326, 329 (Nev. 2013); Fed. R. Civ. P. 56(c).) If the Court grants the special motion to dismiss, then the defendant is entitled to an award of reasonable costs and attorneys' fees, as well as an award of up to $10,000.00. (N.R.S. 41.670(1)(a) & (b).)

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Fed. R. Civ. P. 56(c).) Summary judgment is not a disfavored procedural short-cut, but rather "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." (*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).) A party opposing summary judgment must demonstrate the existence of a factual dispute that must be both genuine and material. A fact is "material" if it might affect the outcome

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

1  of a suit, as determined by the governing substantive law. (*Anderson v. Liberty Lobby*, 477 U.S.

2  242, 248 (1986).) A "factual dispute is genuine when the evidence is such that a rational trier of

3  fact could return a verdict for the nonmoving party." (*Matsushita Elec. Indus. Co. v. Zenith Radio*

4  *Corp.*, 475 U.S. 574, 586 (1986).) "Summary judgment has, as one of its most important goals, the

5  elimination of waste of the time and resources of both litigants and the courts in cases where a trial

6  would be a useless formality." (*Zweig v. Hearst Corp.*, 521 F.2d 1129, 1135-1136 (9th Cir. 1975).)

7  Thus, the party opposing summary judgment "may not rest upon the mere allegations or denials of

8  [the party's] pleadings, but… must set forth specific facts showing that there is a genuine issue for

9  trial." (Fed.R.Civ.P. 56(e); *see also Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Brinson v. Linda*

10  *Roase Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).)

11  **IV. ARGUMENT**

12      **A.**    **Nevada's Anti-SLAPP Statute Applies to Dismiss Cox's Counterclaims.**

13      As a threshold matter, it is necessary to answer the question of whether Nevada's Anti-SLAPP

14  statute applies to counterclaims. This is an issue of first impression before this Court, but there is

15  nothing in the language or history of N.R.S. 41.635 et seq. to indicate that the statute should not

16  encompass counterclaims. Further, courts in Washington, which has an anti-SLAPP statute very

17  similar to Nevada's, have allowed anti-SLAPP motions against counterclaims to proceed. (*See*

18  *Townsend v. State*, 2012 Wash. App. LEXIS 2221 at *12-13 (Wash. Ct. App. Sept. 18, 2012).) As

19  there is no evident reason to categorically bar the application of Nevada's Anti-SLAPP statute to

20  counterclaims, Counterdefendant Randazza respectfully requests that the Court grant the instant

21  motion in its entirety.

22      **B.**    **This Motion is Timely**

23      N.R.S. 41.660(2) provides that a special motion to dismiss brought under Nevada's Anti-

24  SLAPP statute must be brought within 60 days after service of the complaint, while also providing

25  the court discretion to extend this period to hear motions to dismiss beyond the sixty day period for

26  good cause. Here, filing the instant motion previously would have been premature and futile. Due

27  to the mercurial nature of Cox's pleadings in her counterclaim, it was impossible to determine

28  which Counterclaim this motion would be responding to, or what the actual content of the claims

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

9

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1   would be, until the Court's Order denying Cox's motion for leave to amend her Counterclaim on

2   July 8, 2014. (ECF 213.) Until now, it was impossible to determine whether Cox's proposed

3   Amended Counterclaim (ECF 209-1) or her earlier February 21, 2014 Counterclaim (ECF 164) (as

4   modified by the Court on May 21, 2014 (ECF 208)) would be the operative Counterclaim. Now

5   that we know what Counterclaim we are dealing with, and its content, it is no longer premature to

6   file the instant Anti-SLAPP motion.

7          **C.     Cox's Counterclaim of Defamation is Subject to a Special Motion to Dismiss.**

8                 **1.      Randazza is Not Liable for Defamation.**

9          To establish a cause of action for defamation, a plaintiff (or here, a counterclaimant) must

10   allege: (1) a false and defamatory statement by defendant concerning the plaintiff; (2) an

11   unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual

12   or presumed damages. (*Wynn v. Smith*, 16 P.3d 424, 427 (Nev. 2001); see also *Pegasus v. Reno*

13   *Newspapers, Inc.*, 57 P.3d 82, 90 (Nev. 2002).) A statement is only defamatory if it contains a

14   factual assertion that can be proven false. (*Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005).) "A

15   defamation claim requires demonstrating a false and defamatory statement of fact..." Whether a

16   statement contains a defamatory factual assertion is a question of law for the court to determine.

17   (*Rodriguez v. Panayiotou*, 314 F.3d 979 (9th Cir. 2002); *see also Branda v. Sanford*, 637 P.2d

18   1223, 1225-26.) When evaluating the threshold question of whether a statement is susceptible to a

19   defamatory meaning, the Court must analyze the statement from the standpoint of the average

20   listener, judging the statement not in isolation, but within the context in which it is made. (*Norse v.*

21   *Henry Holt & Co.*, 991 F.2d 563, 567 (9th Cir. 1993).)

22          Here, Cox alleges that Randazza's single statement that Cox is an "extortionist" is the basis for

23   her claim of defamation. (ECF 164.) Randazza has presented sufficient evidence that his statements

24   are truthful and even if they were not, they would still be protected by multiple privileges. The

25   burden of proving his statements false lies with Cox. (*Id*). Cox, however, has not provided any

26   evidence that the communications were untruthful or made with any knowledge of their falsehood.

27   Instead, Cox goes on an interminable rant about how she does not appreciate that the public

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

10

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1    perception of her is that she engages in extortion. This is wholly insufficient to establish a genuine

2    issue of material fact.

3                              a.    **Randazza's Statements that Cox is an Extortionist Are True.**

4         To prevail on a claim for defamation, a plaintiff must, first and foremost, demonstrate that the

5    statement in question is **provably false**. (*St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).)

6    Randazza's statements in regards to Cox were truthful, based on his personal experience with Cox,

7    especially in light of her pattern of egregious behavior with other parties, in other litigations, and in

8    light of national media reports about her behavior when dealing with other parties. (*See*, *e.g.*,

9    Carlos Miller, *Blogger Must Act Like Journalist To Be Treated Like One*.[6]) Furthermore, Cox's

10   present counterclaims are clearly retaliatory in nature, while being unsupportable, and thus

11   prohibited by statute. Nevada's Anti-SLAPP statute is predicated on protecting "well-meaning

12   citizens who petition [the] government and then find themselves hit with retaliatory suits known as

13   SLAPP [suits]." (*John v. Douglas County School District*, 125 Nev. 746, 219 P.3d 1276, 1281

14   (2009).)

15        Cox will be unable to set forth a *genuine* issue of material fact regarding whether the

16   communications were untrue or made with knowledge of their falsehood. (Fed. R. Civ. P. 56.)

17   "This court has often stated that the nonmoving party may not defeat a motion for summary

18   judgment by relying 'on the gossamer threads of whimsy, speculation and conjecture.'" (*Wood v.

