UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
2:12-cv-02040-JAD-PAL



CRYSTAL L. COX,
Defendant, Counter Plaintiff

v.

MARC J. RANDAZZA,
Plaintiffs, Counter Defendant

Motion in Limine
to Include Exhibit 24

Exhibit 24 is Cox's statement of defense, affirmative defense, testimony in defense. Exhibit 24 proves that Randazza has no claim against Cox.

Cox moves this court to include Exhibit 24 in her defense in her trial / cas Randazza v. Cox.

Crystal L. Cox, Pro Se
Counter Plaintiff / Defendant

### Certification of Service

On April 7, 2015, Crystal Cox certifies mailing a copy of this to:

U.S. District Court
Clerk of Court
Room 1334
333 Las Vegas Blvd. S.
Las Vegas , NV 89101

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
2:12-cv-02040-JAD-PAL

CRYSTAL L. COX,
Defendant, Pro Se

v.

MARC J. RANDAZZA,
Plaintiff,

**Defendant Cox Statement, Declaration,**
**Affirmative Defense Statement.**
**Exhibit 24**

Randazza v. Cox is a harassing SLAPP suit Randazza filed against Cox in retaliation and to shut down her blogs, suppress her speech, steal her top of the search engine gripe sites, suppress her First Amendment rights, bully her, intimated her, bankrupt her, ruin her career and reputation and harass her.

Randazza tried to unlawfully, unconstitutionally and unethically use Trademark law to suppress the Free Speech and First Amendment Rights of Defendant Crystal Cox, of whom he knew could not afford an attorney to fight back as she is a pauper as he knew because he represented her for Free for a time in the Obsidian v. Cox Appeal.

Defendant Crystal Cox was Randazza's former client therefore, as a matter of law he does not have a legal right to sue Cox nor to represent anyone to sue Cox.

When Randazza represented Cox, he did so under Randazza Legal Group, therefore as a matter of law RLG cannot represent ANYONE to sue a former client.

**Nevada Law:**

**Rule 1.18.   Duties to Prospective Client.**

   (a)  A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

1

Exhibit 2

(b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.

(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

(d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:

(1) Both the affected client and the prospective client have given informed consent, confirmed in writing, or:

(2) The lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and

(i) The disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(ii) Written notice is promptly given to the prospective client.

(e) A person who communicates information to a lawyer without any reasonable expectation that the lawyer is willing to discuss the possibility of forming a client-lawyer relationship, or for purposes which do not include a good faith intention to retain the lawyer in the subject matter of the consultation, is not a "prospective client" within the meaning of this Rule.

(f) A lawyer may condition conversations with a prospective client on the person's informed consent that no information disclosed during the consultation will prohibit the lawyer from representing a different client in the matter. If the agreement expressly so provides, the prospective client may also consent to the lawyer's subsequent use of information received from the prospective client.

(g) Whenever a prospective client shall request information regarding a lawyer or law firm for the purpose of making a decision regarding employment of the lawyer or law firm:

(1) The lawyer or law firm shall promptly furnish (by mail if requested) the written information described in Rule 1.4(c).

(2) The lawyer or law firm may furnish such additional factual information regarding the lawyer or law firm deemed valuable to assist the client.

(3) If the information furnished to the client includes a fee contract, the top of each page of the contract shall be marked "SAMPLE" in red ink in a type size one size larger than the largest type used in the contract and the words "DO NOT SIGN" shall appear on the client signature line.

[Added; effective May 1, 2006; as amended; effective September 1, 2007.]

So Randazza Legal Group cannot represent Randazza to sue a former client.

Nevada Law:

2

Exhibit 24

### Rule 1.9. Duties to Former Clients.

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:

(1) Whose interests are materially adverse to that person; and

(2) About whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;

(3) Unless the former client gives informed consent, confirmed in writing.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) Use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

(2) Reveal information relating to the representation except as these Rules would permit or require with respect to a client.

[Added; effective May 1, 2006.]

Randazza has no legal right to sue COX as his former client she is protected under attorney client laws. Ther

### 2. Cox has a right to review, parody and gripe about her former client.

Randazza v. Cox is clearly a meritless lawsuit that Randazza initiated to chill Defendant Crystal Cox's speech and stop her from exercising her First Amendment free speech rights."


Defendant Cox has never had a blog about a 3 year old. Randazza cannot prove that Cox did.