19   Safeway, Inc.*, 121 Nev. 724, 731, 121 P.3d 1026, 1030 (2005) quoting *Pegasus v. Reno

20   Newspapers, Inc.*, 118 Nev. 706, 713-14, 57 P.3d 82, 87 (2002); *Posadas v. City of Reno*, 109 Nev.

21   448, 452, 851 P.2d 438, 442 (1993); *Collins v. Union Fed. Savings & Loan*, 99 Nev. 284, 302, 662

22   P.2d 610, 621 (1983); *Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 110, 825 P.2d 588, 591

23   (1992).)

24        The district court in the *Obsidian* case, in denying Cox's motion for a new trial, found that:

25            [T]he uncontroverted evidence at trial was that after receiving a demand to stop
             posting what plaintiffs believed to be false and defamatory material on several
26

27   [6] Attached hereto as **Exhibit K** is a true and correct copy of Carlos Miller's article. Attached hereto as **Exhibit L** is the
     declaration of Carlos Miller attesting to it.

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

11

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1
2
3

    websites, including allegations that Padrick had committed tax fraud, defendant offered "PR," "search engine management," and online reputation repair services to Obsidian Finance, for a price of $2,500 per month. The suggestion was that defendant offered to repair the very damage she caused for a small but tasteful monthly fee.

4

(*Obsidian Finance Group LLC v. Cox*, 2012 U.S. Dist. LEXIS 43125 at *20 (D. Ore. Mar. 27,

5

2012).) Though stopping short of specifically using the word extortionist, there are few words more

6

apt for the court's description of Cox's behavior as reported in this case than "extortion."

7

    Right there, this case is over. However, to leave no doubt, Randazza's statement was also based

8

on his personal experience with Ms. Cox. Cox engaged in the same behavior, and subjected

9

Randazza to the same sort of extortion, as she did in the *Obsidian* Case. Cox's behavior was

10

extortionate, and therefore, Randazza's statement that Cox is an extortionist is true – in fact, it was

11

proven true in a court of law. Seldom is a court presented with such a clear demonstration of the

12

truth of a statement as this one – one which has already passed through the crucible of the

13

adversarial process – multiple times. With that already of record, this Court should not have even

14

permitted the Counterclaim to move forward. But, given that the Court has elected to do so, the

15

Court has given Randazza the opportunity to add another Court to the growing list of adjudicative

16

bodies to find Cox to be an extortionist.

17

        **b.**     **Randazza's Statements, Even if They Were Not True, Would Be Privileged From Liability.**

18
19

    "A qualified or conditional privilege exists where a defamatory statement is made in good faith

20

on any subject matter in which the person communicating has an interest, or in reference to which

21

he has a right or a duty, if it is made to a person with a corresponding interest or duty." (*Circus

22

Circus Hotels, Inc. v. Witherspoon*, 657 P.2d 101, 105 (Nev. 1983).) Whether a particular

23

communication is conditionally privileged by being published on a "privileged occasion" is a

24

question of law for the court. (*Id.* at 105.) The burden then shifts to the plaintiff to prove to the

25

jury's satisfaction that the defendants abused the privilege by publishing the communication with

26

malice in fact. (*Id.*) The question can only go to the jury if there is sufficient evidence from which

27

the jury could infer that the publication was made in bad faith, with spite or ill will, or some other

28

wrongful motive, and without a belief that the statement was true. (*Id.*) The burden is on Cox to

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

12

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1    prove that Randazza made the statement that Cox is an extortionist as an abuse of privilege, by

2    publishing the statements with malice in fact, which includes a showing that Randazza's

3    publication was made in bath faith and without a belief that the statement was true. However, as

4    outlined above, Randazza reasonably believed the statement to be true.

5                    i.    **Even if Not Provably True, Randazza's Statements Would be Protected by the Fair Reporting Privilege.**

6

7        In Nevada, "the fair reporting privilege provides absolute immunity to a party who makes a

8    'fair, accurate, and impartial report of events occurring in judicial proceedings.'" (*Ferm v.

9    McCarty*, 2013 U.S. Dist. LEXIS 23711 at *22 (D. Nev. Jan. 28, 2013).) This privilege is not

10   limited to the news media, but rather extends to "any person who makes a republication of a

11   judicial proceeding from material available to the general public." (*Id.*; *see also Wynn v. Smith,* 117

12   Nev. 6, 16 P.3d 424, 429 (Nev. 2001).) Courts have found that this privilege should be applied

13   "liberally, resolving any doubt in favor of its relevance or pertinency." (*Fink v. Oshins*, 49 P.3d

14   640, 644 (Nev. 2002).)

15       The protections of fair and just reporting privilege apply to Randazza in this case. It is obvious

16   that the comment about Cox being an extortionist after the jury verdict in the *Obsidian* Case arose

17   from a judicial proceeding. As above, multiple journalists and legal bloggers, who normally

18   address these sorts of legal issues, wrote about the outcome of the *Obsidian* Case. Randazza's

19   commentary was obviously in connection with the *Obsidian* Case.

20       Any statement by Randazza calling Cox an extortionist is privileged as a fair reporting of the

21   judicial proceedings in the *Obsidian* Case, the various media articles covering the *Obsidian* Case,

22   and the State of Montana Board of Realty Regulation proceeding against Cox. Shortly after

23   speaking with her personally in December 2011 and after the media had already turned its focus on

24   the *Obsidian* Case, Randazza gained first-hand experience with Cox's extortion scheme. Thus, by

25   the facts alleged in Cox's own counterclaim, Randazza only made the allegedly defamatory

26   statements after having an up-close and personal encounter with her particular brand of extortion.

27   While the December media articles may not have used the particular word "extortion," it is a fair

28   report to characterize their description of Cox's offering her reputation services to the victims of

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

13

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1    her campaign of widespread libel as describing "extortion." This becomes an almost inescapable

2    conclusion given that a WIPO arbitration panel (Exh. C.), the State of Montana Board of Realty

3    Regulation (Exh. G.), the Ninth Circuit (*Obsidian Fin. Group, LLC*, 740 F. 3d at 1287), and even

4    this very Court (ECFs 12; 41 at 7, 9) have either characterized or explicitly labeled Cox's behavior

5    as extortion.

6        In addition, there are innumerable others who have also interpreted Cox's behavior in the

7    *Obsidian* case as that of an extortionist as well. For example, *The Philly Law Blog*,[7] *Simple*

8    *Justice*,[8] *Popehat*,[9] *New York Personal Injury Law Blog*,[10] *Defending People*,[11] [12] *The New York*

9    *Times*,[13] *Forbes*,[14] [15] and *Photography is Not a Crime*[16] have all commented on Cox's behavior, as

10   evidenced firstly in the *Obsidian* case, and secondly in this case. Each of those journalists and law

11   bloggers addressed the issues presented in the *Obsidian* Case, whereby Cox demanded money in

12   exchange for ceasing her defamatory online path of destruction, and each of these authors

13   independently came to the same conclusion – that that behavior is nothing short of extortion.