Plaintiff has no Trademark and cannot prove he had a trademark at the time he sued Cox.

Defendant Cox has not engaged in extortion.

Defendant Cox has not used Randazza's trademark to make any money in any way. Defend Cox has gripe sites about Randazza of which is her First Amendment right.

3

ExhiBit 24

Defendant Never bought a domain with Plaintiff's last name to capitalize in any way, and Plaintiff cannot prove otherwise, there for further litigation on these allegations is mute.

Cox moves this court to rule in her favor, and to provide a pretrial summary judgement or ruling of some kind i Cox's favor and to stop further litigation of Randazza's case against Cox as this court has clearly shot down in Document 200.

Defendant Cox has a legal right to make fun of her former First Amendment attorney Randazza.

Even if Randazza were to prevail on any of his allegation in which he cannot prove, it is clear that this court has no jurisdiction of Cox in those allegations.

Cox never acted in conspiracy against Plaintiff in any way.

I, Cox, have never made any money from Randazza's name and he cannot prove I did

I have never engaged in a scheme to cyberfly, never had a reason to do so.

I have never offered to remove anything from my blogs for a payoff.

Eliot Bernstein is NOT a Proxy and never has been.

There is no way whatsoever that Cox's gripe sites about the Plaintiff could be confused with his law firm's blogs. Cox's sites were and are a clear RANT about her mistreatment by her former attorney.

Plaintiff doe not have common law rights to the name Randazza.

The First Amendment trumps any common law rights or trademark rights

It is clear to any reader that Cox's sites are gripe sites, parody, poking fun, and there is no commercial goods sold using Randazza's alleged good name.

Randazza clearly has no right to privacy and seclusion laws, he is a very controversial, high profial porn att

Right of Publicity does not exist in this case, as a matter of law.

4

### 3. Affirmative Defense that will be included in Trial Memorandum regarding Randazza's allegations against Defendant Cox in Randazza v. Cox are the following:

In November 2012, the Randazza's sued Cox alleging violations of individual cyberpiracy protections for various registered websites under 15 U.S.C. § 8131, cybersquatting for various registered websites under 15 U.S.C. § 1125(d), their right of publicity under NRS 597.810, their common law right of publicity, intrusion upon seclusion, and civil conspiracy.

The claims were based on allegations that Cox registered several domain names containing Plaintiffs' names, that Cox's blog posts contained objectionable characterizations of the Plaintiffs, and that these acts were designed to extort and harass the Randazzas and capitalize on and damage the goodwill Marc Randazza claims he built up in his own name as a prominent First Amendment attorney.

Defendant Cox did NOT register any domain names to extort nor to harass Randazza but instead to review his law firm, gripe about him, and to provide consumer protection information.

Plaintiffs have failed to authenticate more than half of their proffered exhibits in support of their motion; and half of the authenticated ones are immaterial to this motion.

Authentication of Evidence The first step in analyzing these motions is to determine what evidence the Court may consider in evaluating whether the parties met their respective burdens. In Orr v. Bank of America, the Ninth Circuit Court of Appeals "made it clear that 'unauthenticated documents cannot be considered in a motion for summary judgment.'" To authenticate a document, the proponent must offer "evidence sufficient to support a finding that the matter in question is what its proponent claims.'"

Documents may be authenticated two ways: (1) through the personal knowledge of a party who attests that the document is what it purports to be;

**Case Law Applying to the Above**

(6) Am., 285 F.3d 764, 733 (9th Cir. 2002). Las Vegas Sands, 632 F.3d at 532-33 (quoting Fed. R. Evid. 901(a)). (7) Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (citing Bill Johnson's Restaurants, Inc. (8) v. NLRB, 461 U.S. 731, 745 n.11 (1983)).

or (2) any other manner permitted by Federal Rules of Evidence 901(b) (which provides ten methods of authentication) or 902 (identifying self authenticating documents that "require no extrinsic evidence of authenticity in order to be admitted").

5

Exhibit 24 Cox

Documents authenticated through personal knowledge must be attached to an affidavit 9 signed by a person with personal knowledge about the document (such as the drafter or signer of the document, or the custodian of the document kept in the ordinary course of a business, depending on the type of document and its particular relevance), or properly authenticated deposition testimony in which the same information was elicited. (10)

Plaintiffs' proffered evidence falls into several categories, and the Court addresses each in turn: 1. Periodicals Plaintiffs offer at Exhibit B an article from Forbes Magazine. Printed material "purporting to be a newspaper or periodical" is self-authenticating. Thus, this article is self-authenticating. Its (11) contents, however, are hearsay not subject to any exception.