14       The only statements that Cox identifies as defamatory were made after substantial media

15   coverage of the *Obsidian* Case, and were in fact made to some of the people who initially reported

16   on Cox's behavior, such as Kashmir Hill, David Carr, Carlos Miller, and Mark Bennett. (Exh. K, S,

17

---

18   [7] Attached hereto as **Exhibit M**; http://phillylawblog.wordpress.com/2012/03/30/crystal-cox-investigative-blogger-no-more-like-a-scammer-and-extortionist/

19   [8] Attached hereto as **Exhibit N**; http://blog.simplejustice.us/2012/03/30/a-blogger-not-like-us-update/

20   [9] Attached hereto as **Exhibit O**; http://www.popehat.com/2014/01/19/protecting-the-free-speech-of-censors-the-crystal-cox-saga/

21   [10] Attached hereto as **Exhibit P**; http://www.newyorkpersonalinjuryattorneyblog.com/2012/04/blawg-review-is-back-with-a-couple-incredible-stories.html

22   [11] Attached hereto as **Exhibit Q**; http://blog.bennettandbennett.com/2011/12/the-sky-is-definitely-not-falling.html

23   [12] Attached hereto as **Exhibit R**; http://blog.bennettandbennett.com/2012/03/crystal-cox.html

24   [13] Attached hereto as **Exhibit S**; http://www.nytimes.com/2011/12/12/business/media/when-truth-survives-free-speech.html?pagewanted=all

25   [14] Attached hereto as **Exhibit T**; http://www.forbes.com/sites/kashmirhill/2011/12/07/investment-firm-awarded-2-5-million-after-being-defamed-by-blogger/

26   [15] Attached hereto as **Exhibit U**; http://www.forbes.com/sites/kashmirhill/2012/04/02/ugly-new-reputation-smearing-tactic-going-after-a-toddlers-internet-footprint/

27   [16] Exh. K; http://photographyisnotacrime.com/2011/12/08/blogger-must-act-like-journalist-to-be-treated-like-one/

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

14

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

T, and U.) Each of those journalists and law bloggers publically identified Cox as an extortionist on account of her behavior in the *Obsidian* Case, **well before** Randazza made his statement. And Randazza relied on those reports of the *Obsidian* Case in making his own determinations. Therefore, Randazza's statements are protected by the fair reporting privilege.

ii.    **Randazza's Statements Are Protected by the Reply Privilege.**

The common law privilege of reply grants those who are attacked with defamatory statements a limited right to reply. In *Foretich v. Capital Cities/ABC, Inc.*, the United States Court of Appeals for the Fourth Circuit explained, by example, how the privilege would work – 'If I am attacked in a newspaper, I may write to that paper to rebut the charges, and I may at the same time retort upon my assailant, when such retort is a necessary part of my defense, or fairly arises out of the charges he has made against me.'" (*State v. Eighth Judicial Dist. Court*, 118 Nev. 140, 149, 42 P.3d 233, 239 (2002) *citing Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1559 (4th Cir. 1994).)

That exemplar precisely describes Randazza's actions. Here, Cox purchased innumerable websites in Randazza's name, used those websites to publish defamatory statements about Randazza, and then sought to extort him by offering "reputation management" to him in precisely the same manner in which she attempted to extort the plaintiff in the *Obsidian* case. (Exh. A.) When Randazza resisted her extortionate attempts, she upped the ante by filling her dozens of websites with defamatory material about Randazza. When this did not bring about the desired effect, she focused on his wife. When that did not bring about the desired payment, she then turned her sights on (at that time) three-year-old Natalia Randazza. And yet, Cox has the unmitigated gall to suggest that her reputation has been harmed. Randazza defended himself and his family by pointing out that he was being attacked by an extortionist – and one that was previously reported as an extortionist by the New York Times.

As articulated above, Randazza's statement that Cox is an extortionist was not defamatory in the first place, but was directly relevant to Cox's behavior attacking him (and his family) publicly, was appropriately publicized, was not made with "actual malice," but was simply in an attempt to

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1   publically reply to Cox's terribly extortionate behavior – and to immunize himself from her

2   particular brand of cyber-extortion.

3          c.      **Even if the Statements Were Not True, and Were Not Privileged, Cox Cannot Demonstrate Fault, Amounting to at Least Negligence, Much Less the Required "Actual malice" Standard.**

4

5      For Cox to prevail on a claim of defamation, she must demonstrate fault, and must prove that

6   Randazza acted with, at a minimum, negligence, in making the statement regarding her extortionate

7   behavior. The degree of fault required by a defendant for defamation liability to attach depends

8   upon the target and content of the defendant's speech. For defamation purposes, there are three

9   categories of plaintiffs:  the general public figure, the limited purpose public figure, and the private

10  individual. A general public figure is someone who is "intimately involved in the resolution of

11  important public questions or, by reason of their fame, shape events in areas of concern to society

12  at large." (*Hustler Magazine v. Falwell*, 485 U.S. 46, 51 (1988) (citing *Curtis Publishing Co. v.

13  Butts*, 388 U.S. 130, 164 (1967) (Warren, C.J., concurring in result)).) A limited purpose public

14  figure "voluntarily injects himself or is drawn into a particular public controversy and thereby

15  becomes a public figure for a limited range of issues." (*Gertz v. Robert Welch*, 418 U.S. 323, 351

16  (1974).) Private figures are all other persons. As articulated below, Cox is a limited purpose public

17  figure.

18         i.      **Cox is a Public Figure, and Therefore, in Order to Prevail on a Defamation Claim, Must Prove that Randazza Acted with Actual Malice.**

19

20     Public figures must show that a defamation defendant acted with "actual malice," i.e.,

21  knowledge that his statement was false or reckless disregard for the truth of the statement. (*New

22  York Times v. Sullivan*, 376 U.S. 254, 279-280 (1964).) The same standard applies for a limited

23  purpose public figure when the statement concerns the public controversy or range of issues for

24  which she is known. (*Makaeff v. Trump Univ., LLC*, 715 F.3d 254 (9th Cir. 2013).) A defendant

25  shows reckless disregard when he "acted with a 'high degree of awareness of . . . [the] probable

26  falsity' of the statement or had serious doubts as to the publication's truth." (*Pegasus v. Reno

27  Newspapers, Inc.*, 118 Nev. 706, 719 (2002).)

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

16

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

There is no doubt that Cox is a limited-purpose public figure for purposes of her involvement in the *Obsidian* Case and her extortionate behavior. (Exh. T.) Cox voluntarily threw herself into this public controversy by filling numerous online blogs with slanderous writings concerning Obsidian Finance Group, LLC's Chapter 11 bankruptcy trustee, as well as frequently publishing commentary on the case on her numerous blogs. In fact, Cox repeats *ad nauseum* that she is a famous anti-corruption blogger – certainly she cannot claim to be a private figure while plying such a public trade.