Accordingly, the periodical is not admissible for summary judgment purposes. 2. Websites Few courts have considered how a website print-out or blog posting may be authenticated. Those that have considered the issue have found "website print-outs [were] sufficiently authenticated

(9) and certified; foreign public documents; certified copies of public records; official publications; newspapers and periodicals; trade inscriptions and the like; acknowledged or notarized documents; commercial paper and related documents; presumptions under a federal statute; and certified domestic or foreign records of a regularly conducted activity.)

See Orr, 285 F.3d at 773-74 ("documents authenticated through personal knowledge must (10) be "attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."); see also id. at 774 (deposition transcripts are authenticated "by attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted. It is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a 'true and correct copy.' Such an affidavit lacks foundation even if the affiant-counsel were present at the deposition.").

Fed. R. Evid. 902(6).

... where the proponent declared that they were true and correct copies of pages on the internet and the print-outs included their webpage URL address and the dates printed." (12) The websites contained in Exhibits E, K, Q, R, S, and T have been properly authenticated under this standard because Plaintiff Marc Randazza has attested that they are true and correct copies and the print-outs include the webpage URL address and the dates the websites were printed.13 However, Plaintiffs have not authenticated any of the purported website contents in Exhibits D, G, M, O, and P. Although Mr. Randazza has attested that these exhibits are true and correct copies and the print-outs include the webpage URL address, absent are the dates the webpages were printed.

Without the print dates, these website printouts have not been properly authenticated, and the Court will not consider them. 3. Letters, Emails, and Text Messages A document may be

6

Exhibit 24

authenticated by personal knowledge "by a witness who wrote it, signed it, used it, or saw others do so." Although circumstantial evidence—like an email's context, email 14 address, or previous correspondence between the parties—may help to authenticate an email, the 15 most direct method of authentication is a statement from its author or an individual who saw the author compose and send the email. (16)


**Case Law Applying to the Above**

(12) Haines v. Home Depot U.S.A., Inc., No. 1:10–cv–01763–SKO, 2012 WL 1143648 *7 (E.D. 12 Cal. April 4, 2012).

(13) See Docs. 75-1, 75-7, 75-13, 75-19, 75-20, 75-21, 75-22. 13 Orr, 285 F.3d at 774 n.8 (citing references omitted).

(14) United States v. Siddiqui, 235 F.3d 1318, 1322–23 (11th Cir. 2000).

(15) United States v. Fluker, 698 F.3d 988, 999 (7th Cir. 2012).

Plaintiffs have not authenticated the purported emails in this case nor have Plaintiffs Proven that Cox has Violated Tradmark Law.


## 1. Genuine issues of material fact preclude summary judgment on Plaintiffs' claims 1-3 relating to violations of individual cyberpiracy protections under 15 U.S.C. § 8131.

Plaintiff Randazzas' first, second, and third claims arising under 15 U.S.C. § 8131 allege that Defendants' registration of the multiple domain names violates the provision that provides cyberpiracy protection for individuals. In pertinent part, section 8131 provides that:

   [a]ny person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person. (30)

It is undisputed that Cox did not intend to profit on said name nor did Cox register domain names in bad faith.

7

Exhibit 24

To prevail under this theory, a plaintiff must show that the specific intent to profit existed at the time of the registration. Randazza cannot prove this and therefore does not have a Valid claim. The statute further provides a very limited exception for good-faith registrants: (31)

    A person who in good faith registers a domain name consisting of the name of another living person, or a name substantially and confusingly similar thereto, shall not be liable under this paragraph if such name is used in, affiliated with, or related to a work of authorship protected under Title 17, including a work made for hire as defined in section 101 of Title 17, and if the person registering the domain name is the copyright owner or licensee of the work, the person intends to sell the domain name in conjunction with the lawful exploitation of the work, and such registration is not prohibited by a contract between the registrant and the named person. The exception under this subparagraph shall apply only to a civil action brought under paragraph (1) and shall in no manner limit the protections afforded under the Trademark Act of 1946 (15 U.S.C. 1051 et seq.) or other provision of Federal or State law.(32)

**Case Law Applying to the Above**

Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Anderson, 477 U.S. at 28 248-49.