Cox alleges that Randazza made defamatory statements about her beginning on December 10, 2011, but does not attempt to describe statements made before March 2012 (ECF 164 at 5 ¶ 7, 14 at ¶ 29.) Undoubtedly, by March 2012, Cox had become a limited purpose public figure; as the jury reached a verdict in the *Obsidian* case in November 2011, and several reputable media outlets such as *Forbes* and *The New York Times* had published articles discussing the *Obsidian* case and Cox's overtly extortionate behavior. (Exh. Q, S, and U.) Cox even boasts in her Amended Counter Complaint that she "has been reporting on corruption for approx. (sic) 9 years" and "is a **nationally noted** anti-corruption blogger and whistle blower." (ECF 164 at 14 ¶ 27)(emphasis added). Cox has further stated: "I am Media, I have reported on hundreds of people, corporations, companies, attorneys, cases, judges, cops, victims, and businesses over 7 years in my online media." (ECF 90 at 5.)  Furthermore, in the April 2012 issue of the Oregon State Bar Bulletin, Cox was the cover story "The Poster Child: How Oregon's Blogging Defamation Case Attracted National Attention."[17] That article went into detail about Cox's on-going pattern of extortion, especially in light of the *Obsidian* Case.

The public was already well aware of Cox by the time Randazza made any of the statements alleged in Cox's defamation claim, making her a public figure at all relevant times – in fact, much of the public knew of her through her own efforts. At the very least, Cox is estopped from claiming

---

[17] Attached hereto as **Exhibit V** is a copy of the article from the Oregon State Bar Bulletin.

BREMER WHYTE BROWN & O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

that she is not a public figure based on her assertions of notoriety in her own Counterclaim.[18] As a public figure, Cox can only prevail on her defamation claim if she can show **clear and convincing evidence that Randazza acted with actual malice,** i.e., knowledge that his statements were false, or with reckless disregard for the truth of his statements. Cox cannot meet this burden.

It is an absurd contention given this evidence, that Randazza claimed Cox was an extortionist with *actual malice*. With his first-hand experience of Cox's extortionate behavior and **four different adjudicative bodies** all determining that Cox engaged in extortion (or conduct that can be called extortion without embellishment), there is no remotely plausible argument that Randazza stated Cox was an extortionist with **knowledge that his statements were false or with reckless disregard for their truth.** Randazza knows and believes the statements to be true. Cox thus has no probability of prevailing on her counterclaim against Randazza for defamation.

### d.    Cox is a "Libel-proof" Claimant, and As Such, Cannot Withstand a Claim of Defamation.

Cox's is barred from asserting a defamation claim against Randazza because her reputation, prior to Randazza's comment, and thereafter due to her own actions or the actions of other objective observers, was so tarnished, that she is "libel-proof." "When a plaintiff's reputation is so diminished at the time of publication of the allegedly defamatory material that only nominal damages at most could be awarded because the person's reputation was not capable of sustaining further harm, the plaintiff is deemed to be libel-proof as a matter of law and is not permitted to burden a defendant with a trial." (Eliot J. Katz, Annotation, *Defamation: Who is "Libel-Proof,"* 50 A.L.R.4th 1257 (2004); *accord* 1, Robert D. Sack, *Sack on Defamation* § 2.4.18 (3d ed. 2004); *see generally* Note, *The **Libel-Proof Plaintiff** Doctrine*, 98 Harv. L. Rev. 1909 (1985).)

Specifically, "[a]n individual who engages in certain anti-social or criminal behavior and suffers a diminished reputation may be 'libel proof' as a matter of law, as it relates to that specific behavior… By extension, if an individual's general reputation is bad, he is libel proof on all

---

[18] In her own words, "Cox is an investigative Blogger having over 1200 blogs… Cox is a nationally noted anti-corruption blogger and whistle blower" ECF 164 at 14.

1    matters." (*Wynberg v. Nat'l Enquirer*, 564 F. Supp. 924, 928 (C.D. Cal. 1982) *citing Ray v. Time,*

2    *Inc.*, 452 F. Supp. 618, 622 (W.D. Tenn. 1976).)

3        Here, before Randazza made his comment about Cox's extortionate behavior, Cox was already

4    engaging in her pattern of extortion on others, and had a wide-spread reputation for it. As

5    articulated above, Cox had already garnered a reputation for offering her "reputation management

6    services" for a fee in exchange for removing the defamatory content she herself has plastered all

7    over the Internet. *The New York Times* and *Forbes* had already identified Cox's disrepute behavior,

8    as a result of the *Obsidian* case. (Exh. Q, S, and U.) Cox already had the reputation for engaging in

9    the sort of behavior that only a despicable person would engage in, like violating client trust,[19]

10   creating websites in the names of small children,[20] and extorting those who do not simply succumb

11   to her demands.[21] Cox is not the sort of claimant that can rely on the protection of the law against

12   allegations of defamation.

13              2.      **Even if Cox Could Prevail on the Merits of her Claim, Cox's**
                        **Defamation Claim is Time-Barred by Nevada's Statute of Limitations.**
14
15       N.R.S. 11.190(4)(c) provides that "[a]n action for libel [or] slander" must be brought within

16   two years. Despite Cox's assertions that Randazza has continued to make allegedly defamatory

17   statements about her over the course of two or more years (ECF 164 at 16 ¶ 41), the statutory

18   period began to run on the original date of publication of each distinct statement. (*Flowers v.*

19   *Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (finding that "'a cause of action for defamation

20   accrues immediately upon the occurrence of the tortious act and thus, is not appropriate for the

21   continuing violation exception'") (quoting *Lettis v. U.S. Postal Serv.*, 39 F. Supp. 2d 181, 205

22   (E.D.N.Y. 1998).) Claims for defamation are also subject to the "single publication" rule, by which

23   "aggregate communication can give rise to only one cause of action in the jurisdiction where the

24   dissemination occurred, and result in only one statute of limitations period that runs from the point

25
26   [19] Exh. G.

27   [20] nataliarandazza.com

28   [21] Exh. A; *Obsidian Fin. Group, LLC*, 740 F. 3d at 1287.

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

19

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1   at which the original dissemination occurred." (*Oja v. United States Army Corps of Eng'rs*, 440

2   F.3d 1122, 1130 (9th Cir. 2006).) This rule applies equally to publications both in print and on the

3   Internet. (*Id.* at 1131.)

4       In her counterclaims, it is difficult to ascertain specifically when Randazza first published the

5   allegedly defamatory statement that Cox is an extortionist. Cox generally alleges that "Marc

6   Randazza has harassed, defamed, taunted (sic) threatened and violated the rights of Cox since Dec.

7   10th 2011, just after Cox's trial (sic) Obsidian v. Cox." (ECF 164 at 14 ¶ 27.) Furthermore, she fails

8   to identify in the Counterclaim what particular statements Randazza made regarding her.

9   Notwithstanding, such identification is not necessary here, as any claim for defamation Cox may

10   have had against Randazza for statements made prior to February 21, 2012 (two years before she

11   filed her counterclaim) are barred by N.R.S. 11.190(4)(c). The single publication rule prevents any

12   later republication of such statements from resetting the statutory period. And in her cause of action

13   for defamation, Cox asserts that "Randazza's threats, actions and (sic) ganging up on Cox with

14   various others has kept Cox . . . under constant attack for over 2 years." (ECF 164.) Insofar as these

15   allegations are included in her claim for defamation, they are also time-barred for the same reason.