See 15 U.S.C. § 8131. 29 Id. at § 8131(1)(A).

(32) Id. at § 8131(1)(B).

Plaintiff Randazza have FAILED to show and CANNOT show admissible evidence that at the time the Defendants registered domain names there was a specific intent to profit by selling the domains to Plaintiffs or a third party. Therefore this Cause of action is MUTE and not actionable.

## 2. Genuine issues of material fact preclude summary judgment on claims 4-5 for Cybersquatting under 15 U.S.C. § 1125(d).

The Randazzas' fourth and fifth claims allege that Defendants' registration of the domain names violates the provision that prohibits cybersquatting. To prevail on a cybersquatting claim, a 35 plaintiff must show that: "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted with bad faith intent to profit from that mark." Plaintiffs have failed to show and CANNOT show, by admissible evidence, essential elements of these cybersquatting claims, and therefore have no VALID Claim against Cox.

8

Exhibit 24

**Plaintiff Randazza CANNOT show ANY admissible evidence essential elements of these cybersquatting claims.**

Jennifer and Natalia Randazza's claims fail as a matter of law because they have not alleged or shown any facts to support common-law trademarks in their personal names. Thus, Jennifer and Natalia are not entitled to any relief or claim against COX.

**Assuming Mr. Randazza could show a common law trademark in his name, he has not demonstrated Defendants acted with bad-faith intent to profit from that mark.**

To determine whether Defendants acted in bad faith, the Court considers the nine nonexclusive factors outlined in § 1125(d)(1)(b):

(1) the trademark or intellectual property rights of the defendants in the domain name; (2) the extent to which the domain name is the legal name of a person, (3) defendant's prior use of the domain name in connection with a bona fide offering of goods and services,

(4) whether the defendant made a bona fide noncommercial fair use of the domain name, (5) defendant's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site,

(6) whether the defendant offered to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name, (7) whether the defendant provided false contact information when registering the domain name, (8) whether the defendant registered multiple domain names which defendant knew were identical to or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, and (9) the extent to which the trademark incorporated into the domain name is distinctive.

Plaintiff Randazza has not and CANNOT show admissible evidence that the non-exhaustive factors balance in his favor. Although some factors may balance in his favor, such as factors 1-3, others arguably do not, such as 4-7. As Plaintiffs have failed to prove an essential element of these claims, and cannot at trial.

### 3. Genuine issues of material fact preclude summary judgment on claim 6 for Right of Publicity under NRS § 597.810.

Plaintiffs' sixth claim alleges that Defendants' registration of the domain names containing the entirety or part of the Randazzas' personal names violated their rights of publicity under Nevada

9

law. NRS § 597.810 prohibits "[a]ny commercial use of the name, voice, signature, photograph or likeness of another by a person, firm or corporation without first having obtained written consent for the use. . . ." The statute defines "commercial use" as "the use of the name, voice, signature, photograph or likeness of a person on or in any product, merchandise or goods or for the purposes of advertising, selling or soliciting the purchase of any product, merchandise, goods or service."

Genuine issues of material fact also preclude entry of judgment in Plaintiffs' favor on this privacy claim. The Randazzas have failed to show by admissible evidence that Defendants intended to advertise, sell, or solicit the purchase of any product, merchandise, goods, or service. Indeed, Plaintiffs have offered no admissible evidence that tends to show any commercial use of the their names.

Defendant has had no material gain, and Plaintiff cannot prove that Defendant violated the alleged right to privacy or that they had a reasonably right to privacy in being a high profile porn and first amendment attorney.

### 4. Claim for Common Law Right of Publicity is legally untenable.

Plaintiffs' seventh claim alleges that Defendants' registration of the domain names containing the entirety or part of the Randazzas' personal names violated their common law rights of publicity. "Nevada has codified the right of publicity tort." Because "[t]he statute provides a 40 complete and exclusive remedy for right of publicity torts," Nevada law does not recognize a common law right of publicity. As Nevada law does not recognize this cause of action, Plaintiffs 41 have failed to state a viable claim under this legal theory, and this claim is dismissed with prejudice. Therefore Plaintiff Randazza has no claim.