16        **D.**   **Cox's Legal Malpractice Claim is Subject to a Special Motion to Dismiss.**

17          **1.**   **Cox's Legal Malpractice Claim is Based Upon Randazza's Communications, Protected under N.R.S. 41.660.**

18

19       The question of whether a claim for legal malpractice can be the subject of an anti-SLAPP

20   motion under Nevada law is an issue of first impression before this Court, but decisions in

21   California, which has an anti-SLAPP statute similar to the Nevada statute (and upon which the

     Nevada statute was based), are persuasive in suggesting that it can be. California courts have found

22

23   that "claims against an attorney arising out of that attorney's representation of his or her client are

     the proper subject of an anti-SLAPP special motion to strike." (*Winters v. Jordan*, 2010 U.S. Dist.

24

25   LEXIS 95681 at *15 (E.D. Cal. July 19, 2010); *see also Jarrow Formulas, Inc.*, 31 Cal. 4th 728,

26   733 (Cal. 2003) (holding that malicious prosecution claim arising from the attorney's

     representation of client was subject to California anti-SLAPP statute); *White v. Lieberman*, 103

27

28   Cal. App. 4th 210, 221 (Ct. App. 2002) (same).)

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

20

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

California courts have also found that "[a] mixed cause of action is subject to the Anti-SLAPP statute if **at least one of the underlying acts is protected conduct**, unless the allegations of protected conduct are merely incidental to the unprotected activity." (*Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1109 (C. D. Cal. 2008) (emphasis added); *see Salma v. Capon*, 161 Cal. App. 4th 1275, 1287 (Cal. App. 1st Dist. 2008) (holding that a cause of action based on both protected and unprotected activity under California's anti-SLAPP statute is subject to an anti-SLAPP motion); *see also A.F. Brown Electrical Contract, Inc. v. Rhino Electric Supply, Inc.*, 137 Cal. App. 4th 1118, 1125 (Cal. App. 4th Dist. 2006) (finding that a "cause of action is vulnerable to a special motion to strike under the anti-SLAPP statute only if the protected conduct forms a substantial part of the factual basis for the claim"); *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 675 (Cal. App. 1st Dist. 2005) (finding that because plaintiffs' claims "are based in significant part on [defendant's] protected petitioning activity," the first anti-SLAPP prong was satisfied).)

In addition to protecting speech on a matter of public concern, N.R.S. 41.637 includes in its definition of protected communications "[w]ritten or oral statement[s] made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law." The Ninth Circuit has interpreted the scope of protected conduct under a similar provision of California's anti-SLAPP statute broadly, even finding that the filing of a federal trademark application on behalf of a client is a protected act under the statute. (*Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 597 (9th Cir. 2010) (holding that filing a trademark application from which malpractice lawsuit arose "is more than merely a ministerial act connected with a business transaction," and thus protected under California's anti-SLAPP statute).)

While there is some California authority that does not look favorably upon anti-SLAPP motions premised upon malpractice claims, those cases are readily distinguishable from the facts here. (*See, e.g., PrediWave Corp. v. Simpson Thacher and Bartlett LLP*, 179 Cal. App. 4th 1204 (Cal. App. 6th Dist. 2009); *Kolar v. Donahue, McIntosh & Hammerton*, 145 Cal. App. 4th 1532 (Cal. App. 4th Dist. 2006); *Jespersen v. Zubiate-Beauchamp*, 114 Cal. App. 4th 624 (Cal. App. 2d Dist. 2003).) These cases have predominately found that California's anti-SLAPP statute did not apply to

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

21

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1  malpractice claims that arose from an attorney failing to properly represent a client's interests, so as

2  to prevent the statute from applying to a "garden variety legal malpractice action." (*Kolar*, 145 Cal.

3  App. 4th at 1535.) The court in *Jespersen* denied the anti-SLAPP motion there because the

4  malpractice action was not "based upon appellants 'having filed declarations, motions, or other

5  papers in that action, or upon appellants' appearance on discovery or other motions." (*Jespersen*,

6  114 Cal. App. 4th at 630.) By implication, this means that such affirmative petitioning activity

7  *would* fall under the protection of California's anti-SLAPP statute. Moreover, California courts

8  have found that "'there is simply no authority for creating a categorical exception [from the anti-

9  SLAPP law] for any particular type of claim . . . .'" (*People ex rel. Fire Ins. Exchange v. Anapol*,

10  211 Cal. App. 4th 809, 823 (Cal. App. 2d Dist. 2012) (citing *Beach v. Harco National Ins. Co.*, 110

11  Cal. App. 4th 82, 91 (Cal. App. 3d Dist. 2003)); *see also Mindys Cosmetics Inc.*, 611 F.3d at 598

12  (finding that "there is no categorical exclusion of claims of attorney malpractice from the anti-

13  SLAPP statute").)

14      In this case, there is nothing "garden variety" about Cox's malpractice claim, aside from there

15  not being an attorney-client relationship at all. Cox's claim is premised largely on statements made

16  by Randazza to various tribunals and the media. This is precisely the sort of conduct related to the

17  rights to petition and free speech that underlie the core concerns of Nevada's anti-SLAPP statute.

18      Under N.R.S. 41.637, any written or oral statement submitted to the court, including testimony

19  solicited, in the *Obsidian* Case is protected. Several of these communications form a substantial

20  portion of Cox's malpractice claim: Cox alleges that "Randazza violated attorney client privilege"

21  by involving himself in the *Obsidian* case and "offer[ing] to give testimony that would set Cox up

22  for Extortion." (ECF 164 at 5 ¶ 7.)[22] Her allegations specific to her malpractice claim include

23  assertions that Randazza "was trying to . . . defame and discredit Cox and use his attorney / client

24  privilege directly against Cox in multiple ways…"  (*Id*. at 18 ¶ 62.) She also asserts that Randazza

25  committed legal malpractice by "su[ing] Cox in the District of Nevada to shut down Cox's blogs

26

27  [22] In fact, Cox's allegation seems to be a tacit admission that there was extortion, otherwise, how could Randazza give
    testimony to that effect?

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV 89144
(702) 258-6665

22

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1  that spoke critical of him…" (*Id.* at 18 ¶ 65.) Aside from being protected by the litigation privilege,

2  these statements were also in direct connection with issues under consideration by judicial and

3  other official bodies, and are thus acts protected under N.R.S. 41.637.

4      As Cox's claim for legal malpractice is substantially based upon communications protected

5  under Nevada's Anti-SLAPP statute, the claim is subject to a special motion to dismiss. The only

6  remaining question, then, is whether Cox can show a probability of prevailing on this claim. She

7  cannot.