### 5. Genuine issues of material fact preclude summary judgment on claim 8 for common law intrusion upon seclusion.

The Randazzas' eighth claim alleges that Defendants' registration of five of the domain names containing the entirety or part of their names amounted to a common law intrusion upon seclusion. To recover for the tort of intrusion, a plaintiff must prove that there was an intentional intrusion (physical or otherwise) on his seclusion that would be highly offensive to a reasonable person. "[T]o have an interest in seclusion or solitude which the law will protect, a plaintiff must show **that he or she had an actual expectation of seclusion or solitude and that that expectation was objectively reasonable.**"

Generally, there is a decreased expectation of privacy in the workplace 44 and for individuals who have interjected themselves into the public sphere.

10

Genuine issues of material fact preclude entry of judgment in Plaintiffs' favor on this intrusion claim. Plaintiffs Jennifer and Natalia have failed to show by admissible evidence that the mere registration of a domain name would be highly offensive to a reasonable person, and Mr. Randazza has failed to show that registering the domain names, coupled with the comments contained in the two admissible blog posts, would be highly offensive to the reasonable person as a matter of law.

Plaintiff Randazza has a decreased expectation of privacy in his workplace. By his own characterization, he is an attorney "renowned through the United States and the world for expertise in First Amendment, intellectual property, and Internet law." He authors "a blog about various legal issues," and the blog is an ABA-recognized top blog website.

On his blog, he goes to great lengths to explain "why [he has] the audacity to believe that [he is] qualified to teach [others] a thing or two." He touts himself as having "experience and expertise in all areas of First Amendment and entertainment law matters." He boasts about "get[ting] to fight 'the good fight' – protecting all of our First Amendment freedoms," and openly proclaims that he has "represented adult entertainment establishments against socially conservative communities."

By talking about his experience and the clients he represents, Mr. Randazza invites commentary on his work as an attorney and criticism from those who oppose the positions of his clients. Mr. Randazza may be perceived to have interjected himself into the public sphere by making television and radio guest appearances, giving quotes and interviews in newspapers, magazines, and other publications, appearing at speaking engagements, and having an ABA-recognized Top blog website, all as reflected on his résumé. Considering his intentional and deliberate professional 51 exposure and interjection into the public sphere and the accompanying decrease in his privacy interests, he has not demonstrated as a matter of law that he had an actual or reasonable expectation that he would not be criticized based on his work as an attorney or that he would not be thought about unfavorably by people in opposition to his work. As the Randazzas have failed to establish essential elements of this claim and cannot Plaintiff has no claim.

### 6. Genuine issues of material fact preclude summary judgment on claim for Civil Conspiracy.

Plaintiffs' ninth claim alleges that Bernstein and Cox colluded to register the domain names containing the entirety or part of the Randazzas' names to violate their rights. To state a valid claim for civil conspiracy, a plaintiff must show: (1) defendants, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming the plaintiff; and (2) the plaintiff sustained damages as a result. "A civil conspiracy claim operates to extend, beyond the active 52 wrongdoer, liability in tort to actors who have merely assisted, encouraged or planned the wrongdoer's acts."53 Genuine issues of material fact also preclude entry of judgment in the

Exhibit 24 GL

Randazzas' favor on this theory. They have not demonstrated by admissible evidence that Cox and Bernstein acted in concert. Nor can Plaintiff prove this and therefore Plaintiff has no claim.

Case Law on the Above

NRS § 597.810 38 Id. at § 597.770(1). 39 People for Ethical Treatment of Animals v. Bobby Berosini, Ltd., 895 P.2d 1269, 1285 (9th 40 Cir. 1995).

Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987) (citing Wong v. Bell, 642 42 F.2d 359, 362 (9th Cir. 1981) (holding that a district court may dismiss claims sua sponte pursuant to Rule 12(b)(6), without notice, where a claimant could not possibly win relief.). Berosini, 895 P.2d at 1279. 43 Id. (citations omitted). 44 Id. at 1281 n.20. 45 Doc. 75-1, at ¶ 1.

## The First Amendment TRUMPS Trademark Law

Even if it was found Cox's Gripe sites were a violation of Randazza's alleged Trademark, Cox's First Amendment Right TRUMP any Trademark Randazza may Have.