8          2.    **Cox Cannot Demonstrate Malpractice Because an Attorney-Client
                 Relationship Did Not Exist Nor Was There Unauthorized
9                Representation by Randazza.**

10     In Nevada, "legal malpractice is premised upon an attorney-client relationship, a duty owed to

11  the client by the attorney, breach of that duty, and the breach as proximate cause of the client's

12  damages." (*Semenza v. Nev. Med. Liability Ins. Co*, 765 P.2d 184, 185 (Nev. 1988).)  For a claim of

13  legal malpractice to survive, the claimant must successfully demonstrate first that an attorney-client

14  relationship existed. (*Day v. Zubel*, 112 Nev. 972, 976, 922 P.2d 536, 538 (Nev.  1996); *Morgano*

15  *v. Smith*, 110 Nev. 1025, 1028 n.2, 879 P.2d 735, 737 n.2 (Nev. 1994); *Charleson v. Hardesty*, 108

16  Nev. 878, 883-884, 839 P.2d 1303, 1307 (Nev. 1992).)  Absent the existence of such a relationship,

17  Cox's claim cannot proceed. (*Elie v. Ifrah PLLC*, Case No. 2:13-cv-888-JCM-VCF, *2014 U.S.*

18  *Dist. LEXIS 17096* at *10 (D. Nev. Feb. 10, 2014) (requiring attorney-client relationship to prevail

19  on claim for legal malpractice).)

20     While the Court has held that "[i]t is axiomatic that an attorney who undertakes representation

21  of an individual owes duties to that individual, even if the individual never assented to the

22  representation," *NNN Siena Office Park I 2, LLC v. Wachovia Bank Nat. Ass'n*, No: 2:12-cv-

23  01524-MMD-PAL, 2013 WL 5970719, *3 (D. Nev. Nov. 8, 2013), the facts of that case are readily

24  distinguishable from the case at hand. That case involved a complex financial scheme involving

25  solicitation of investors into real estate transactions. Specifically, Grubb & Ellis acquired Triple

26  Net Properties, which had purchased the subject property, using a large group of generally

27  unnamed investors. Grubb & Ellis was also the property manager. During a receivership action,

28  Grubb & Ellis retained Holland & Hart to represent them in contesting the Receiver's claim.

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

1    Holland & Hart filed a Motion to Intervene, to bring the group of investors into the receivership

2    action. The allegations of the case are that Holland & Hart filed the Motion to Intervene at Grubb

3    & Ellis' direction, but that they did not in fact have actual authority to represent those unnamed

4    investors. Most importantly, Holland & Hart is also alleged to have failed to take into consideration

5    the conflicts of interest inherent in this representation, did not keep the purported clients informed

6    of the status of the actions, and failed to inform the unnamed investors that they were being paid

7    with funds belonging to Plaintiffs. (*NNN Siena Office Park I 2, LLC v. Wachovia Bank Nat. Ass'n*,

8    No: 2:12-cv-01524-MMD-PAL (Doc. No. 1, Exhibit A).)

9        The case at hand is markedly different from the *NNN Siena* matter. There, the attorneys actively

10   held themselves out as the attorneys for the unnamed investors, and filed a motion on behalf of the

11   parties that they purported to represent, without seeking their consent, without obtaining a waiver

12   of an insurmountable conflict of interest, and without performing their fundamental duty of

13   communicating with their clients. Here, as outlined below (and as a matter of record in this case),

14   Randazza never held himself out as Cox's attorney, never took any action on her behalf, and Cox

15   herself never believed that Randazza was in fact her attorney.

16       Importantly, "the attorney-client relationship is based on the subjective belief of the client." (*In*

17   *re Rossana*, 395 B.R. 697, 702 (Bankr. D. Nev. 2008).) According to Cox's own Counterclaim,

18   "On this first call… Randazza did not commit to representation." (ECF 164 at 3.) Following that

19   initial consultation conversation between Randazza, Cox, and Spreadbury, Cox "awaited Randazza

20   to do a conflicts check, check the record and then get back to Cox on his representation and the

21   details of such… Randazza did not contact Cox with any ideas, details, elements of negotiations in

22   any way." (*Id.*).

23       Cox begins her allegations by stating that she "had an initial consultation" with Randazza,

24   "whereby Cox divulged private information," including "case strategy." (*Id.* at 2.)  Conspicuously

25   absent from this allegation, however, is the fact that Michael Spreadbury, a third party, was present

26   for the entirety of Cox's single conversation with Randazza, thus destroying any confidentiality

27   that could have been claimed in those communications. (Decl. of M. Spreadbury, attached as

28   **Exhibit W**.) Spreadbury is the one who initiated the contact with Randazza. (*Id.* at ¶ 6.).

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

24

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1   Furthermore, all parties understood that the consultation would not be privileged or confidential.

2   (*Id.* at ¶¶ 8 & 10.) All participants in that call were also informed and aware that no attorney-client

3   relationship was being formed as a result of this conversation, and that Randazza would have to

4   review the docket and make determinations regarding potential conflicts, before any offer of

5   representation could be made. (*Id.* at ¶¶ 9, 11, 12, 20, 26, & 27(d).)

6       Next, Cox alleges that Randazza spoke to counsel for Obsidian Finance Group and Kevin

7   Padrick regarding Cox's appeal of their case. (ECF 164 at 3.) Cox's counterclaim does not claim

8   that Randazza took these actions as her attorney. (*Id.*) That is because he in fact did not act as her

9   attorney, and never had. It is true that Randazza spoke with David Aman, counsel for Obsidian

10   Finance Group LLC and Kevin Padrick in the *Obsidian Finance Group LLC v. Cox* litigation, as a

11   preliminary introduction. (Decl. of D. Aman, attached as **Exhibit X**). It is hardly unusual that, prior

12   to accepting representation, an attorney would reach out to his proposed counterpart in order to

13   determine the current state of the case, potential for settlement, or the potential to narrow the issues

14   – before accepting representation. This is exactly what Randazza and Aman did, and Randazza

15   made it abundantly clear to Aman that he did not represent Cox at that point.  (*Id.* at ¶¶ 3, 5, & 6.)

16   During their conversations, Aman knew that Randazza did not represent Cox, and never took any

17   of Randazza's statements as anything more than what they were – a mere introduction and

18   exploration of the case. (*Id.* at ¶ 3.) Furthermore, Randazza never discussed any information

19   provided by Cox, much less any information that could be deemed to be confidential. (*Id.*) (And, of

20   course, even if it were information that was, by its nature, confidential – Mr. Spreadbury's presence

21   on the call would destroy any claims that it could be confidential.)

22       By her own words, Cox left the initial consultation call waiting to hear back from Randazza on

23   whether he would represent her. (ECF 164.) After not having immediately heard back, Cox then

24   went back to Eugene Volokh to confirm his representation of her. (ECF 164 at 3.) Randazza later

25   spoke to Eugene Volokh about the case. (Declaration of Marc J. Randazza, attached as **Exhibit Y**.)

26   In Randazza's conversation with Volokh, the two attorneys discussed how they saw the issues in

27   the case (*Id.*) Randazza and Volokh then discussed whether it would be advantageous for them both

28   to work on the case. (*Id.*) Volokh expressed interest in having Randazza as co-counsel to the case.