See; In Rogers v. Grimaldi, 875 F.2d 994 (9th Cir. 1989),

In University of Alabama Board of Trustees v. New Life Art, Inc., 683 F.3d 1266 (11th Cir. June 11, 2012),

In a battle between two video game heavyweights – Novalogic, Inc. and Activision Blizzard – a California federal court held that Novalogic's attempt to enjoin Activision from using the phrase "Delta Force" and a Delta Force logo in "Call of Duty: Modern Warfare 3" is barred by the First Amendment. Novalogic v. Activision Blizzard et al. [No. 12-4011]

A recent trademark infringement case out of the Eastern District of California demonstrates that the First Amendment may trump a trademark owner's objections to use of a similar mark by a political opponent. In the case of Protectmarriage.com-Yes on 8, a Project of California Renewal v. Courage Campaign, 93 U.S.P.Q.2d 1477 (E.D. Cal. 2010), the plaintiff, ProtectMarriage.com, is a nonprofit organization opposed to same-sex marriage in California.

12

Exhibit 24

## **A TRADEMARK IS NOT A CENSOR TOOL**

In The United States Court of Appeals For The Fourth Circuit
THE RADIANCE FOUNDATION, INC. and RYAN BOMBERGER, individually,
Plaintiffs-Appellants,
v.
NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,
Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT NORFOLK BRIEF OF THE ELECTRONIC FRONTIER FOUNDATION AND THE ACLU OF VIRGINIA AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS-APPELLANTS

E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc., 547 F.3d 1095 (9th Cir 2008) ................................................... 10, 11, 12 Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539 (2007) ................................................................................... 17 Lamparello v. Falwell, 420 F.3d 309 (4th Cir. 2005) ....................... 15, 16 Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894 (9th Cir. 2002) ................................................................................passim People for Ethical Treatment of Animals v. Doughney, 263 F.3d 359 (4th Cir. 2001) ............................................................... 13 Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People, 2014 WL 2601747 (E.D. Va. June 10, 2014) ..

Trademark Laws SHOULD NOT be used to trample First Amendment Rights

"In a blog post titled "NACCP: National Association for the Abortion of Colored People," Radiance Foundation Inc. ("Radiance") stated that the National Association for the Advancement of Colored People ("NAACP") holds "all things liberal, most things socialistic, and nothing pro-life." On April 24th, 2014, the U.S. District Court for the Eastern District of Virginia found Radiance liable for trademark infringement and trademark dilution for its use of NAACP's trademark in its blog post. Radiance Found., Inc. v. NAACP, 2014 U.S. Dist. LEXIS 57431. The court ruled that Radiance violated the Lanham Act, provisions 15 U.S.C. §1114 and 1125, as well as Virginia Code §59.1-92.12(i), VA. Code Ann. § 59.1-92.12(i) (West 2011). Radiance appealed, and the EFF and ACLU filed an amicus brief in support of Radiance.

Building on three prior Circuit Court cases holdings that "artistic or political use of a trademark" and "literary titles" do not violate the Lanham Act "so long as the level of relevance to the underlying work is merely . . . above zero," the EFF and the ACLU argue that Radiance's use of the term "NAACP" in an article title was

Exhibit 24

not infringing on a confusion theory. Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989), Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894 (9th Cir. 2002), and E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc., 547 F.3d 1095 (9th Cir 2008). The brief reasons that "Radiance's use of NAACP's trademark in the title of an article was directly relevant to the article's political goal and did not explicitly mislead as to the source or content of the article."  The brief emphasizes that Rogers, Mattel, and E.S.S. Entertainment showed "that the First Amendment broadly protects cultural reference, commentary, criticism and parody, including when such speech uses another's trademark.""

Free  Speech  Trumps  Trademark  Rights   in University of Alabama v. Moore

**In Conclusion,**

Clearly, as a matter of law, this case is a SLAPP suit Randazza filed against Cox to shut down her blogs, suppress her speech, steal her top of the search engine gripe sites, suppress her First Amendment rights, bully  her and harass her.

Cox was Randazza's former client and he does not have a legal right to sue her as his former client she is protected under attorney client laws. Therefore this court should rule in Cox's favor and stop this 3 year madness.

Cox has a right to review, parody and gripe about her former client.

Randazza v. Cox is clearly a meritless lawsuit that Randazza initiated primarily to chill Defendant Crystal Cox's speech and stop her from  exercising her First Amendment free speech rights."

*[signature]*

Crystal L. Cox, Pro Se
Counter Plaintiff / Defendant

14



## Certification of Service

On April 7, 2015, Crystal Cox certifies mailing a copy of this to:

U.S. District Court
Clerk of Court
Room 1334
333 Las Vegas Blvd. S.
Las Vegas, NV 89101