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

25

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1  (*Id.*) Only upon Volokh expressing an interest in teaming up on the case with him, did Randazza

2  decide that he wished to accept the case (DEC). Randazza emailed Cox to state that he *would*

3  represent her, and Cox then declined. (*Id.*)

4      Cox cannot now claim, in retrospect, that there was any attorney-client relationship, when she

5  herself admittedly never believed one existed. (ECF 164.) Cox's Counterclaim *does not allege* that

6  Randazza represented Cox, nor does Cox allege that she even believed that Randazza was in fact

7  her attorney. (*Id.*) Quite the opposite. The evidence in Mr. Spreadbury and Mr. Aman's

8  declarations further shows that no attorney-client relationship ever existed between Cox and

9  Randazza, that Cox did not believe Randazza was her attorney at the time, nor that Randazza ever

10  took any action purporting to be Cox's counsel. (Exh. W & Exh. X.)  "Cox was not particularly

11  interested in hiring Mr. Randazza before the call, and it was very clear… that Ms. Cox never

12  considered Mr. Randazza to have been her attorney."  (Exh. W. at ¶25.)

13      Beyond not having an attorney-client relationship, or even a delusional perception of one, Cox

14  also has not alleged how Randazza breached any relationship, and what damages may have ensued

15  as a result. Even if Cox believed that Randazza was holding himself out as her attorney, there are

16  no perceived damages in a case where she ultimately prevailed.

17      Cox was not forced into a settlement agreement in the *Obsidian* Case, even though she claims

18  that Randazza *would have tried* to enter into one. Cox was not precluded or time-barred from

19  appealing in the *Obsidian* Case, as a result of Randazza's alleged unauthorized representation of

20  her. Cox stated that Randazza's behavior "almost lost Cox the attorney she wanted."  (ECF 164 at

21  3.) However, Cox still went with her first choice – Eugene Volokh – as her attorney in that matter,

22  and the case was quickly resolved in her favor.  Cox also cannot claim that the public perception of

23  her as an extortionist was a resultant damage of Randazza's alleged "malpractice." As evidenced

24  above, Cox's reputation is what it is because of Cox's own actions, as opined upon by the New

25  York Times, the Ninth Circuit Court, WIPO, the District of Oregon, the District of Nevada, the

26  Montana Board of Real Estate, and dozens of other journalists. Beyond not being able to

27  demonstrate any sort of attorney-client relationship, Cox has been utterly unable to even so much

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

26

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

as *allege* the other two necessary elements of a legal malpractice claim – breach of that duty and the resultant damages.

"The Supreme Court has held that in order to establish Article III standing for a particular law suit, a plaintiff must show that he has suffered an injury-in-fact, that the injury is traceable to the defendant, and that a favorable disposition of the suit would redress his injury." (*Oaktree Capital Mgmt., L.P. v. KPMG*, 963 F. Supp. 2d 1064, 1077, 2013 U.S. Dist. LEXIS 109599, 29, 2013 WL 4006437 (D. Nev. 2013), citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000).) Cox has been unable to show that she has suffered any injury-in-fact, that the injury is directly traceable to Randazza's actions, and that a favorable disposition here would redress her injury. Instead, Cox simply prattles on about what damages she believes could have potentially happened if she had undertaken a different course of action. Therefore, Cox lacks any standing to bring these claims. Based on the foregoing, Cox does not have a remotely viable claim for legal malpractice against Randazza, does not have standing to bring such a claim, and therefore, her claim must be dismissed.

3.    **Even if a Malpractice Claim was Viable, it Would be Time-Barred By Nevada's Statute of Limitations.**

N.R.S. 11.207(1) provides that "[a]n action against an attorney . . . to recover damages for malpractice . . . must be commenced within 4 years after the plaintiff sustains damage or within 2 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the material facts which constitute the cause of action, whichever occurs earlier."

Cox's malpractice claim, rests on a conversation that Randazza had with David Aman, the attorney for Obsidian Finance Group, LLC in the *Obsidian* Case, in December 2011. Cox alleges that Randazza spoke with Mr. Aman without her authorization and, during this conversation, represented himself as Cox's attorney and entered into negotiations with Mr. Aman regarding the *Obsidian* Case. (ECF 164 at 3 ¶ 4.)  She does not specify when this alleged conversation occurred, but she claims to have learned of it from Eugene Volokh during a phone conversation on December 15, 2011. (*Id*). Cox even admits that, shortly after this purported conversation with Volokh and after Randazza offered to represent her in the *Obsidian* Case, she explicitly told Randazza,

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1   "**knowing what Randazza had done to harm her**," that she declined his offer of representation.

2   (*Id*. at 4 ¶ 4.) On the face of Cox's own counterclaim, it is apparent that her assertions of

3   unauthorized representation are time-barred by N.R.S. 11.207 and thus judgment as a matter of law

4   is required. Randazza's alleged misconduct took place, and Cox "discovered" this conduct, in

5   December 2011, more than two years before Cox's operative counterclaim for malpractice was first

6   attempted on February 21, 2014. And even if Randazza had "conceal[ed]" his act of alleged

7   misconduct from Cox, less than a week elapsed between such concealment and Cox's discovery of

8   it. Cox thus cannot show a probability of prevailing on any portion of her malpractice claim

9   premised on Randazza's unauthorized representation of her in December 2011.

10       Cox also claims Randazza committed malpractice at times subsequent to February 21, 2012,

11   but such claims are fundamentally flawed and have no chance of success. Specifically, Cox alleges

12   that on March 7, 2012, "Randazza became so enraged at not representing Cox and Cox speaking

13   critical of him that he contacted Obsidian and agreed to conspire with them to convince Judge

14   Hernandez and the world that Cox was guilty of Extortion." (ECF 164 at 5.) Cox continues by

15   stating that it was because of this grand conspiracy, she was not granted a new trial in the *Obsidian*

16   case. Nothing in this statement is premised on an attorney-client relationship, or even the fanciful

17   perception of an attorney-client relationship. Randazza certainly did not conspire with a Federal

18   Judge to deny Cox a new trial, but if he did, this would be a claim for conspiracy or some other

19   fanciful claim – and presumably Judge Hernandez would be an indispensable party to any such

20   claim.  Moreover, Randazza did not hold himself out as Cox's attorney, or do anything that could

21   remotely have been construed as acting on Cox's behalf as her attorney, either with Aman, or with

22   the Court.

23       Without meeting the fundamental requirement of establishing the existence of an attorney-

24   client relationship, Cox's counterclaim for malpractice must fail. The counterclaim does not even

25   allege that an attorney-client relationship existed; much less provide the Court with any evidence

26   sufficient to find the existence of such a relationship. By Cox's own allegations in her

27   counterclaim, and with the testimony of Messrs. Spreadbury and Aman, it is clear that an attorney-

28   client relationship did not exist, no other party thought such a relationship existed, and Randazza

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

28

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1   did not engage in legal representation on Cox's behalf. In the absence of such a relationship, Cox

2   has no probability of prevailing on this claim. Furthermore, Cox does not identify any breach of the

3   attorney-client relationship or any resultant damages. Because this claim is meritless and based

4   substantially upon Randazza's conduct protected under Nevada's Anti-SLAPP statute, this Court

5   must grant Randazza's special motion to dismiss Cox's legal malpractice claim.

6         **E.    Even if Cox Could Prevail on the Merits, Cox's Counterclaims Can Never**
          **Prevail, Because they are Claim Precluded.**

7

8         "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of

9   the very same claim, whether or not relitigation of the claim raises the same issues as the earlier

10  suit.'" (*Taylor v. Sturgell*, 553 U.S. 880, 128 S. Ct. 2161, 2171, 171 L. Ed. 2d 155 (2008) (*quoting*

11  *New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)). Nevada

12  uses a three-part test, adopted from the majority of states and the federal courts, for determining

13  whether claim preclusion applies: "(1) the parties or their privies are the same, (2) the final

14  judgment is valid and (3) the subsequent action is based on the same claims or any part of them that

15  were or could have been brought in the first case." (*Five Star Capital Corp. v. Ruby*, 194 P.3d 709,

16  713 (Nev. 2008).)

17        First of all, Counterdefendant Marc Randazza is named as a Defendant in Cox's Complaint

18  filed in Case No. 2:13-cv-00297-MMD-VCF, therefore, the first element is satisfied. Secondly, the

19  dismissal in Case No. 2:13-cv-00297-MMD-VCF is final and valid, thus fulfilling the second

20  element. The requirement that a judgment must be rendered "on the merits" guarantees to every

21  Plaintiff the right to be heard on the substance of her claim. Ordinarily, the doctrine may be

22  invoked only after a judgment has been rendered which reaches and determines "the real or

23  substantial grounds of action or defense as distinguished from matters of practice, procedure,

24  jurisdiction or form." (*See Clegg v. U.S.*,112 F.2d 886, 887 (10th Cir. 1940).) One of the exceptions

25  to this rule, however, is found in Fed. R. Civ.P. 41(b). It provides that an involuntary dismissal for

26  failure to prosecute, or for failure to comply with the Rules or any order of the court, shall operate

27  as an "adjudication upon the merits," although the substantive issues of the case are never reached.

28  (*See* Fed. R. Civ. P. 41(b); *see also Angel v. Froehlich*, 967 F.2d 583, 583 (9th Cir. 1992) (finding

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

29

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1    that a Rule 41(b) involuntary dismissal is a judgment on the merits unless based on lack of

2    jurisdiction, improper venue, or failure to join a party under Rule 19). In *Yourish v. California*

3    *Amplifier*, 191 F.3d 983, 992 (9th Cir. 1999) the court held that when a Plaintiff fails to timely

4    amend his complaint after the District Judge dismissed the complaint with leave to amend, the

5    dismissal is typically considered a dismissal for failing to comply with a court order, which the

6    District Judge can dismiss with prejudice pursuant to Rule 41(b). (*See also Madsen v. Herman*, 961

7    F.2d216, 216 (9th Cir. 1992) (finding res judicata applied where prisoner's initial complaint was

8    dismissed with prejudice for failure to state a claim upon which relief could be granted).

9        Finally, Plaintiff Cox brought identical claims against the Marc Randazza in Case No. 2:13-cv-

10   00297-MMD-VCF filed in the District of Nevada, which was dismissed with prejudice pursuant to

11   Rule 41(b) for Plaintiff's failure to timely file an Amended Complaint pursuant to the Court's

12   order. (*Cox v. Randazza*, Case 2:13-cv-00297-MMD-VCF (ECF 1, 30, 31). In that case, Cox

13   brought the exact same claims, based on the same operative facts as this matter. (*Id*.)  Magistrate

14   Cam Ferenbach, in that case, recommended dismissal with prejudice of Cox's Complaint.  (*Id*. at

15   ECF 30). Judge Du adopted the recommendation of Magistrate Cam Ferenbach and entered an

16   Order dismissing Cox's Complaint with prejudice. (*Id*. at ECF 31).

17       Accordingly, the elements outlined in *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev.

18   2008) for claim preclusion are satisfied. As a result, Cox is therefore precluded from bringing her

19   present claims for defamation and legal malpractice, and thus there is no possibility of her

20   prevailing on her claims which were both brought against Randazza for protected activity. Cox's

21   Counterclaim should be dismissed because the counterclaims contained therein are precluded by

22   the Doctrine of Claim Preclusion requiring the instant motion to be granted in its entirety.

23   **IV. CONCLUSION**

24       As set forth above, Counterdefendant Randazza has shown by a preponderance of the evidence

25   that Counterclaimant Cox's claims are based upon conduct by Randazza made in furtherance of

26   good faith communications in furtherance of the right to petition and the right to free speech in

27   direct connection with an issue of public concern.

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

30

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx

1    Cox cannot show by clear and convincing evidence that she has a probability of prevailing on

2   either of her claims for defamation or legal malpractice. Accordingly, Counterdefendant Randazza

3   respectfully requests that the Court dismiss Cox's Counterclaims and award reasonable attorneys'

4   fees and costs to Randazza, as well as the statutory maximum of $10,000 in damages for Cox's

5   wholly improper action.

6   Dated:  August 15, 2014                    BREMER WHYTE BROWN & O'MEARA LLP

7

8                                             By: _____
                                                   Anthony T. Garasi, Esq.
9                                                  State Bar No. 11134
                                                   Jared G. Christensen, Esq.
10                                                 State Bar No. 11538
                                                   Attorneys for Plaintiff and Counter
11                                                 Defendant Marc Randazza

12                         **CERTIFICATE OF SERVICE**

13       The undersigned hereby certifies that on the 15th day of August, 2014, I served a copy of

14  the foregoing **COUNTERDEFENDANT MARC J. RANDAZZA'S SPECIAL MOTION TO**

15  **DISMISS  COUNTERCLAIMANT  CRYSTAL  COX'S  COUNTERCLAIM** via the United

16  States District Court CM/ECF system to the party listed below:

17
    RANDAZZA LEGAL GROUP
18
    Ronald D. Green, Esq.
19  Nevada Bar No. 7360
    Theresa M. Haar,
20  Nevada Bar No. 12158
    Attorneys for Plaintiff
21

22  and Via U.S. Mail to party requesting notice:

23  Crystal L. Cox, Pro Se
    PO Box 20277
24  Port Townsend, WA 98368

25

26                                    An Employee of BREMER WHYTE BROWN &
                                      O'MEARA, LLP
27

28

BREMER WHYTE BROWN &
O'MEARA LLP
1160 N. Town Center Drive
Suite 250
Las Vegas, NV  89144
(702) 258-6665

31

H:\1163\001\PLD\2014-08-11 Randazza's Special Motion To Dismiss Counterclaimant Crystal Cox's Counter Complaint.docx